1
2
3
4
5
6
7



FILED & ENTERED

SEP 28 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

8
9
10
11

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 12 In re:<br><br>13 Solyman Yashouafar and Massoud<br>14 Yashouafar<br><br>15<br><br>16<br>            Debtors.<br>17 ─────────────────────<br>18 DAVID K GOTTLIEB<br><br>19           Plaintiff,<br><br>20   v.<br><br>21 Elkwood Associates, LLC, Fieldbrook,<br>22 Inc.<br><br>23<br>          Defendants.<br>24 ─────────────────────| CHAPTER 11<br><br>Case No.: 1:16-bk-12255-GM<br>Adv No: 1:17-ap-01040-GM<br><br>**MEMORANDUM OF OPINION RE<br>DEFENDANTS' MOTION TO DISMISS FIRST<br>AMENDED COMPLAINT**<br><br>Date: August 28, 2017<br>Time: 1:30 p.m.<br>Courtroom: 303<br>            21041 Burbank Blvd.<br>            Woodland Hills, CA 91381 |

25
26
27
28

1
2
3
4
5
6

By way of this Motion, Defendants Elkwood Associates, LLC and Fieldbrook, Inc. ("Elkwood" or "Fieldbrook" or "Defendants") move to dismiss Plaintiff David Gottlieb's ("Plaintiff" or "Trustee") First Amended Complaint ("FAC") filed on May 11, 2017. Defendants move to dismiss all twelve claims for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the FAC fails to state a claim upon which relief may be granted.

7
8
9
10

Furthermore, Defendants move to dismiss the first and second claims under Rule 12(b)(7) and Rule 19 on the ground that Plaintiff has failed to name necessary parties to those claims.  Finally, Defendants ask that the Court dismiss all claims without leave to amend unless the Plaintiff can show how he will cure the deficiencies in the FAC.

11

12

**Background:**  (primarily as set forth in the Motion, Opposition, and FAC)

13
14
15
16
17
18
19
20
21

On August 3, 2016, involuntary petitions were filed against the Debtors.  Debtors stipulated to entry of the Orders for Relief and the Orders for Relief were entered on September 12, 2016.  Thereafter, Trustee initiated the instant adversary proceeding. The First Amended Complaint was filed on May 11, 2017.  The FAC contains twelve claims for relief including those seeking quiet title and setting aside the foreclosure of the Rexford property; avoiding transfer/foreclosure of both the Rexford property and the Chalette property under the theories of actual and constructive fraudulent transfer pursuant to state and bankruptcy law; and finally recovering both properties by applying 11 U.S.C. § 550.

22
23
24
25
26
27
28

The focus of the FAC is the February 2015 foreclosure sales of residential properties, Rexford and Chalette, in which the Debtors had an alleged interest.  The Rexford home was allegedly owned by Massoud and the Chalette home was allegedly owned by Solyman.  Trustee estimates Rexford to be worth between $12,000,000 and $15,000,000.  It is/was currently being used as Massoud's residence.  Chalette was sold for close to $9,000,000.

**First Amended Complaint:**

A summary of the FAC's facts are as follows:

- Defendants Elkwood and Fieldbrook are controlled by Jack Nourafshan ["Nourafshan"], the brother-in-law of Massoud.  Elkwood and Fieldbrook are owned by Nourafshan and his two brothers. [¶5]

- The Rexford home is valued at $12,000,000 to $15,000,000 and is currently being used as Massoud's family residence. [¶¶9, 10]

- Prior to the foreclosure sale, Rexford was owned by the Massoud and Parinaz Yashouafar 2003 Trust, which the Plaintiff believes is a revocable trust. [¶¶12, 13]

- Prior to the foreclosure sale, Chalette was owned by the Solyman and Sheila Yashouafar 2004 Trust, which the Plaintiff believes is a revocable trust. The Chalette home was sold by Fieldbrook in May 2015 for nearly $9,000,000. [¶¶15, 17, 18]

### Indebtedness Prior to Foreclosure

- **Indebtedness relating to Rexford (exclusive of the PWB DOT):**  In 2004, Massoud and his wife borrowed $2,516,300 from Chase and $2,000,000 from Tri-Center Group.  The loans were secured by a first and second deed of trust, respectively, against Rexford. [¶¶19, 20]  Before the foreclosure sale, on or about December 30, 2014, Tri-Center executed and delivered to Elkwood a reconveyance of the Tri-Center deed of trust.  Elkwood did not record the reconveyance until July 14, 2015. [¶21]  In September 2013, Chase declared a default under its loan.  The noticed foreclosure sale was continued various times during which Massoud attempted to cure or to restructure the loan. [¶24]

- **Indebtedness relating to Chalette (exclusive of the PWB DOT):**  The Solyman Family Trust borrowed $1.475 million from Chase which was secured by a first deed of trust against Chalette. [¶23]

- **Indebtedness to PWB:** In March 2009, Massoud and Solyman executed a promissory note for the benefit of Pacific Western Bank ("PWB") for the amount of $6,551,575.  The PWB Note was secured by a third deed of trust against Rexford and second deed of trust against Chalette. [¶22, 23] In January 2014, PWB declared a default of its loan and started foreclosure proceedings against both Rexford and Chalette. [¶25]

### Transfer of PWB Loan

- Massoud introduced Kensington to PWB as a potential purchaser of the PWB loan.   Kensington sought to purchase the PWB Note.  Part of the negotiations between Kensington and PWB dealt with Kensington's desire that PWB bifurcate the Note into two separate notes, each secured by only one of the properties. This was followed by a series of negotiations of price, etc. [¶¶29-36]  However, this sale did not close and on December 29, 2014, the PWB Loan was sold to Elkwood rather than to Kensington [¶¶37-38].

- Kensington is owned by the Nourafshan Family and Nourafshan controlled both Kensington and Elkwood. [¶¶29, 39]

- Plaintiff alleges that prior to the purchase of the loan, Massoud and Nourafshan had a secret agreement as to how Rexford and Chalette's value would benefit the Nourafshan family and Massoud rather than Debtors' creditors.  The substance of this agreement was that Massoud and his family would continue to live at Rexford, rent free, and that Chalette would be vacated so that the Nourafshan Family could sell it for a quick profit. [¶39]

- After the PWB loan was assigned to Elkwood, Citivest assumed the role of trustee under the two Deeds of Trust.

- On February 18, 2015, Elkwood assigned the PWB loan, the Chalette DOT, and the Rexford DOT to Fieldbrook. The assignment of the Note and of the Chalette DOT from Elkwood to Fieldbrook was signed by Thelma S. Guerrero as Manager

of Elkwood. [¶43, Ex. B]  On February 17, 2015, the day before the actual

assignment to Fieldbrook, Thelma Guerrero advised Citivest of the assignment

and that Elkwood would be acting as agent of Fieldbrook. She further advised

Citivest that the portion of the note that had been transferred to Fieldbrook was

$5,800,000 and that was to be the opening and only bid at the upcoming

foreclosure sale of Chalotte.  The remaining balance on the Note was to be the

opening bid on Rexford. [Ex. C]

### The Foreclosure Sales

- **Chalette:**   On February 20, 2015, Citivest conducted the foreclosure sale under
  the Chalette DOT. Nourafshan, on behalf of Fieldbrook, credit bid at $5.8 million
  for Chalette at the foreclosure sale.  This was the only bid. [¶45]

- Fieldbrook incurred about $200,000 in post-foreclosure expenses and then sold
  Chalette for $8,995,000.  Nourafshan admitted to a profit of $2.6 million for
  Chalette. [¶¶47, 48]

- **Rexford:**  The foreclosure sale was noticed for February 23, 2015 on the steps
  of the United States Post Office located at 222 N. Grand Ave., Los Angeles.  The
  sale was held at that time. At the sale, Rexford was sold to Elkwood for a credit
  bid of $782,508.05, though the balance due on the PWB Loan was
  $6,569,508.05.  Elkwood was the foreclosing party according to the foreclosure
  sale deed. [¶¶51-54]

- Plaintiff alleges several irregularities relating to Rexford foreclosure including the
  following: the wrong amount was credit bid; at the time Elkwood was not the
  holder of the PWB Loan or the DOT and was not entitled to credit bid;  there was
  no Post Office located at 222 N. Grand Ave.; Elkwood waited nearly five months
  after the foreclosure sale to record the reconveyance; and at the foreclosure
  sale, it appeared a potential bidder would have to bid more than $10 million to

buy the property when in fact the principal amount of the PWB Loan was reduced to $782,000. [¶¶55-60]

- Massoud and his family continue to live rent free in the Rexford property despite the lease between Massoud and Elkwood.

**Rexford Lease**

- On March 7, 2015, Massoud and Elkwood executed a two year lease of Rexford which allowed Massoud and his family to live there for $25,000 per month. Massoud does not have the ability to make these rental payments. [¶61]
- Massoud has testified that he does not know who owns Elkwood even though Nourafshan executed the Rexford lease. Massoud has testified that either his mother-in-law or brother-in-law (Nourafshan) is paying the rent. No rent has actually been paid. [¶¶62-63]

**FAC's claims for relief:**

- <u>Quiet title:</u>  At the time of the Rexford foreclosure sale, Elkwood had already assigned all of its interest in the PWB Loan and in the Rexford DOT to Fieldbrook. Therefore, at the time of the sale Elkwood was not entitled to credit bid.
- <u>Set aside foreclosure sale of Rexford:</u>  Elkwood, by failing to timely record the Fieldbrook assignment, created an impression that any potential buyer would need to bid at least $10 million for the property when really the property could have been secured for approximately $3 million. Moreover, the Rexford foreclosure sale was incorrectly noticed by claiming the place of sale was the US Post Office when it was really the Kenneth Hanh County Administrative Building. Elkwood obtained Rexford for a credit bid of $782,508.05, which it was not entitled to make.

- <u>Avoid transfer/foreclosure of Rexford as an actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A):</u>  Trustee is entitled to avoid the transfer and foreclosure of Rexford because Massoud and Nourafshan conspired to divert the value of Chalette and Rexford to the detriment of Debtor's creditors.

- <u>Avoid transfer/foreclosure of Rexford as an actual fraudulent transfer under 11 U.S.C. § 544(b) and Section 3439.04(a)(1) of California Civil Code:</u>  There is at least one creditor holding an unsecured claim against Massoud that is allowable under Section 502 or that is not allowed under Section 502(e).  Massoud received less than equivalent value in exchange for Rexford.  Therefore, the transfer and foreclosure of Rexford are avoidable.

- <u>Avoid transfer/foreclosure of Rexford as a constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B):</u>  Massoud made the Rexford transfer without receiving reasonably equivalent value in exchange for the transfer; Massoud was either insolvent at the time of the transfer or became insolvent because of the transfer; and Massoud believed or reasonably should have believed that he would incur debts beyond his ability to pay them.

- <u>Avoid transfer/foreclosure of Rexford as a constructive fraudulent transfer under 11 U.S.C. § 544(b) and Sections 3439.04(a)(2) and 3439.05 of California Civil Code:</u>  Similar allegations to Fourth and Fifth claims for relief.

- <u>To recover Rexford under 11 U.S.C. § 550:</u>  Since the transfer and foreclosure of Rexford will be avoided, Trustee is entitled to recover the Rexford home.

- <u>Avoid transfer/foreclosure of Chalette as an actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A):</u>  Massoud and Nourafshan conspired to divert the value of Chalette and Rexford to Nourafshan and/or Massoud to the detriment of the Debtors' creditors, with or without the Solyman's knowledge.  Thus, the estates have been deprived of at least $13 million of value.

- <u>Avoid transfer/foreclosure of Chalette as an actual fraudulent transfer under 11 U.S.C. § 544(b) and Section 3439.04(a)(1) of California Civil Code:</u>  There is at

least one creditor holding an unsecured claim against Solomon that is allowable under Section 502 or that is not allowed under Section 502(e).  Therefore, the Trustee may avoid the transfer of Chalette.

- Avoid transfer/foreclosure of Chalette as a constructive transfer under 11 U.S.C. § 548(a)(1)(B):  Solyman made the Chalette transfer without receiving reasonably equivalent value in exchange for the transfer; Solyman was either insolvent at the time of the transfer or became insolvent because of the transfer; and Solyman believed or reasonably should have believed that he would incur debts beyond his ability to pay them.

- Avoid transfer/foreclosure of Chalette as a constructive fraudulent transfer under 11 U.S.C. § 544(b) and Sections 3439.04(a)(2) and 3439.05 of California Civil Code:  Similar allegations to Ninth and Tenth claims for relief.

- To recover Chalette under 11 U.S.C. § 550:  Since the transfer and foreclosure of Chalette will be avoided, Trustee is entitled to recover the value of the Chalette home from Fieldbrook and Elkwood.

**Motion:**

Defendants argue that the Plaintiff's claims in the FAC are completely deficient and therefore are subject to dismissal.  In summary, Defendants contend the First and Second Claims, to quiet title and set aside the Rexford foreclosure sale, suffer from the most deficiencies.  First, Defendants argue that Elkwood was the holder of the Rexford DOT and not Fieldbrook.   Fieldbrook was the holder of the Chalette DOT because Elkwood assigned the Chalette DOT to Fieldbrook.  Furthermore, the entire PWB Note was not assigned to Fieldbrook.  Therefore, once $5.8 million was bid at the Chalette sale, only $782,508.05 was left to be credit bid at the Rexford sale.  Also, the Plaintiff's claims that there were irregularities in the Rexford foreclosure sale are contradicted by the conclusive presumption under California Civil Code Section 2924(c) that applies to bona fide purchasers ("BFPs").  Further, in connection with the claim to set aside the

Rexford foreclosure sale, neither Elkwood nor Fieldbrook had a duty to record the Tri-Center reconveyance to put potential bidders on notice that the debt had been satisfied. Finally, the intentional and constructive fraudulent transfer claims are not actionable as (1) Plaintiff has failed to identify the basis of the alleged "secret agreement" between Massoud and Nourafshan; (2)  Citivest – and not the Debtors - was the transferor of the properties and so the sales are not subject to a Section 544(b) avoidance; and (3) allegations of a lack of reasonably equivalent value paid at the sales cannot stand since the price paid at the sales defines the value of the properties.

### A.  First and Second Claims for Relief Fail as a Matter of Law

Defendants argue that Plaintiff's claims to quiet title and to set aside the Rexford foreclosure sale must fail as a matter of law.  Defendants lay out a multitude of reasons as to why these claims must fail.

The FAC is wrong when it states that Elkwood assigned the Rexford DOT to Fieldbrook.  As shown in the FAC exhibit B, only the Chalette DOT was assigned and thus Elkwood was the actual holder of the Rexford DOT at the time of the Rexford foreclosure sale. So this sale was neither void nor voidable. [*Court: it is correct that ex. B does not assign the Rexford DOT, though ¶43 says that it was assigned.*]

In connection with the second claim for relief, to set aside the foreclosure sale of Rexford, Defendants argue that the FAC fails to allege any concrete facts to show that Elkwood and Fieldbrook had a duty to disclose to the public that the Tri-Center Loan for $2,000,000 had been satisfied and that their delay in recording the Tri-Center Reconveyance cannot support a necessary element to set aside the sale.  Nor did they have a duty to reveal that due to the Chalette sale only $782,508.05 was still owed on the PWB Note.  These were not irregularities in the sale warranting voiding of the sale. Defendants assert the Chalette sale was a public sale and that anyone could have attended the sale to determine the amount of the credit bid and, thus, the remaining balance that could be used for a credit bid on Rexford.  Plaintiff has not been able to set

forth any facts that Elkwood and/or Fieldbrook misled potential bidders concerning the Rexford property.

Defendants also assert that Plaintiff has failed to join indispensable parties to the action. The indispensable parties include Chase and the other lienholders on Rexford. Under FRCP 12(b)(7), Defendants may assert the defense of failure to join a party under Rule 19 by way of a motion to dismiss. Defendants argue that Plaintiff could have alleged reasons for not joining the other interest holders in the Rexford Home as defendants to the first and second claims, but it did not do so. Motion, p. 25. Thus, Plaintiff's failure to join all known lienholders as of the February 23, 2015 Rexford sale is a crucial deficiency of the FAC. The Court should dismiss the FAC with leave to amend to add those defendants.

As to the value of the houses, under California Civil Code Section 2924(c), there is a conclusive presumption as to BFPs that a trustee's sale has been properly conducted.

Here, there are no facts alleged that Elkwood was not a BFP. Plaintiff has the burden of pleading that the purchaser was not a BFP in order to avoid the conclusive presumption of Section 2924(c). Defendants argue that, in fact, the FAC demonstrates Elkwood was a BFP. Defendants rely on the case of *Melendrez v. D&I Investment, Inc.,* 127 Cal. App. 4th 1238, 1253 (2005) which provides that the buyer (1) purchased the property for value and (2) had no knowledge or notice of the asserted rights of another.

Indeed, the FAC alleges that $5.8 million was credit bid for Chalette and that $782,508.05 was credit bid for Rexford. Defendants argue that this satisfies the "value" factor for purposes of a BFP. Second, there is no allegation that Elkwood or Fieldbrook had any knowledge of the supposed irregularities of the sale. Therefore, there is a conclusive presumption that the Rexford sale was properly conducted and cannot be avoided, absent actual fraud.

Defendants further argue that Plaintiff's allegations are deficient as Plaintiff has failed to allege facts that establish collusion and a secret agreement between Massoud

and Nourafshan which would allow for avoidance of the sale.  And even if Plaintiff could

get past this and other deficiencies in its FAC, Defendants argue that in order to set

aside the sale Plaintiff is required to tender the $782,508.05 that was credit bid.  *Lona v.*

*Citibank, N.A.,* 202 Cal. App. 4th 89, 112 (2011).  The tender of this amount is a

condition precedent to Plaintiff's action and since Plaintiff has not tendered this amount,

the claim must fail as a matter of law.


### B.  The Intentional Fraudulent Transfer Claims Fail to State Claims

In support of its fraudulent transfer theory, Plaintiff alleges that Massoud worked

with the Nourafshan brothers to purchase the PWB Note, specifically the portion of the

Note relating to Rexford.  In its FAC, Plaintiff alleges that there was a secret agreement

between Massoud and Jack Nourafshan.  Defendants contend that Plaintiff's allegations

impose an obvious inference of fraud among the Nourafshan brothers and Massoud,

however the facts set forth in the FAC do not support any such fraudulent conduct and

do not identify the basis of the "secret agreement."

Also, Defendants argue that the intentional fraudulent transfer claims fail under

11 USC § 548 or under Civil Code Section 3439.01, as made applicable by 11 USC §

544(b).  A transfer by a transferor with fraudulent intent can be avoided as a fraudulent

transfer.  However, here, Citivest was the foreclosing trustee and not the Debtors.  Only

the creditors of the transferor may bring the claim under California law, as made

applicable by Section 544(b).  Since Citivest was the transferor and not the Debtors,

Plaintiff cannot stand in the shoes of Citivest's creditors.  Therefore, Plaintiff cannot

justify his fourth and ninth claims under Section 544(b).  These claims must fail.


### C.  The Constructive Fraudulent Transfer Claims Fail to State Claims

Here, the price paid for the properties was adequate.  Moreover, for the same

reasons as stated above, since Plaintiff is acting as the creditor in this action, Plaintiff

may not seek to avoid a transfer by Citivest.  Therefore, the sixth and eleventh claims

fail to state claims under a constructive fraudulent transfer theory.

Finally, recovery of the homes under 11 USC § 550 is dependent on the intentional and constructive fraud claims.  As discussed above, these claims are deficient.  Therefore, the seventh and twelfth claims for recovery must fail as well.


**Opposition:**

Plaintiff opposes the Motion and asserts that each of Defendants' arguments fail.  Plaintiff continues to contend that the sales were full of unjust irregularities, including and most importantly that Elkwood did not have the standing to bid on the property since it assigned the PWB Note and Rexford DOT to Fieldbrook prior to the Rexford foreclosure sale.


**The first claim for relief, to quiet title of Rexford:**  Defendants argue that the Fieldbrook Assignment refers only to Chalette.  However, Elkwood expressly assigned the PWB Note to Fieldbrook and this Note was secured by the Rexford and Chalette DOTs.  Since this Note is secured by both DOTs, Elkwood's assignment of the PWB Note to Fieldbrook, by operation of law, assigned the Rexford DOT, as well.  Plaintiff further asserts that "even if the Fieldbrook Assignment did not affect an assignment of the Rexford DOT, the Rexford DOT would have been unenforceable in the hands of Elkwood because Elkwood no longer held the PWB Note."  *Veal v. American Home Mortgage Servicing, Inc. (In re Veal),* 450 B.R. 897, 915 (9th Cir. BAP 2011) ("…under the common law generally, the transfer of a mortgage without the transfer of the obligation it secures renders the mortgage ineffective and unenforceable in the hands of the transferee.)  [Opposition, p. 4]

As to Defendants' other arguments:  First, a presumption of validity of the sale is not established here, because there cannot be a BFP since Rexford was purchased by Elkwood at its own foreclosure sale.  Second, Plaintiff need not join any additional parties since Plaintiff is not seeking to challenge the claims of the senior or junior

lienholders.

**The second claim for relief, to set aside Rexford sale:**  Despite Defendants' assertions to the contrary, Plaintiff continues to argue that the Rexford foreclosure sale is voidable due to the many procedural irregularities of the sale, which were described above under the FAC's claims for relief.  These procedural irregularities, coupled with the inequities of demanding a tender from the Trustee, demonstrate further justification to deny Defendants' dismissal request.

**The actual fraudulent transfer claims:**  Plaintiff looks at outside circumstances to demonstrate fraud in this case.  There are several badges of fraud from which fraudulent intent may be inferred, specifically that the properties were transferred to Elkwood, an insider; Massoud has been living in the Rexford property, rent-free, for over two years; the amount bid for the homes was not reasonably equivalent value; and Massoud's communications with PWB to purchase the loan.  These allegations are all sufficient to deny Defendants' dismissal request.

**The Citivest argument is specious:**  Plaintiff argues that just because Citivest was the trustee for the sales, this does not take away the fact that the sales were transfers of the Debtors' interest in the properties.  Citivest acted as agent for the owners of the property and upon the sale of the properties, Debtors' interests were then transferred.

**The constructive fraudulent transfer claims:**  Based on the numerous irregularities set forth in the FAC, there is no way the Court can conclude that the prices obtained for the properties constituted reasonably equivalent value.

**Reply:**

On July 18, 2017, Defendants filed a Reply in response to Plaintiff's Opposition. The Court will touch upon Defendants' arguments that respond to the Opposition but not the arguments that are merely a reiteration of the Motion.

**Presumption of validity of the foreclosure sale precludes first claim:**

Defendants argue that Plaintiff's Opposition attempts to "sidestep" the presumption under Civil Code § 2924(c). Defendants refute Plaintiff's Opposition to this issue by breaking it down into three key points:

(1) The presumption is not irrelevant because the Rexford Sale and the Rexford Foreclosure Sale Deed are not void. Defendants assert that Plaintiff now concedes that the Fieldbrook Assignment does not refer to assigning the Rexford DOT. The Memo from Thelma Guerrero, attached to the FAC, clearly states that the Chalette DOT (and not the Rexford DOT) is assigned to Fieldbrook, along with a dollar portion of the note that is secured by the Chalette DOT. Therefore, it is evident that the PWB Note was not fully assigned and so the unassigned Rexford DOT does not necessarily follow as a matter of law, as Plaintiff states.

(2) The presumption does not specifically exclude foreclosing beneficiaries from being BFPs. Defendants cite to several cases in support of their assertion, including *Hohn v. Riverside Cty. Flood Control & Water Conservation Dist.,* 228 Cal.App.2d 605, 607-608 (1964); *Kalnoki v. First Am. Tr. Servicing Sols., LLC,* 8 Cal. App. 5th 23, 45 (2017); and *Royal Thrift & Loan Co. v. Cty. Escrow, Inc.,* 123 Cal. App. 4th 24, 33 (2004).

(3) Plaintiff's argument that the presumption is only conclusive evidence is an inconsistent argument. Per Defendants, conclusive evidence may not be rebutted because it is conclusive.

1

2     **Presumption of validity of the foreclosure sale precludes the second claim:**

3   In their Reply, Defendants continue to refute Plaintiff's argument that there were

4   multiple irregularities in the Rexford Foreclosure Sale.  Moreover, Defendants add that

5   the presumption of regularity precludes the stating of this second claim.  Below, the

6   Court notes the expanded arguments in Defendants' Reply in connection with the

    presumption:

7     (1) Elkwood was not under a duty to disclose any knowledge concerning the Rexford

8         Property, including the fact that the Tri-Center Loan had been satisfied.

9         Moreover, Plaintiff has failed to demonstrate any confidential relationship

10        between Elkwood and Fieldbrook, on the one hand, and any potential bidders,

11        on the other hand, which would have given rise to a duty of disclosure.

12    (2) Defendants had no duty to record a document between the February 20, 2015

13        Chalette Foreclosure Sale and the February 23, 2015 Rexford Foreclosure Sale

14        that stated that only $782,508.05 remained owing on the PWB Note.  Plaintiff

15        does not allege that (1) Defendants made a representation which was likely to

16        mislead due to the nondisclosure; (2) there was a confidential relationship

17        between Defendants and unknown potential bidders; or (3) there was a

18        transaction or communication between Defendants and potential bidders in

19        which Defendants could have disclosed known facts.

20    (3) Plaintiff fails to allege "gross inadequacy of purchase price" along with the

21        alleged irregularities of the sale.  Therefore, Plaintiff does not have an actionable

22        claim.  Further, Defendants argue that "gross inadequacy" of the sale price

23        under California law equates to a price that is not of reasonably equivalent value.

24        Case law requires Elkwood to part with something of value.  Elkwood credit bid

25        the balance of $782,508.05 owed on the PWB Note.  Therefore, Defendants

26        assert it parted with something of value in exchange for the Rexford Property.

27

28    **Plaintiff's failure to tender precludes the first and second claims:**  In

response to Plaintiff, Defendants contend that at most the Rexford deed is voidable and not void. Therefore, the tender requirement applies.  Also, Defendants refute Plaintiff's "inequitable" argument in that Plaintiff's Opposition fails to state any facts that demonstrate Plaintiff should be excused from tendering payment because it would be inequitable to Plaintiff.  The fact that Plaintiff is the Trustee in the instant bankruptcy cases and the fact that the Plaintiff may or may not have the funds to satisfy the tender is irrelevant and does not satisfy the inequitable exception under the tender rule.

**Plaintiff fails to properly respond to Defendants' argument about joining necessary parties to the first and second claims:**  Defendants claim Plaintiff has ignored Rule 19 and has failed to state why the other lienholders have not been named as defendants under these claims.  Without joining the additional lienholders, complete relief cannot be provided by the Court.  Further, Defendant, in reliance on several cases including *Mortgage Elec. Registration Sys. v. Robinson,* 45 F. Supp. 3d 1207 (C.D. Cal. 2014) and *Hugoton Energy Corp. v. Plains Res., Inc.,* 141 F.R.D. 320 (D. Kan. 1991), asserts that parties with an interest in real property must be joined.

Finally, throughout its Reply, Defendants argue that Plaintiff fails to respond to many of the arguments in the Motion, including the following: (1) the intentional fraudulent transfer claims (3rd, 4th, 8th, and 9th claims) fail to state facts supporting Plaintiff's belief that there was a secret agreement and (2)  the claims under Civil Code § 3439.01 and Section 544(b) (4th, 6th, 9th, and 11th claims) fail because Rexford and Chalette were transferred by Citivest (who was acting on behalf of Elkwood and not the Debtors).

Defendants request the Court dismiss the FAC without leave to amend since Plaintiff has failed to demonstrate how he would cure the deficiencies as noted in the Motion.

At the hearing on August 23, 2017, additional arguments were made by both parties.  These are reflected in this analysis section of this memorandum of opinion.

1

2    **Analysis:**

3        **Legal Standard**

4        A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the

5    allegations set forth in the complaint.  A Rule 12(b)(6) dismissal may be based on either

6    a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a

7    cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121

8    (9th Cir. 2008), *quoting Balisteri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.

9    1990).

10        In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the

11   complaint in the light most favorable to the plaintiff and accept all well-pleaded factual

12   allegations as true.  *Johnson*, 534 F.3d at 1122;  *Knox v. Davis*, 260 F.3d 1009, 1012

13   (9th Cir. 2001).  On the other hand, the court is not bound by conclusory statements,

14   statements of law, and unwarranted inferences cast as factual allegations.  *Bell Atl.*

15   *Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007);  *Clegg v. Cult Awareness Network,* 18

16   F.3d 752, 754-55 (9th Cir. 1994).  "In practice, a complaint… must contain either direct

17   or inferential allegations respecting all the material elements necessary to sustain

18   recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, *quoting, Car*

19   *Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984).

20        Further, in *McKinney v. Citi Residential Lending Inc., et al,* the district court in the

21   Southern District of California explained the legal standard under Rule 9(b):

22       Rule 9(b) sets forth a heightened pleading standard for allegations of fraud,
         requiring parties to "state with particularity the circumstances constituting fraud
23       or mistake." In general, fraud allegations must be "specific enough to give
         defendants notice of the particular misconduct ... so that they can defend
24       against the charge and not just deny that they have done anything wrong." *Vess*
         *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-*
25       *Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Specifically,
         plaintiffs are required to supplement allegations of fraud with the "who, what,
26       when, where, and how" of the purported misconduct, in addition to why the
27       statement or conduct is false or misleading. *Id.* Failure to satisfy this heightened

28

pleading standard can result in dismissal of the claim. *Id.* at 1107.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Therefore, where leave to amend would be futile, the court may dismiss the claims without leave to amend.

*McKinney v. Citi Residential Lending Inc.,* 2015 WL 11822150, *3; 2015 U.S. Dist. LEXIS 181922, *9 (S.D. Cal. 2015).

The Motion questions the adequacy of all of the twelve claims for relief as set forth in the FAC. As such, the Court will look at each claim for relief in the FAC to determine whether or not it constitutes a well-pleaded claim containing sufficient grounds for Plaintiff's requested relief.

### First Claim:  To Quiet Title

A quiet title action may be brought "to establish title against adverse claims to real or personal property or any interest therein." Cal. Civ. Proc. Code § 760.020. In order to state a claim for quiet title, the complaint must allege "(1) the subject property's description, including both its legal description and its street address or common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title against the adverse claims." *Fenton v. Wells Fargo Home Mortgage,* 2017 WL 1346672, *4 (S.D. Cal. April 12, 2017). The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy." *Mortgage Electronic Registration Systems, Inc. et al. v. Johnston,* 2016 WL 7339873, *4 (C.D. Cal. December 14, 2016); *citing Newman v. Cornelius,* 3 Cal. App. 3d 279, 284 (Ct. App. 1970). In addition, a plaintiff must allege in the complaint

1  that he or she is the rightful owner of the property, "i.e. that they have satisfied their

2  obligations under the Deed of Trust." *Fenton at \*4;  citing Kelley v. Mortg. Elec.*

3  *Registration Sys., Inc.,* 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).  Therefore, "a

4  borrower may not assert quiet title against a mortgagee without first paying the

5  outstanding debt on the property."  *Id.*; *citing Rosenfeld v. JPMorgan Chase Bank, N.A.,*

6  732 F. Supp. 2d 952, 975 (N.D. Cal. 2010).

7      The crux of this claim deals with whether Elkwood, at the time of the Rexford

8  foreclosure sale, was the legal owner of the PWB loan and the Rexford DOT and was,

9  in fact, entitled to credit bid on the property at the sale.  Pursuant to the FAC, "at the

10  time it purported to credit bid $782,508.05 for the purchase and transfer of the Rexford

11  Home on February 23, 2015, Elkwood had already assigned all of its right, title and

12  interest in and to the PWB Loan and, *inter alia,* the Rexford DOT to Fieldbrook.  Thus,

13  at the time of the Rexford Foreclosure Sale, Elkwood was not entitled to credit bid at the

14  sale."  FAC, par. 65, p. 12.

15      That statement appears to rely on paragraph 43, which states that "[o]n or about

16  February 18, 2015, Elkwood executed a certain assignment of the PWB Loan, and the

17  Chalette DOT and Rexford DOT in favor of Fieldbrook (the "Fieldbrook Assignment").  A

18  true and correct copy of the Fieldbrook Assignment is annexed hereto as Exhibit B.

19      The assertion that Exhibit B assigned the Rexford DOT to Fieldbrook is clearly

20  erroneous in that Exhibit B shows that only the Chalette trust deed was transferred to

21  Fieldbrook via that document. It is, of course, possible that the Rexford DOT was also

22  transferred to Fieldbrook by a separate act or in some other manner.  It is also possible

23  that the entire Note was assigned to Fieldbrook, thus leaving nothing on which Elkwood

24  could foreclose: "As a mortgage is but an incident to the debt which it is intended to

25  secure, the logical conclusion is, that a transfer of the mortgage without the debt is a

26  nullity, and no interest is acquired by it. The security cannot be separated from the debt

27  and exist independently of it."  4-37 Powell on Real Property § 37.27 (2017).

28      Thus, the First Claim for Relief must be amended.

As to the other requirements for a complaint to quiet title, the Court finds that the FAC satisfies many of the elements of a quiet title action:

(1) Rexford's legal description and street address are noted in the FAC [FAC, p. 3]; (2) if Elkwood was not entitled to credit bid at the Rexford Foreclosure Sale because it did not properly hold any rights to the Note and/or DOT, the FAC alleges that the Plaintiff has standing to assert title over the Rexford Property; (3) as to the adverse claims against Elkwood, this will have to be amended as described above; (4) the FAC alleges a date of February 25, 2015 by which it seeks to quiet title; and (5) the FAC alleges the Trustee is entitled to a judicial declaration quieting title of Rexford.

The Court does note that while the FAC satisfies these quiet title elements, the FAC fails to include any facts that demonstrate Trustee has satisfied the obligation under the deed of trust, i.e. paying the outstanding debt on Rexford.

Tender or a viable offer of tender has become one of the requirements to set aside a voidable non-judicial sale under the power of sale in a deed of trust (herein referred to as a "foreclosure" or "foreclosure sale").   Although it has been cited as the equivalent to a statutory imperative, it is merely a judge-made rule and has been applied with a certain amount of flexibility on a case-by-case basis.

Arising from the theory that an action to restore title after a foreclosure sale is brought in equity, courts have held that the trustor seeking that result must do equity prior to the court exercising its equitable power.

*Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112–15, 134 Cal. Rptr. 3d 622, 640–43 (2011) includes a concise statement of the basis of the rule of tender in post-foreclosure circumstances:

> Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers.(*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972) 27 Cal.App.3d 170, 177, 103 Cal.Rptr. 522 (*MCA* ).) Consequently, as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or

procedure, the borrower must offer to pay the full amount of the debt for which the property was security. (*Abdallah, supra,* 43 Cal.App.4th at p. 1109, 51 Cal.Rptr.2d 286; *Onofrio, supra,* at p. 424, 64 Cal.Rptr.2d 74 [the borrower must pay, or offer to pay, the secured debt, or at least all of the delinquencies and costs due for redemption, before commencing the action].) "The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI RE–HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022, 255 Cal.Rptr. 157.)

*Lona v. Citibank* then proceeds to list the four exceptions disclosed in case law to the tender requirement:

1.    The attack is to the validity of the underlying debt since tender would be an affirmation of the debt;

2.    The Plaintiff has a claim or a set-off against the beneficiary and the claim or setoff is equal to or greater than the amount due to the beneficiary;

3.    It would be inequitable to require tender by the party challenging the sale, though this seems to be quite limited (*Lona* cites to *Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 291);

4.    The trustee's deed is void on its face.

It is widely accepted that no offer of tender or tender is required where it is asserted that the foreclosure is void rather than voidable.  The first claim for relief falls under this category.

In the first claim for relief (Quiet Title), the Plaintiff alleges that the foreclosing beneficiary was a stranger to the debt and thus the foreclosure sale of Rexford and the deed given as a result of that sale are both void.  The allegations are that Elkwood had assigned the Rexford DOT to Fieldbrook, but it was Elkwood that foreclosed on Rexford.  *In re Cedano,* 470 B.R. 522, 530 (B.A.P. 9th Cir. 2012) (one of the many cases dealing with MERS) held that "to the extent the Debtor alleged that the foreclosure was substantially defective because unauthorized persons initiated the

procedure, rendering the sale void, he has met one of the exceptions to the requirement of tender."

If the Plaintiff successfully amends the FAC to support his contention that Fieldbrook was the owner of the Rexford DOT or the entire Note at the time of the foreclosure sale, then no offer to tender is required and the motion to dismiss the first claim for relief as to tender would be denied.

Furthermore, Defendants argue that they may seek dismissal of the first and second claims of the FAC based upon Plaintiff's failure to join necessary parties, specifically the other lienholders on Rexford.

At the hearing on August 28, 2017, Defendants' counsel argued that based on the tentative ruling, the Court seems to be looking at this issue from the Plaintiff's point of view and not from the Defendants' point of view, as required by Rule 19. Further, Defendants argue the request to dismiss the first two claims of the FAC on the failure to join necessary parties is based on the grounds that without the joinder (1) the Court cannot accord complete relief and (2) existing lienholders would not be bound by any judgment in the instant litigation which could subject a party to a risk of additional litigation.

Rule 19, Required Joinder of Parties:
a)  Persons Required to Be Joined if Feasible**.**
(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person's absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Defendants also rely on California Code of Civil Procedure § 762.010, Naming of

Adverse Claimants, which provides: "The plaintiff shall name as defendants in the action the persons having adverse claims to the title of the plaintiff against which a determination is sought."

When evaluating whether a person not a party has an "interest relating to the subject of the action," the "interest" need not be a legal one, but is one to "be determined from a practical perspective, not through the adoption of strict legal definitions or technicalities." *Hartog v. Jots, Inc.,* 2004 WL 2600280, *2 (N.D. Cal. November 12, 2004); citing *Aguilar v. Los Angeles County,* 751 F.2d 1089, 1093 (9th Cir. 1985). "Interest" under Rule 19 should be determined from a practical, and not a technical, perspective. *Id.*

Defendants argue that there are other lienholders on the Rexford property, not just Chase, who can challenge Plaintiff's claims, as well as any judgment for or against Defendants. According to Defendants, these lienholders have an "interest" in the Rexford property; therefore these lienholders are parties that should be joined. Defendants assert that without the joinder of these other lienholders the Court cannot accord complete relief and, further, Defendants may be subjected to multiple claims or litigation.

On the other hand, Plaintiff argues the joinder of any other parties is completely unnecessary. The Trustee asserts that he is not seeking to challenge the interests that might be senior or junior to the asserted interests of the Defendants. The FAC is solely challenging the ownership interests of Elkwood and for that reason no other lienholders need be named.

In its tentative ruling, the Court found Plaintiff's argument persuasive and determined that joinder of the other Rexford lienholders was not required. As to Cal. Civ. Proc. §762.010, none of the lienholders have adverse claims to the title of the Plaintiff – in fact the junior lienholders would be thrilled if the Plaintiff prevails for that would reinstate their liens, which were wiped out by the foreclosure sale.

As to Rule 19, the only provision that might apply is Rule 19(a)(1)(B)(ii), which –

according to the Defendants – leaves them subject to the substantial risk of multiple lawsuits challenging Elkwood's title to Rexford on the same legal theories presented in this adversary proceeding.

Therefore, upon further analysis, the Court concludes that joinder of junior lienholders, under these circumstances, is required.  While the Ninth Circuit Bowen case states that an absent party must "claim a legally protected interest relating to the subject matter," that case is distinguishable from the instant case.  These junior lienholders have already claimed an interest in Rexford by recording liens against the property.  Whether or not they know about the instant adversary proceeding and whether or not they decide to participate in the adversary proceeding voluntarily is not necessarily the defining factor when determining whether these lienholders have an interest in the subject matter of this action. These lienholders have recorded their liens, therefore they are known to the Plaintiff and should be named in this action.

Furthermore, the Settlement Agreement between the Trustee and the Abselets (who assert junior liens) specifically provides that the Abselets will "retain their independent rights to set aside the foreclosures" of Rexford and Chalette.  *See,* Motion for Order Approving Chapter 11 Trustee's Settlement with Howard Abselet and Israel Abselet, p. 11; Also, see Exhibit A to the Motion, Section VI.  [dkt. 493]  Thus, beyond the general holding that all junior liens must be joined, it is clear that joinder of the Abselets is clearly a necessity in order to avoid potential duplicative litigation.

**RULING OF FIRST CLAIM FOR RELIEF**:  Grant with leave to amend as noted above.

### Second Claim:  Set Aside Foreclosure Sale of Rexford

After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale.  *Lona v. Citibank, N.A.,* 202 Cal.App.4th 89, 103 (2011);  (citing *Anderson v. Heart Federal Sav. & Loan Assn*. 208 Cal.App.3d 202, 209-210 (1989).  Under California law, "[i]t is the

general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." *Id.; Humphreys v. Ocwen Loan Servicing, LLC,* 2009 WL 10672594 (C.D. Cal. February 23, 2009); *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal.App.4th 1279, 1287 (2001) (citing *Bank of America etc. Assn. v. Reidy*, 15 Cal.2d 243, 248 (1940)).

Case law instructs that the elements of an equitable cause of action to set aside a foreclosure sale are as follows:  (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2)  the party attacking the sale was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.  *Lona,* 202 Cal.App.4th at 104.

The *Lona* court went on to explain that the "justifications for setting aside a trustee's sale from the reported cases, which satisfy the first element, include the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale."  *Id.*  Further, the *Lona* court suggests that the grounds for setting aside a trustee's sale are not limited to just one or two situations and may include other grounds such as proof that the trustee did not have the power to foreclose; the trustor was not in default, no breach had occurred, or the lender had waived the breach; the deed of trust was void; trustor sought rescission on grounds of fraud; and sham bidding.  *Lona,* 202 Cal. App. 4th at 104-106.

1. The trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale under the power of sale

Here, Plaintiff specifically alleges several grounds to prove up his claim so as to set aside the Rexford Sale to satisfy the first element, including that (1) Elkwood

intentionally gave the impression that any bidder would need to bid at least $10 million on Rexford to have a real shot at purchasing the property; (2) delayed recording of the assignment of the Rexford DOT and PWB Note; (3) the Rexford Foreclosure Notice incorrectly stated the sale was at the US Post Office located on Grand Avenue in Los Angeles instead of at the Kenneth Hahn County Administrative Building which actually has that Grand Avenue address; and (4) Citivest, at the time of the sale, was not authorized to act on Elkwood's behalf because Elkwood was no longer the beneficiary of the PWB Loan or the Rexford DOT.  Beyond that, Plaintiff incorporates all prior allegations in the FAC. These include the scenario that there was a "secret agreement" between the Yashouafars and Nourafshan [as owner of Elkwood and Fieldbrook] as to the division of the note and the amount of the credit bid on Rexford.  This is asserted to be for the purpose of depriving the creditors of Massoud and of Solyman of the equity in Rexford and Chalette [¶ 39].

### A. Civil Code Section 2924(c)

In this motion, Defendants focus on whether the sale was improperly, unfairly, or unlawfully conducted, arguing that there is a broad, conclusive presumption of the validity of the Trustee's sale under Civil Code Section 2924(c), which legally precludes both the first and the second claims for relief.

Section 2924(c) provides:

"A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

In their Motion and at the hearing, Defendants argue that none of the alleged

irregularities of the sale are irregularities in connection with the procedural requirements

of a trustee's sale under the Cal. Civ. Code § 2924(c).  While this may or may not be

true, the FAC's second claim for relief does not assert the foreclosure sale should be

set aside due to the lack of procedural compliance with § 2924(c).  Rather the FAC's

second claim for relief provides details as to why the foreclosure should be vacated

including discrepancies in the assignment of the PWB Note; allegations that Elkwood

misled prospective bidders regarding the total amount owed on Rexford; allegations that

Elkwood obtained Rexford in exchange for a credit bid that it was not entitled to make;

and that Citivest was not authorized to act on behalf of Elkwood because Elkwood was

not the proper beneficiary.  But these must be taken in the context of everything that is

included in the second claim for relief, which incorporates all prior allegations in the

FAC.

    Looking only at the specific issues regarding the technical aspects of the sale

and of the transfers and notices surrounding the sale, the FAC may or may not meet the

requirements of § 2924(c), depending on the necessary amendment as to the transfer

of the Rexford Note and DOT.  The issues argued by the parties are as follows:

1. Assignment of the PWB Note:  Defendants contend that only the Chalette
   DOT was assigned to Fieldbrook and that the Rexford DOT and the
   remaining portion of the PWB Note stayed with Elkwood.  As set forth
   above, the Court requires that the Plaintiff amend its complaint to allege
   facts upon which the Court could find that Elkwood no longer had the legal
   right to foreclose on Rexford.

2. Elkwood's failure to timely record the Fieldbrook Assignment and Tri-
   Center Reconveyance:  Defendants contend the second claim assumes
   that a foreclosing trust deed holder has a duty to educate the public about
   facts known to the trust deed holder bearing upon a foreclosure.
   Defendants describe this duty as a duty to disclose and argue that there is

no such duty under California law.  Upon a reading of the FAC's second claim for relief, the Court disagrees with Defendants.  Plaintiff does not state or suggest that Defendants had a duty to disclose.  Rather, Plaintiff pleads that Elkwood failed to timely record the Fieldbrook Assignment and failed to timely record the Tri-Center Reconveyance.  These delays could have led to a false impression concerning the status of the properties and this, combined with sufficient other allegations of fact to prevent a sale at or near FMV, could meet the requirements of Civ.Code §2924(c) if it is combined with sufficient other defects in the sale procedures.

3. Notice of sale:  Notice states United States Post Office when in fact the Notice should have read "Kenneth Hahn County Administration Building." At this point in the litigation, the Court agrees with Defendants that this appears to be a minor irregularity since the address on the Notice was correct.  While this alone may not be sufficient to vacate the sale, the Court will allow Plaintiff to retain this in its pleading of the second claim as this plus the other allegations collectively are important to the Plaintiff's second claim.

4. Elkwood's credit bid on Rexford:  Defendants contend Elkwood's credit bid on Rexford was valid.  On the other hand, Plaintiff contends that potential bidders were misled based on the failure to record the reconveyance and thus, essentially, Elkwood had minimal or no competition on its bidding for Rexford.  Once again, this might combine with other defects to meet the requirements of Civ.Code §2924(c).

However, to the extent that the Plaintiff wishes to focus on the illegality of the sale, unless he pleads additional errors in the sale procedures or sufficient facts or law that would support the theory that Elkwood had no legal right to credit bid, the above "defects," even when taken together, do not meet the requirements of §2924(c) to

prevent the presumption from arising.

If the Plaintiff cannot amend to show that the presumption does not arise under the first part of §2924(c), he can still sidestep its conclusive nature on the grounds that Elkwood does not qualify as a bona fide purchaser for value and without notice.

"[T]he two elements of being a BFP are that the buyer (1) purchase the property in good faith for value, and (2) have no knowledge or notice of the asserted rights of another. (14 Powell on Real Property (1996) Recording Acts and Priorities, § 82.01[2], p. 82–12.)" *Melendrez*, 127 Cal. App. 4th at 1251; *see also Deutsche Bank Nat'l Tr. Co. v. Pyle,* 13 Cal. App. 5th 513, 521 (Cal. Ct. App. 2017); Nguyen v. Calhoun, 105 Cal. App. 4th 428, 442 (Cal. Ct. App. 2003).

The Court has not found any cases that hold that the foreclosing creditor cannot be a BFP merely because it is also the purchaser at the foreclosure sale and that this is done through a credit bid of all or a part of the loan balance. Although no analysis was done, the case of *Royal Thrift & Loan Co. v. Cty. Escrow, Inc*., 123 Cal. App. 4th 24 (2004) holds that the foreclosing creditor, who also purchased at the foreclosure sale, was a BFP. Thus, it appears that a credit bid qualifies as "value."

> [t]he first element does not require that the buyer's consideration be the fair market value of the property (or anything approaching it). (*Id.,* § 82.02[2], pp. 82–77 to 82–79.) Instead, the buyer need only part with something of value in exchange for the property.

*Melendrez*, 127 Cal. App. 4th at 1251.

In the present case, the credit bid constitutes "value," although the amount bid was allegedly well below the actual worth of Rexford.

However, the first element for obtaining BFP status also requires good faith (in addition to value). While not determining it at this time, the facts pleaded in the FAC, taken together, raise the question of "good faith" and also go to the issue of whether the sale was fraudulent or willfully oppressive. They show an intent to transfer the property to a third party (Elkwood) while allowing Massoud to remain there, to remove Rexford from potential execution by the lienholders (some of whom were in litigation with

Massoud), and to provide the Nourfashans with a windfall from both Chalette and from Rexford (which their entity now owns for only about 5% to 7% of its fair market value at the time of the foreclosure).  [The Court is not aware of the amount that Nourfashan paid PWB for its $6+ million note, but it is likely that Elkwood obtained it at a substantial discount, in which case the profit would be even higher.]

The term "good faith" is generally not defined in the cases.  However, its plain meaning is "honesty or sincerity of intention." [1]  "Willfully" shows the intention of causing harm and deliberate action to do what one wants regardless of the consequences.[2]  In the non-dischargeabilty context, 11 USC §523(a)(6) requires a finding of a "willful injury," which is defined by case law: willful requires a "deliberate act with knowledge that the act is substantially certain to cause injury."  *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).   While "oppressive" infers unjustly inflicting hardship and constraint.[3]

Assuming proof, the elements pleaded in the FAC can support a finding that Elkwood does not meet the requirements of the first element to be considered a bona fide purchaser for value.

The second element of "bona fide purchaser" requires a lack of knowledge or notice that others have a claim to the invalidity of the sale.

The second element required to establish BFP status is that the buyer have neither knowledge nor notice of the competing claim. (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 530, 81 Cal.Rptr.2d 669 (*Triple A Management* ).) The rationale for this requirement is that "[t]he recording laws were not enacted to protect those whose ignorance of the title is deliberate and intentional ... Their purpose is to protect those who honestly believe they are acquiring a good title, and who invest some substantial sum in reliance on that belief." (*Beach v. Faust* (1935) 2 Cal.2d 290, 292–293, 40 P.2d 822.) "A person generally has 'notice' of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact. [Citations.]" (*First Fidelity, supra*, 60 Cal.App.4th at p. 1443, 71 Cal.Rptr.2d 295.)

---

[1] https://premium.oxforddictionaries.com/definition/american_english/good-faith.
[2] https://premium.oxforddictionaries.com/definition/american_english/willfully.
[3] https://premium.oxforddictionaries.com/definition/american_english/oppressive.

1    *Melendrez*, 127 Cal. App. 4th at 1252.

3    If the amended complaint can plead sufficient irregularities, it is likely that

4    Elkwood had notice of them.  But we need not go there at this time since the FAC

5    includes sufficient facts to show that, if proven, the Plaintiff could prevail because

6    Elkwood does not meet the requirement of "good faith" and therefore cannot qualify as a

7    bona fide purchaser for value.

9                B. <u>Civil Code section 2924 is not dispositive</u>

11    In his FAC, the Plaintiff does not appear to dispute that the trustee's deed

12    contained the requisite recitals.  The Court notes that the presumption of § 2924(c)

13    refers only to the notice requirements of § 2924 and thus may only apply to challenges

14    to the sale based on irregularities in the notice of default and/or the notice of sale.

> Section 2924's conclusive presumption language for BFP's applies only to challenges to statutory compliance with respect to default and sales notices. In reaching this conclusion, we recognize that there is dictum that suggests that the conclusive presumption under section 2924 applies across the board to any claimed irregularities in the trustee's sale. The court in *Moeller* held that the presumption under section 2924 provides that the trustee's "sale has been conducted regularly and properly," and that, as against a BFP, the presumption operates to prevent the trustor from "attacking the validity of the sale." (*Moeller, supra,* 25 Cal.App.4th 822, 831, 30 Cal.Rptr.2d 777.)  Cases following *Moeller* have similarly described the conclusive presumption—applicable under section 2924 where the buyer is a BFP who has received a trustee's deed—as precluding any attack on the trustee's sale. (*See Residential Capital v. Cal–Western Reconveyance Corp*. (2003) 108 Cal.App.4th 807, 817, 134 Cal.Rptr.2d 162 (*Residential Capital* ) [once trustee's deed was delivered, "there was a conclusive presumption of validity under section 2924"]; *6 Angels, Inc. v. Stuart–Wright Mortgage, Inc*. (2001) 85 Cal.App.4th 1279, 1286, 102 Cal.Rptr.2d 711 [same]; *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 699–700, 86 Cal.Rptr.2d 657 [same].) To the extent that Buyer may construe these cases as describing section 2924's presumption as precluding any attack on the foreclosure sale as to a BFP—irrespective of whether the challenge relates to the Trustee's compliance with procedural requirements concerning the default and

sale notices—we decline to follow such interpretation. (*See* 4 Miller & Starr, Cal. Real Estate, *supra*, Deeds of Trust § 10:211, p. 680 [section 2924 "presumption only applies to the propriety of the required notices, but it does not apply to other requirements of the foreclosure process"].)

*Melendrez v. D & I Inv., Inc*., 127 Cal. App. 4th 1238, 1256 (Cal. Ct. App. 2005); *see also Bank of Am., N.A. v. La Jolla Grp. II,* 129 Cal. App. 4th 706, 714 (Cal. Ct. App. 2005*)("*The section 2924 presumptions pertain only to notice requirements, not to every defect or inadequacy short of fraud."); *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1000 (Cal. Ct. App. 2016), (following *Melendrez*). *But see Biancalana v. T.D. Serv. Co.,* 56 Cal. 4th 807, 814, (2013)(stating – without analysis – that the presumption was that the sale was conducted "regularly and properly").


    While there are decisions on both sides of this issue, the Court is inclined to follow *Melendrez* – because of its extensive reasoning and because it follows the actual language of §2924 in describing the presumption – and the limit of the presumption to matters of notice.

    As discussed above, the allegations in the FAC show a basis for setting aside the sale as fraudulent and willfully oppressive.  While the second claim touches on the requirement of §2924(c) when it asserts that there was an error in the address of the sale, the Plaintiff does not specifically contend that Citivest erred in its foreclosure procedures.  But, as noted above, even if Citivest did, the FAC contains sufficient allegations that Elkwood would not be protected from those errors.

    The contentions are that the group of actions and inactions by Elkwood make the foreclosure sale and its purchase of Rexford voidable. (*See Melendrez v. D & I Inv., Inc.* 127 Cal. App. 4th 1238, 1256 (Cal. Ct. App. 2005) ["Borrowers' challenge to the trustee's sale does not involve a claim concerning whether Trustee followed all statutory procedures with respect to the default and sales notices; there is no dispute that Trustee followed the statutory procedures for the default and sales notices.  We

therefore hold that the conclusive presumption for BFPs under section 2924 does not

apply to bar Borrowers' attempt to set aside the trustee's sale."

Here, the defects pleaded attempt to show that the sale was unfairly conducted.

As noted in *Humphreys v. Ocwen Loan* (supra), equity can require the sale to be voided

if there was fraud, the sale was "tainted by fraud," or the sale was unfairly conducted.

At this point the Court holds that to the extent that it does not rely on the legal power of

Elkwood to credit bid, the second claim for relief meets the first element necessary to

set aside the foreclosure sale.

2. The Estate was prejudiced or harmed by the sale

The second element required to set aside the foreclosure sale due to equity is

that harm must occur to the Plaintiff.  In this case, the harm is obvious from the FAC.

Elkwood obtained title to a house worth $12-$15 million dollars for a credit bid of only

5%-7% of that value.  If the sale were to be set aside, the Estate would reap some $10+

million to be distributed under the priorities of the bankruptcy law.

3. The Plaintiff made tender

As for the third element of this claim, the issue of tender arises in the second

claim for relief which asserts a voidable sale rather than a void one.  Thus the Plaintiff

must meet either the requirement to tender or one of the exceptions.  Because this case

is in the bankruptcy court, all parties and the court itself have seen a plethora of cases

in which a debtor/borrower seeks to set aside an allegedly voidable sale, but with no

hope of curing the default that led to the foreclosure or of otherwise gaining the

continued use of the property.  While there are a variety of scenarios, usually the real

property either has no equity beyond the foreclosing lien and/or the debtor does not

have the ability to bring payments up to date.  If the debtor were to prevail, s/he would

only lose the property in a second foreclosure sale.  Thus, it would be an exercise in

futility to go forward with the complaint.

But this case does not fit that mold.  First of all, it is the Chapter 11 Trustee who is seeking to set aside the sale.  He is a fiduciary to the creditors and an officer of the court.  While at the present time he does not have the money to tender a cure, there is no dispute that the property itself has enough equity to pay off the foreclosing lien as well as leave enough to pay junior liens (once the claims are finalized) and possibly even provide money for other creditors of the estate.  The Trustee certainly does not intend to keep the property for his own use or to merely stall eviction.

*Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492, *2 (N.D. Cal. 2010) demonstrates that the issue of tender depends on the circumstances of the case:

> As a threshold matter, Wells Fargo argues that Kariguddaiah has no standing to challenge the foreclosure proceedings because he has not offered to tender what he owes on the loan. A debtor in default cannot challenge a foreclosure unless he first makes a credible offer to pay the amount owed. *Alicea v. GE Money Bank,* No. C 09–0091 SBA, 2009 WL 2136969, at *3 (N.D.Cal. July 16, 2009) (Armstrong, J.); *Montoya v. Countrywide Bank, F.S.B.,* No. C 09–0641 JW, 2009 WL 1813973, at * 11 (N.D.Cal. June 25, 2009) (Ware, J.); *see also Karlsen v. American Sav. & Loan Ass'n,* 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."). *But cf. Storm v. America's Servicing Co.,* No. 09cv1206–IEG (JMA), 2009 WL 3756629, at *6 & n. 9 (S.D.Cal. Nov. 6, 2009) (finding tender is not necessarily required at the pleading stage in a case of mutual mistake). For the offer of tender to be effective, the tender must be unconditional, and the debtor making the offer must be able to perform it. *Karlsen,* 15 Cal.App.3d at 118–20, 92 Cal.Rptr. 851. The requirement may be waived "where it would be inequitable to exact such offer of the party complaining of the sale." *Humboldt Sav. Bank v. McCleverty,* 161 Cal. 285, 291, 119 P. 82 (1911).

[*Humboldt Sav. Bank* is one of the oldest California cases in this area.  It deals with the unfortunate situation where a widow's $5,000 homestead exemption was foreclosed out because of a debt for $57,000 that was owed by her husband.  The issue was whether she should be required to tender $5,000, $57,000, or nothing.  Citing to a Georgia case, the California Supreme Court held that "[w]hatever may be the correct rule [as to tender], viewing the question generally, it is certainly not the law that an offer

to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale." *Benedict v. Gammon Theological Seminary,* 122 Ga. 412, 50 S. E. 162.]

The Plaintiff's offer of tender must be more than a mere hope and speculation. Thus, in *Karlsen*, the court described the alleged tender and the law as follows:

> Our analysis of the pleadings together with Karlsen's admissions and answers to the interrogatories demonstrates that the only 'tender' made, if any, was in the form of Karlsen's Hope that American would release a portion of the property he hoped Humble would buy and that if a sale had been completed and part or all of the sales price had been paid by Humble, it would be delivered to respondents and applied in reduction of his note to American, and that American or some other person would refinance the balance of the obligation. The record shows, however, that American was under no obligation to release a portion of the property, that it had refused to do so, that it had never been suggested it would and that it had not nor had anyone else agreed to refinance the property.
>
> The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. (Civil Code, § 1495.) Simply put, if the offeror '* * * is without the money necessary to make the offer good and knows it * * *' the tender is without legal force or effect. (*Horan v. Harrington*, 130 Cal. 142, 143, 62 P. 400; *Ravano v. Sayre*, 135 Cal.App. 60, 26 P.2d 515; *McCarthy v. Grider*, 72 Cal.App. 393, 402, 405, 237 P. 751, 755.)

*Karlsen*, 15 Cal.App.3d at 118.

So while it is probably completely proper to create a new exception for the bankruptcy trustee, the Court does not need to go that far.  At most the Trustee must plead that when he prevails, there is enough value to the property to pay or cure the foreclosing lienholder and pay or cure senior liens and all necessary costs to remove defaults.  It is understood that he will distribute the proceeds of his eventual sale of the property in compliance with the priorities set forth under the bankruptcy law.

In this case, it is without question that if he prevails, the Trustee will have the ability to sell the Rexford Property in an amount sufficient to pay off the obligation to the

proper holder of the note.  It is also without question that if there was a fraudulent

transfer so that the Nourafshans and Massoud obtained a windfall at the expense of the

creditors of this estate, it would be inequitable to prevent the Trustee from recovering

that windfall just because he does not presently have sufficient funds to pay the

foreclosing lien.

This is sufficient under California and bankruptcy law, but there is one other

thought.  All of the cases refer to "the borrower" as the entity that is seeking to reclaim

the property.  A Chapter 11 Trustee is not "the borrower," though he does stand in the

shoes of the debtor for certain purposes.  He is the representative of the Bankruptcy

Estate and has independent rights and responsibilities. If the Trustee prevails, the

properties do not return to the Yashouafars (borrowers), but become property of the

estate and will be administered (and presumably sold) by the Trustee.  If Elkwood

and/or Fieldbrook are found to own the note, the secured obligation will be paid from the

sale proceeds of the properties.  But the Court need not go further into this distinction

between the borrower/debtor and the bankruptcy trustee at this time since the

circumstances of this case show that a mere offer to pay off the Elkwood/Fieldbrook lien

is sufficient to meet the requirement to tender even if this sale is voidable rather than

void.

The second claim for relief in the FAC is silent as to tender.  That is a missing

element, which must be included.  The motion to dismiss the second claim for relief as

to tender is granted with leave to amend to add such an offer and the details involved in

carrying it out if the Trustee should prevail and set aside the foreclosure sale as to

Rexford.


**RULING ON SECOND CLAIM FOR RELIEF**:  Grant with leave to amend as

noted above.

**Fraudulent Transfer Claims**:

The FAC seeks damages under both bankruptcy law and California law based on

the assertion of both actual fraudulent transfer and constructive fraudulent transfer.

Bankruptcy Code Fraudulent Transfer Claims: The Third, Fifth, Eighth, and Tenth

claims for relief are based on 11 U.S.C. §548(a)(1), which provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the
> benefit of an insider under an employment contract) of an interest of the debtor in
> property, or any obligation (including any obligation to or for the benefit of an
> insider under an employment contract) incurred by the debtor, that was made or
> incurred on or within 2 years before the date of the filing of the petition, if the
> debtor voluntarily or involuntarily—
>> (A) made such transfer or incurred such obligation with actual intent to
>> hinder, delay, or defraud any entity to which the debtor was or became, on
>> or after the date that such transfer was made or such obligation was
>> incurred, indebted; or
>> (B)(i) received less than a reasonably equivalent value in exchange for
>> such transfer or obligation; and
>> (ii) (I) was insolvent on the date that such transfer was made or such
>> obligation was incurred, or became insolvent as a result of such transfer or
>> obligation;
>> (II) was engaged in business or a transaction, or was about to engage in
>> business or a transaction, for which any property remaining with the
>> debtor was an unreasonably small capital;
>> (III) intended to incur, or believed that the debtor would incur, debts that
>> would be beyond the debtor's ability to pay as such debts matured; or
>> (IV) made such transfer to or for the benefit of an insider, or incurred such
>> obligation to or for the benefit of an insider, under an employment contract
>> and not in the ordinary course of business.

11 U.S.C. §548.

Subsection (A) provides for the avoidance of actual fraudulent transfers, while

subsection (B) provides for the avoidance of constructive fraudulent transfers.  The FAC

does allege that both foreclosure sales occurred in February 2015, less than two years

before the Debtors' August 2016 petition dates.  The Court will consider below whether

the Trustee has made sufficient allegations to support the other elements of each type of fraudulent transfer claims.

**State Law Fraudulent Transfers Claims**:

The Fourth, Sixth, Ninth, and Eleventh claims for relief are based on 11 U.S.C. § 544(b) and California Civil Code §3439 *et seq.*  Section 544(b) permits the Trustee to stand in the shoes of a creditor to assert any state law claims that a creditor may have. *In re Brun (Joseph v. Madray),* 360 B.R. 669, 671 (C.D. Cal. Bankr. 2007); *Kupetz v. Wolf,* 845 F.2d 842, 845 (9th Cir. 1988).  Specifically, Section 544 of the Code provides that "the trustee may avoid any transfer of an interest of the debtor in property… that is voidable under applicable law by a creditor holding an [allowable] unsecured claim…." 11 U.S.C. § 544(b).

Under California law, an unsecured creditor may avoid a fraudulent "transfer" to the extent necessary to satisfy the creditor's claim.  Cal. Civ. Code §§ 3439.04, 3439.07.  Section 3439.04(a) provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The trustee contends that there is at least one creditor holding an unsecured claim against Massoud.  This action was commenced within four years of the February 2015 foreclosure sales, thus satisfying the statute of limitations of §3439.09, even

without any extension provided by bankruptcy law.

The Defendants argue that §3439.04 is inapplicable because it only allows creditors of a "debtor" to avoid transfers made by that debtor.  Thus, in this case, §3439.04  gave the Trustee the power to avoid transfers made by the Debtors (the Yashouafars), but Citivest (as trustee under the Deeds of Trust) actually transferred Rexford and Chalette in the foreclosure sales.  The reasoning of this argument would mean that foreclosure sales are not covered by California fraudulent transfer law, as foreclosure or trustee sales are always conducted by the lender or its agent, not by the debtor.

Standing alone, the language of §3439.04 does support the Defendants' argument.

> *A transfer made or obligation incurred by a debtor* is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, *if the debtor made the transfer* or incurred the obligation as follows . . . .

Cal. Civ. Code § 3439.04 (emphasis added). Without more, this provision would seem to exclude foreclosure sales, such as the Rexford and Chalette sales, which are involuntary transfers of the subject property conducted by the lender or its agent, not by the debtor/owner of the property.

However, the definition of "transfer" - as used in §3439.04 - changes this analysis.

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or *involuntary*, of disposing of or *parting with* an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance.

Cal. Civ. Code § 3439.01(m)(emphasis added).

"Parting with" suggests a passive loss of an asset, such as by foreclosure. "Involuntary" certainly indicates foreclosure.  And in fact, the legislative history suggests that "transfers" were meant to include foreclosure sales.

> The definition of "transfer" is derived principally from Section 101(48) of the Bankruptcy Code. The definition of "conveyance" in Section 1 of the Uniform

Fraudulent Conveyance Act was similarly comprehensive, and the references in this Act to "payment of money, release, lease, and the creation of a lien or encumbrance" are derived from the Uniform Fraudulent Conveyance Act. While the definition in the Uniform Fraudulent Conveyance Act did not explicitly refer to an involuntary transfer, the decisions under that Act were generally consistent with an interpretation that covered such a transfer. *See, e.g., Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139, 27 N.E.2d 814, (1940) (execution and foreclosure sales); Lefkowitz v. Finkelstein Trading Corp., 14 F. Supp. 898, 899 (S.D.N.Y.1936) (execution sale); *Langan v. First Trust & Deposit Co.,* 277 App. Div. 1090, 101 N.Y.S.2d 36 (4th Dept. 1950), aff'd, 302 N.Y. 932, 100 N.E.2d 189 (1951) (mortgage foreclosure); *Catabene v. Wallner*, 16 N.J. Super. 597, 602, 85 A.2d 300, 302 (1951) (mortgage foreclosure).

Legislative Committee Comments—Assembly/1986 Addition for Cal. Civ. Code § 3439.01 (Added by Stats.1986, c. 383, § 2)(comment taken from comments to the Uniform Fraudulent Transfer Act).

Furthermore, §3439.08(e) protects certain transfers from avoidance under §3439.04, including "[e]nforcement of a lien in a noncollusive manner and in compliance with applicable law . . . ."  The legislative history confirms that this provision was designed to protect proper foreclosure sales from avoidance.

Paragraph (2) of subdivision (e) prescribes the effect of a sale meeting its requirements, whether the asset sold is personal or real property. . . . The premise of the paragraph is that "a sale of the collateral by the secured party as the normal consequence of default ... [is] the safest way of establishing the fair value of the collateral ...." 2 G. Gilmore, Security Interests in Personal Property, 1227 (1965). However, this paragraph does not extend its automatic protection to strict foreclosures such as deeds in lieu of foreclosure or similar devices.[4]

Legislative Committee Comments—Assembly/1986 Addition for Cal. Civ. Code § 3439.01 (Added by Stats.1986, c. 383, § 2.)  But, properly-conducted, non-collusive foreclosure sales would require this protection only if foreclosure sales were subject to

---

[4] At this point in time, the Court need not decide whether the transaction in the sale of the PWB loans and trust deeds was equivalent to a deed in lieu of foreclosure because Massoud was the middleman, effectively having his brother-in-law buy them on behalf of him and his brother.  Should the issue of the involuntary sale need more analysis, this is a possible avenue that might be explored.

1 | avoidance under §3439.04 in the first place.

2 |      It is equally self-evident that a collusive foreclosure sale may be set aside

3 | as involving a fraudulent transfer (*BFP v. RTC*, 511 U.S. 531, 545, 114 S. Ct.

4 | 1757, 128 L.Ed.2d 556 (1994)) (interpreting the Bankruptcy Code's fraudulent

5 | transfer provision, 11 U.S.C. § 548, which is comparable to UFTA § 4); *Garrett v.*

  | *Walker (In re Garrett),* 172 B.R. 29, 30 (Bankr.E.D.Ark.1994); *Bennett v. Genoa*

6 | *Ag Ctr., Inc. (In re Bennett ),* 154 B.R. 140, 147 (Bankr.N.D.N.Y.1992);

7 | *Consumers Credit Union v. Widett (In re Health Gourmet, Inc.),* 29 B.R. 673, 676

  | (Bankr.D.Mass.1983); *Sheffield Progressive, Inc. v. Kingston Tool Co*., 10 Mass.

8 | App. Ct. 47, 405 N.E.2d 985, 987 (1980); *accord*, analysis in *United States v.*

9 | *Shepherd*, 834 F. Supp. 175 (N.D.Tex.1993), though that decision was later

  | reversed for lack of federal jurisdiction to overturn a state forfeiture, 23 F.3d 923

  | (5th Cir.1994)).

10 | *Mussetter v. Lyke*, 10 F. Supp. 2d 944, 959 (N.D. Ill. 1998), *aff'd*, 202 F.3d 274 (7th Cir.

11 | 1999)(applying California Fraudulent Transfer Act to collusive foreclosure sale).

13 |      Thus, California Fraudulent Transfer law may be applied to the Rexford and

14 | Chalette foreclosure sales (without the need to find Citivest to be an agent of the

15 | Debtors). The Court will consider below whether the Trustee has made sufficient

16 | allegations to support actual fraudulent transfer claims and constructive fraudulent

17 | transfer claims, under both Bankruptcy Code §548 and Cal. Civ. Code §3439.04.

### Actual Fraudulent Transfer Claims: Third, Fourth, Eighth, and Ninth Claims for Relief

21 |      The issue under both §548(a)(1)(A) and §3439.04(a)(1) is whether the Debtors

22 | made the transfers with "actual intent to hinder, delay, or defraud" any creditor.

23 |      As direct evidence of the debtor's fraudulent intent can be difficult – if not

24 | impossible – to obtain, courts often look to the circumstances surrounding a transfer to

25 | determine whether there was actual intent to hinder, delay or defraud creditors under

26 | §548(a)(1)(A).  *In re Wheeler,* 444 B.R. 598, 605 (Bankr. D. Idaho 2011).  According to

27 | the Ninth Circuit, "among the more common circumstantial indicia of fraudulent intent at

28 | the time of the transfer include the following:  (1) actual or threatened litigation against

the debtor; (2)  a purported transfer of all or substantially all of the debtor's property; (3)

insolvency or other unmanageable indebtedness on the part of the debtor; (4)  a special

relationship between the debtor and the transferee; and, after the transfer (5) retention

by the debtor of the property involved in the putative transfer."  *Acequia, Inc. v. Clinton*

*(In re Acequia, Inc.),* 34 F.3d 800, 805-806 (9th Cir. 1994).  These circumstances are

known as badges of fraud.

Section 3439.04(b) directly identifies some of the badges of fraud that are

relevant to determining intent under that statute:

> (b) In determining actual intent under paragraph (1) of subdivision (a),
> consideration may be given, among other factors, to any or all of the following:
> (1) Whether the transfer or obligation was to an insider.
> (2) Whether the debtor retained possession or control of the property transferred
> after the transfer.
> (3) Whether the transfer or obligation was disclosed or concealed.
> (4) Whether before the transfer was made or obligation was incurred, the debtor
> had been sued or threatened with suit.
> (5) Whether the transfer was of substantially all the debtor's assets.
> (6) Whether the debtor absconded.
> (7) Whether the debtor removed or concealed assets.
> (8) Whether the value of the consideration received by the debtor was
> reasonably equivalent to the value of the asset transferred or the amount of the
> obligation incurred.
> (9) Whether the debtor was insolvent or became insolvent shortly after the
> transfer was made or the obligation was incurred.
> (10) Whether the transfer occurred shortly before or shortly after a substantial
> debt was incurred.
> (11) Whether the debtor transferred the essential assets of the business to a
> lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04.

Here, the FAC alleges several badges of fraud in the Rexford sale, including: (1)

the PWB Loan was sold to Elkwood, an entity affiliated with Debtors; (2) Massoud

retained possession of Rexford, without paying any rent; and (3) the $782,000+ paid by

Elkwood was not reasonably equivalent to the $12-15 million value of Rexford.

In connection with Chalette, the FAC sets forth specific allegations of badges of fraud including, (1) Chalette was sold to Fieldbrook, an entity affiliated with Debtors; (2) Fieldbrook sold Chalette approximately three months later for $8.9 million and Nourafshan has admitted to a profit of approximately $2.6 million, so the $5.8 million foreclosure sale price was not reasonably equivalent to Chalette's value.

In addition to these badges of fraud, the FAC alleges – upon information and belief – direct evidence of fraudulent intent: a secret agreement between the Debtors and the Nourafshans to divert the value of Rexford and Chalette from the Debtors' creditors.  Under this agreement, Massoud would continue to live in Rexford rent-free, while the Nourafshans would make a sizeable profit on Chalette by reselling it quickly after foreclosure.

The Defendants have argued that - due to the heightened pleading requirements for fraud of Rule 9(b) - intentional fraudulent transfer claims cannot be based entirely on information and belief.  However, in this case, the facts pled by the Trustee – close personal relationships between the Debtors and the foreclosing creditors/buyers, the Debtors working with Nourafshan to purchase the PWB loan, the foreclosure sales shortly after the purchase of the PWB loan, and Massoud living rent-free in Rexford after the foreclosure sale - do support a strong inference of such a fraudulent agreement.  These factual allegations are specific enough to "give defendants notice of the particular misconduct which is alleged to constitute fraud so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

The Court accordingly concludes that the FAC has pled sufficient facts to state claims upon which relief can be granted in the Third Claim (§548(a)(1)(A), Rexford); the Fourth Claim (§3439.04(a)(1), Rexford); the Eighth Claim ((§548(a)(1)(A), Chalette); and the Ninth Claim (§3439.04(a)(1), Chalette).

**<u>Constructive Fraudulent Transfers:  Fifth, Sixth, Tenth, and Eleventh</u>**

**<u>Claims for Relief</u>**

These claims – whether under §548 or §3439 – require both (i) a lack of reasonably equivalent value paid by the buyer at the foreclosure sale and (ii) some indicia of financial distress at the time of, or as a result of, the foreclosure sales.

The FAC makes factual allegations sufficient to state a constructive fraudulent transfer claim with respect to both Rexford and Chalette. Although in general terms, the FAC alleges each Debtor's insolvency, inadequate assets, and debts beyond his ability to pay at the time of, or as a result of, the foreclosure sales.  The FAC also alleges that the foreclosure sale price for each home was significantly lower than the home's market value: (i) Rexford: $782,000+ price paid as opposed to $12-15 million value and (ii) Chalette: Fieldbrook paid $5.8 million and sold Chalette a few months later for $8.9 million, making a profit of $2.6 million.

However, the Defendants argue that, under the Supreme Court's decision in *BFP V. Resolution Trust Corp.,* 511 U.S. 531 (1994), the prices paid by Elkwood and/or Fieldbrook at the foreclosure sales were "reasonably equivalent value" as a matter of law. The decision in *BFP* applies directly to the Fifth and Tenth Claims of constructive fraudulent transfer under §548(a)(1)(B) and as persuasive authority under the very similar California statute (Cal. Civ. Code §3439.04) and holds:

> We deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.
> …. Indeed, § 548(a)(2) [now §548(a)(1)(B)] will even continue to be an exclusive means of invalidating some foreclosure sales. Although collusive foreclosure sales are likely subject to attack under § 548(a)(1) [now §548(a)(1)(A)], which authorizes the trustee to avoid transfers "made ... with actual intent to hinder, delay, or defraud" creditors, that provision may not reach  foreclosure sales that, while not intentionally fraudulent, nevertheless fail to comply with all governing state laws.

511 U.S. at 545.

Thus, the issue for these claims is whether the Rexford and Chalette foreclosure sales complied with all the requirements of California's foreclosure law. If they have, then 'reasonably equivalent value" has been paid as a matter of law and the Trustee cannot bring a successful claim for constructive fraudulent transfer.  On the other hand,

> [a]ny irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sales price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale ….

511 U.S. at 545–46.

As set forth above when discussing the Second Claim for Relief, the FAC does make allegations of unfairness and prejudicial irregularities that could be grounds for invalidating the foreclosure sale of Rexford under state law. Thus, *BFP* does not provide grounds for dismissing the constructive fraudulent transfer claims based on the Rexford Sale (Fifth Claim under §548(a)(1)(B) and Sixth Claim under §3439(a)(1)).  On the other hand, the FAC does not contain allegations of unfairness or prejudicial irregularities in the Chalette sale, so the constructive fraudulent transfer claims based on the Chalette sale (Tenth Claim under §548(a)(1)(A) and Eleventh Claim under §3439(a)(1) should be dismissed, but with leave to amend.

### **Recover Value of Rexford and Chalette: Seventh and Twelfth Claims**

Once a trustee demonstrates the right to avoid a transfer, "the trustee must then establish the amount of recovery" pursuant to § 550(a).  *Brun,* 360 B.R. at 672. Defendants argue Plaintiff fails to state a claim under Section 550 because Plaintiff cannot state a claim under the assertions of intentional and constructive fraudulent transfers.  Since the Court has determined that the Third through Ninth Claims are plausible claims for relief, the Plaintiff retains fraudulent transfer claims with respect to each house.  The Defendants' request to dismiss the Seventh and Twelfth Claims is denied.

**Conclusion:**

The Defendants' Motion to Dismiss is granted in part and denied in part.

1) The Motion is granted, with leave to amend, with respect to the First Claim for Relief.

2) The Motion is granted, with leave to amend, with respect to the Second Claim for relief.

3) The Motion is denied with respect to the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Claims.

4) The Motion is granted, with leave to amend, with respect to the Tenth and Eleventh Claims.

###

Date: September 28, 2017

_____
Geraldine Mund
United States Bankruptcy Judge