1

**HILL, FARRER & BURRILL LLP**
Daniel J. McCarthy (Bar No. 101081)
300 South Grand Avenue, 37th Floor
Los Angeles, CA  90071-3147
Telephone:  (213) 620-0460
Fax:  (213) 624-4840
dmccarthy@hillfarrer.com

Attorneys for Defendants
ELKWOOD ASSOCIATES, LLC, and
FIELDBROOK, INC.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,<br>Debtors. | Case No.  1:16-bk-12255-GM<br><br>Chapter 11<br>Jointly Administered |
| In re:<br>SOLYMAN YASHOUAFAR,<br>Debtor. | Case No. 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>Debtor. | Case No. 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑ Both Debtors<br>☐ Solyman Yashouafar<br>☐ Massoud Aaron Yashouafar | |
| DAVID K. GOTTLIEB, as Chapter 11<br>Trustee for Massoud Aaron Yashouafar<br>and Solyman Yashouafar,<br><br>Plaintiff,<br><br>vs.<br><br>ELKWOOD ASSOCIATES, LLC, and<br>FIELDBROOK, INC.,<br><br>Defendants. | Adv. No. 1:17-ap-01040-GM<br><br>**DEFENDANTS' NOTICE OF MOTION<br>AND MOTION TO DISMISS THE FIRST,<br>SECOND, EIGHTH AND NINTH CLAIMS<br>IN THE SECOND AMENDED<br>COMPLAINT; MEMORANDUM OF<br>POINTS AND AUTHORITIES**<br><br>**Date:  January 23, 2018**<br>**Time: 10:00 a.m.**<br>**Ctrm: 303** |

1

**TO:   THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE, AND TO ALL PARTIES IN INTEREST AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 23, 2018, at 10:00 a.m. in Courtroom 303 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, California 91367, defendants Elkwood Associates, LLC, and Fieldbrook, Inc. ("Defendants") will move, and hereby do move, to dismiss the First, Second, Eighth and Ninth Claims in the Second Amended Complaint [docket no. 39] (the "SAC") filed by plaintiff David K. Gottlieb, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar ("Plaintiff"), on October 18, 2017.

Defendants move for dismissal of the First and Second Claims alleged in the SAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by F.R.B.P. 7012(b), on the ground that those claims fail to state a claim upon which relief can be granted, and they should be dismissed as a matter of law.

Defendants further move for dismissal of the Second, Eighth and Ninth Claims in the SAC under Rule 12(b)(7) of the Federal Rules of Civil Procedure, as made applicable by F.R.B.P. 7012(b), and Rule 19 of the Federal Rules of Civil Procedure, as made applicable by F.R.B.P. 7019, on grounds that Plaintiff has failed to name necessary parties to those claims.  .

Defendants further request that the First and Second Claims be dismissed without leave to amend and that the Eighth and Ninth Claims be dismissed with leave to amend to add the current owner of the Chalette Home as a defendant.

This Motion will be based on this notice of motion and the accompanying memorandum of points and authorities; the pleadings, records, and files in this adversary proceeding; the Court's records of the Chapter 11 cases of Massoud Aaron Yashouafar and Solyman Yashouafar; any reply brief that Defendants may file; and any argument and/or evidence which the Court may consider at the hearing on this Motion.

/ /

/ /

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1

1    Pursuant to Local Bankruptcy Rule 9013-1(c)(2), Defendants hereby provide notice to

2  Plaintiff that Local Bankruptcy Rule 9013-1(f) requires a written response to be filed and served

3  at least 14 days before the hearing on this motion.

6  DATED:   December 7, 2017                **HILL, FARRER & BURRILL LLP**

8  By: /s/ Daniel J. McCarthy
         DANIEL J. McCARTHY
9        Attorneys for Defendants
         ELKWOOD ASSOCIATES, LLC,
10       and FIELDBROOK, INC.

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

   A.    Procedural History. ............................................................................ 1

   B.    The Second Amended Complaint. ..................................................... 1

   C.    Summary of Argument. ...................................................................... 3

II.    LEGAL STANDARD .............................................................................. 4

III.    ARGUMENT ........................................................................................... 5

   A.    The First Claim to Quiet Title Fails As a Matter of Law. ................. 5

      1.    Plaintiff Has Failed to Sufficiently Allege that the Entire PWB Note and, Therefore, the Rexford DOT Was Assigned to Fieldbrook. ............... 5

         a.    The First Claim Is Based Upon An Alleged Legal Conclusion. .................................................................. 5

         b.    Legal Conclusions Are Not Accepted As True. ................. 8

         c.    The Allegations of the SAC and the Exhibits to the SAC Show That Plaintiff's Legal Conclusion is Incorrect and that He Has Drawn Unreasonable Inferences from the Language of the Fieldbrook Assignment. .................................................... 8

         d.    The Interpretation of the Fieldbrook Assignment Is Necessary at the Pleading Stage, and Should Not be Deferred for Later Fact-Finding. ................................... 13

      2.    Plaintiff Has Failed to Meet the Threshold Requirement of Paying or Tendering $782,508.05 to Elkwood. ................... 15

         a.    The General Rule Requires Tender. ................................. 15

         b.    The "Inequitable Exception" Does Not Apply. ................ 15

         c.    The Rexford Foreclosure Sale Deed Was Not Void On Its Face, So the Fourth *Lona* Exception Does Not Apply. ................ 19

         d.    No Exception to the Tender Rule Exists Based Upon a "Promise to Pay Later." ................................................. 24

         e.    There Is No "Inequitable Exception" Based Upon This Case Being Different from the Usual Circumstances. .................... 25

         f.    There Is No "Hypothetical Tender" Rule Based Upon a Probability of Paying Later. ............................................. 28

         g.    The Court Should Reconsider Its Prior Analysis On Whether Plaintiff Satisfied The Tender Requirement. ................... 30

   B.    The Second Claim to Set Aside the Rexford Foreclosure Sale and Rexford Foreclosure Sale Deed Fails to State a Claim ............... 30

      1.    The Second Claim Still Fails to Allege Irregularities That Warrant Setting Aside the Rexford Foreclosure Sale and Deed. ........................... 30

      2.    Plaintiff Has Failed to Allege that Elkwood Was Not a BFP. ................. 31

      3.    Plaintiff Has Failed to Join Necessary Parties. ......................................... 33

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF CONTENTS
### (Continued)

**Page**

        C.      The Owner of the Chalette Home Is A Necessary Party to the Eighth and
                Ninth Claims. ...................................................................................................... 33

IV.     CONCLUSION ........................................................................................................... 34

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Aguiar v. Wells Fargo Bank,*
  N.A., 2012 WL 5915124, at *5 (N.D. Cal. Nov. 26, 2012)................................17, 18

*Amarel v. Connell,*
  102 F.3d 1494 (9th Cir.1996).................................................................30

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)........................................8, 10

*Avila v. Stearnes,*
  2008 U.S. Dist. LEXIS 31813 (C.D.Cal. Apr. 7, 2008)..........................................26

*BFP v. Resolution Trust Corp.,*
  511 U.S. 531, 545, 114 S. Ct. 1757, 1765, 128 L.2d 556 (1994) .............................33

*In re Cedano,*
  470 B.R. 522 (B.A.P. 9th Cir. 2012)...............................................20, 21, 22, 23

*Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.,*
  692 F.3d 580 (7th Cir. 2012)....................................................................14

*Cont'l Cas. Co. v. Nw. Nat. Ins. Co.,*
  427 F.3d 1038 (7th Cir.2005)....................................................................14

*Davenport v. Seattle Bank,*
  2015 WL 4886393 (C.D. Cal. Aug. 14, 2015) ....................................................16

*Eisan v. Wells Fargo Bank,*
  2013 WL 12173939 (N.D. Cal. Feb. 19, 2013) ..................................................17

*Gill v. Wells Fargo Bank, N.A.,*
  2011 WL 2470678 (E.D. Cal. June 20, 2011).....................................................27

*Gyene v. Steward Fin., Inc.,*
  2013 WL 146191 (C.D. Cal. Jan. 11, 2013) .....................................................16

*Kariguddaiah v. Wells Fargo Bank, N.A.,*
  2010 WL 2650492 (N.D. Cal. 2010)..............................................................26

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001)...............................................................13, 14

*Meixner v. Wells Fargo Bank, N.A.,*
  2016 WL 3277262 (E.D. Cal. June 14, 2016)....................................................20

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

iii

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Osei v. GMAC Mortg.*,
  2010 WL 2557485 (E.D. Cal. June 21, 2010)........................................................................28

*Richards v. Deutsche Bank Nat'l Trust Co.*,
  2013 WL 12124125 (C.D. Cal. Jan. 8, 2013) .......................................................................16

*Roman v. Vericrest Fin., Inc.*,
  2013 WL 12133646 (C.D. Cal. Apr. 30, 2013) ....................................................................27

*Saldana v. Occidental Petroleum Corp.*,
  774 F.3d 544 (9th Cir. 2014)........................................................................................8, 10

*Saterbak v. Nat'l Default Servicing Corp.*,
  2016 WL 4430922 (S.D. Cal. Aug. 22, 2016) ......................................................................20

*Simmons First Nat'l Bank v. Lehman*,
  2015 WL 1503437 (N.D. Cal. Apr. 1, 2015) ......................................................................18

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012)........................................................................................9

*Solomon v. Aurora Loan Servs. LLC*,
  2012 WL 2577559 (E.D. Cal. July 3, 2012) .......................................................................17

*Sun v. Rickenbacker Collections*,
  2012 WL 2838782, at *2 (N.D. Cal. July 10, 2012).............................................................34

**State Cases**

*Arnolds Mgmt. Corp. v. Eischen*,
  158 Cal.App.3d 575 (1984)........................................................................................17, 27

*Chavez v. Indymac Mortg. Servs.*,
  219 Cal.App.4th 1052 (2013) .......................................................................................17

*Cristina v. Mattenberger*,
  212 Cal. 670 (1931) ...................................................................................................12

*Dore v. Arnold Worldwide, Inc.*,
  39 Cal.4th 384 (2006) ..................................................................................................8

*Fonteno v. Wells Fargo Bank, N.A.*,
  228 Cal.App.4th 1358 (2014) ....................................................................................15, 26

*Hohn v. Riverside Cty. Flood Control & Water Conservation Dist.*,
  228 Cal.App.2d 605 (1964)........................................................................................31

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Humboldt Savings Bank v. McCleverty,*
    161 Cal. 285 (1911) ...............................................................17, 26, 27, 28

*Kalnoki v. First Am. Tr. Servicing Sols., LLC,*
    8 Cal.App.5th 23, 45 (2017), reh'g denied (Feb. 22, 2017),
    review denied (May 10, 2017) .......................................................31

*Karlsen v. Am. Sav. & Loan Ass'n,*
    15 Cal.App.3d 112 (1971).............................................................27, 28, 29

*Little v. CFS Serv. Corp.,*
    188 Cal.App.3d 1354 (1987)..........................................................19, 22, 23

*Lona v. Citibank, N.A.,*
    202 Cal.App.4th 89 (2011) ......................................................... *passim*

*Melendrez v. D&I Investment, Inc.,*
    127 Cal.App.4th 1238 (2005) ........................................................31, 32

*Mission Valley East, Inc. v. County of Kern,*
    120 Cal.App.3d 89 (1981)..............................................................12

*Morey v. Vannucci,*
    64 Cal.App.4th 904 (1998) ...........................................................9

*Moss Dev. Co. v. Geary,*
    41 Cal. App. 3d 1 (1974)...............................................................9

*Nguyen v. Calhoun,*
    105 Cal.App.4th 428 (2003) .........................................................17

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage, etc. Co.,*
    69 Cal.2d 33 (1969) ......................................................................8

*Royal Thrift & Loan Co. v. Cty. Escrow, Inc.,*
    123 Cal.App.4th 24 (2004) ...........................................................31

*United States Cold Storage v. Great Western Savings & Loan Assn.,*
    165 Cal.App.3d 1214 (1985)..........................................................27

*Wells v. Wells,*
    74 Cal.App.2d 449 (1946)..............................................................11, 12

*Yvanova v. New Century Mortg. Corp.,*
    62 Cal.4th 919 (2016) ...................................................................19, 20

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

## TABLE OF AUTHORITIES
### (Continued)

**Page**

**Federal Statutes**

11 U.S.C. § 323 ...................................................................................................................18

11 U.S.C. § 523(a)(6) ..........................................................................................................32

11 U.S.C. § 550 ...............................................................................................................1, 2

**State Statutes**

Civil Code § 1647 ...............................................................................................................10

Civil Code § 1860 ...............................................................................................................10

Civil Code § 2924(c) ...........................................................................................................31

**Rules**

F.R.C.P. 12(b)(6) .................................................................................................1, 8, 13, 14

F.R.C.P. 12(b)(7) ...........................................................................................................1, 34

F.R.C.P. 12(h) .....................................................................................................................34

F.R.C.P. 19 ............................................................................................................4, 33, 34

F.R.C.P. 19(a)(1) .................................................................................................................34

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION**

A.    **Procedural History.**

The Complaint of Chapter 11 trustee David K. Gottlieb ("Plaintiff") was filed on April 25, 2017.  Through counsel, Plaintiff informed defendants that he would be filing a First Amended Complaint ("FAC") to add claims.  The FAC was filed on May 11, 2017.  [Docket no. 8]

On June 12, 2017, defendants Elkwood Associates, LLC, and Fieldbrook, Inc. ("Defendants") filed a motion to dismiss the FAC under F.R.C.P. 12(b)(6) and 12(b)(7) along with a supporting request for judicial notice.  [Docket nos. 16 and 17]  The motion was heard on August 28, 2017, and the Court took the matter under submission.

On September 28, 2017, the Court issued an order on the motion and an extensive supporting memorandum.  [Docket nos. 34 and 35]  The order granted the motion with leave to amend as to the First, Second, Tenth and Eleventh Claims, and it denied the motion as to the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Claims.  [Docket no. 35]

B.    **The Second Amended Complaint.**

On October 18, 2017, Plaintiff filed his Second Amended Complaint.  [Docket no. 39]  It alleges ten claims.  Plaintiff amended his First and Second Claims.  Plaintiff elected not to amend his Tenth and Eleventh Claims, which sought to avoid the foreclosure sale of the Chalette Home as a constructive fraudulent transfer.  The SAC deleted those claims.

The First to Seventh Claims in the SAC relate to the Rexford Home. They fall into three categories.  A quiet title claim (First Claim); a claim to set aside the "Rexford Foreclosure Sale" based upon purported irregularities in the sale (Second Claim); claims to avoid the sale as an intentional or constructive fraudulent transfer under state and federal law (Third to Sixth Claims); and a claim to recover the Rexford Home under 11 U.S.C. § 550 (Seventh Claim).  Again, Defendants' motion to dismiss the Third to Seventh Claims previously was denied.

The Eighth, Ninth and Tenth Claims in the SAC pertain to the Chalette Home.  They seek to avoid the foreclosure sale of the Chalette Home as an intentional fraudulent transfers under federal and state law (Eighth and Ninth Claims) and to recover the value of the Chalette Home

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1

1    under 11 U.S.C. § 550 (Tenth Claim).  Again, Defendants' motion to dismiss those claims

2    previously was denied.

3          The First Claim seeks to quiet title to the Rexford Home on the theory that the note (the

4    "PWB Note") and deed of trust (the "Rexford DOT") against the Rexford Home already had been

5    transferred by Elkwood Associates, LLC ("Elkwood") to Fieldbrook, Inc. ("Fieldbrook") under

6    an unrecorded assignment dated February 18, 2015 (the "Fieldbrook Assignment"), so Elkwood

7    no longer held any interest in the PWB Note and Rexford DOT at the time of the February 23,

8    2015 foreclosure sale on the Rexford Home.  [SAC, ¶¶56-61, Exh. E]  SAC adds allegations

9    about that transfer, which purport to explain Plaintiff's theory regarding why the assignment of

10   the PWB Note to Fieldbrook meant that the Rexford DOT also must have been assigned to

11   Fieldbrook.  [Id.]  Plaintiff, therefore, concludes that the sale was void as a matter of law and that

12   the trustee's deed upon sale from the foreclosing trustee to Elkwood (the "Rexford Foreclosure

13   Sale Deed"), which was executed on February 25, 2015, and recorded as instrument no.

14   20150248924 on March 6, 2015, also were void as a matter of law.  [Id., ¶¶83-85, Exh. H]  The

15   Fieldbrook Assignment was recorded as instrument no. 20150248925 on March 6, 2015, after the

16   Rexford Foreclosure Sale Deed was recorded.  [Id., ¶56, Exh. E]  As explained below, Plaintiff's

17   theory is incorrect as a matter of law, so the First Claim fails to state a claim.

18         The Second Claim seeks to set aside the Rexford Foreclosure Sale and Deed.  The Court's

19   September 28, 2017 Memorandum explained that the Second Claim had failed to allege sufficient

20   irregularities for the Rexford Foreclosure Sale and the Rexford Foreclosure Sale Deed to be set

21   aside under California law.  [Docket no. 34, at 25-29]  Although he was granted leave to amend

22   the Second Claim, Plaintiff did not add any other alleged irregularities in the Second Claim.

23   Instead, he merely repeated the same purported irregularities that the Court already held were

24   insufficient as a matter of law.  [SAC, ¶¶73-78]  The Second Claim incorporates by reference the

25   more detailed allegations in the First Claim regarding the alleged effect of the Fieldbrook

26   Assignment, but that adds nothing to the Second Claim.

27         As noted above, the Eighth and Ninth Claims seek to avoid the Chalette Foreclosure Sale

28   and the Chalette Foreclosure Sale Deed as an intentional fraudulent transfer under state and

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

federal law. [SAC, ¶¶115 and 118]  The SAC alleges that "Fieldbrook sold the Chalette Home to a third party in exchange for $8,995,000."  [*Id.*, ¶66]  The SAC, however, fails to name the buyer as a defendant in this action.

**C.    Summary of Argument.**

The First Claim (quiet title) fails to state a claim for two reasons.  First, it based upon the incorrect legal conclusion that the supposed assignment of the entire PWB Note to Fieldbrook pursuant to the Fieldbrook Assignment meant as a matter of law that the Rexford DOT was assigned to Fieldbrook.  The Court need not assume that legal conclusion is correct for purposes of this Motion.  The February 18, 2015 Fieldbrook Assignment is ambiguous as to whether the entire PWB was assigned and whether the Rexford DOT was assigned.  [SAC, Exh. E]  The February 17, 2017 Memo from Thelma Guerrero to the foreclosing trustee [SAC, Exh. F] made it clear that only $5.8 million of the PWB Note was assigned to Fieldbrook, that the balance remained with Elkwood, and that the Rexford DOT was not assigned to Fieldbrook.  As such, Elkwood was entitled to conduct the Rexford Foreclosure Sale on February 23, 2015, and the Rexford Foreclosure Sale Deed was valid.

The First Claim also fails to state a claim because Plaintiff has failed to tender the sum of $782,508.05 to Elkwood as a condition to pursuing that claim.  Under applicable law, it is not inequitable to impose the tender rule upon Plaintiff.  Nor is the Rexford Foreclosure Sale excepted from that rule based upon the assumption that the Sale was void.  The alleged facts do not satisfy the requirement that the Rexford Foreclosure Sale was a "substantially defective sale" under which Massoud Yashouafar did not receive notice of the sale in violation of statutory requirements.  Instead, Plaintiff asserts the technical argument that the Fieldbrook Assignment should be read as necessarily accomplishing an assignment of the Rexford DOT.  As such, at most, that Sale is voidable, which means the tender rule applies.  Nor is there an exception based upon the argument that Plaintiff may be able to pay Elkwood the sum of $782,508.05, if he prevails and later sells the Rexford Home.  The tender rule clearly imposes the requirement of tender as a condition precedent to maintaining the First Claim, rather a requirement that may be met after a plaintiff prevails and either sells or refinances the subject property.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   The Second Claim fails to state a claim for two reasons. First, it is based upon the exact

2   same supposed irregularities that were alleged in the FAC, which the Court held to be

3   insufficient. The only change was the more specific legal conclusion alleged in the First Claim

4   that the Rexford DOT was necessarily assigned as a matter of law, which is incorporated into the

5   Second Claim. As explained below, those allegations do not state a claim for purposes of the

6   First Claim, and they add nothing to the Second Claim.

7       The Second Claim also fails to state a claim because Plaintiff has failed to satisfy the

8   tender requirement for purposes of maintaining the Second Claim. Plaintiff's argument made

9   with respect to the First Claim that the Rexford Foreclosure Sale and Deed are void does not

10  apply to the Second Claim. For all the other reasons that the First Claim fails to state a claim due

11  to the failure to satisfy the tender rule, the Second Claim also fails to state a claim.

12      The Second Claim still fails to join the lienholders and Citivest as parties. They are

13  necessary parties under F.R.C.P. 19 for the same reasons cited by the Court in requiring them to

14  be named as parties in the First Claim.

15      The owner of the Chalette Home also should be a party to the Eighth and Ninth Claims to

16  avoid the sale of the Chalette Home as parties. Plaintiff correctly alleges that the Chalette Home

17  was sold by Fieldbrook. Title to the Chalette Home cannot be returned to Solyman Yashouafar's

18  estate without making the current owner a party to the Eighth and Ninth Claims. Any judgment

19  voiding the transfer as against Fieldbrook otherwise would be meaningless.

20      Defendants' Motion should be granted, and leave to amend should be denied. Plaintiff

21  already has had three opportunities to properly allege the claims in the SAC.

22  **II.    LEGAL STANDARD**

23      Defendants adopt the applicable legal standard that the Court explained in its September

24  28, 2017 Memorandum, as follows:

25      A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the
        allegations set forth in the complaint. A Rule 12(b)(6) dismissal may be based on
26      either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts
        alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys.*,
27      534 F.3d 1116, 1121 (9th Cir. 2008), quoting *Balisteri v. Pacifica Police Dept.,*
        901 F.2d 696, 699 (9th Cir. 1990).

28      In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the

4

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Johnson*, 534 F.3d at 1122; *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). On the other hand, the court is not bound by conclusory statements, statements of law, and unwarranted inferences cast as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "In practice, a complaint… must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, quoting, *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984).

Further, in *McKinney v. Citi Residential Lending Inc., et al*, the district court in the Southern District of California explained the legal standard under Rule 9(b):

> Rule 9(b) sets forth a heightened pleading standard for allegations of fraud, requiring parties to "state with particularity the circumstances constituting fraud or mistake." In general, fraud allegations must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Specifically, plaintiffs are required to supplement allegations of fraud with the "who, what, when, where, and how" of the purported misconduct, in addition to why the statement or conduct is false or misleading. *Id.* Failure to satisfy this heightened pleading standard can result in dismissal of the claim. *Id.* at 1107.

> Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *DeSoto v. Yellow Freight Sys.*, Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber *Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  Therefore, where leave to amend would be futile, the court may dismiss the claims without leave to amend.

*McKinney v. Citi Residential Lending Inc.*, 2015 WL 11822150, *3; 2015 U.S. Dist. LEXIS 181922, *9 (S.D. Cal. 2015).

[Docket no. 34, at 17:4-18:9]

## III.    **ARGUMENT**

### A.    **The First Claim to Quiet Title Fails As a Matter of Law.**

#### 1.    **Plaintiff Has Failed to Sufficiently Allege that the Entire PWB Note and, Therefore, the Rexford DOT Was Assigned to Fieldbrook.**

##### a.    **The First Claim Is Based Upon An Alleged Legal Conclusion.**

The Rexford DOT was not assigned by Elkwood to Fieldbrook.  The Fieldbrook Assignment only referred to the PWB Note and the Chalette DOT being assigned by Elkwood to Fieldbrook.  [SAC, Exh. E]

The Court's September 28, 2017 Memorandum explained the deficiency in the First Claim

5

with respect the assertion that the Rexford DOT was assigned under the Fieldbrook Assignment:

> The assertion that Exhibit B assigned the Rexford DOT to Fieldbrook is clearly erroneous in that Exhibit B shows that only the Chalette trust deed was transferred to Fieldbrook via that document. It is, of course, possible that the Rexford DOT was also transferred to Fieldbrook by a separate act or in some other manner. It is also possible that the entire Note was assigned to Fieldbrook, thus leaving nothing on which Elkwood could foreclose: "As a mortgage is but an incident to the debt which it is intended to secure, the logical conclusion is, that a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it. The security cannot be separated from the debt and exist independently of it." 4-37 Powell on Real Property § 37.27  (2017).

[Docket no. 34, at 19:19-27]

Plaintiff attempted to "cure" his prior defective allegations by alleging in the SAC that the Rexford DOT was assigned to Fieldbrook as a matter of law:

> 57. The Fieldbrook Assignment did three things as evidenced by the face of the Fieldbrook Assignment.

> 58. First, the Fieldbrook Assignment granted, assigned, transferred, and conveyed the Chalette DOT from Elkwood to Fieldbrook by way of the following provision:

>> For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby **grants, assigns, transfers and conveys to FIELDBROOK, INC.,** A CALIFORNIA CORPORATION all of its right, title and beneficial interest in and to that certain Deed of Trust dated MARCH 20, 2009 executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary and recorded as Instrument No. 20090425658, on March 25, 2009, in Book _____, Page _____ of Official Records in the Office of the County Recorder of Los Angeles County, California, describing land in said county as . . .

> Fieldbrook Assignment, pg. 1, para. 1 (Underscore and boldface type added but capital type face in original). See paragraph [34] of the Second Amended Complaint and Exhibit D hereto, which reflects that the Fieldbrook Assignment is referencing and assigning the Chalette DOT as it identifies the Chalette DOT by same recordation number.

> 59. Second, the Fieldbrook Assignment expressly granted, assigned, transferred, and conveyed the PWB Note from Elkwood to Fieldbrook by way of the following provision:

>> **Together with the Secured Promissory Note or Notes therein described or referred to,** the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder.

> Fieldbrook Assignment, pg. 1, para. 4 (Underscore and boldface type added). As reflected in the definitions of the PWB Note and Chalette DOT, the "Secured Promissory Note" or "Notes" that is "therein described or referred to" is the PWB Note. On its face, the Fieldbrook Assignment  assigned the PWB Note, as it was the debt instrument tied to the Chalette DOT.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

60. Third, because the PWB Note was assigned, the Rexford DOT was also automatically assigned by operation of law under Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security").

61. In addition, the Fieldbrook Assignment is titled as an "ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE." Fieldbrook Assignment, pg. 1 (Capital bold face type in original). Thus, the Fieldbrook Assignment expressly evidences the assignment and transfer of the Chalette DOT and PWB Note, and by virtue of the assignment of the PWB Note, the assignment of the Rexford DOT by operation of law.

62. In connection with the Fieldbrook Assignment, by memo dated February 17, 2015, a true and correct copy of which is annexed hereto as **Exhibit F**, Guerrero, on behalf of Fieldbrook, advised Citivest that "we have assigned the Deed of Trust for the Chalette property to Fieldbrook, Inc. along with a dollar portion of the note secured by that Deed of Trust on the Property"; "the portion of the note that has been transferred to Fieldbrook, Inc. is $5,800,000.00. As agent for Fieldbrook, Inc., you are hereby instructed to open beneficiary bid at the upcoming auction on February 20 at $5,800,000.00. This will be their only bid"; and "[y]ou are hereby further instructed to open Elkwood's bid at your February 23 auction, for the Rexford Property, at the remaining balance of the note. . . ." Nourafshan confirmed those instructions by e-mail to Ed Mazzarino ("Mazzarino"), a principal of Citivest, dated February 25, 2015.

[SAC, ¶¶57-62]

By his first and second points, Plaintiff alleges how he interprets the Fieldbrook Assignment, which the Court can do just as easily. Plaintiff's first point does not help him. The fact that the only deed of trust that was assigned under the Fieldbrook Assignment was the Chalette DOT suggests that Elkwood did <u>not</u> mean to transfer the Rexford DOT.

On the second point, the language of the Fieldbrook Assignment admittedly suggests that the entire PWB Note was assigned, but it also makes clear that only the Chalette DOT was assigned in referring to "said Deed of Trust" in stating that "the Secured Promissory Note" was assigned together with "all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder." Again, that language makes clear that the Rexford Deed of Trust was not assigned.

Plaintiff's allegation that the Rexford DOT was assigned by the Fieldbrook Assignment turns upon Plaintiff's alleged legal conclusion that the assignment of the PWB Note necessarily means that the Rexford DOT was assigned, even though the Fieldbrook Assignment states otherwise. The Fieldbrook Assignment does not refer to an assignment of <u>all</u> collateral or <u>all</u> deeds of trust. It only refers to the Chalette DOT, as Plaintiff now concedes.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1

**b.**    **Legal Conclusions Are Not Accepted As True.**

2    Under Rule 12(b)(6), the Court need not assume that legal conclusions alleged in a

3    complaint are true.  "We also need not accept as true legal conclusions contained in the

4    complaint."  *Saldana v. Occidental Petroleum Corp.,* 774 F.3d 544, 551 (9th Cir. 2014) [citing

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)]

6    **c.**    **The Allegations of the SAC and the Exhibits to the SAC Show**

7    **That Plaintiff's Legal Conclusion is Incorrect and that He Has**

8    **Drawn Unreasonable Inferences from the Language of the**

9    **Fieldbrook Assignment.**

10    This is an elementary question of construction and interpretation of the Fieldbrook

11    Assignment.  Did Elkwood intend to assign the underline entire PWB Note, or did it intend to assign the

12    underline part of the PWB Note that it attributed to the Chalette DOT?  There is patent ambiguity in the

13    Fieldbrook Assignment given that it only assigned the Chalette DOT, even though the PWB Note

14    also was secured by the Rexford DOT, and part of the PWB Note.  The Fieldbrook Assignment is

15    "reasonably susceptible" to the interpretation that Elkwood did not mean to assign the entire

16    PWB Note or the Rexford DOT, which means that it is ambiguous on its face.  "An ambiguity

17    arises when language is reasonably susceptible of more than one application to material facts."

18    *Dore v. Arnold Worldwide, Inc.*, 39 Cal.4th 384, 391 (2006).

19    To the extent that partial assignment of the PWB Note and the non-assignment of the

20    Rexford DOT are "latent" ambiguities, California permits that to be shown by extrinsic evidence.

21    In *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage, etc. Co.,* 69 Cal.2d 33, 39 n.6 (1969), the

22    Court noted that courts have allowed extrinsic evidence to be introduced to give meaning to

23    words that appeared to be unambiguous on their face, such as "ton," "north," and "United

24    Kingdom."  "The fact that the terms of an instrument appear clear to a judge does not preclude the

25    possibility that the parties chose the language of the instrument to express different terms."  *Id.* at

26    39.  The Ninth Circuit has followed California law on this issue.  "'[E]ven if a contract appears

27    unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals

28    more than one possible meaning to which the language of the contract is yet reasonably

8

susceptible.'" *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1015 (9th Cir. 2012) [quoting *Morey v. Vannucci,* 64 Cal.App.4th 904 (1998).]

The facts before this Court present an easier case.  Extrinsic evidence need not be resorted to in order to demonstrate a <u>latent</u> ambiguity.  There is a <u>patent</u> ambiguity in that the Fieldbrook Assignment does not state whether Elkwood meant to assign the Rexford DOT and it does not state whether Elkwood meant to assign the entire PWB Note to Fieldbrook.

Notably, Plaintiff fails to allege that Elkwood <u>intended</u> by the Fieldbrook Assignment to assign the <u>entire</u> PWB Note <u>and</u> the Rexford DOT to Fieldbrook.  He cannot do so.

The Fieldbrook Assignment is dated <u>February 18, 2015</u>.  Attached to the SAC as Exhibit F is the contemporaneous <u>February 17, 2015</u> Memo from Thelma Guerrero to Ed Mazzarino of Citivest Financial Services, Inc., which was the foreclosing trustee under the Rexford DOT and the Chalette DOT, in which Ms. Guerrero stated: "we have assigned the Deed of Trust for the Chalette Property to Fieldbrook, Inc. Along [sic] with a dollar portion of the note secured by that Deed of Trust on the Property."  [SAC, Exh. F]  She went on to state: "The portion of the note that has been transferred to Fieldbrook, Inc. is $5,800,000.00."  [*Id.*]  Thus, the Memo instructed Citivest to bid $5,800,000.00 for Fieldbrook at the February 20, 2015 Chalette Foreclosure Sale and to bid the balance for Elkwood at the February 23, 2015 Rexford Foreclosure Sale in stating: "You are hereby further instructed to open Elkwood's bid at the February 23rd auction, for the Rexford Property, at the remaining balance of the note…."  [*Id.*]  Thelma Guerrero also executed the Fieldbrook Assignment on February 18, 2015, so she clearly knew what had been assigned.  Citivest also knew that.  Not only was "Mr. Mazzarino" sent the February 17, 2015 Memo [*id.*, Exh. F], but Edward M. Mazzarino notarized the Fieldbrook Assignment [*id.*, Exh. E], and he is alleged to have been "a principal of Citivest." [*Id.*, ¶62]

Ms. Guerrero's February 17, 2015 Memo is contemporaneous extrinsic evidence of what she meant by the Fieldbrook Assignment. "If a contract is reasonably susceptible to more than one interpretation or if it contains latent or patent ambiguities, the court may use extrinsic evidence to clarify the uncertainties; extrinsic evidence is relevant and material to prove a meaning to which the language of an instrument is reasonably susceptible." *Moss Dev. Co. v.*

9

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    *Geary,* 41 Cal. App. 3d 1, 9 (1974).   As a circumstance surrounding the execution of the

2    Fieldbrook Assignment, the February 17, 2015 Memo requires the conclusion that Ms. Guerrero

3    did <u>not</u> mean to assign the entire PWB Note or the Rexford DOT by the Fieldbrook Assignment.

4    "For the proper construction of an instrument, the circumstances under which it was made,

5    including the situation of the subject of the instrument, and of the parties to it, may also be shown,

6    so that the Judge be placed in the position of those whose language he is to interpret."  Civil Code

7    § 1860.  See also Civil Code §1647 ["A contract may be explained by reference to the

8    circumstances under which it was made, and the matter to which it relates."]

9        Given Ms. Guerrero's Memo, the Court need not accept as true the allegations in the SAC

10   regarding the purported legal effect of the Fieldbrook Assignment, *i.e.*, that the assignment of the

11   PWB Note means as a matter of law that the Rexford DOT was assigned.  The Court in *Saldana*

12   *v. Occidental Petroleum Corp.*, 774 F.3d 544, 551 (9th Cir. 2014), explained:

13       Furthermore, "we 'need not ... accept as true allegations that contradict matters
         properly subject to judicial notice or by exhibit.'"  [Citations] ("[W]e are not

14       required to accept as true conclusory allegations which are contradicted by
         documents referred to in the complaint.").

15       Indeed, this Court's September 28, 2017 Memorandum agreed: "the court is not bound by

16   conclusory statements, statements of law, and unwarranted inferences cast as factual allegations."

17   [Docket no. 34, at 17:13-14]  Thus, not only is the Court not bound by "statements of law"

18   alleged by Plaintiff regarding the legal effect of assigning the PWB Note, but it also is not bound

19   by "unwarranted inferences" that are contradicted by Exhibits E and F to the SAC.  The allegation

20   that that Rexford DOT was assigned by virtue of the assignment of the PWB Note is both a

21   "statement of law" and an "unwarranted inference" in light of the February 17, 2015 Memo from

22   Ms. Guerrero and the February 18, 2015 Fieldbrook Assignment that was executed by Ms.

23   Guerrero.  Stated another way, the First Claim does not state a "plausible" claim within the

24   meaning of *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

25   (2009), because it is not based upon a reasonable inference: "A claim has facial plausibility when

26   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

27   defendant is liable for the misconduct alleged."

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   There are many analogous examples of the construction of instruments in California case

2   law, including assignments.  In *Wells v. Wells*, 74 Cal.App.2d 449, 450 (1946), the defendant's

3   former wife sued under a separation agreement under which the defendant purported to "assign to

4   plaintiff his earnings from future employment."  The contract stated: "'It is the purpose and intent

5   of this instrument <u>to effect a complete assignment</u> and transfer unto the party of the second part of

6   one-half of any salary or wage which the party of the first part may earn during any month

7   hereafter…'"  *Id.* at 452 (emphasis added).  The agreement failed to disclose many facts, which

8   were shown by parol evidence of the surrounding circumstances.  *Id.* at 453 [the agreement "fails

9   to disclose the true consideration, or the circumstances of the parties." ]

10   In examining the surrounding circumstances, the *Wells* Court explained that the plaintiff

11   had not treated the paragraph in question as an assignment of future wages: "It is an admitted fact

12   that respondent at no time treated the agreement of October 23, 1937, as an assignment, and that

13   she at no time ever presented the document to any employer of appellant, or in any other way

14   attempted to enforce it as an assignment."  *Id.* at 455.  Thus, the *Wells* Court held that the

15   agreement was <u>not</u> an assignment despite the language to the contrary, and that it instead was an

16   enforceable support agreement.  *Id.* at 455-456.

17   Similarly, as affirmatively alleged in the SAC, Elkwood, Fieldbrook, Ms. Guerrero,

18   Citivest and Mr. Mazzarino never treated the Fieldbrook Assignment as an assignment of the

19   entire PWB Note and the Rexford DOT, but instead only treated it as an assignment of the

20   Chalette DOT and $5.8 million of the PWB Note, with the balance being owed to Elkwood,

21   which continued to be secured by the Rexford DOT.

22   The *Wells* defendant, however, argued (as Plaintiff undoubtedly will argue here regarding

23   the PWB Note) that the above-quoted language of the assignment was clear in its face, so the

24   *Wells* Court could not interpret it as a support agreement: "The appellant assumes that the above

25   quoted agreement is clearly an agreement for the assignment of wages, and argues that where a

26   contract is clear on its face it is error to admit parol evidence for the purpose of ascertaining the

27   intent of the parties."  *Id.* at 456.  The *Wells* defendant mistakenly assumed that the Court's

28   inquiry should end with the assignment language.  The Court explained that it could look to

11

1  evidence of surrounding circumstances to interpret the assignment language:

2      The function of all interpretation is, of course, to try to ascertain the true intent of
3      the parties. Parol evidence should not be admitted to vary, to add to, or to subtract
       from the terms of a written agreement, but it should be, and is admissible, to
       explain what the parties meant by what they said.
4
       *Id.* at 456-457.

5
6  Ms. Guerrero's February 17, 2015 Memo necessarily provides evidence of what was

7  meant by the February 18, 2015 Fieldbrook Assignment.  This Court's inquiry also should not

8  end with the language of the Fieldbrook Assignment, just as the inquiry in *Wells* did not end with

   the language of the assignment before the *Wells* Court.
9
10  Similarly, in *Cristina v. Mattenberger*, 212 Cal. 670, 672 (1931), an attorney prepared a

11  note, chattel mortgage and assignment of the mortgage and note.  The issue before the California

12  Supreme Court was whether the assignment of the note was with recourse, *i.e.*, whether the

    assignor guaranteed the collectability of the note.  *Id.* at 674.  The Court characterized the
13
    assignment as a "full assignment" but nevertheless held that the "words are ambiguous." *Id.* at
14
15  675.  The trial court heard testimony from the attorneys for the assignor and assignee regarding

16  whether the assignment was intended to be without recourse and concluded that was the case.  *Id.*

    at 674-676.  In doing so, it held that the evidence of the surrounding circumstances was important
17
    to ascertain the parties' intent:
18
19      If there appears "extrinsic ambiguity" other evidence may be introduced, including
        the circumstances under which it was made, the situation of the subject of the
        instrument and of the parties to it. In connection with the full assignment in this
20      case, the words are ambiguous. The intent of the indorser then and the indorsee
        becomes a vital question.

21      *Id.* at 675.

22  See also, *Mission Valley East, Inc. v. County of Kern*, 120 Cal.App.3d 89, 97-100 (1981)

23  [holding that it was proper to consider extrinsic evidence to resolve whether an ambiguously

24  written assignment encompassed a particular item of property]

25  In this case, the "extrinsic evidence" is actually attached to the SAC in the form of the

26  contemporaneous February 17, 2015 Memo from Ms. Guerrero to the foreclosing trustee.  It

27  defines the meaning of the February 18, 2015 Fieldbrook Assignment.

28  As explained above, the First Claim is based upon the premise that the Rexford DOT was

12

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    assigned to Fieldbrook under the Fieldbrook Assignment because the PWB  Note was assigned to

2    Fieldbrook.  That premise necessarily fails because the February 17, 2015 Memo from Ms.

3    Guerrero contradicts that legal conclusion.  Plaintiff has not alleged that Elkwood intended to

4    assign the entire PWB Note to Fieldbrook, nor can it do so.  As such, the First Claim should be

5    dismissed without leave to amend.

6                     **d.        The Interpretation of the Fieldbrook Assignment Is Necessary**

7                              **at the Pleading Stage, and Should Not be Deferred for Later**

8                              **Fact-Finding.**

9            Again, Plaintiff must allege a plausible claim based upon reasonable inferences. The SAC

10    alleges the February 18, 2015 Fieldbrook Assignment and the contemporaneous February 17,

11    2015 Memo from Ms. Guerrero.  It alleges that Fieldbrook, Elkwood, Ms. Guerrero, Citivest and

12    Mr. Mazzarino all acted based upon the assignment of only $5.8 million of the PWB and the

13    Chalette DOT and upon the fact that the balance of the PWB Note and the Rexford DOT were not

14    assigned to Fieldbrook.  The factual allegations of the SAC actually and necessarily contradict the

15    alleged legal conclusion that the PWB Note accomplished an assignment of the entire PWB Note

16    and, therefore, an assignment of the Rexford DOT.

17            Defendants acknowledge the general rule that "'a district court may not consider any

18    material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  *Lee v. City of Los Angeles,*

19    250 F.3d 668, 688 (9th Cir. 2001).  The *Lee* Court explained two exceptions to that rule, the first

20    of which is relevant here:

21            There are, however, two exceptions to the requirement that consideration of
         extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion.
22         First, a court may consider "material which is properly submitted as part of the
         complaint" on a motion to dismiss without converting the motion to dismiss into a
23         motion for summary judgment. *Branch,* 14 F.3d at 453 (citation omitted). If the
         documents are not physically attached to the complaint, they may be considered if
24         the documents' "authenticity ... is not contested" and "the plaintiff's complaint
         necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th
25         Cir.1998).

26            *Id*. at 688, emphasis added.

27            In *Lee*, the Ninth Circuit ruled that the district court had improperly granted a Rule

28    12(b)(6) motion to dismiss after taking into consideration extrinsic evidence that was not attached

13

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1   to the complaint and judicial notice of disputed matters.  *Id.* at 690.   Here, however, the extrinsic

2   evidence (the February 17, 2015 Memo) is attached to the SAC, and the SAC alleges that Citivest

3   was advised of that Memo and that Jack Nourafshan "confirmed those instructions by e-mail to

4   Ed Mazzarino ('Mazzarino'), a principal of Citivest, dated February 25, 2015."  [SAC, ¶62][1]

5          Analogous facts were presented to the Court in *Citadel Grp. Ltd. v. Washington Reg'l*

6   *Med. Ctr.*, 692 F.3d 580 (7th Cir. 2012), in which the Court granted summary judgment to the

7   defendant on a breach of contract claim.   The defendant presented undisputed extrinsic evidence

8   that established that the alleged contract to complete a project on which the plaintiff had sued for

9   lost profits was not a contract to do so, but instead was a preliminary agreement.  *Id.* at 587-588.

10  The Court held: "Even when a contract is ambiguous, as long as the extrinsic evidence bearing on

11  the interpretation is undisputed and leads to only one reasonable interpretation, we can decide the

12  matter on summary judgment."  [Citing *Cont'l Cas. Co. v. Nw. Nat. Ins. Co.,* 427 F.3d 1038, 1041

13  (7th Cir.2005)]  *Id.* at 587.   Thus, applying the law to undisputed facts, the *Citadel* Court granted

14  summary judgment.   Similarly, Rule 12(b)(6) requires this Court to apply the law to the

15  undisputed facts, *i.e.*, the Fieldbrook Assignment as construed based upon the undisputed

16  February 17, 2015 Memo, and that warrants dismissal of the First Claim.

17         Thus, the First Claim should be dismissed.   This issue cannot be deferred to see what the

18  evidence will show at trial.   Otherwise, every complaint that fails to state a claim based upon

19  unreasonable inferences that are contradicted by the complaint and the exhibits to the complaint

20  could be "saved" from dismissal in that manner.   Ninth Circuit law does not permit this Court to

21  draw unreasonable inferences for purposes of a Rule 12(b)(6) motion.

22         Leave to amend should not be granted for two reasons.   First, Plaintiff now has had three

23  opportunities to properly allege the First Claim, and still has failed to do so.   More importantly,

24  the February 17, 2015 Memo from Thelma Guerrero clearly evidences that in executing the

25  Fieldbrook Assignment on February 18, 2015, Ms. Guerrero only meant to assign $5.8 million of

26  the PWB Note to Fieldbrook along with the Chalette DOT and that she did not assign the balance

27  of the PWB Note, but instead meant for that to remain with Elkwood and secured by the

28  _____

[1] Plaintiff alleges that "Elkwood and Fieldbrook are controlled by Jack Nourafshan…."  [SAC, ¶7]

14

1    unassigned Rexford DOT.  Again, as alleged by Plaintiff, Jack Nourafshan confirmed that.

2         **2.    Plaintiff Has Failed to Meet the Threshold Requirement of Paying or**

3              **Tendering $782,508.05 to Elkwood.**

4              **a.    The General Rule Requires Tender.**

5         Plaintiff conceded this general rule in opposition to the motion to dismiss his FAC.  The

6    Court's September 28, 2017, noted this rule, citing *Lona v. Citibank, N.A.,* 202 Cal.App.4th 89,

7    112 (2011) ("*Lona*"), in which the Court stated: "as a condition precedent to an action by the

8    borrower to set aside the trustee's sale on the ground that the sale is voidable because of

9    irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the

10   debt for which the property was security."

11        Plaintiffs First Claim fails to allege that the Plaintiff has paid or tendered the full amount

12   due at the time of the Rexford Foreclosure Sale, which was the credit bid amount of $782,508.05.

13   [SAC, ¶72, Exh. H]  Plaintiff concedes that he has not done so.

14             **b.    The "Inequitable Exception" Does Not Apply.**

15        The *Lona* Court explained four exceptions to the tender requirement. The only exception

16   that conceivably could apply is the third one, which Defendants referred to as the "inequitable

17   exception," but the decision in *Fonteno v. Wells Fargo Bank, N.A.,* 228 Cal.App.4th 1358, 1372,

18   1374 (2014), explained that the exception is limited:

19         Excusing tender based on equitable considerations is one of the exceptions to the
20         tender rule discussed in *Lona*.  Specifically, "a tender may not be required where it
           would be inequitable to impose such a condition on the party challenging the sale."

21         [¶]….Plaintiffs here are not required to tender payment of the delinquent amount
           owed on their secured debt in order to seek the equitable cancellation of the
22         trustee's deed. To do so would be to defeat the purpose of paragraph 9 of the deed
           of trust and the relevant HUD regulations. The parties agreed that, should plaintiffs
23         default, they would attempt to meet face-to-face to discuss loan modifications
           before any authority to foreclose accrued…. In other words, defendants could not
24         proceed with foreclosure without first attempting to discuss alternatives with
           plaintiffs, even though plaintiffs could not tender the full amount owed. To require
25         plaintiffs now to make such a tender in order to obtain cancellation of a sale
           allegedly conducted in disregard of this condition precedent and without any legal
26         authority is inequitable under the circumstances. [Citation]

27        No such circumstances exist here.  Citevest could proceed with the foreclosure.  Plaintiff

28   has alleged irregularities in connection with the Rexford Foreclosure Sale, but that is not enough

15

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  to render the tender requirement inequitable. *Lona*, 202 Cal.App.4th at 112 ["as a condition

2  precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is

3  voidable <u>because of irregularities in the sale notice or procedure</u>, the borrower must offer to pay

4  the full amount of the debt for which the property was security." (emphasis added)] If there was

5  an exception for "irregularities in the sale notice or procedure," the exception would completely

6  swallow the rule.

7      Defendants made the foregoing argument in their motion to dismiss the First and Second

8  Claims in Plaintiff's FAC.  In opposition, Plaintiff acknowledged the general rule that required

9  tender.  "'The rationale behind the rule is that if [the borrower] could not have redeemed the

10  property had the sale procedures been proper, any irregularities in the sale did not result in

11  damages to the [borrower].' [Citation]" *Lona,* 202 Cal.App.4th at 112 (2011).  Plaintiff also did

12  not dispute that alleged irregularities in connection with the Rexford Foreclosure Sale does not

13  make the "inequitable" exception applicable. *Id.*

14      In his prior Opposition, Plaintiff argued that the applicability of this exception cannot be

15  determined at the pleading stage.  Plaintiff is incorrect.  If no facts are alleged that would make it

16  inequitable for Plaintiff to be required to comply with the tender rule, which is the case here, the

17  lack of payment or tender renders the First Claim inherently defective and subject to dismissal.

18  *Davenport v. Seattle Bank*, 2015 WL 4886393, at *6 (C.D. Cal. Aug. 14, 2015) ["Where Plaintiff

19  has not alleged any tender, nor provided any facts to suggest why Plaintiff is excused from

20  tendering, the Court finds that Plaintiff fails to state a claim to set aside the trustee's sale, and

21  DISMISSES Plaintiff's fourth cause of action, with leave to amend."]; *Gyene v. Steward Fin.,*

22  *Inc.*, 2013 WL 146191, at *9 (C.D. Cal. Jan. 11, 2013) ["Plaintiff does not allege any facts to

23  support the claim that application of the tender requirement here would be inequitable….As they

24  again fail to allege tender and thus fail adequately plead a quiet title claim, this claim is dismissed

25  with prejudice as to moving Defendants."]; *Richards v. Deutsche Bank Nat'l Trust Co.*, 2013 WL

26  12124125, at *5 (C.D. Cal. Jan. 8, 2013) [same].

27      In arguing the equities, Plaintiff contended that it would be inequitable to apply the tender

28  rule because (1) he is a trustee for Massoud's creditors, who was "appointed long after the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    Rexford Foreclosure Sale"; and (2) "Massoud had no intention or desire to tender payment to

2    Elkwood at the time of the Rexford Foreclosure Sale but rather, wished to steer the property into

3    the hands of a friendly third party, to the detriment of his creditors." [Docket no. 22, at 8:11-16]

4        As a matter of law, these facts do not state circumstances making the imposition of the

5    tender rule inequitable. The second point regarding Massoud is irrelevant. Massoud is not the

6    party suing. Further, payment or tender must be made by the Plaintiff as a condition to

7    maintaining a claim to set aside a trustee's sale, not pre-foreclosure.

8        In essence, Plaintiff's first point is that bankruptcy trustees should be exempt from the

9    tender requirement. There is no authority that supports that contention. "In the usual foreclosure

10   case it thus makes sense to require a plaintiff in default to tender because without a tender, the

11   plaintiff will recover the property but remain in default…." *Solomon v. Aurora Loan Servs. LLC,*

12   2012 WL 2577559, at *9 (E.D. Cal. July 3, 2012), citing *Arnolds Mgmt. Corp. v. Eischen,* 158

13   Cal.App.3d 575, 579 (1984). That is exactly what Plaintiff is trying to accomplish by his First

14   Claim. "'The rules which govern tenders are strict and are strictly applied.'" *Eisan v. Wells*

15   *Fargo Bank,* 2013 WL 12173939, at *7 (N.D. Cal. Feb. 19, 2013), citing *Nguyen v. Calhoun,* 105

16   Cal.App.4th 428, 439 (2003).

17       The fact that Plaintiff may be without funds to satisfy the tender requirement is irrelevant.

18   *Aguiar v. Wells Fargo Bank,* N.A., 2012 WL 5915124, at *5 (N.D. Cal. Nov. 26, 2012)

19   [allegation that the plaintiff was "out of work" when the foreclosing lender initiated the

20   foreclosure proceedings was insufficient to make the tender rule inapplicable.]

21       Plaintiff cited *Chavez v. Indymac Mortg. Servs.*, 219 Cal.App.4th 1052, 1063 (2013). In

22   that case, the Court described the tender rule and the exceptions, but it did not apply the

23   "inequitable" exception. The *Chavez* Court cited the *Lona* decision, which was quoted in

24   Defendants' motion to dismiss the FAC. In *Lona*, the Court cited *Humboldt Savings Bank v.*

25   *McCleverty*, 161 Cal. 285, 291 (1911), as authority for the "inequitable" exception to the tender

26   rule. It explained that the exception is met where a plaintiff should not be required to tender an

27   amount for which it is not liable:

28       Third, a tender may not be required where it would be inequitable to impose such a

17

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

condition on the party challenging the sale. (*Humboldt Savings Bank v. McCleverty* (1911) 161 Cal. 285, 291, 119 P. 82 (*Humboldt* ).) In *Humboldt*, the defendant's deceased husband borrowed $55,300 from the plaintiff bank secured by two pieces of property. The defendant had a $5,000 homestead on one of the properties. (*Id*. at p. 287, 119 P. 82.) When the defendant's husband defaulted on the debt, the bank foreclosed on both properties. In response to the bank's argument that the defendant had to tender the entire debt as a condition precedent to having the sale set aside, the court held that it would be inequitable to require the defendant to "pay, or offer to pay, a debt of $57,000, for which she is in no way liable" to attack the sale of her $5,000 homestead. [footnote] (*Id*. at p. 291, 119 P. 82.)

*Lona*, 202 Cal.App.4th at 113.

Those circumstances do not exist here.  Massoud was liable to Elkwood for $782,508.05 under the PWB Note at the time of the Rexford Foreclosure Sale.  His Chapter 11 estate would be similarly liable for that amount, if the Sale is avoided.  That debt does not simply disappear. Under 11 U.S.C. § 323, Plaintiff has the right to sue on behalf of Massoud's estate.  In that capacity, it makes sense to impose the tender rule upon him. In *Aguirre v. Wells Fargo Bank, N.A*., 2015 WL 4065245, at *12 (C.D. Cal. July 2, 2015), the Court explained that the "inequitable" exception to the tender rule did not apply where the plaintiff was "fully liable for the amount of the debt."  Similarly, in *Simmons First Nat'l Bank v. Lehman,* 2015 WL 1503437, at *6 (N.D. Cal. Apr. 1, 2015), the Court held that the "inequitable" exception did not apply to a plaintiff, who was not personally liable for a debt, but who was a member of the limited liability company that benefitted from the loan.  The exception similarly does not apply to Plaintiff, so the First Claim fails to state a claim due to Plaintiff's noncompliance with the tender rule.

In its September 28, 2017 Memorandum , the Court ruled that the tender requirement did not apply to the First Claim, *if* the Rexford Foreclosure Sale Deed was void on its face, but it held that the Plaintiff had not yet alleged sufficient facts in  the First Claim to support that conclusion:

> In the first claim for relief (Quiet Title), the Plaintiff alleges that the foreclosing beneficiary was a stranger to the debt and thus the foreclosure sale of Rexford and the deed given as a result of that sale are both void. The allegations are that Elkwood had assigned the Rexford DOT to Fieldbrook, but it was Elkwood that foreclosed on Rexford. *In re Cedano*, 470 B.R. 522, 530 (B.A.P. 9th Cir. 2012) (one of the many cases dealing with MERS) held that "to the extent the Debtor alleged that the foreclosure was substantially defective because unauthorized persons initiated the procedure, rendering the sale void, he has met one of the exceptions to the requirement of tender."

> If the Plaintiff successfully amends the FAC to support his contention that Fieldbrook was the owner of the Rexford DOT or the entire Note at the time of the

18

1    foreclosure sale, then no offer to tender is required and the motion to dismiss the
first claim for relief as to tender would be denied.

2

3    [Docket no. 34, at 21:22-22:6]

4    In this Motion, Defendants already have addressed the issue of whether Plaintiff now has

5    amended his First Claim to sufficiently state a claim. The issue of whether the Rexford

6    Foreclosure Sale Deed was "void" will be addressed below.

7    **c.**    **The Rexford Foreclosure Sale Deed Was Not Void On Its Face,**

8    **So the Fourth *Lona* Exception Does Not Apply.**

9    The Court's September 28, 2017 Memorandum noted that the fourth *Lona* exception to

10   the tender rule applies when "[t]he trustee's deed is void on its face."  [Docket 34, at 21:17]

11   Assuming that the Trustee could sufficiently allege his First Claim, the Rexford

12   Foreclosure Sale and Deed only would be "voidable."   In *Little v. CFS Serv. Corp.*, 188

13   Cal.App.3d 1354, 1358 (1987), the Court explained that for a trustee's sale to be void, there must

14   be a violation of a statute applicable to the conduct of the sale:

15       The general rule in the United States on voidness or voidability of sale is set out in
55 American Jurisprudence Second: "[D]efects and irregularities in a sale under a
16       power render it merely voidable, and not void.... However, substantially defective
sales have been held void where the defect lay in a particular as to which the
17       statutory provision was regarded as mandatory...." (55 Am.Jur.2d Mortgages, §
746, p. 673.) "A sale under a power in a mortgage without reasonable notice will
18       be set aside." (*Ibid.*, § 775, p. 691.)

The defect alleged in the First Claim regarding the assignment of the PWB Note is not a

19   defect "in a particular as to which the statutory provision was regarded as mandatory."

20   Plaintiff previously cited *Yvanova v. New Century Mortg. Corp.*, 62 Cal.4th 919, 927-928

21   (2016), for the proposition that the Rexford Foreclosure Sale Deed was void.  In the portion of

22   that decision that Plaintiff quoted, the Court stated: "if the borrower defaults on the loan, only the

23   current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process."  As

24   explained above, Elkwood was still the record holder and beneficiary of the Rexford DOT at the

25   time of the Rexford Foreclosure Sale, which means it had the right to "direct the trustee to

26   undertake the nonjudicial foreclosure process."

27   The question before the Court in *Yvanova* was very different than the one before this

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

Court.  In *Yvanova*, the plaintiff sued for wrongful foreclosure on the theory that the assignment

of the note and deed of trust to the foreclosing party was void.  The decision mainly discussed the

issue of standing.  The Court stated: "We conclude a home loan borrower has standing to claim a

nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party

purportedly took a beneficial interest in the deed of trust was not merely voidable but void,

depriving the foreclosing party of any legitimate authority to order a trustee's sale." *Yvanova v.*

*New Century Mortg. Corp.*, 62 Cal.4th 919, 942-943.  See *Saterbak v. Nat'l Default Servicing*

*Corp.*, 2016 WL 4430922, at *7, n.3 (S.D. Cal. Aug. 22, 2016) ["*Yvanova* issued a narrow ruling

that applies only to circumstances where a plaintiff can challenge a void assignment…."]  Thus,

*Yvanova* might support Plaintiff's standing to allege that the Fieldbrook Assignment was <u>void</u>,

but Plaintiff alleges that the Assignment was <u>valid</u>.

Plaintiff instead attacks the Rexford Foreclosure Sale Deed and the underlying sale on

grounds that Elkwood no longer was owed anything under the PWB Note because it had been

assigned to Fieldbrook under the Fieldbrook Assignment.  That has been addressed above.

Further, the *Yvanova* decision suggests that this is a matter between Elkwood and Fieldbrook on

which the Plaintiff lacks standing because Elkwood and Fieldbrook could (and obviously would)

ratify the Rexford Foreclosure Sale to the extent necessary.  "When an assignment is merely

voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment;

the transaction is not void unless and until one of the parties takes steps to make it so." *Yvanova*

*v. New Century Mortg. Corp.*, 62 Cal.4th at 936.  See, *Meixner v. Wells Fargo Bank, N.A.*, 2016

WL 3277262, at *6 (E.D. Cal. June 14, 2016) ["a borrower does not have standing to challenge

defects in trust assignments that are merely voidable." (Citing *Yvanova*)]

The Court's September 28, 2017 Memorandum, however, held that the fourth exception

applied, if Plaintiff amended his First Claim to sufficiently state a claim because the Rexford

Foreclosure Sale Deed would be void on its face, assuming well-pleaded facts to be true.  In that

regard, the Court cited the *Cedano* decision:

> In the first claim for relief (Quiet Title), the Plaintiff alleges that the foreclosing
> beneficiary was a stranger to the debt and thus the foreclosure sale of Rexford and
> the deed given as a result of that sale are both void. The allegations are that

Elkwood had assigned the Rexford DOT to Fieldbrook, but it was Elkwood that foreclosed on Rexford. In *re Cedano*, 470 B.R. 522, 530 (B.A.P. 9th Cir. 2012) (one of the many cases dealing with MERS) held that "to the extent the Debtor alleged that the foreclosure was substantially defective because unauthorized persons initiated the procedure, rendering the sale void, he has met one of the exceptions to the requirement of tender."

If the Plaintiff successfully amends the FAC to support his contention that Fieldbrook was the owner of the Rexford DOT or the entire Note at the time of the foreclosure sale, then no offer to tender is required and the motion to dismiss the first claim for relief as to tender would be denied.

[Docket no. 34, at 21:22-22:6]

*Cedano* was the only authority cited in the Court's September 28, 2017 Memorandum for the proposition that the Rexford Foreclosure Sale Deed would be void, if the First Claim is sufficiently alleged. *Cedano*, however, was not cited by any of the parties in connection with Defendants' motion to dismiss Plaintiff's FAC, so this is Defendants' first chance to address it.

In *Cedano*, a Chapter 13 debtor-borrower filed an adversary proceeding against parties allegedly involved in a nonjudicial foreclosure sale of his home and the subsequent recording of trustee's deed, seeking to recover on variety of theories, including wrongful foreclosure and slander of title. Defendants filed motion to dismiss for failure to state a claim. The Court granted the defendants' motion, and the BAP affirmed that ruling on appeal. On appeal, the BAP described the fourth exception: "tender is not required when the trustor does not rely on equity to attack the deed, such as, where the trustee's deed is void on its face. (Citations)." *In re Cedano*, 470 B.R. 522, 529 (B.A.P. 9th Cir. 2012).

*Cedano* does not support the proposition that the Rexford Foreclosure Sale Deed is void. Initially, the *Cedano* Court's holding is *dicta*. The Court ruled that "[t]he allegations and documents establish MERS's authority to foreclose on the Property' and that "[t]he Debtor has not alleged facts that demonstrated MERS was not authorized to initiate foreclosure proceedings." *Id.* at 531. As such, the Court did not need to reach the question of whether the trustee's deed was void or voidable, given that MERS had authority to foreclose.

Second, in *dicta*, *Cedano* conceded the general rule that that trustee's deeds generally are voidable, rather than void, due to irregularities in trustee's sales:

The Complaint alleged that "[a]lthough the Trustee's Deed Upon Sale appears valid on its face, it is invalid and void" because the foreclosure was not authorized

21

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

by the beneficiary of the Note and DOT. Although "void," "voidable," and "invalid" are often used interchangeably, the "general rule" is that defects and irregularities in a sale render it merely voidable and not void.  [Footnote] *Little*, 188 Cal.App.3d at 1358, 233 Cal.Rptr. 923. However, substantially defective sales have been held to be void. *Id.* We must accept facts and reasonable inferences in favor of the Debtor. *Maya,* 658 F.3d at 1068. Therefore, to the extent the Debtor alleged that the foreclosure was substantially defective because unauthorized persons initiated the procedure, rendering the sale void, he has met one of the exceptions to the requirement of tender.

Third, the case law cited in *Cedano* made it clear in *dicta* that a "substantially defective sale" occurs when the borrower/trustor and lienholders are not provided required statutory notice. *Cedano* cited *Little v. CFS Serv. Corp.*, 188 Cal.App.3d 1354, 1358 (1987), for the proposition that "substantially defective sales" are void.  The *Little* Court explained what is meant by a "substantially defective sale."  It is a sale scheduled without notice to the borrower/trustor and other lienholders.  *Little* cited Am.Jur.2d, rather than California case law, in that regard:

> However, substantially defective sales have been held void where the defect lay in a particular as to which the statutory provision was regarded as mandatory...." (55 Am.Jur.2d Mortgages, § 746, p. 673.) "A sale under a power in a mortgage without reasonable notice will be set aside." (Ibid., § 775, p. 691.)

> *Little*, 188 Cal.App.3d at 1358.

The Court acknowledged that the distinction between a defective sale and a substantially defective sale was unclear, but that lack of statutory notice was a substantial defect:

> No case draws a bright line between a major and a minor notice defect so as to dictate a certain result. A full range of notice defects is alleged in both lines of cases, from no notice of any kind of the ultimate sale date (citations) to inadequate posting on the property to be sold (citations).

> *Id.* at 1358-1359.

Thus, the cited cases supported the proposition that where the borrower/trustor did not even receive notice due to inadequate posting of the notice of sale, that is a "substantial defect." The *Little* Court explained that the conclusive presumption of validity of the sale is inapplicable in those circumstances: "Where there has been a notice defect and conclusive presumption language in a deed *along with* recitals as to the various postponements of a sale, the court has held the sale void on the basis that the deed showed that proper notice could not have been given." *Id.* at 1359, underlining added.

In *Little*, the Court was faced with a lack of notice to the trustor and other lienholders:

22

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1

Thus there is no conclusive presumption that the sale was properly noticed. This factor aligns our case with those that have held sales with defective notice void.

We are satisfied with this result under the particular facts before us. <u>Under both the trust deed and under statute, our case involves a very substantial notice defect, the complete lack of notice to the trustor, the junior lienor, and the judgment creditor.</u> The trust deed requires that prior to conducting a trustee's foreclosure sale the trustee is to give "notice of sale ... as then required by law." The relevant statute, Civil Code section 2924b, subdivision (2)(b), provided (and now provides, renumbered as 2924b, subd. (b)(2)):

*    *    *

<u>In the instant case, the junior lienor and judgment creditor had duly filed for notice under 2924b, subdivision (2)(b).</u> They and the trustor could reasonably rely on the statutory scheme to give them sufficient notice to enable them to take steps to protect their various interests in the property to be sold. No notice at all was given. The lack of notice was clearly substantial and prejudicial.

When the trustee discovered the clerical notice error within a few days of the sale, it acted promptly by notifying the plaintiffs of the error and returning to them the moneys paid with interest.

*Id.* at 1360-1361, emphasis added.

The analysis of the *Little* Court, which the BAP relied upon in *Cedano*, makes sense.  If the borrower/trustor and other lienholders are not provided required statutory notice, they cannot even know to (1) cure defaults before the sale date; (2) take legal action to stay the sale, if appropriate; and/or (3) attend the sale.  The very point of statutory notice is missed when notice is not provided.  Those are the circumstances in which a trustee's sale is "substantially defective."

In stark contrast, in this case Plaintiff does <u>not</u> allege that notice of the Rexford Foreclose Sale was not given.  To the contrary, he affirmatively alleges: "On or about January 26, 2015, Citivest, as the trustee under the Rexford DOT, filed and served a Notice of Trustee's Sale (the 'Rexford Foreclosure Sale Notice') for the benefit of Elkwood."  [SAC, ¶68]

As such, the borrower/trustor (Massoud Yashouafar, as trustee of a family trust) [SAC, ¶19] received notice of the Rexford Foreclosure Sale, so he could protect his interest by taking action to (1) cure defaults before the sale date; (2) take legal action to stay the sale, if appropriate; and/or (3) attend the sale.  The sale was not "substantially defective" under California case law.

Instead, Plaintiff's First Claims is a based upon a "gotcha" theory, alleging that the purportedly broad assignment language of the Fieldbrook Assignment regarding the PWB Note meant as a matter of law that the Rexford DOT was assigned, so Massoud was accidentally

released from the balance of $782,508.05 owing under the PWB Note and Elkwood, therefore, was not entitled to conduct the Rexford Foreclosure Sale.  Assuming that Plaintiff sufficiently alleges his First Claim (which Defendants dispute), at most the Rexford Foreclosure Sale would be voidable, not void, as a matter of law.  The supposed defect in the Sale alleged by Plaintiff is not the type of "substantial defect" under which Massoud was not given notice of the sale.

That in turn means that the fourth exception under *Lona* is not presented by the First Claim and that the Rexford Foreclosure Sale is at best voidable.  As such, the general "tender rule" applies.  Plaintiff did not satisfy that rule, so the First Claim fails to state a claim.

Leave to amend should be denied.   Plaintiff has had three opportunities to sufficiently state a claim.  He alleged that notice of the Rexford Foreclosure Sale was given.  He has never suggested that proper notice of the Rexford Foreclosure Sale was not given in order to be able to claim that the Sale was void, and thereby avoid the need to tender the sum of $782,508.05 as a condition to maintaining the First Claim.

### d.    No Exception to the Tender Rule Exists Based Upon a "Promise to Pay Later."

In his opposition to the motion to amend the FAC, Plaintiff argued that he intends to reimburse Elkwood from the proceeds of the sale of Rexford Home, if he prevails in this adversary proceeding and later sells the Rexford Home.  There is no "promise to pay later" exception to the tender rule.  As this Court noted in its September 28, 2017 Memorandum, there are only four exceptions to the tender rule, and they do not include a "promise to pay later" exception.  [Docket no. 3, at 21:10-17]

Nor would such a newly-created exception make sense.  Every plaintiff could escape the tender rule with such a "promise to pay later," rendering the rule meaningless.  Moreover, such an exception is contrary to the point of the rule in actions to set aside trustee's sales : "Because the action is in equity, a defaulted borrower who seeks to set aside a trustee's sale is required to do equity before the court will exercise its equitable powers." *Lona*, 202 Cal.App.4th at 112.  As described above, Plaintiff is the successor to Massoud in making the First Claim.  He is subject to the same tender requirement as Massoud.  As discussed above, there is no fifth exception for

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  bankruptcy trustees.  Neither is an exception because Plaintiff lacks sufficient funds.

2        **e.        There Is No "Inequitable Exception" Based Upon This Case**

3              **Being Different from the Usual Circumstances.**

4        In suggesting a new fifth judicial exception to the tender rule, this Court's September 28,

5  2017 Memorandum reasoned that the following facts present the usual circumstance:

> While there are a variety of scenarios, usually the real property either has no equity
> beyond the foreclosing lien and/or the debtor does not have the ability to bring
> payments up to date. If the debtor were to prevail, s/he would only lose the
> property in a second foreclosure sale. Thus, it would be an exercise in futility to go
> forward with the complaint.

9        [Docket no. 34, at 33:24-28]

10       Plaintiff's opposition to Defendants' motion to dismiss the FAC did not make this

11  argument, so this Motion is Defendants' first opportunity to address it.

12       With due respect to the Court, *Lona*  and the cases cited by it do not suggest that the

13  tender requirement arises out of a fact scenario "usually" presented in actions to set aside trustee's

14  sales.  To the contrary, *Lona* makes clear that because the claim is in equity, the plaintiff must do

15  equity by tendering the full amount of the debt before proceeding with the claim.  Trustees do not

16  get a "pass" on the requirement of doing equity first before seeking equitable relief.

17       Because the tender rule does not depend upon a "usual" fact scenario, the Court's analysis

18  that the fact scenario before this Court does not "fit the mold" is not dispositive.  In that regard,

19  the Court's September 28, 2017 Memorandum stated:

> But this case does not fit that mold. First of all, it is the Chapter 11 Trustee who is
> seeking to set aside the sale. He is a fiduciary to the creditors and an officer of the
> court. While at the present time he does not have the money to tender a cure, there
> is no dispute that the property itself has enough equity to pay off the foreclosing
> lien as well as leave enough to pay junior liens (once the claims are finalized) and
> possibly even provide money for other creditors of the estate. The Trustee
> certainly does not intend to keep the property for his own use or to merely stall
> eviction.

24       [Docket no. 34, at 34:1-7]

25       Again, the facts that the trustee is a fiduciary and does not have money are not grounds to

26  ignore the tender rule in this case.  There is no special exception for bankruptcy trustees or other

27  representative parties, such as administrators or executors of probate estates.  Again, the lack of

28  funds does not render the tender rule inapplicable.  Indeed, if the plaintiff lacks funds and cannot

1    tender the debt owed, the plaintiff may not proceed with a claim to set aside a trustee's sale.

2        In support of its analysis, the Court cited *Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010

3    WL 2650492, *2 (N.D. Cal. 2010), for the proposition that it "demonstrates that the issue of

4    tender depends on the circumstances of the case." [Docket no. 34, at 34:8-22]  Plaintiff did not

5    cite this case in his Opposition to Defendants' motion to dismiss the FAC, so this Motion is

6    Defendant's first opportunity to address that case.  That decision simply describes the

7    "inequitable exception" to the tender rule that is discussed above.  As quoted by the Court,

8    *Kariguddaiah* cites *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911), for the

9    proposition that "]t]he requirement may be waived 'where it would be inequitable to exact such

10   offer of the party complaining of the sale.'"  That begs the question of what circumstances justify

11   the conclusion that it would be inequitable to impose the tender rule.

12       That issue is discussed above.  This Motion quotes *Fonteno v. Wells Fargo Bank, N.A.,*

13   228 Cal.App.4th 1358, 1372, 1374 (2014), which describes when the "inequitable exception"

14   applies.  In that case, the exception applied because requiring tender would "defeat the purpose of

15   paragraph 9 of the deed of trust and the relevant HUD regulations."  In that case:

16       The parties agreed that, should plaintiffs default, they would attempt to meet face-
         to-face to discuss loan modifications before any authority to foreclose accrued….
17       In other words, defendants could not proceed with foreclosure without first
         attempting to discuss alternatives with plaintiffs, even though plaintiffs could not
18       tender the full amount owed. To require plaintiffs now to make such a tender in
         order to obtain cancellation of a sale allegedly conducted in disregard of this
19       condition precedent and without any legal authority is inequitable under the
         circumstances. [Citation]

20       *Id.*

21       In short, it is not equitable to apply the tender rule when the parties agreed and applicable

22   regulations expressly provide that a lender may not proceed with foreclosure without first meeting

23   certain conditions.[2]  There is no such express agreement or regulation that imposed a condition

24   upon proceeding with the Rexford Foreclosure Sale, and Plaintiff alleges no such violation.

25       As noted above, as in *Lona* Court, the *Kariguddaiah*  Court also cited *Humboldt Savings*

26

27       [2] Similarly, in *Avila v. Stearnes*, 2008 U.S. Dist. LEXIS 31813 (C.D.Cal. Apr. 7, 2008), the Court
         found that Truth in Lending Act violations were so serious that the court did not condition rescission on a
28       showing of the ability to tender the entire lump sum to obtain a preliminary injunction.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  *Bank v. McCleverty*, 161 Cal. 285, 291 (1911), as authority for the "inequitable exception" to the

2  tender rule. As also described above, *Humboldt* does not support the application of the

3  "inequitable exception" to this case. As quoted above on page 18, the *Lona* Court explained the

4  facts in *Humboldt*. In *Humboldt*, a widowed defendant sought to set aside a trustee's sale of her

5  husband's property to protect her $5,000 homestead against property owned by her husband that

6  she did not own and that she had not borrowed against. As explained in *Lona*, the *Humboldt*

7  Court held that it would be inequitable to impose the tender requirement upon "defendant to 'pay,

8  or offer to pay, a debt of $57,000, for which she is in no way liable' to attack the sale of her

9  $5,000 homestead." *Lona*, 202 Cal.App.4th at 113. Thus, widow in *Humboldt* was in the

10  untenable position of having to tender a much larger debt of another to save her homestead, when

11  the sale of other real property collateral would have satisfied the debt.

12  Thus, in the unusual circumstances of the *Humboldt* case, the tender requirement was not

13  applied to someone that did not own the property, that had no liability for the debt and that had

14  not bargained for a position in which she might have to pay that debt to prevent foreclosure, such

15  as a junior trust deed holder.[3] In contrast, Plaintiff claims an interest in the Rexford Home on

16  behalf of Massoud's estate. Further, Plaintiff and the Court agree that Plaintiff would be liable

17  for the debt and would be liable to repay it, but that Plaintiff lacks funds to do so at this time.

18  Again, lack of funds is not an exception to the tender rule. Similarly, in *Gill v. Wells Fargo Bank,*

19  *N.A.,* 2011 WL 2470678, at *5 (E.D. Cal. June 20, 2011), the Court held: "*Humboldt* is

20  inapplicable here because Plaintiffs actually owed the debt." Accord, *United States Cold Storage*

21  *v. Great Western Savings & Loan Assn.*, 165 Cal.App.3d 1214, 1223 (1985) ["*Humboldt* provides

22  at least some support for the notion that one not liable for a debt is not required to tender as a

23  prerequisite to an attack on a foreclosure sale"]; *Roman v. Vericrest Fin., Inc.*, 2013 WL

24  12133646, at *5 (C.D. Cal. Apr. 30, 2013) [same].

25  The Court's September 28, 2017 Memorandum also cited *Karlsen v. Am. Sav. & Loan*

26  ───────────────────

27  [3] In *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 579 (1984), the Court held that *Humboldt* is not applicable to junior lienholders even though they are no are not "personally responsible for the senior obligation," and that is because "the statutory scheme concerning nonjudicial foreclosures contemplates that in order to protect his interest, the junior lienor shall pay the trustor's obligation to the senior lienor."

28

*Ass'n*, 15 Cal.App.3d 112 (1971), in support of applying the "inequitable exception" to the tender

rule. *Karlsen* also was not cited in Plaintiff's opposition to Defendants' motion to dismiss his

FAC. In *Osei v. GMAC Mortg.,* 2010 WL 2557485, at *6 (E.D. Cal. June 21, 2010), the Court

described the relevance of the *Karlsen* decision:

> "A valid and viable tender of payment of the indebtedness owing is essential to an
> action to cancel a voidable sale under a deed of trust." *Karlsen v. Am. Sav. & Loan
> Ass'n,* 15 Cal.App.3d 112, 92 Cal.Rptr. 851, 854 (Ct.App.1971) (citations
> omitted). "The overwhelming majority of California district courts utilize the
> *Karlsen* rationale in examining wrongful foreclosure claims." (Citations).

Significantly, the *Osei* Court relied upon *Karlsen* and distinguished *Humboldt* in

concluding that the plaintiff's allegation that the defendant was not entitled to proceed with

foreclosure – due to the fact that the defendant did not have the original of the note – did not

except the plaintiff from the tender rule under the "inequitable exception." The *Osei* Court stated:

> Plaintiff argues that under *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291,
> 119 P. 82 (1911), "a tender need not be made where it would be inequitable to do
> so," adding that "tender is not required when the owner's action attacks the
> validity of the underlying debt because the tender would constitute an affirmation
> of the debt." (Pl.'s Opp'n 13:22–14:2.) However, courts have held otherwise. See,
> e.g. *Montoya*, 2009 WL 1813973, at (dismissing plaintiff's wrongful foreclosure
> claim because plaintiff failed to allege that loan amount was tendered, despite
> plaintiff's claim that the loan was invalid); *Williams v. Countrywide Home Loans,
> Inc.,* No. C 99–0242, 1999 WL 740375, at *2 (N.D.Cal. Sept. 20, 1999) (granting
> defendant loan servicer's motion for summary judgment on plaintiff's wrongful
> foreclosure claim because plaintiff failed to allege that loan amount was tendered,
> despite plaintiff's claim that the loan was invalid). Furthermore, Defendant
> rightfully contends that Plaintiff "fails to identify any allegations that would show
> it would be inequitable to require him to make an offer of tender." (Reply 7:4–6.)
> Thus, Plaintiff fails to adequately allege a cause of action for wrongful foreclosure.

*Id.* at *6.

The analogy to the First Claim is apparent. Plaintiff attacks the "validity of the underlying

debt" in asserting that the PWB Note had been assigned to Fieldbrook prior to the Rexford

Foreclosure Sale. That is not grounds to apply the "inequitable exception" to the tender rule.

## f.    There Is No "Hypothetical Tender" Rule Based Upon a
## Probability of Paying Later.

The Court cites *Karlsen* in its September 28, 2017 Memorandum for the proposition that

the tender rule is not satisfied when the plaintiff has a "mere hope and speculation" of payment

from subsequently-available funds. [Docket no. 34, at 35:4-26] From that, the Court draws the

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1    conclusion that Plaintiff has satisfied the tender requirement because he has much more than a

2    "mere hope and speculation" of paying Elkwood from the potential sale proceeds of the Rexford

3    Home, if he recovers it in this litigation.

4        With due respect, the Court's reading of *Karlsen* dilutes the tender requirement far beyond

5    what *Karlsen* stated, and it certainly is contrary to the general tender rule described in *Lona* and

6    other cases.  The tender requirement has nothing to do with whether there is more than "a mere

7    hope and speculation" of paying the debt.  The rule is a bright line:  the debt must be tendered

8    <u>before</u> the lawsuit is commenced, <u>unless</u> one of the four exceptions apply.  There is no

9    "hypothetical tender" rule that allows for satisfaction of the tender requirement by showing a

10    probability of being able to pay the debt, if the plaintiff prevails in the litigation and then sells or

11    refinances the property.  As quoted by the Court in its September 28, 2017 Memorandum,

12    *Karlsen* stated: "Simply put, if the offeror '…is without the money necessary to make the offer

13    good and knows it…' the tender is without legal force or effect. (Citations)."  *Karlsen*, 15

14    Cal.App.3d at 118.  *Karlsen* further stated: "A valid and viable tender of payment of the

15    indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  *Id.*

16    at 117.

17        Moreover, the "hypothetical tender" rule would be unworkable.  It would necessitate

18    allegations and proof of the value of the property, the debt owed against it, and the willingness of

19    the owner to sell or refinance the property and then pay the debt if the owner prevailed.  Every

20    plaintiff could allege such facts rendering the tender rule pointless at the pleading stage.

21        The "inequitable exception" to the tender rule is not an unlimited excuse for courts to

22    release plaintiffs from the tender rule when Courts feel that it is appropriate.  To the contrary, the

23    exception only has been applied in very limited circumstances, none of which are similar to those

24    before this Court.  Plaintiff has failed to satisfy the tender rule, which applies to the First Claim

25    because it merely states a claim for the "voidable" sale.  As such, the First Claim fails to state a

26    claim upon which relief may be granted.  It should be dismissed without leave to amend.

27

28

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1

2

        **g.**        **The Court Should Reconsider Its Prior Analysis On Whether Plaintiff Satisfied The Tender Requirement.**

3       In large part, the Court's analysis of the tender issue in its September 28, 2017

4 Memorandum was based upon cases not previously cited by any party in connection with

5 Defendants' motion to dismiss Plaintiff's FAC and upon analysis not provided by Plaintiff, as

6 noted above.  This Motion is Defendants' first opportunity to address those cases and analysis.

7       Interlocutory rulings by the Court can always be changed.   Moreover, a court has the

8 inherent power to reconsider its own orders. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th

9 Cir.1996) ["[T]he interlocutory orders and rulings made pre-trial by a district judge are subject to

10 modification by the district judge at any time prior to final judgment."]  In light of the foregoing

11 analysis, Defendants request that the Court dismiss the First Claim without leave to amend.

12     **B.**      **The Second Claim to Set Aside the Rexford Foreclosure Sale and Rexford**

13           **Foreclosure Sale Deed Fails to State a Claim**

14       **1.**      **The Second Claim Still Fails to Allege Irregularities That Warrant**

15           **Setting Aside the Rexford Foreclosure Sale and Deed.**

16       Defendants' motion to dismiss the FAC explained why the supposed irregularities in the

17 Rexford Foreclosure Sale were not sufficient to set aside the Rexford Foreclosure Sale and the

18 related Deed.  The Court described the alleged irregularities as follows:

19       (1) Elkwood intentionally gave the impression that any bidder would need to bid at
      least $10 million on Rexford to have a real shot at purchasing the property; (2)

20       delayed recording of the assignment of the Rexford DOT and PWB Note; (3) the
      Rexford Foreclosure Notice incorrectly stated the sale was at the US Post Office

21       located on Grand Avenue in Los Angeles instead of at the Kenneth Hahn County
      Administrative Building which actually has that Grand Avenue address; and (4)

22       Citivest, at the time of the sale, was not authorized to act on Elkwood's behalf
      because Elkwood was no longer the beneficiary of the PWB Loan or the Rexford

23       DOT. Beyond that, Plaintiff incorporates all prior allegations in the FAC.

24       [Docket no. 34, at 25:28-26:9]

25       The Court explained why these allegations were insufficient.  [*Id.* at 27:13-29:1

26       The same allegations are made in the SAC.  The First Claim more specifically alleged the

27 legal conclusion that the Rexford DOT was necessarily assigned as a matter of law, so Elkwood

28 was not entitled to conduct the Rexford Foreclosure Sale.  That allegation is incorporated into the

1   Second Claim.  It is incorrect, as explained above, and it adds nothing to the Second Claim.  The

2   Second Claim continues to fail to allege sufficient irregularities to state a claim.

3                    **2.       Plaintiff Has Failed to Allege that Elkwood Was Not a BFP.**

4          In their motion to dismiss Plaintiff's FAC, Defendants argued pursuant Civil Code §

5   2924(c) that they were entitled to the conclusive statutory presumption that the Rexford

6   Foreclosure Sale was properly conducted because the related Deed contained the necessary

7   recital.  [SAC, Exh. H]  Plaintiff and the Court acknowledged that the presumption was the

8   starting point.  To be entitled to the presumption, Elkwood must have been a "bona fide

9   purchaser."

10         This Court explained: "[T]he two elements of being a BFP are that the buyer (1) purchase

11  the property in good faith for value, and (2) have no knowledge or notice of the asserted rights of

12  another. (The presumption, however, only applied to a buyer (1) purchase the property in good

13  faith for value, and (2) have no knowledge or notice of the asserted rights of another. (Citations)"

14  [Docket no. 34, at 29:5-10]

15         Plaintiff argued that Elkwood was not entitled to that presumption because it was a credit-

16  bidding lender.  Defendants cited law to the contrary.  *Kalnoki v. First Am. Tr. Servicing Sols.,*

17  *LLC*, 8 Cal.App.5th 23, 45 (2017), reh'g denied (Feb. 22, 2017), review denied (May 10, 2017);

18  *Royal Thrift & Loan Co. v. Cty. Escrow, Inc.*, 123 Cal.App.4th 24, 33 n.1 (2004); *Hohn v.*

19  *Riverside Cty. Flood Control & Water Conservation Dist.*, 228 Cal.App.2d 605, 607-608 (1964).

20  The Court's September 28, 2017 Memorandum acknowledged that "[t]he Court has not found any

21  cases that hold that the foreclosing creditor cannot be a BFP merely because it is also the

22  purchaser at the foreclosure sale and that this is done through a credit bid of all or a part of the

23  loan balance."  [Docket no. 34, at 29:11-13]  Plaintiff offered no such cases.

24         Plaintiff also argued that Elkwood's credit bid of $782,508.05 was not "value" for

25  purposes of the BFP test.  Defendants explained that value does <u>not</u> mean reasonably equivalent

26  value for purposes of BFP status.  "[T]he buyer need only part with something of value in

27  exchange for the property."  *Melendrez v. D&I Investment, Inc.*, 127 Cal.App.4th 1238, 1251-

28  1252 (2005).  The Court's September 28, 2017, acknowledged that "it appears that a credit bid

31

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  qualifies as 'value.'" [Docket no. 34, at 29:16]

2        Defendants also explained that the second factor (knowledge or notice of asserted rights

3  others) does not mean knowledge that someone owned the property or that there were other liens

4  on the property.  If it did, that would preclude buyers in most sales from being a BFP and,

5  therefore, subject sales to easy avoidance in violation of the policy of finality.  The knowledge in

6  question is knowledge of some sort of material irregularity, but that the buyer acquired the

7  property anyway at the trustee's sale.  *Melendrez*, 127 Cal.App.4th at 1242.  Plaintiff has not

8  alleged any such knowledge.

9        Unlike Plaintiff's opposition to Defendants' motion to dismiss the FAC, the Court's

10 September 28, 2017 Memorandum focused on one element of the BFP test, which is that a buyer

11 must acquire the property in "good faith."  The Court found that "[t]he term 'good faith' is

12 generally not defined in the cases," so it looked to a dictionary definition and to 11 U.S.C. §

13 523(a)(6) for guidance.  It also cited case law for the proposition that the purpose of the recording

14 law "is to protect those who honestly believe they are acquiring a good title, and who invest some

15 substantial sum in reliance on that belief."  [Docket no. 34, at 30:-31:1]

16       The Court then held that Plaintiff had alleged sufficient facts to suggest that Elkwood had

17 not acted in good faith: "They show an intent to transfer the property to a third party (Elkwood)

18 while allowing Massoud to remain there, to remove Rexford from potential execution by the

19 lienholders (some of whom were in litigation with Massoud), and to provide the Nourfashans

20 [sic] with a windfall from both Chalette and from Rexford (which their entity now owns for only

21 about 5% to 7% of its fair market value at the time of the foreclosure)."  [Docket no. 34, at 29:26-

22 30:3]  Defendants respectfully disagree.

23       Plaintiff alleges that Jack Nourafshan controlled Elkwood and that he is Massoud's

24 brother-in-law.  Defendants deny that any "free-rent" agreement was reached with Massoud

25 before or after the Rexford Foreclosure Sale, but if there was any such agreement, it does not bear

26 upon "good faith."  Why was it bad faith for Nourafshan to supposedly agree to allow his sister,

27 Massoud and their children to continue to reside rent-free in the Rexford Home?  Could he only

28 have shown good faith by leasing the property to another paying tenant or selling the property?

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

1  Supposedly removing "Rexford from potential execution by the lienholders (some of

2  whom were in litigation with Massoud)" also was not bad faith.  Those lienholder creditors had

3  notice of the sale.  They could have bid to acquire the Rexford Home.  It necessarily is the goal of

4  any foreclosing senior trust deed holder to foreclose out junior liens, but that is not bad faith.

5  The purported "windfall" is not indicative of bad faith.  The sales are presumed to have

6  been for fair value.  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S. Ct. 1757, 1765, 128

7  L.2d 556 (1994).  The sale occurred by public auction.  Anyone could have overbid.

8  In short, the SAC actually does <u>not</u> allege facts demonstrating a lack of good faith or

9  dishonesty by Elkwood.  As such, Plaintiff still has failed to allege that Elkwood was not a BFP.

10  That means that the insufficiently-alleged irregularities do not overcome the conclusive

11  presumption that the Rexford Foreclosure Sale was properly conducted.  And that means that the

12  Second Claim fails to state a claim.  It should be dismissed without leave to amend.

13  **3.   Plaintiff Has Failed to Join Necessary Parties.**

14  In granting leave to amend the FAC, the Court made it clear that the First Claim to quiet

15  title needed to be amended to add the other lienholders against the Rexford Home and to add

16  Citivest, as the foreclosing trustee.  [Docket no. 34, at 22-24]  As such, the title to the First Claim

17  states that the lienholders and Citivest are parties, but the title to the Second Claim states that it is

18  only against Elkwood and Fieldbrook.  The Court's analysis under F.R.C.P. 19 is equally

19  applicable to the Second Claim which, like the First Claim, seeks to set aside the Rexford

20  Foreclosure Sale and Deed, although on different grounds.  Those lienholders and Citivest also

21  should be parties to the Second Claim, if leave to amend the Second Claim is granted.

22  **C.   The Owner of the Chalette Home Is A Necessary Party to the Eighth and**

23  **Ninth Claims.**

24  The owner of the Chalette Home also should be a party to the Eighth and Ninth Claims to

25  avoid the sale of the Chalette Home.  While the Rexford Home remains owned by Elkwood,

26  Plaintiff correctly alleges that the Chalette Home was sold by Fieldbrook.  [SAC, ¶66]  Title to

27  the Chalette Home cannot be returned to Solyman Yashouafar's estate without making the current

28  owner a party to the Eighth and Ninth Claims.  Any judgment voiding the transfer as against

33

Fieldbrook would be meaningless because the current owner would not be bound by it and would

remain the owner.  F.R.C.P. 19(a)(1) states that a party must be joined if it is feasible if "in that

person's absence, the court cannot accord complete relief among existing parties *__or__* "that person

claims an interest relating to the subject of the action and is so situated that disposing of the

action in the person's absence may: (i) as a practical matter impair or impede the person's ability

to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring

double, multiple, or otherwise inconsistent obligations because of the interest."  That rule

obviously applies to the current owner of the Chalette Home.[4]

## IV.   __CONCLUSION__

Elkwood and Fieldbrook request that the Court dismiss the First and Second Claims

without leave to amend, and that the Court dismiss the Eighth and Ninth Claims with leave to

amend to enable Plaintiff to add the current owner of the Chalette Home as a defendant.[5]


DATED:   December 7, 2017          **HILL, FARRER & BURRILL LLP**


By: /s/ Daniel J. McCarthy
                    DANIEL J. McCARTHY
                    Attorneys for Defendants
                    ELKWOOD ASSOCIATES, LLC,
                    and FIELDBROOK, INC.

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

---

[4] F.R.C.P. 12(h) preserves a defendant's right to file a motion under F.R.C.P. 12(b)(7) and F.R.C.P. 19, even if the joinder defense was not raised in an earlier motion to dismiss.

[5] Defendants will answer all claims when Plaintiff's final operative complaint has been filed and it is no longer subject to challenge under Rule 12(b).  *Sun v. Rickenbacker Collections*, 2012 WL 2838782, at *2 (N.D. Cal. July 10, 2012) ["Pursuant to Fed.R.Civ.P. 12(a)(4)(A), if a defendant files a motion under Fed.R.Civ.P. 12 and 'the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action.' The majority of courts have held that Rule 12(a)(4)(A) also applies in circumstances where, as here, the defendant files a motion to dismiss that is only partially dispositive. "]

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 300 South Grand Ave., 37th Floor, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST, SECOND, EIGHTH AND NINTH CLAIMS IN THE SECOND AMENDED COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>December 7, 2017</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Henry S David hdavid@davidfirm.com, 8163836420@filings.docketbird.com
Ashley McDow  amcdow@bakerlaw.com
John W Lucas  jlucas@pszjlaw.com
Jeremy V Richards  jrichard@pszjlaw.com
Ronald Richards  ron@ronaldrichards.com
United States Trustee ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>December 7, 2017</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Geraldine Mund (Via Overnight Delivery)
U.S. Bankruptcy Court
21041 Burbank Boulevard, Suite 313
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 7, 2017 | Sonia Padilla | /s/ Sonia Padilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

35