FILED & ENTERED

JAN 25 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,<br><br><div align="right">Debtors.</div> | CHAPTER 11<br><br>Case No.:  1:16-bk-16-12255-GM<br><br>Adv No.:  1:17-ap-01040-MT<br><br>**MEMORANDUM RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date:      December 11, 2018<br>Time:      9:30 a.m.<br>Courtroom:  302 |
| DAVID K. GOTTLIEB, as Chapter 11<br>Trustee,<br><div align="right">Plaintiff,</div>   v.<br><br>ELKWOOD ASSOCIATES, LLC., *et al.*,<br><br><div align="right">Defendants.</div> | |
| AND RELATED COUNTER- AND<br>CROSS-ACTIONS | |

## I.      Introduction

This adversary action concerns the disposition of two properties located in

Beverly Hills, California (collectively, the "Properties"). The vast majority of the facts are

undisputed. The first property, 580 Chalette Drive, Beverly Hills, CA (the "Chalette

Property"), was previously owned by Solyman Yashouafar ("Solyman") through his

family trust. <u>Plaintiff's Statement of Uncontroverted Facts</u>, ¶ 5.[1] The second property,

910 Rexford Drive, Beverly Hills, CA (the "Rexford Property"), was previously owned by

Solyman's brother, Massoud Yashouafar ("Massoud"), through Massoud's own family

trust. <u>Id.</u> at ¶ 4. On March 20, 2009, the brothers executed a promissory note in favor of

Pacific Western Bank (the "PWB Note") in the principal amount of $6,551,575 secured

by, among other things, deeds of trust against the Chalette Property and the Rexford

Property (the "Chalette DOT" and "Rexford DOT," respectively). <u>Id.</u> at ¶¶ 6-8. It is the

subsequent assignment of the PWB Note and foreclosures on the Chalette DOT and

Rexford DOT that give rise to the instant motion.

On December 29, 2014, the PWB Note was purchased by Elkwood, <u>Id.</u> at ¶ 9, an

entity owned by Massoud's brother-in-law, Jack Nourafshan ("Nourafshan"), and

Nourafshan's brothers. Elkwood additionally purchased ancillary agreements and

documents relating to the PWB Note, Rexford DOT, and the Chalette DOT. <u>Id.</u> Within

two months, Elkwood moved to foreclose on both Properties. Elkwood caused Citivest

Financial Services, Inc. ("Citivest") to be substituted as the trustee under the Chalette

DOT and the Rexford DOT. <u>Id.</u> at ¶¶ 10, 21. Citivest filed and served a Notice of

Trustee's Sale under the Rexford DOT for the benefit of Elkwood, which was recorded

on or about January 26, 2015. <u>Id.</u> at ¶ 22. Citivest did the same with respect to the

Chalette DOT, again for the benefit of Elkwood, and recorded the notice the following

---

[1] Defendants Elkwood Associates, LLC ("Elkwood") and Fieldbrook, Inc. ("Fieldbrook") filed a statement of genuine issues indicating that there is no dispute as to the facts in ¶ 1-26 of the Plaintiff's Statement of Uncontroverted Facts.

day, January 27, 2015. Id. at ¶ 11-12. The foreclosure sale under the Chalette DOT was scheduled for February 20, 2015, while the foreclosure sale under the Rexford DOT was scheduled for February 23, 2015. Id. at ¶¶ 18, 24. However, before either foreclosure sale occurred, Elkwood executed an assignment of the Chalette DOT and PWB Note in favor of Fieldbrook on February 18, 2015 (the "Fieldbrook Assignment"). Id. at ¶ 13. The effect of the Fieldbrook Assignment and exactly which rights were assigned by it (for example, the right to foreclose under the Rexford DOT), is a central issue in this litigation and will be discussed in detail below.

At the Chalette foreclosure sale on February 20, Citivest submitted an opening credit bid of $5.8 million on behalf of Fieldbrook, the new beneficiary under the PWB Note. Id. at ¶ 18. No other bids were taken, and the Chalette Property was sold to Fieldbrook. Id. On February 23, 2015, Citivest conducted a foreclosure sale of the Rexford Property. Citivest opened bidding with a $782,508.05 credit bid on behalf of Elkwood and received no other bids. Id. at ¶ 24. On February 25, 2015, Citivest executed a Trustee's Deed Upon Sale, purportedly transferring the Rexford Property to Elkwood. The Trustee's Deed Upon Sale was recorded on March 6, 2015. Trustee RJN, Ex. H.

Involuntary bankruptcies were subsequently filed against both Massoud and Solyman in summer 2016. The cases are being jointly administered and a number of other legal issues are being litigated simultaneously in separate adversaries. A chapter 11 trustee, David Gottlieb ("Trustee") has been appointed. The Trustee's Motion for Summary Judgment ("Trustee's Motion") seeks a ruling in his favor on only the first cause of action alleged in the Third Amended Complaint ("TAC"). The first cause of

1  action seeks to quiet title on the Rexford Property in order to bring it into the bankruptcy

2  estate.

3      Trustee attacks the foreclosure sale of the Rexford Property on the grounds that

4  the PWB note, and therefore the Rexford DOT, was transferred to Fieldbrook several

5  days before the foreclosure sale conducted by Elkwood. Trustee argues that the

6  foreclosure is therefore void, not merely voidable. Trustee MSJ, 14:20-18:20. Several

7  persons other than Elkwood and Fieldbrook have been named as defendants in

8  Trustee's first cause of action. Each of those other named defendants is a current or

9  former lienholder or mortgage servicer on the Rexford Property and a creditor in one of

10  the lead bankruptcy cases.

11      The only parties who have responded to the Trustee's Motion are Elkwood and

12  Fieldbrook (hereafter referred to as "Elkwood Defendants"). In addition, the Elkwood

13  Defendants have also filed a Cross-Motion for Summary Judgment on Plaintiff's First

14  Claim for Relief (the "Cross-Motion"). The Cross-Motion is also limited to Trustee's first

15  claim for relief, Quiet Title as to the Rexford Property.

16      The Elkwood Defendants focus on the evidence that Nourafshan, through his

17  entities Elkwood, Fieldbrook, and Kensington Associates, LLC ("Kensington"), intended

18  to "bifurcate" the PWB note, assigning to Fieldbrook a portion of the PWB Note secured

19  by the Chalette DOT while leaving Elkwood holding the Rexford DOT secured by the

20  remainder of the PWB Note. Cross-Motion, 8:12-11:3; Dec. of Daniel McCarthy, Ex. A,

21  B, K. While Nourafshan was considering purchasing the PWB Note, a letter of intent to

22  purchase the PWB Note ("Kensington Letter") was sent from Kensington to Pacific

23  Western Bank on June 30, 2014. Id. at Ex. A. The Kensington Letter offered

24

approximately $5.9 million total for the PWB Note and broke the price down specifically

to approximately $3.7 million "for the portion of the secured note allocated to the

Rexford Property and the Rexford Deed of Trust," and approximately $2.2 million "for

the portion of the Secured Note allocated to the Chalette Property and the Chalette

Deed of Trust." Id. at Ex. A. The Elkwood Defendants also provide a letter on

Fieldbrook's letterhead that was sent from Thelma Guerrero to a Mr. Mazzarino at

Citivest (the "Guerrero Memo"). Id. at Ex. B. The Guerrero Memo informs Citivest that

"we" have assigned the Chalette DOT to Fieldbrook, "along with a dollar portion of the

note secured by that Deed of Trust on the Property." Id. The Guerrero Memo then

instructed Citivest to bid $5.8 million as the agent for Fieldbrook and the remainder on

the Rexford Property on behalf of Elkwood. Id. The Guerrero Memo is dated February

17, 2015, the day before Fieldbrook Assignment was executed.

The Elkwood Defendants rely on the Kensington Letter and the Guerrero Memo,

and the fact that the Fieldbrook Assignment did not mention the Rexford DOT, to argue

that the parties did not intend to transfer the entire PWB Note to Fieldbrook.

## II.    Summary Judgment Standard

In order to succeed on a motion for summary judgment under Federal Rule of

Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule

of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of

material fact and entitlement to judgment as a matter of law. In re Aubrey, 111 B.R. 268,

272 (BAP 9th Cir. 1990). The moving party must support its motion with credible

evidence, as defined in Federal Rule of Civil Procedure 56(c), which would entitle it to a

directed verdict if not controverted at trial. Id. If a party fails to address another party's

1    assertion of fact, the court may consider the fact undisputed for purposes of the

2    summary judgment motion. Fed. R. Civ. P. 56(e)(2). Substantive law determines which

3    facts are material for purposes of summary judgment. Anderson v. Liberty Lobby, Inc.,

4    477 U.S. 242, 248 (1986). "Summary judgment will not lie if the dispute about a material

5    fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

6    verdict for the nonmoving party." Id. The court must view all the evidence in the light

7    most favorable to the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir.

8    2008). The court may not evaluate the credibility of a witness or weigh the evidence.

9    California Steel & Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir. 1981).

10    **III.    Discussion**

11        Trustee's Motion seeks summary judgment only on the first claim for relief: quiet

12    title as to the Rexford Property. Quiet Title claims are actionable under Cal. Civ. Pro.

13    Code § 760.020. To state a claim for quiet title, a complaint must include (1) the subject

14    property's description, including both its legal description and its street address or

15    common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims

16    against which a determination is sought; (4) the date as of which the determination is

17    sought; and (5) a prayer for the determination of the title against the adverse claims.

18    Metcalf v. Drexel Lending Grp., No. 08-CV-00731 W POR, 2008 WL 4748134, at *5

19    (S.D. Cal. Oct. 29, 2008). Trustee argues that the foreclosure of the Rexford home was

20    void because Elkwood assigned the entire PWB Note to Fieldbrook before the

21    foreclosure sale. Trustee argues further that the PWB note could not be split and

22    assigned in part without the written consent of the borrowers, and that Trustee's rights

23    as a bona fide purchaser of the Rexford Property bar reformation of the contract.

24

<div align="center">Bifurcation of the PWB Note</div>

The threshold issue is whether the rights to foreclose under the Rexford DOT were transferred from Elkwood to Fieldbrook in the Fieldbrook Assignment. There is no dispute that when Elkwood obtained the PWB Note from Pacific Western Bank, it remained a single note secured by both the Rexford DOT and the Chalette DOT. Similarly, there is no contention that the PWB Note was in any way altered before Elkwood executed the Fieldbrook Assignment. The Fieldbrook Assignment, therefore, is the contract under which any "bifurcation," "splitting," "partial assignment," or assignment of a "participating interest," as the transaction has been variously described,[2] must have occurred.

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. However, "it is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract." Block v. eBay, Inc., 747 F.3d 1135, 1138 (9th Cir. 2014) (internal quotations omitted). "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." Reilly v. Inquest Tech., Inc., 218 Cal. App. 4th 536, 554 (2013). The Court must examine the wording of the Fieldbrook Assignment to determine the objective intent of the contracting parties.

The operative language of the Fieldbrook Assignment in its entirety is as follows:

> For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby grants, assigns, transfers and conveys to FIELDBROOK, INC., A CALIFORNIA CORPORATION all of its right, title and beneficial Interest In and to that certain Deed of Trust dated MARCH 20, 2009

---

[2] Or, as the Abselets put it, whether "split happened." Abselet Opp. to Elkwood Motion, 20:14.

executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE
SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED
MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as
Trustee, for the benefit of PACIFIC WESTERN BANK as
beneficiary and recorded as Instrument No. 20090425658, on
March 25, 2009, In Book _____, Page _____ of
Official Records in the Office of the County Recorder of Los
Angeles County, California, describing land in said county as,

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los
Angeles, State of California, as per map recorded in book 657,
pages 99 and 100 of maps, in the office of the county recorder of
said county.

A.P.N. 4391-009-002 AKA: 580 CHALETTE DRIVE, BEVERLY
HILLS, CA 90210

Together with the Secured Promissory Note or Notes therein
described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said
Deed of Trust, any liens, security interest, and remedies arising
thereunder. This Assignment is made without recourse,
representations or warranties of any kind except as may be set
forth in any Loan Sale Agreement that may be between assignor
and assignee.

Fieldbrook Assignment, RJN ISO T'ee MSJ at Ex. D. By its terms, the assignment

purports to assign the Chalette DOT and the PWB Note from Elkwood to Fieldbrook.

Conspicuously absent from the Fieldbrook Assignment is any reference to the Rexford

DOT, which also secured the PWB Note. Defendants argue that the Fieldbrook

Assignment contains a latent ambiguity requiring the admission of extrinsic evidence.

<div align="center">Extrinsic Evidence</div>

A latent ambiguity exists when a document, while unambiguous on its face, may

be reasonably susceptible to more than one possible meaning upon production of

extrinsic evidence. Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 391 (2006). "The

test of admissibility of extrinsic evidence to explain the meaning of a written instrument

1    is not whether it appears to the court to be plain and unambiguous on its face, but

2    whether the offered evidence is relevant to prove a meaning to which the language of

3    the instrument is reasonably susceptible." Id. (quoting Pac. Gas & Elec. Co. v. G. W.

4    Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968)).[3] The Pacific Gas Court

5    reasoned that, under California law, "the intention of the parties as expressed in the

6    contract is the source of contractual rights and duties." Pacific Gas, 69 Cal. 2d at 38.

7    Extrinsic evidence is not admissible to add to, detract from, or vary the terms of a

8    written contract. Id. at 33.

9         The Fieldbrook Assignment is not reasonably susceptible to a reading that the

10   PWB Note would be bifurcated and $5.8 million of the note secured by only the Chalette

11   DOT would be transferred to Fieldbrook while the remainder of the PWB Note and the

12   Rexford DOT would remain with Elkwood. No amount of extrinsic evidence would allow

13   such a wholesale re-imagining of the terms of the Fieldbrook Assignment. The phrase

14   "[t]ogether with the Secured Promissory Note or Notes therein described or referred to"

15   specifically indicates that all notes secured by the Chalette DOT were transferred in the

16   Fieldbrook Assignment, without any qualification or limitation. While Defendants attach

17   evidence that indicates an intent to assign only a portion of the PWB Note, that

18   evidence does not indicate an ambiguity in the language of the Fieldbrook

19   Assignment—instead, that extrinsic evidence "flatly contradicts" the language of the

20   Fieldbrook Assignment. Consolidated World Investments, Inc. v. Lido Preferred Ltd., 9

21   _____

22   [3] On this point, California law differs from many other states. "*Pacific Gas* essentially abrogated the
traditional rule that parol evidence is not admissible to contradict the plain meaning of an integrated
agreement by concluding that, even if the agreement 'appears to the court to be plain and unambiguous

23   on its face,' extrinsic evidence is admissible to expose a *latent* ambiguity, i.e., the possibility that the
parties actually intended the language to mean something different." Dore, 39 Cal. 4th at 395 (Justices
George, Kennard, Chin, and Moreno, Concurring).

24

Cal. App. 4th 373, 379 (Cal. Ct. App. 1992). The phrase "[t]ogether with the Secured

Promissory Note or Notes therein described" is not reasonably susceptible to the

reading "[t]ogether with *$5.8 million of* the Secured Promissory Note or Notes therein

described. . . ." <u>Trustee's Reply</u>, 2:21-3:1. <u>See</u> <u>Gerdlund v. Elec. Dispensers Int'l</u>, 235

Cal. Rptr. 279, 284 (Cal. Ct. App. 1987) (refusing to admit parol evidence where

contract language stating that "[n]otice of termination may be given at any time and for

any reason" was not reasonably susceptible to the proposed reading that such notice

could only be given "for any *good* reason.").

      Even if the extrinsic evidence were to be considered, it is insufficient to support

the Elkwood Defendants' Cross-Motion. The evidence produced by Defendants to

support the bifurcation of the PWB Note is not dispositive of an intent to have the note

bifurcated because all material inferences on this issue must be made in favor of the

Trustee. While most facts are not in dispute on these cross motions, the Trustee and

the Abselets dispute the assertions of fact concerning the intent to bifurcate as self-

serving.  These statements have not been cross-examined at trial and must be

evaluated in light of all the evidence. While there were certainly negotiations with Pacific

Western Bank regarding some sort of bifurcation of the PWB Note, those negotiations

were carried out by Kensington, an entity which is not a party to this litigation (although

it is also owned by Nourafshan).

      The Guerrero Memo, which was apparently executed on behalf of Fieldbrook,

indicates that the portion of the PWB Note that was transferred to Fieldbrook was $5.8

million. The fact that the Guerrero Memo states that "we" have assigned the Chalette

DOT to Fieldbrook, on Fieldbrook's own letterhead, indicates a lack of regard for distinct

1    corporate entities. The Guerrero Memo was written the day before Fieldbrook even

2    obtained an interest in the Property.

3        The Fieldbrook Assignment, as recorded at the Los Angeles County Recorder's

4    Office, does not in any way bifurcate the PWB Note. It merely assigns the PWB Note

5    and Chalette DOT to Fieldbrook. No other document has been provided by the Elkwood

6    Defendants purporting to bifurcate the PWB Note.[4]

7                                Disposition of the Rexford DOT

8        The determination that extrinsic evidence is not appropriate to support a

9    bifurcation of the PWB Note does not resolve the disposition of the Rexford DOT.

10   Because the Fieldbrook Assignment did not mention the Rexford DOT, but assigned the

11   entire PWB Note, the question remains of what rights Elkwood had to foreclose under

12   the Rexford DOT. The Elkwood Defendants argue that the failure to mention the

13   Rexford DOT constitutes a patent ambiguity in the Fieldbrook Assignment. Regardless

14   of whether the ambiguity is patent or latent, the Fieldbrook Assignment can be read as

15   not intending to transfer the Rexford DOT. As explained below, however, because the

16   Rexford DOT must follow the PWB Note, it also was assigned to Fieldbrook as a matter

17   of law, and the proposed extrinsic evidence is of no consequence.

18       A plain reading of the Fieldbrook Assignment reveals that no ambiguity exists

19   regarding the bifurcation of the amount due, but that an ambiguity does exist regarding

20   the disposition of the Rexford DOT. If the Court were to admit extrinsic evidence to

21

22

---

[4] The Elkwood Defendants moved earlier for relief from the automatic stay in the lead bankruptcy case to record a correcting assignment specifying an amount of the PWB Note to be assigned, the Court denied the motion, stating that such relief would be an inappropriate determination that the Fieldbrook Assignment was incorrect when drafted, and reserving such a determination for resolution in this adversary action. Doc. No. 605.

1  determine the intent of the parties with regard to the Rexford DOT, the Court could <u>not</u>

2  use that same evidence to bifurcate the PWB Note as requested by the Elkwood

3  Defendants.[5] <u>Cross-Motion</u>, 13:17-21. Extrinsic evidence cannot be used to show that

4  only $5.8 million of the PWB Note was transferred in the Fieldbrook Assignment

5  because the language of the Fieldbrook Assignment is not reasonably susceptible to

6  that reading. The Elkwood Defendants misapply the rule from <u>Pacific Gas</u> by implying

7  that admission of extrinsic evidence to interpret an ambiguity is separate from the

8  "reasonably susceptible" test of <u>Pacific Gas</u>. <u>Cross-Motion</u>, 25:3-5.

9            One exception to the parol evidence rule is that extrinsic
          evidence may be introduced to explain the meaning of

10            ambiguous contractual language. The test of whether parol
          evidence is admissible to construe an ambiguity is not

11            whether the language appears to the court unambiguous,
          but whether the evidence presented is relevant to prove a

12            meaning to which the language is 'reasonably susceptible.'

13  <u>Consol. World Investments, Inc. v. Lido Preferred Ltd.</u>, 9 Cal. App. 4th 373, 379 (1992).

14       The entire PWB Note was transferred to Fieldbrook days before the Rexford

15  foreclosure. There has been no authority presented that a deed of trust can be

16  separated from the note it secures and remain valid, nor do the Elkwood Defendants

17  make that argument. The Elkwood Defendants instead focus their argument on

18  enforcing their stated intention of assigning only a portion of the PWB Note—an

19  argument which the law does not support.

20  _____

21  [5] Even if the Court were to determine that consideration of extrinsic evidence would be allowed, there would be a disputed issue of material fact as to whether the extrinsic evidence, including the Guerrero Memo, accurately expressed the intent of Elkwood and Fieldbrook. <u>Trustee's Statement of Disputed

22  Facts</u>, ¶ 21. Trustee has the same dispute with regards to Nourafshan's declaration about his intent to split the PWB Note, calling the declaration "self-serving." <u>Trustee's Opposition</u>, 18:6-9. The Abselets'

23  opposition to the Cross-Motion raises similar disputes. <u>Abselet Statement of Genuine Issues</u>, ¶¶ 14 (disputing Nourafshan's intention to allocate the PWB note between the two Properties), 21 (disputing

24  Guerrero memo as reflective of Elkwood and Fieldbrook's intent), and 26 (disputing the intent of the parties to the Fieldbrook Assignment to bifurcate the PWB Note).

1    The transfer of the entire PWB Note to Fieldbrook carried with it the Rexford

2  DOT. "The assignment of a debt secured by mortgage carries with it the security." Cal.

3  Civ. Code § 2936. "The assignment of a secured debt carries with it the security, since

4  the security is a mere incident of the debt. [Civ. Code, §§ 1084, 2936] . . .When one

5  assignee takes the note and another takes the trust deed or mortgage, the holder of the

6  note prevails regardless of the time of transfer. [Adler v. Sargent (1895) 109 Cal 42, 41

7  P 799]." Cal. Civ. Prac. Real Property Litigation § 4:28, Rights of assignee; see also In

8  re Macklin, 495 B.R. 8, 13 (Bankr. E.D. Cal. 2013) ("The note and the mortgage are

9  inseparable; the former as essential, the lat[t]er as an incident. An assignment of the

10  note carries the mortgage with it, while an assignment of the latter alone is a nullity.");

11  Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 927 (2016) ("The deed of trust,

12  moreover, is inseparable from the note it secures, and follows it even without a separate

13  assignment."). Thus, the Rexford DOT was also assigned to Fieldbrook before the

14  Rexford foreclosure.

15                                    Participation

16    The Elkwood Defendants have argued that the Court should consider the

17  transaction between Elkwood and Fieldbrook to be a participation agreement, which is

18  authorized under the Business Loan Agreement that was related to the PWB Note. See

19  Nourafshan Declaration, Ex. G, P. 5. Participations "are contractual arrangements

20  between a lender and a third party, in which the third party, or participant, provides

21  funds to the lender. The lender, in turn, uses the funds from the participant to make

22  loans to the borrower." In re ACRO Bus. Fin. Corp., 357 B.R. 785, 787 (Bankr. D. Minn.

23  2006). To determine whether a transaction is a participation agreement, courts have

24

1  considered the following factors: "a) money is advanced by participant to a lead lender;

2  b) a participant's right to repayment only arises when a lead lender is paid; c) only the

3  lead lender can seek legal recourse against the borrower; and, d) the document is

4  evidence of the parties true intentions." In re Coronet Capital Co., 142 B.R. 78, 82

5  (Bankr. S.D.N.Y. 1992). "[T]he participants cannot be holders of the notes, and hence

6  probably cannot enforce them directly." 1 Real Estate Finance Law § 5:35 Partial

7  assignments and participations (6th ed.).

8       While Trustee cites out-of-circuit cases to describe the nature of such

9  agreements, the law appears consistent among jurisdictions, and the Elkwood

10  Defendants provide no law in support of their assertion that a participation in the PWB

11  Note is legally equivalent to a partial assignment. Cross-Motion, 23:13-15.

12  No money was advanced by the alleged "participant," Fieldbrook, to the "lender,"

13  Elkwood. Also relevant is the fact that Fieldbrook itself pursued foreclosure against the

14  Chalette Property under the PWB Note, which is not consistent with a participant's

15  rights as described above. The language of the Fieldbrook Assignment also indicates

16  that the Elkwood Defendants intended an assignment, not a participation agreement.

17  There is insufficient evidence and no legal support for considering the Fieldbrook

18  assignment to be a participation agreement.

19  <div align="center">Prejudice</div>

20       The Elkwood Defendants further argue that, because Debtors were not

21  prejudiced by a partial assignment of the PWB Note and the Chalette DOT, Trustee

22  may not object. Elkwood Defendants' Motion, 27:13-14. The issue of prejudice arises in

23  the case law in two contexts: first, as a constitutional requirement for standing, and

24

1    second, as an element of a wrongful foreclosure claim.

2    *Prejudice as Required for Standing*

3    The Elkwood Defendants' primary contention is that Trustee lacks standing

4    because he has not shown any prejudice beyond the fact of foreclosure. Elkwood

5    Defendants' Reply to Elkwood Motion, 6:21-23. This issue was also raised and argued

6    at the February 27, 2018 hearing on the Elkwood Defendants' motion to dismiss the

7    second amended complaint. The Elkwood Defendants are incorrect.

8    The California Supreme Court in Yvanova v. New Century Mortg. Corp. has

9    recently addressed this question. 62 Cal. 4th 919. In Yvanova, a homeowner challenged

10    the foreclosure of her home by an entity who allegedly did not own the note and deed of

11    trust because the assignment in which the entity received its interest was allegedly void.

12    The court held that, if an assignment necessary to the chain of title is void, the entity

13    seeking a trustee's sale had no legal authority to do so and the "unauthorized sale

14    constitutes a wrongful foreclosure." Id. at 935. The court ruled that a homeowner in

15    default who was not a party to the assignment would have standing to challenge an

16    assignment of the note and deed of trust if the homeowner claimed that the assignment

17    was void, not merely voidable. Id. at 924.

18    The Yvanova court addressed prejudice in terms of an injury for purposes of the

19    constitutional requirement of standing, and distinguished between prejudice as a

20    standing issue and prejudice as an element to the tort of wrongful foreclosure. "[W]e are

21    concerned only with prejudice in the sense of an injury sufficiently concrete and

22    personal to provide standing, not with prejudice as a possible element of the wrongful

23

24

1  foreclosure tort." [6] Id. at 937 (emphasis added) (citing Culhane v. Aurora Loan Servs. of

2  Nebraska, 708 F.3d 282 (1st Cir. 2013) ("For purposes of standing doctrine, an injury is

3  defined as an invasion of a legally protected interest which is (a) concrete and

4  particularized; and (b) actual or imminent, not conjectural or hypothetical. The

5  foreclosure of the plaintiff's home is unquestionably a concrete and particularized injury

6  to her.")). To have standing, a plaintiff "must be able to allege injury—that is, some

7  invasion of the plaintiff's legally protected interests." Angelucci v. Century Supper Club,

8  41 Cal. 4th 160, 175 (2007).  Yvanova disagreed with the same analysis of standing

9  pursued by the Elkwood Defendants:

10   As it relates to standing, we disagree with defendants'
     analysis of prejudice from an illegal foreclosure. A
11   foreclosed-upon borrower clearly meets the general
     standard for standing to sue by showing an invasion of his or
12   her legally protected interests—the borrower has lost
     ownership to the home in an allegedly illegal trustee's sale.
13

14  Yvanova, 62 Cal. 4th at 937 (emphasis added, citation omitted). A homeowner whose

15  home was foreclosed upon by one with no right to do so has standing to challenge that

16  foreclosure—it is irrelevant for purposes of standing whether the homeowner seeks

17  relief in a wrongful foreclosure action or in a quiet title action.

18   The Elkwood Defendants argue that Yvanova is distinguishable and inapplicable

19  because it involved a void assignment resulting in a potentially void foreclosure,

20  whereas here the Trustee argues that a valid assignment resulted in a void foreclosure.

21  _____

22  [6] The elements of a wrongful foreclosure action under California law are: "(1) the trustee or mortgagee
    caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a
    mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases
23  where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the
    secured indebtedness or was excused from tendering." Miles v. Deutsche Bank Nat'l Tr. Co., 236 Cal.
    App. 4th 394, 408 (2015). While not discussed here, the Court previously determined that an exception to
24  the tender requirement applied to Trustee's action.

1  While Yvanova and the other related cases involve void assignments, the result is to

2  allow challenges to void foreclosures. See Glaski v. Bank of Am., 218 Cal. App. 4th at

3  1101 ("[W]here a plaintiff alleges that the entity lacked authority to foreclose on the

4  property, the foreclosure sale would be void."). There are many passages of Yvanova

5  which stress "the principle that only the entity currently entitled to enforce a debt may

6  foreclose on the mortgage or deed of trust securing that debt. . . ." Yvanova, 62 Cal.4th

7  at 928. "A foreclosure initiated by one with no authority to do so is wrongful for purposes

8  of such an action." Id. at 929. Yvanova is not so absurdly narrow as to allow standing

9  only to challenge void assignments; it also grants the wronged party standing to

10  challenge a void foreclosure.[7]

11  *Prejudice as an Element of A Quiet Title Action*

12          There is conflicting law on whether the mere fact of foreclosure is sufficient

13  prejudice to satisfy the second element of a wrongful foreclosure claim. The court in

14  Sciarratta v. U.S. Bank Nat'l Assn., relying in part on Yvanova, held that when a

15  homeowner is foreclosed on by one with no right to do so, that homeowner is sufficiently

16  prejudiced to challenge the allegedly void assignment in a wrongful foreclosure action.

17  247 Cal. App. 4th 552, 565-66 (2016). The Elkwood Defendants cite Cardenas v.

18  Caliber Home Loans, Inc., which explicitly rejects the Sciarratta court's approach,

19  finding that the failure to allege any prejudice beyond the fact of foreclosure is fatal to an

20  action to set aside a foreclosure based upon a void assignment. 281 F. Supp. 3d 862,

21  873 (N.D. Cal. 2017).

22

23  [7] To the extent the Elkwood Defendants' again raise their argument previously raised at the February 27, 2018 hearing that Yvanova is no longer good law because it relied upon Glaski, which relied upon a New York case which has subsequently been overturned, the Court disagrees. To state the obvious, the

24  Supreme Court of California cannot be overruled on an issue of California law by a New York court.

By finding that the prejudice required as an element of a wrongful foreclosure action is a higher standard than the prejudice required for standing, the court in Cardenas seemed to believe that Yvanova granted standing to homeowners to pursue a cause of action that would necessarily fail, creating a right to litigation with no hope of a remedy. Furthermore, the Cardenas court relied almost entirely on authority that predated the Yvanova decision. At least one unreported appellate case sided with Sciarratta, finding that under Yvanova the mere fact of foreclosure was sufficient prejudice for both 1) standing and 2) to satisfy the second element of a wrongful foreclosure claim. Park v. Wells Fargo Bank, N.A., No. B264026, 2017 WL 4020586, at *7 (Cal. Ct. App. Sept. 13, 2017), as modified on denial of reh'g (Oct. 2, 2017). "A homeowner experiences prejudice or harm when an entity with no interest in the debt forecloses. When a non-debtholder forecloses, a homeowner is harmed because he or she has lost her home to an entity with no legal right to take it." Sciarratta, 247 Cal. App. 4th at 565-66.

Trustee also argues that the first claim for relief seeks quiet title, not the tort of wrongful foreclosure,[8] and that prejudice is not an element of quiet title. Trustee's Opposition to Cross-Motion, 24:13-28. The Elkwood Defendants argue, without any clear authority, that a quiet title claim based upon a void foreclosure must also satisfy the requirements of a wrongful foreclosure action. Elkwood Defendants' Reply to Cross-Motion, Doc. 143 4:3-18.  Prejudice is simply not an element of a quiet title action.

---

[8] Trustee's previous complaint included an action for wrongful foreclosure. The Court determined that certain alleged irregularities with the foreclosure sale were insufficient under California law to set aside a foreclosure sale. Therefore, the only grounds that remained for the wrongful foreclosure action were the same as the grounds for the quiet title claim. In the discussion, the Court and the Trustee agreed that the claim for wrongful foreclosure was duplicative of the claim for quiet title because they were both based on the same factual allegation—namely, that the foreclosure was void.

1    Therefore, the split in authority between <u>Cardenas</u> and <u>Sciarratta</u> on prejudice as an

2    element of the tort of wrongful foreclosure is not relevant to this action. Even if it were,

3    the Court is more inclined to follow the approach in <u>Sciarratta</u>, a state appellate court,

4    on this rapidly evolving issue of California law.

5        The Trustee does not need to demonstrate prejudice in connection with this quiet

6    title claim. Even if such a showing were required, it is satisfied by the fact of the

7    foreclosure under <u>Sciarratta</u>.

8                    <u>Elkwood's Deed Upon Sale Is Void</u>

9        The question that follows is whether the Trustee's Deed Upon Sale is void. Since

10   the Fieldbrook Assignment transferred the entire PWB Note and, consequently, the

11   Rexford DOT, when Elkwood foreclosed, it had neither the right to foreclose nor the

12   right to credit bid. "Only the true owner or beneficial holder of a Deed of Trust can bring

13   to completion a nonjudicial foreclosure under California law." <u>Yvanova</u>, 62 Cal. 4th at

14   928. "[W]here a plaintiff alleges that the entity lacked authority to foreclose on the

15   property, the foreclosure sale would be void." <u>Glaski</u>, 218 Cal. App. 4th at 1101.

16   Therefore, the recorded Trustee's Deed Upon Sale was void, and must be treated as a

17   "blank piece of paper." <u>Los Angeles v. Morgan</u>, 105 Cal. App. 2d 726, 733 (1951); <u>See</u>

18   <u>also Taormina Theosophical Community, Inc. v. Silver</u>, 140 Cal. App.3d. 964, 971 (Cal.

19   App. 2d Dist. 1983) ("Recording itself grants no interest in the property, and a void

20   document 'derives no validity from the mere fact that it is recorded.'" (citations omitted)).

21   No action was taken to correct the defective Trustee's Deed Upon Sale before the

22   bankruptcy was filed. The Trustee's Deed Upon Sale must, therefore, be considered

23   void.

24

<div align="center">

Reformation of Contract

</div>

The Elkwood Defendants seek reformation in their Cross-Motion to address the possible conclusion that the sale is void. Reformation of contract under California law is governed by Cal. Civ. Code. § 3399:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

The final clause of Cal. Civ. Code § 3399, "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value," indicates that reformation is not available where the rights of a bona fide purchaser would be prejudiced. Baines v. Zuieback, 84 Cal. App. 2d 483, 491 (1948).

<div align="center">

*Trustee's Rights as Bona Fide Purchaser*

</div>

Trustee has argued that his standing as a hypothetical bona fide purchaser of real property under the strong-arm powers of § 544(a)(3) precludes any action for reformation of contract by the Elkwood Defendants. Trustee Motion 19:16-24:4. The Elkwood Defendants respond that reformation is available despite Trustee's powers under § 544(a)(3) because Elkwood recorded a Trustee's Deed Upon Sale following the foreclosure of the Rexford Property. The question is whether a purchaser would have been on notice of Elkwood's interest in the Rexford Property. A reformation action will be allowed only if a hypothetical bona fide purchaser would have had notice of Elkwood's interest. See, e.g., In re Weisman, 5 F.3d 417, 420 (9th Cir. 1993); In re Probasco, 839 F.2d 1352, 1354 (9th Cir. 1988).

1    The rights of a bona fide purchaser under § 544(a)(3) are defined by state law. In

2    re Tleel, 876 F.2d 769, 772 (9th Cir. 1989). In California, a purchaser of real estate for

3    value without actual or constructive notice of a prior interest is given status as a bona

4    fide purchaser. Id. Because § 544(a) specifies that a trustee has its strong-arm powers

5    "without respect to any knowledge," "actual notice cannot overcome the Trustee's bona

6    fide purchaser status." Id. However, constructive or inquiry notice can preclude a

7    Trustee's status as a bona fide purchaser under § 544(a)(3). In re Harvey, 222 B.R.

8    888, 893 (B.A.P. 9th Cir. 1998). Constructive notice in the context of real estate is

9    provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214.

10   A hypothetical purchaser viewing the real estate records for the Rexford Property

11   on the petition date would have seen the Trustee's Deed Upon Sale filed by Elkwood

12   recorded March 6, 2015. Trustee RJN, Ex. G.[9] Typically, this recorded document would

13   provide constructive notice to any potential purchaser of an adverse interest in the

14   property. Here, however, the Trustee's Deed Upon Sale is void. A recorded document, if

15   void, should be treated "as a blank sheet of paper" and therefore does not provide

16   constructive notice. City of Los Angeles v. Morgan, 105 Cal. App. 2d at 733 ("[I]t is

17   obvious that invalid documents are not entitled to be recorded, but if they are recorded,

18   they do not give constructive notice."); See 5 Collier on Bankruptcy ¶ 544.02 (16th

19   2018) ("Where the holder of a security interest has not taken the essential steps to

20   perfect that security interest, or where the recording is defective, the trustee does not

21   have constructive notice."). The Elkwood Defendants rely upon Triple A Management

22   Co. v. Frisone for the proposition that constructive notice is based upon the recorded

23

24   [9] Trustee's Request for Judicial Notice in Support of Trustee's Motion is granted.

1  chain of title "as that state of title objectively presents itself," and is not viewed "through

2  rose colored glasses or with blinders on." 69 Cal. App. 4th 520, 530 (1999). This

3  approach to constructive notice is not inconsistent with the rule that a void document

4  does not provide constructive notice. Triple A Management did not involve constructive

5  notice based on a void document and is therefore of limited application here.

6        Rights under § 544(a)(3) may also be cut off where any bona fide purchaser

7  would have inquiry notice of a superior interest in the property. Courts have applied the

8  standard of whether a "prudent purchaser," in light of reasonably available information,

9  would have made an inquiry about the alleged interest. In re Weisman, 5 F.3d at 420. A

10  "prudent purchaser" describes someone who is shrewd in the management of practical

11  affairs and whose conduct is marked by wisdom, judiciousness, or circumspection.

12  See Probasco, 839 F.2d at 1356. Such a purchaser will be charged with knowledge of

13  1) the nature of the property; 2) its current use; 3) the identities of the persons

14  occupying it; 4) the relationship among them; and, 5) the relationship between those in

15  possession and the person whose purported interest in the property the purchaser

16  intended to acquire. Id. Clear and open possession of real property by someone other

17  than the party on title constitutes constructive notice to subsequent purchasers,

18  requiring such purchasers to inquire into the possessor's interest. In re Probasco, 839

19  F.2d at 1354. By the same token, "there is no duty to inquire upon a subsequent

20  purchaser regarding any unknown claims or interest by a person in possession of real

21  property where the occupant's possession is consistent with the record title." Weisman,

22  5 F.3d at 421.

23        The court in Probasco decided that it was "almost inconceivable" that a

24

1   reasonably prudent person, "knowing that Parcels 2 and 3 were jointly owned, and

2   seeing a perimeter fence around all three parcels, no fence between the parcels, the

3   staking of all three parcels, and roads traversing the entire property, would not inquire

4   whether a one-half owner of Parcels 2 and 3 had an interest in Parcel 1." Probasco, 839

5   F.2d at 1356. Therefore, the court held that the debtor-in-possession, as a hypothetical

6   bona fide purchaser under § 544(a)(3), had inquiry notice of a superior interest in the

7   real property, Id. at 1357, and the court further required that the deed be reformed to

8   include all three properties, Id. at 1356. Notably, the success of the reformation action

9   depended upon an initial determination of the trustee having constructive or inquiry

10  notice of the allegedly unperfected interest.

11      Similarly, the court in Weisman held that a reasonably prudent purchaser would

12  have inquired whether debtor had executed an unrecorded deed conveying her interest

13  in property currently occupied by her ex-husband and his new wife. Weisman, 5 F.3d at

14  422. The court determined that, realistically, people are not willing to allow their ex-

15  husband and his new wife to reside in property still jointly owned by the divorced couple.

16  The Weisman court therefore found that the bankruptcy trustee did not have a superior

17  interest to the unrecorded deed as a bona fide purchaser under § 544(a)(3) because the

18  trustee was on inquiry notice due to the observable facts surrounding the occupancy of

19  the home. See also In re Sale Guar. Corp., 220 B.R. 660, 666 (B.A.P. 9th Cir.

20  1998), aff'd, 199 F.3d 1375 (9th Cir. 2000) (Trustee's rights as BFP cut off by

21  constructive knowledge that property was possessed by parties other than Debtor

22  because a "prudent purchaser" is charged with the knowledge of: (1) the nature of the

23  property; (2) the current use of the property;  (3) the identity of the person in possession

24

1  of the property; and (4) the relationship between the person in possession and the

2  person whose interest the purchaser intends to acquire. (citing In re Weisman)).

3    Here, reasonable inspection of the Rexford home would not have put a

4  hypothetical bona fide purchaser on inquiry notice of changed ownership of the property

5  due to the highly unusual circumstance of Elkwood, following an alleged foreclosure,

6  allowing Massoud to continue residing at the property. Nourafshan Deposition, p. 145

7  (ECF Doc. 133, p. 40). An individual purchasing the home from Massoud on the date of

8  the petition, upon reviewing title, would see that Massoud owned the property subject to

9  certain liens. Lastly, while a hypothetical bona fide purchaser would realistically see the

10  Trustee's Deed Upon Sale in the property records, because that document is void, it

11  would not provide inquiry notice of Elkwood's interest.[10]

12    The Elkwood Defendants argue that, if the Fieldbrook Assignment is reformed as

13  they request, the Trustee will be deemed to have constructive notice because the

14  Trustee's Deed Upon Sale will no longer be void. The Trustee is correct here that a

15  reformation action cannot be sustained under Cal. Civ. Code § 3399 due to Trustee's

16  status as a bona fide purchaser. The Elkwood Defendants' reformation action is based

17  on an incorrect reading of Cal. Civ. Code. § 3399. If the only theory advanced for why a

18  party lacks bona fide purchaser status is that a reformation action may retroactively

19  legitimize an otherwise void document, the reformation action cannot succeed. This is

20  the only reading that gives meaning to the text of Cal. Civ. Code § 3399, and is

21

22  _____

[10] Relying on Cal. Civ. Code. § 19, Ninth Circuit case law treats inquiry and constructive notice as related, if not identical doctrines. Weisman, 5 F.3d at 420; In re Professional Inv. Properties of America, 955 F.2d

23  623, 628 (9th Cir. 1992) ("Moreover, decisions such as *Probasco* discuss the trustee's notice requirement in terms of a constructive notice that encompasses inquiry notice."). If a void document does not provide constructive notice under California law, it is not reasonable to find that the document nonetheless

24  provides inquiry notice.

1    consistent with existing case law.

2        In <u>Sieger v. Standard Oil Co.</u>, plaintiff Sieger sought to preclude defendant

3    McCollister from reforming a deed of trust based upon mutual mistake on the grounds

4    that reformation would prejudice Sieger's rights as a bona fide purchaser in violation of

5    Cal. Civ. Code § 3399. 155 Cal. App. 2d 649 (1957). Following the widening of an

6    abutting road, the starting point for the measurement of metes and bounds in the

7    property description of the subject property was incorrectly listed in several deeds

8    transferring the property. <u>Id.</u> at 652. McCollister obtained the property, which was

9    leased by a Standard Oil station, from Carter. <u>Id.</u> at 654. Three years later, Carter sold

10    Sieger an abutting piece of property for $115,000. <u>Id.</u> at 655. Several days after that

11    sale, Carter also transferred to Sieger, for no consideration, a portion of the lot occupied

12    by Standard Oil. <u>Id.</u> Carter notified Sieger that ownership of the lot was claimed by

13    McCollister. <u>Id.</u> Five years later, Sieger sent McCollister a letter demanding the rents

14    from the Standard Oil lease dating back to when Sieger obtained the deed from Carter.

15    <u>Id.</u> In the resulting lawsuit, Sieger sought to quiet title in the property, while McCollister

16    filed a cross-complaint to reform the deed from Carter to himself on the basis of mutual

17    mistake of where the property measurements began.

18        The <u>Sieger</u> court explains that the bona fide purchaser determination must be

19    made first, and only if the party is *not* a bona fide purchaser will the court consider the

20    merits of a reformation action. McCollister sought to admit evidence of the mutual

21    mistake in support of his reformation action, and the court stated:

22            If W. Edward Sieger was a bona fide purchaser of the
            contested parcel, the admissibility of the evidence of which
23            appellants complain becomes a matter of no importance for
            there could be no reformation affecting his rights.
24

> Section 3399, Civil Code, provides for reformation because of mutual mistake of the parties to an instrument, but only "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." The conjunctive used in the last phrase is expressive of the general common law on the subject. To become a bona fide purchaser one must have acquired title without notice, actual or constructive, of another's rights and also must have paid value for the same.

Id. at 656. Ultimately, the court affirmed that Sieger had inquiry and constructive notice of McCollister's interest and was therefore not a bona fide purchaser, and the reformation action based upon mutual mistake could proceed. Id. at 659.

Sieger clarifies that a claim for reformation is not proper if it prejudices the rights of a bona fide purchaser even if the reformation action would destroy that party's status as a bona fide purchaser. More accurately, a reformation action *cannot* be brought to invalidate a bona fide purchaser's rights. This is consistent with the Probasco court's decision to reform the contract in that case only after determining that the debtor-in-possession was not a bona fide purchaser. 839 F.2d at 1356. The court must look to facts other than the reformation action itself to determine whether the individual claiming bona fide purchaser status had constructive or inquiry notice.

The Elkwood Defendants have argued that Trustee cannot assert bona fide purchaser status as a defense to the reformation action because the Trustee has not asserted any separate avoidance action under § 544(a)(3). The Trustee correctly points out that § 544(a)(3) grants a trustee the "rights and powers" of a bona fide purchaser in addition to the ability to "avoid any transfer of property of the debtor" that would be voidable by a bona fide purchaser. The protection set forth in Cal. Civ. Code § 3399 are rights of a bona fide purchaser.

1   The Court finds that the Trustee did not have constructive or inquiry notice of the

2   transfer as of the petition date, and therefore has "the rights and powers of. . . a bona

3   fide purchaser of real property." 11 U.S.C. § 544(a)(3). This bars consideration of the

4   reformation claim. Cal. Civ. Code § 3399.

5                                    *Cal. Civ. Code § 1640*

6   The Elkwood Defendants also argue that, if the Fieldbrook Assignment is

7   interpreted as assigning the entire PWB Note, any language that suggests that the

8   entire PWB Note was assigned must be disregarded under Cal. Civ. Code § 1640 and

9   the contract should be reformed to reflect Defendants' intent. Defendants' Opp., 17:2-

10  21:15. Cal. Civ. Code § 1640 provides:

11              When, through fraud, mistake, or accident, a written contract
                fails to express the real intention of the parties, such
12              intention is to be regarded, and the erroneous parts of the
                writing disregarded.
13

14  Cal. Civ. Code § 1640. This provision is one of several rules for the construction of

15  contractual language in California's Civil Code. Payne v. Commercial Nat. Bank of Los

16  Angeles, 177 Cal. 68, 72 (1917). In the case of mutual mistake, the contract may be

17  reformed to conform to the intent of the parties. Thrifty Payless, Inc. v. The Americana

18  at Brand, LLC, 218 Cal. App. 4th 1230, 1243 (2013). Parol evidence may be considered

19  in making a determination of the true intentions of the contracting parties. Id.

20  The Elkwood Defendant's argument that the remedy for mutual mistake is

21  reformation of the agreement under Cal. Civ. Code § 3399 is generally correct, Thrifty

22  Payless, 218 Cal. App. 4th at 1243, however, because reformation under Cal. Civ. Code

23  § 3399 is not available here due to Trustee's status as a bona fide purchaser, any relief

24

under Cal. Civ. Code § 1640 must also fail. Section 1640 is not self-executing, and the

Court cannot reach these arguments under Cal. Civ. Code. § 1640 where there is a

bona fide purchaser. Thrifty Payless and Hess v. Ford Motor Co., 27 Cal. 4th 516

(2002), did permit reformation of the contract based on mutual mistake, but there was

no bona fide purchaser involved. Only the two parties to the contract, the landlord and

the tenant, were at issue in Thrifty Payless.  Hess specifically discussed the fact that

Ford was not a third-party beneficiary to the contract at issue so reforming the contract

would not prejudice rights acquired by third persons. Hess, 27 Cal. 4th 516, 529.

Furthermore, without a showing of a right of reformation, Cal. Civ. Code. § 1640

does not authorize the court to find that "a written contract includes provisions which do

not appear upon its face, and enforce such provisions as a part of the written contract."

Bradbury v. Higginson, 167 Cal. 553, 559 (1914). The Elkwood Defendants ask the

Court to utilize Cal. Civ. Code. § 1640 to re-write the Fieldbrook Assignment with

provisions that the document simply does not include. To do so would undermine

California law on extrinsic evidence under Pacific Gas and violate the long-standing rule

set forth in Bradbury.[11]

Lastly, the Elkwood Defendants' reading of Cal. Civ. Code § 1640 violates a

basic canon of construction. "It is an elementary tenet of statutory construction that

where there is no clear indication otherwise, a specific statute will not be controlled or

---

[11] At oral argument, the Elkwood Defendants argued that the Court need not reach the issue of reformation in its consideration of Cal. Civ. Code § 1640. As the Court understands it, the Elkwood Defendants argue that the Court must first disregard any language that they, as parties to the Fieldbrook Assignment, now claim was a mistake; if the Court disregards the language in the assignment that Trustee construes as transferring the Rexford DOT, the Trustee's action fails. Exactly which language the Elkwood Defendants claim should be disregarded is unclear, as the language resulting in the transfer of the Rexford DOT is the same language that transfers the PWB Note to Fieldbrook. This argument is confusing and unsupported by the case law on Cal. Civ. Code § 1640.

1  nullified by a general one." <u>Santiago Salgado v. Garcia</u>, 384 F.3d 769, 773–74 (9th Cir.

2  2004); <u>See also</u> <u>People v. Jenkins</u>, 28 Cal. 3d 494, 505 (1980). Cal. Civ. Code. § 1640

3  is a general statute describing the rule of construction of contracts, while Cal. Civ. Code

4  § 3399 specifically governs cases where a party seeks reformation and another party is

5  a bona fide purchaser. The Court therefore cannot ignore Cal. Civ. Code § 3399 and

6  rely instead upon the more general Cal. Civ. Code § 1640.

7  <div align="center">Redemption Price</div>

8  The Elkwood Defendants argue that if the Trustee is permitted to void the

9  Rexford foreclosure, the parties are returned to the pre-Rexford foreclosure sale status

10  quo and Elkwood must be reimbursed for costs incurred therewith on the Rexford

11  Property. These costs would allegedly include the bid of $782,508.05 (the balance owed

12  on the PWB Note), interest on that amount, payments by Elkwood paying the first trust

13  deed, and various construction, insurance, utilities, repair, and maintenance costs.

14  The issue of redemption costs was raised in the Elkwood Defendants' reply brief

15  and no evidence has been provided. This issue may be raised in a subsequent motion,

16  but insufficient evidence and legal support has been provided for the Court to resolve

17  that issue in this memorandum.

18  <div align="center">**IV.    Conclusion**</div>

19  Summary judgment is granted in Trustee's favor on Trustee's first cause of

20  action. The Court rejects the Elkwood Defendants' standing argument and finds that

21  <u>Yvanova</u> confers standing on the Trustee to bring this action. The Fieldbrook

22  Assignment is not reasonably susceptible to a reading that the note was bifurcated. The

23  Fieldbrook Assignment must be read as providing that the entire PWB Note was

24

1  transferred along with the Chalette DOT. The Rexford DOT was then also transferred as

2  a matter of law. The foreclosure on the Rexford Property is, therefore, void. The Trustee

3  has the rights and powers of a bona fide purchaser under § 544(a)(3), thus reformation

4  is precluded by Cal. Civ. Code § 3399. Title to the Rexford Property is quieted in the

5  Trustee as representative of Massoud Yashouafar's estate.

6      Trustee should submit a proposed judgment order consistent with this

7  memorandum.

8

9                                    ###

10

11

12

13

14

15

16

17

18

19

20

Date: January 25, 2019

21                                    _____
                                     Maureen A. Tighe
22                                    United States Bankruptcy Judge

23

24