1    Jeremy V. Richards (CA Bar No. 102300)
      John W. Lucas (CA Bar No. 271038)
2    PACHULSKI STANG ZIEHL & JONES LLP
      10100 Santa Monica Blvd., 13th Floor
3    Los Angeles, CA  90067
      Tel: 310/277-6910 - Facsimile: 310/201-0760
4    E-mail:   jrichards@pszjlaw.com
                    jlucas@pszjlaw.com
5
      Attorneys for David K. Gottlieb, Chapter 11 Trustee of the Estates of
6    Solyman Yashouafar and Massoud Aaron Yashouafar

7                    UNITED STATES BANKRUPTCY COURT
                         CENTRAL DISTRICT OF CALIFORNIA
8                    SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| 9   In re | Case No.  1:16-bk-12255-GM |
| 10  SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR, | Chapter 11 Jointly Administered |
| 11                                    Debtors. | |
| In re: | Case No. 1:16-bk-12255-GM |
| 12  SOLYMAN YASHOUAFAR, | Chapter 11 |
| 13                                    Debtor. | |
| In re: | Case No. 1:16-bk-12408-GM |
| 14  MASSOUD AARON YASHOUAFAR, | Chapter 11 |
|                                    Debtor. | |
| 15  Affects:<br>☑  Both Debtors | |
| 16  ☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar | |
| 17 | |
| 18  DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar, | Adv. No. 1:17-ap-01040-MT |
| 19                   Plaintiff, | **PLAINTIFF'S MOTION FOR ISSUANCE OF A REPORT AND RECOMMENDATION RE JUDGMENT ON FIRST CLAIM FOR RELIEF (QUIET TITLE)** |
| 20                      vs. | |
| 21  ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL | |
| 22  SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN | Date:      To be Determined Without Hearing Time: |
| 23  MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA | Place:     Ctrm 302 |
| 24  PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET | |
| 25  BANK AND TRUST COMPANY, | |
| 26                   Defendants. | |

27

28

1    Pursuant to this Court's order denying Motion for Clarification or Amendment of Order

2  Granting Partial Summary Judgment [Dkt. No. 217] and Supplemental Memorandum re Cross

3  Motions for Summary Judgment [Dkt. No. 216], Plaintiff David K. Gottlieb, as chapter 11 trustee for

4  Massoud Aaron Yashouafar and Solyman Yashouafar (the "Trustee") hereby requests that the Court

5  issue its Report and Recommendation (the "Report"), in the form attached hereto as **Exhibit "1."**

6  Pursuant to the proposed Report, and consistent with the Court's prior orders,  the Court would

7  recommend to the District Court that it adopt that certain Memorandum re Cross-Motions for

8  Summary Judgment (the "Memorandum") [Dkt. No. 191], enter Findings of Fact and Conclusions of

9  Law (the "FFCL") consistent with the Memorandum and in the form submitted with the Report as

10  Exhibit "B,"  and enter judgment on the Trustee's First Claim of Relief for Quiet Title (the

11  "Judgment") in the form attached to the Report as Exhibit "C."  In directing the Trustee to file this

12  Motion and permitting the other parties to submit opposition or other pleadings, the Court has

13  requested that the parties brief certain outstanding issues, all of which the Trustee addresses below.

## I.

### OUTSTANDING ISSUES RELATING TO FED. RULE CIV. P. § 54(b)

16    Pursuant to that Supplemental Memorandum re Cross-Motions for Summary Judgment (the

17  "Supplemental Memorandum") [Dkt. No. 216], the Court affirmed its earlier determination (made in

18  the Memorandum, at page 29) that the Court was not required to adjudicate the "Reimbursement

19  Claim" (based upon the Elkwood Defendants' Sixth Affirmative Defense) before entering judgment

20  on the Trustee's Quiet Title Claim.  Nonetheless, the Court found that "the relevant factual

21  allegations in the first claim are substantially similar to the allegations in the second, third, fourth

22  and fifth claims for relief in the third amended complaint," and therefore declined to enter judgment

23  on the first claim for relief, pursuant to Fed. Rule Civ. P. § 54(b), while those other claims remained

24  outstanding.  Supplemental Memorandum, page 6, lines 5-7.

25    In opposing the Trustee's Rule 54(b) request, the Elkwood Defendants made two separate

26  and independent arguments.  First, the Elkwood Defendants argued that "Elkwood is entitled to be

27  paid a redemption price <u>as a condition</u> to quieting title in the Trustee's favor on his first claim"

28  [emphasis in original] and "[t]hus, without an award of the redemption price, there can be no final

1

judgment entered on the Trustee's first claim. Elkwood Defendants' Response to Plaintiff's Two Forms of Judgment [Dkt. No. 207], at page 9, lines 22 – 23 and page 10, lines 11 – 12.  Separately, the Elkwood Defendants argued that the existence of numerous outstanding claims asserted by the Trustee and the Abselets against the Elkwood Defendants precluded the grant of relief pursuant to Rule 54(b). *Id.,* at page 17, lines 21 – 25.[1]

In denying the Elkwood Defendants' Motion for Clarification [Dkt. No. 220], this Court has reaffirmed that the Reimbursement Claim does not have to be adjudicated as a condition to entering judgment on the Trustee's Quiet Title Claim.  Further, as the Court is aware, since the Supplemental Memorandum was issued, the Trustee and the Abselets have dismissed all other pending claims against the Elkwood Defendants, with prejudice.

As the Court has now determined that the Reimbursement Claim should be determined in a separate proceeding, there are now no outstanding claims in this Adversary Proceeding, Fed. Rule Civ. Proc. Rule 54(b) no longer applies and the Court may recommend to the District Court entry of judgment on the Trustee's Quiet Title Claim without delay.  Furthermore, even if the Reimbursement Claim is to be adjudicated in this Adversary Proceeding, the Court has already stated that there are no legal or factual issues that are common to the Quiet Title Claim and the Reimbursement Claim.  Rather, as the Court has already noted, the Reimbursement Claim only becomes a live issue in the event a judgment is entered on the Quiet Title Claim.  Accordingly, it is both appropriate and necessary for this Court to recommend to the District Court that judgment should now be entered on the Trustee's First Claim for Relief, even if Rule 54(b) is still applicable.

## II.

## ENTRY OF JUDGMENT ON THE QUIET TITLE CLAIM WILL ENTITLE THE TRUSTEE TO POSSESSION OF THE REXFORD HOME

The Elkwood Defendants argue that the Trustee has only sought to quiet title to the Rexford Home and that if the Trustee seeks possession, he must bring a separate claim for ejectment. The Elkwood Defendants further contend that if and when such claim for ejectment (possession) is brought, the Elkwood Defendants will be entitled to a jury trial on the claim. As more fully set forth

---

[1] It should be noted that this part of the argument makes no reference to the Reimbursement Claim.

2

below, the Trustee's Quiet Title Claim suffices to determine the Trustee's right to possession and the Elkwood Defendants' right to a jury trial on that issue is irrelevant as there are no disputed facts alleged regarding the right to possession.[2]

As the California Supreme Court has held in *Thomson v. Thomson* 7 Cal.2d 671, 681 (1936), a case relied upon by the Elkwood Defendants, a quiet title action may be brought by a plaintiff out of possession and the issue of possession will be resolved as part of that action. Accord, 5 Witkin, *Cal. Proc*. (5th ed. 2008), Pleading § 655 (also cited by the Elkwood Defendants) ("And a quiet title action, if brought by a person out of possession, determines not only title but the right to possession…(*Landregan v. Peppin* (1892) 94 C. 465,466, 29 P.771; *Keele v. Clouser* (1928) 92 C. A. 526,530,268 P. 682); see also, *South Shore Land Co. v. Petersen* 226 Cal. App. 2d. 725,741, 38 Cal. Rptr.392 (1964) ( "The demands for relief by way of ejectment and for recovery of damages are merely remedies incident to the cause of action to quiet title and may be joined with it. [citations omitted]").

Further, it is clear from established case law that so long as the issue of possession is adequately framed by the pleadings, the plaintiff need not specifically seek recovery of possession. Thus, in *Medeiros v. Medeiros*, 177 Cal. App. 2d 69, 1 Cal. Rptr. 696 (1960), in analyzing whether a quiet title action also sought possession, the court noted that:

> ….the plaintiff alleged that the defendants were withholding possession. This should be sufficient to show that the plaintiff was out of possession and the plaintiff, if she were to prevail, would be entitled to a writ of possession… The prayer concluded with a request for such other and further relief as is proper. The prayer did not specifically ask for recovery of possession. The answer alleged that [defendant] was the owner of the property at issue. It seems clear that the right of possession was in issue by the facts alleged in the complaint and the answer. The court could have granted the plaintiff possession if she prevailed.

*Id*. at 688.[3]

The Elkwood Defendants are correct that if possession is sought in a quiet action title, the action becomes legal in nature and the defendant is entitled to a jury trial on the issue of possession. *Thomson v. Thomson, supra*, at 681. ("If the plaintiff is out of possession and seeks by an action to

---

[2] As the issue of possession is properly framed by the pleadings in this case and can be granted as part of the quiet title judgment, the Elkwood Defendants arguments regarding claim preclusion is both irrelevant and not appropriately before the Court at this time.

[3] The court went on to note that "[t]he action had all of the essential characteristics of the old legal action of ejectment".

1    quiet title to recover possession, the action is triable in a court of law"). However, "[t]he validity of

2    the plaintiff's property interest is ordinarily inferred from the plaintiff's ownership. If the

3    defendant's withholding of possession 'rests upon an existing right, he should be compelled to show

4    it affirmatively in defense.'"  *Ortega v. Drocco* 2012 Cal. App. Unpub. LEXIS 3865*, 2012 WL

5    1862323, citing *Payne v. Dewey & Treadwell* 16 Cal. 221, 244 (1860). See also *Duckett v. Adolph

6    Wexler Bldg. & Finance Corp*. 2. Cal. 2d. 263, 265, 40 P. 2d. 506 (1935) ("The court found the

7    defendant to be the owner of the property in controversy. It follows, therefore, as one of the incidents

8    to ownership that defendant is entitled to possession of said property", citing *Keele v. Clouser,

9    supra*, at 530).

10          The issue of possession was clearly framed by the pleadings in this Adversary Proceeding.

11   The Trustee alleged that notwithstanding the Rexford Foreclosure Sale, he is the owner of the

12   Rexford Home.  The Trustee also alleged that Elkwood is in possession of the property, specifically

13   by purporting to lease the home to one of the debtors. Conversely, Elkwood contends that it owns

14   the Rexford Home and in its First Amended Conuterclaim, alleged that it was entitled to enjoy the

15   incidents of ownership by asserting a rent claim against the estate. Further, and most importantly,

16   neither in its answer nor its counterclaim has Elkwood alleged any facts or advanced any legal

17   arguments that would entitle it to possession of the Rexford Home in the event it is not the owner of

18   the property. Thus, while the Elkwood Defendants are entitled to a jury trial on possession if there

19   was anything to try, they have not alleged any facts other than ownership that would entitle them to

20   possession and the Court has already determined, on stipulated facts, that Elkwood is not the owner

21   of the Rexford Home. Absent any disputed facts on the issue of possession, the Elkwood

22   Defendants' right to a jury trial on that issue is moot.

23

24

25

26

27

28

4

# III.

## CONCLUSION

For all of the reasons set forth herein, the Court should issue the Report in the form, or substantially in the form attached hereto as **Exhibit "1,"** and should grant such other and further relief as is just and proper.

Dated:  October 4, 2019                    PACHULKSI STANG ZIEHL & JONES LLP

                                    By:    *Jeremy V. Richards*
                                           Jeremy V. Richards
                                           Attorneys for Plaintiff DAVID K. GOTTLIEB

5

# EXHIBIT 1

1  Jeremy V. Richards (CA Bar No. 102300)
   John W. Lucas (CA Bar No. 271038)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA 90067
   Tel: 310/277-6910 - Facsimile: 310/201-0760
4  E-mail:   jrichards@pszjlaw.com
              jlucas@pszjlaw.com
5
   Attorneys for David K. Gottlieb, Chapter 11 Trustee of the Estates of
6  Solyman Yashouafar and Massoud Aaron Yashouafar

7                 UNITED STATES BANKRUPTCY COURT
                  CENTRAL DISTRICT OF CALIFORNIA
8                 SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| 9  In re | Case No. 1:16-bk-12255-GM |
| 10  SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR, | Chapter 11 Jointly Administered |
| 11          Debtors. | |
| 12  In re: SOLYMAN YASHOUAFAR, | Case No. 1:16-bk-12255-GM Chapter 11 |
| 13          Debtor. | |
| 14  In re: MASSOUD AARON YASHOUAFAR, | Case No. 1:16-bk-12408-GM Chapter 11 |
|          Debtor. | |
| 15  Affects: ☑ Both Debtors ☐ Solyman Yashouafar ☐ Massoud Aaron Yashouafar | |
| 16 | |
| 17 | |
| 18  DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar, | Adv. No. 1:17-ap-01040-MT |
| 19 | **REPORT AND RECOMMENDATION TO THE DISTRICT COURT RE ENTRY OF JUDGMENT ON FIRST CLAIM FOR RELIEF (QUIET TITLE)** |
|          Plaintiff, | |
| 20          vs. | |
| 21  ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL | Date:    To Be Determined Without Hearing Time: |
| 22  SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN | Place:    Ctrm 302 |
| 23  MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA | |
| 24  PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET | |
| 25  BANK AND TRUST COMPANY, | |
| 26          Defendants. | |

27        The Bankruptcy Court, Central District of California (the "Bankruptcy Court") presiding

28  over the above-captioned adversary proceeding (the "Adversary Proceeding") hereby submits this

Report and Recommendation to the United States District Court, Central District of California (the "District Court"), recommending that the District Court adopt certain summary judgment rulings made by the Bankruptcy Court in the Adversary Proceeding and enter proposed Findings of Fact, Conclusions of Law (the "FFCL") and the proposed Judgment, in the form submitted herewith. The active parties in the Adversary Proceeding have stipulated that the proceeding be treated as a "non-core" matter and that findings, conclusions and judgment be entered by the District Court in accordance with the procedures contemplated by 28 U.S.C. § 157(c)(1).[1]

## I.

## SUMMARY OF THE LITIGATION

While the Adversary Proceeding commenced as fairly complex, multi-party litigation, both the number of parties actively involved and the number of claims at issue have been substantially reduced over time. At this time, the active parties in the Adversary Proceeding are David K. Gottlieb, as chapter 11 trustee for Massoud Yashouafar (the "Trustee"); Howard and Israel Abselet (collectively, the "Abselets"), secured and unsecured creditors of debtor Massoud Yashouafar ("Massoud"); and Elkwood Associates, LLC ("Elkwood") and Fieldbrook, Inc. ("Fieldbrook", and together with Elkwood, the "Elkwood Defendants"). All of the other named parties have either been dismissed, have stipulated to be bound by any judgment entered in this proceeding or, by order of court, are deemed to have agreed to be bound by any such judgment, notwithstanding their nonparticipation.

The Adversary Proceeding initially related to disputes regarding two pieces of real property, referred to as the "Rexford Home" and the "Chalette Home." Pursuant to cross-motions for summary judgment, the Bankruptcy Court quieted title in and to the Rexford Home in the Trustee pursuant to quiet title claims for relief asserted by the Trustee and the Abselets (the "Quiet Title Claim") and ruled against the Nourafshan Parties on their claim seeking to reform the "Fieldbrook

---

[1] While the issues adjudicated by the Bankruptcy Court might be considered core proceedings, as defined in 28 U.S.C. § 157(b)(2), there are no disputed facts relating to the adjudications made by the Bankruptcy Court. Accordingly, any issues for review by the District Court are purely legal issues. Thus, whether the Bankruptcy Court simply enters a judgment and appeal therefrom is taken by the Nourafshan Parties, or the matter is referred to the District Court pursuant to 28 U.S.C. § 157(c)(1), the same, *de novo* standard of review will apply.

2

1    Assignment" and seeking to quiet title to the Rexford Home in Elkwood.  The Court's Memorandum

2    re Cross-Motions for Summary Judgment [Dkt. No. 191] (the "Summary Judgment Memorandum")

3    is attached hereto as **Exhibit "A."**

4        The issues raised by the Cross-Motions for Summary Judgment are set forth in section 1 of

5    the Summary Judgment Memorandum and in section 1 of the proposed FFCL.  In both the Summary

6    Judgment Memorandum and a Supplemental Memorandum re Cross-Motions for Summary

7    Judgment [Dkt. No. 216] (the "Supplemental Summary Judgment Memorandum"), a copy of which

8    is attached hereto as **Exhibit "B,"** the Court determined that a reimbursement claim asserted the

9    Elkwood Defendants against the Trustee did not have to be adjudicated before entry of a judgment in

10   favor of the Trustee on his Quiet Title Claim.

11       The Court initially denied the Trustee's request to enter judgment on the Quiet Title Claim

12   pursuant to F.R. Civ. P. Rule 54(b) and on April 30, 2019, the Court entered its Order Granting

13   Partial Summary Judgment on Plaintiff's First Claim for Quiet Title [Dkt. No. 217] (the "Summary

14   Judgment Order"), a copy of which is attached hereto as **Exhibit "C."**

15       Thereafter, the Trustee and the Abselets dismissed, with prejudice, all of their remaining

16   claims against the Elkwood Defendants, Reliable Properties, Inc. and Jack Nourafshan, other than

17   the Quiet Title Claim, adjudicated in the summary judgment proceeding.  The Court has determined

18   that the only remaining claim arising out of the Adversary Proceeding is the Reimbursement Claim

19   and that it can and should be adjudicated in a separate claims objection proceeding.  Accordingly,

20   the Court has concluded that either F.R. Civ. P. Rule 54(b) is no longer applicable to the Adversary

21   Proceeding (because of the absence of any claims for relief other than the Quiet Title Claim), or, in

22   the alternative, that there is no just reason to delay in entering judgment on the Quiet Title Claim.

23

24

25

26

27

28

DOCS_LA:324710.2 32274/001

1

## II.

## <u>REPORT AND RECOMMENDATION</u>

The Court recommends that the District Court affirm the rulings made by the Bankruptcy

Court in the Summary Judgment Memorandum, enter the FFCL (attached as **Exhibit "D"**) and enter

the Judgment re Quiet Title (attached as **Exhibit "E"**).

# # # # #

# **EXHIBIT A**

FILED & ENTERED

JAN 25 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,<br><br><br><br>Debtors. | CHAPTER 11<br><br>Case No.:  1:16-bk-16-12255-GM<br><br>Adv No.:  1:17-ap-01040-MT<br><br>**MEMORANDUM RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| DAVID K. GOTTLIEB, as Chapter 11<br>Trustee,<br><br>Plaintiff,<br>v.<br><br>ELKWOOD ASSOCIATES, LLC., *et al.*,<br><br><br>Defendants. | Date:          December 11, 2018<br>Time:         9:30 a.m.<br>Courtroom:   302 |
| AND RELATED COUNTER- AND<br>CROSS-ACTIONS | |

## I.     Introduction

This adversary action concerns the disposition of two properties located in

Beverly Hills, California (collectively, the "Properties"). The vast majority of the facts are

undisputed. The first property, 580 Chalette Drive, Beverly Hills, CA (the "Chalette

Property"), was previously owned by Solyman Yashouafar ("Solyman") through his

family trust. <u>Plaintiff's Statement of Uncontroverted Facts</u>, ¶ 5.[1] The second property,

910 Rexford Drive, Beverly Hills, CA (the "Rexford Property"), was previously owned by

Solyman's brother, Massoud Yashouafar ("Massoud"), through Massoud's own family

trust. <u>Id.</u> at ¶ 4. On March 20, 2009, the brothers executed a promissory note in favor of

Pacific Western Bank (the "PWB Note") in the principal amount of $6,551,575 secured

by, among other things, deeds of trust against the Chalette Property and the Rexford

Property (the "Chalette DOT" and "Rexford DOT," respectively). <u>Id.</u> at ¶¶ 6-8. It is the

subsequent assignment of the PWB Note and foreclosures on the Chalette DOT and

Rexford DOT that give rise to the instant motion.

On December 29, 2014, the PWB Note was purchased by Elkwood, <u>Id.</u> at ¶ 9, an

entity owned by Massoud's brother-in-law, Jack Nourafshan ("Nourafshan"), and

Nourafshan's brothers. Elkwood additionally purchased ancillary agreements and

documents relating to the PWB Note, Rexford DOT, and the Chalette DOT. <u>Id.</u> Within

two months, Elkwood moved to foreclose on both Properties. Elkwood caused Citivest

Financial Services, Inc. ("Citivest") to be substituted as the trustee under the Chalette

DOT and the Rexford DOT. <u>Id.</u> at ¶¶ 10, 21. Citivest filed and served a Notice of

Trustee's Sale under the Rexford DOT for the benefit of Elkwood, which was recorded

on or about January 26, 2015. <u>Id.</u> at ¶ 22. Citivest did the same with respect to the

Chalette DOT, again for the benefit of Elkwood, and recorded the notice the following

---

[1] Defendants Elkwood Associates, LLC ("Elkwood") and Fieldbrook, Inc. ("Fieldbrook") filed a statement of genuine issues indicating that there is no dispute as to the facts in ¶ 1-26 of the Plaintiff's Statement of Uncontroverted Facts.

day, January 27, 2015. Id. at ¶ 11-12. The foreclosure sale under the Chalette DOT was

scheduled for February 20, 2015, while the foreclosure sale under the Rexford DOT

was scheduled for February 23, 2015. Id. at ¶¶ 18, 24. However, before either

foreclosure sale occurred, Elkwood executed an assignment of the Chalette DOT and

PWB Note in favor of Fieldbrook on February 18, 2015 (the "Fieldbrook Assignment").

Id. at ¶ 13. The effect of the Fieldbrook Assignment and exactly which rights were

assigned by it (for example, the right to foreclose under the Rexford DOT), is a central

issue in this litigation and will be discussed in detail below.

At the Chalette foreclosure sale on February 20, Citivest submitted an opening

credit bid of $5.8 million on behalf of Fieldbrook, the new beneficiary under the PWB

Note. Id. at ¶ 18. No other bids were taken, and the Chalette Property was sold to

Fieldbrook. Id. On February 23, 2015, Citivest conducted a foreclosure sale of the

Rexford Property. Citivest opened bidding with a $782,508.05 credit bid on behalf of

Elkwood and received no other bids. Id. at ¶ 24. On February 25, 2015, Citivest

executed a Trustee's Deed Upon Sale, purportedly transferring the Rexford Property to

Elkwood. The Trustee's Deed Upon Sale was recorded on March 6, 2015. Trustee RJN,

Ex. H.

Involuntary bankruptcies were subsequently filed against both Massoud and

Solyman in summer 2016. The cases are being jointly administered and a number of

other legal issues are being litigated simultaneously in separate adversaries. A chapter

11 trustee, David Gottlieb ("Trustee") has been appointed. The Trustee's Motion for

Summary Judgment ("Trustee's Motion") seeks a ruling in his favor on only the first

cause of action alleged in the Third Amended Complaint ("TAC"). The first cause of

1    action seeks to quiet title on the Rexford Property in order to bring it into the bankruptcy

2    estate.

3         Trustee attacks the foreclosure sale of the Rexford Property on the grounds that

4    the PWB note, and therefore the Rexford DOT, was transferred to Fieldbrook several

5    days before the foreclosure sale conducted by Elkwood. Trustee argues that the

6    foreclosure is therefore void, not merely voidable. Trustee MSJ, 14:20-18:20. Several

7    persons other than Elkwood and Fieldbrook have been named as defendants in

8    Trustee's first cause of action. Each of those other named defendants is a current or

9    former lienholder or mortgage servicer on the Rexford Property and a creditor in one of

10   the lead bankruptcy cases.

11        The only parties who have responded to the Trustee's Motion are Elkwood and

12   Fieldbrook (hereafter referred to as "Elkwood Defendants"). In addition, the Elkwood

13   Defendants have also filed a Cross-Motion for Summary Judgment on Plaintiff's First

14   Claim for Relief (the "Cross-Motion"). The Cross-Motion is also limited to Trustee's first

15   claim for relief, Quiet Title as to the Rexford Property.

16        The Elkwood Defendants focus on the evidence that Nourafshan, through his

17   entities Elkwood, Fieldbrook, and Kensington Associates, LLC ("Kensington"), intended

18   to "bifurcate" the PWB note, assigning to Fieldbrook a portion of the PWB Note secured

19   by the Chalette DOT while leaving Elkwood holding the Rexford DOT secured by the

20   remainder of the PWB Note. Cross-Motion, 8:12-11:3; Dec. of Daniel McCarthy, Ex. A,

21   B, K. While Nourafshan was considering purchasing the PWB Note, a letter of intent to

22   purchase the PWB Note ("Kensington Letter") was sent from Kensington to Pacific

23   Western Bank on June 30, 2014. Id. at Ex. A. The Kensington Letter offered

24

approximately $5.9 million total for the PWB Note and broke the price down specifically

to approximately $3.7 million "for the portion of the secured note allocated to the

Rexford Property and the Rexford Deed of Trust," and approximately $2.2 million "for

the portion of the Secured Note allocated to the Chalette Property and the Chalette

Deed of Trust." Id. at Ex. A. The Elkwood Defendants also provide a letter on

Fieldbrook's letterhead that was sent from Thelma Guerrero to a Mr. Mazzarino at

Citivest (the "Guerrero Memo"). Id. at Ex. B. The Guerrero Memo informs Citivest that

"we" have assigned the Chalette DOT to Fieldbrook, "along with a dollar portion of the

note secured by that Deed of Trust on the Property." Id. The Guerrero Memo then

instructed Citivest to bid $5.8 million as the agent for Fieldbrook and the remainder on

the Rexford Property on behalf of Elkwood. Id. The Guerrero Memo is dated February

17, 2015, the day before Fieldbrook Assignment was executed.

The Elkwood Defendants rely on the Kensington Letter and the Guerrero Memo,

and the fact that the Fieldbrook Assignment did not mention the Rexford DOT, to argue

that the parties did not intend to transfer the entire PWB Note to Fieldbrook.

## II.    **Summary Judgment Standard**

In order to succeed on a motion for summary judgment under Federal Rule of

Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule

of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of

material fact and entitlement to judgment as a matter of law. In re Aubrey, 111 B.R. 268,

272 (BAP 9th Cir. 1990). The moving party must support its motion with credible

evidence, as defined in Federal Rule of Civil Procedure 56(c), which would entitle it to a

directed verdict if not controverted at trial. Id. If a party fails to address another party's

1   assertion of fact, the court may consider the fact undisputed for purposes of the

2   summary judgment motion. Fed. R. Civ. P. 56(e)(2). Substantive law determines which

3   facts are material for purposes of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>,

4   477 U.S. 242, 248 (1986). "Summary judgment will not lie if the dispute about a material

5   fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

6   verdict for the nonmoving party." <u>Id.</u> The court must view all the evidence in the light

7   most favorable to the nonmoving party. <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir.

8   2008). The court may not evaluate the credibility of a witness or weigh the evidence.

9   <u>California Steel & Tube v. Kaiser Steel Corp.</u>, 650 F.2d 1001, 1003 (9th Cir. 1981).

10                          **III.    Discussion**

11          Trustee's Motion seeks summary judgment only on the first claim for relief: quiet

12   title as to the Rexford Property. Quiet Title claims are actionable under Cal. Civ. Pro.

13   Code § 760.020. To state a claim for quiet title, a complaint must include (1) the subject

14   property's description, including both its legal description and its street address or

15   common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims

16   against which a determination is sought; (4) the date as of which the determination is

17   sought; and (5) a prayer for the determination of the title against the adverse claims.

18   <u>Metcalf v. Drexel Lending Grp.</u>, No. 08-CV-00731 W POR, 2008 WL 4748134, at *5

19   (S.D. Cal. Oct. 29, 2008). Trustee argues that the foreclosure of the Rexford home was

20   void because Elkwood assigned the entire PWB Note to Fieldbrook before the

21   foreclosure sale. Trustee argues further that the PWB note could not be split and

22   assigned in part without the written consent of the borrowers, and that Trustee's rights

23   as a bona fide purchaser of the Rexford Property bar reformation of the contract.

24

Bifurcation of the PWB Note

The threshold issue is whether the rights to foreclose under the Rexford DOT were transferred from Elkwood to Fieldbrook in the Fieldbrook Assignment. There is no dispute that when Elkwood obtained the PWB Note from Pacific Western Bank, it remained a single note secured by both the Rexford DOT and the Chalette DOT. Similarly, there is no contention that the PWB Note was in any way altered before Elkwood executed the Fieldbrook Assignment. The Fieldbrook Assignment, therefore, is the contract under which any "bifurcation," "splitting," "partial assignment," or assignment of a "participating interest," as the transaction has been variously described,[2] must have occurred.

Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. However, "it is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract." Block v. eBay, Inc., 747 F.3d 1135, 1138 (9th Cir. 2014) (internal quotations omitted). "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." Reilly v. Inquest Tech., Inc., 218 Cal. App. 4th 536, 554 (2013). The Court must examine the wording of the Fieldbrook Assignment to determine the objective intent of the contracting parties.

The operative language of the Fieldbrook Assignment in its entirety is as follows:

> For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby grants, assigns, transfers and conveys to FIELDBROOK, INC., A CALIFORNIA CORPORATION all of its right, title and beneficial Interest In and to that certain Deed of Trust dated MARCH 20, 2009

---

[2] Or, as the Abselets put it, whether "split happened." Abselet Opp. to Elkwood Motion, 20:14.

executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE
SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED
MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as
Trustee, for the benefit of PACIFIC WESTERN BANK as
beneficiary and recorded as Instrument No. 20090425658, on
March 25, 2009, In Book _____, Page _____ of
Official Records in the Office of the County Recorder of Los
Angeles County, California, describing land in said county as,

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los
Angeles, State of California, as per map recorded in book 657,
pages 99 and 100 of maps, in the office of the county recorder of
said county.

A.P.N. 4391-009-002 AKA: 580 CHALETTE DRIVE, BEVERLY
HILLS, CA 90210

Together with the Secured Promissory Note or Notes therein
described or referred to, the money due and to become due
thereon with interest, and all rights accrued or to accrue under said
Deed of Trust, any liens, security interest, and remedies arising
thereunder. This Assignment is made without recourse,
representations or warranties of any kind except as may be set
forth in any Loan Sale Agreement that may be between assignor
and assignee.

Fieldbrook Assignment, RJN ISO T'ee MSJ at Ex. D. By its terms, the assignment

purports to assign the Chalette DOT and the PWB Note from Elkwood to Fieldbrook.

Conspicuously absent from the Fieldbrook Assignment is any reference to the Rexford

DOT, which also secured the PWB Note. Defendants argue that the Fieldbrook

Assignment contains a latent ambiguity requiring the admission of extrinsic evidence.

Extrinsic Evidence

A latent ambiguity exists when a document, while unambiguous on its face, may

be reasonably susceptible to more than one possible meaning upon production of

extrinsic evidence. Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 391 (2006). "The

test of admissibility of extrinsic evidence to explain the meaning of a written instrument

is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Id. (quoting Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968)).[3] The Pacific Gas Court reasoned that, under California law, "the intention of the parties as expressed in the contract is the source of contractual rights and duties." Pacific Gas, 69 Cal. 2d at 38. Extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract. Id. at 33.

The Fieldbrook Assignment is not reasonably susceptible to a reading that the PWB Note would be bifurcated and $5.8 million of the note secured by only the Chalette DOT would be transferred to Fieldbrook while the remainder of the PWB Note and the Rexford DOT would remain with Elkwood. No amount of extrinsic evidence would allow such a wholesale re-imagining of the terms of the Fieldbrook Assignment. The phrase "[t]ogether with the Secured Promissory Note or Notes therein described or referred to" specifically indicates that all notes secured by the Chalette DOT were transferred in the Fieldbrook Assignment, without any qualification or limitation. While Defendants attach evidence that indicates an intent to assign only a portion of the PWB Note, that evidence does not indicate an ambiguity in the language of the Fieldbrook Assignment—instead, that extrinsic evidence "flatly contradicts" the language of the Fieldbrook Assignment. Consolidated World Investments, Inc. v. Lido Preferred Ltd., 9

_____

[3] On this point, California law differs from many other states. "*Pacific Gas* essentially abrogated the traditional rule that parol evidence is not admissible to contradict the plain meaning of an integrated agreement by concluding that, even if the agreement 'appears to the court to be plain and unambiguous on its face,' extrinsic evidence is admissible to expose a *latent* ambiguity, i.e., the possibility that the parties actually intended the language to mean something different." Dore, 39 Cal. 4th at 395 (Justices George, Kennard, Chin, and Moreno, Concurring).

1    Cal. App. 4th 373, 379 (Cal. Ct. App. 1992). The phrase "[t]ogether with the Secured

2    Promissory Note or Notes therein described" is not reasonably susceptible to the

3    reading "[t]ogether with *$5.8 million of* the Secured Promissory Note or Notes therein

4    described. . . ." Trustee's Reply, 2:21-3:1. See Gerdlund v. Elec. Dispensers Int'l, 235

5    Cal. Rptr. 279, 284 (Cal. Ct. App. 1987) (refusing to admit parol evidence where

6    contract language stating that "[n]otice of termination may be given at any time and for

7    any reason" was not reasonably susceptible to the proposed reading that such notice

8    could only be given "for any *good* reason.").

9        Even if the extrinsic evidence were to be considered, it is insufficient to support

10   the Elkwood Defendants' Cross-Motion. The evidence produced by Defendants to

11   support the bifurcation of the PWB Note is not dispositive of an intent to have the note

12   bifurcated because all material inferences on this issue must be made in favor of the

13   Trustee. While most facts are not in dispute on these cross motions, the Trustee and

14   the Abselets dispute the assertions of fact concerning the intent to bifurcate as self-

15   serving.  These statements have not been cross-examined at trial and must be

16   evaluated in light of all the evidence. While there were certainly negotiations with Pacific

17   Western Bank regarding some sort of bifurcation of the PWB Note, those negotiations

18   were carried out by Kensington, an entity which is not a party to this litigation (although

19   it is also owned by Nourafshan).

20       The Guerrero Memo, which was apparently executed on behalf of Fieldbrook,

21   indicates that the portion of the PWB Note that was transferred to Fieldbrook was $5.8

22   million. The fact that the Guerrero Memo states that "we" have assigned the Chalette

23   DOT to Fieldbrook, on Fieldbrook's own letterhead, indicates a lack of regard for distinct

24

1   corporate entities. The Guerrero Memo was written the day before Fieldbrook even

2   obtained an interest in the Property.

3        The Fieldbrook Assignment, as recorded at the Los Angeles County Recorder's

4   Office, does not in any way bifurcate the PWB Note. It merely assigns the PWB Note

5   and Chalette DOT to Fieldbrook. No other document has been provided by the Elkwood

6   Defendants purporting to bifurcate the PWB Note.[4]

7                          Disposition of the Rexford DOT

8        The determination that extrinsic evidence is not appropriate to support a

9   bifurcation of the PWB Note does not resolve the disposition of the Rexford DOT.

10  Because the Fieldbrook Assignment did not mention the Rexford DOT, but assigned the

11  entire PWB Note, the question remains of what rights Elkwood had to foreclose under

12  the Rexford DOT. The Elkwood Defendants argue that the failure to mention the

13  Rexford DOT constitutes a patent ambiguity in the Fieldbrook Assignment. Regardless

14  of whether the ambiguity is patent or latent, the Fieldbrook Assignment can be read as

15  not intending to transfer the Rexford DOT. As explained below, however, because the

16  Rexford DOT must follow the PWB Note, it also was assigned to Fieldbrook as a matter

17  of law, and the proposed extrinsic evidence is of no consequence.

18       A plain reading of the Fieldbrook Assignment reveals that no ambiguity exists

19  regarding the bifurcation of the amount due, but that an ambiguity does exist regarding

20  the disposition of the Rexford DOT. If the Court were to admit extrinsic evidence to

21

22  _____

23  [4] The Elkwood Defendants moved earlier for relief from the automatic stay in the lead bankruptcy case to
    record a correcting assignment specifying an amount of the PWB Note to be assigned, the Court denied
    the motion, stating that such relief would be an inappropriate determination that the Fieldbrook
    Assignment was incorrect when drafted, and reserving such a determination for resolution in this
24  adversary action. Doc. No. 605.

determine the intent of the parties with regard to the Rexford DOT, the Court could <u>not</u>

use that same evidence to bifurcate the PWB Note as requested by the Elkwood

Defendants.[5] <u>Cross-Motion</u>, 13:17-21. Extrinsic evidence cannot be used to show that

only $5.8 million of the PWB Note was transferred in the Fieldbrook Assignment

because the language of the Fieldbrook Assignment is not reasonably susceptible to

that reading. The Elkwood Defendants misapply the rule from <u>Pacific Gas</u> by implying

that admission of extrinsic evidence to interpret an ambiguity is separate from the

"reasonably susceptible" test of <u>Pacific Gas</u>. <u>Cross-Motion</u>, 25:3-5.

> One exception to the parol evidence rule is that extrinsic
> evidence may be introduced to explain the meaning of
> ambiguous contractual language. The test of whether parol
> evidence is admissible to construe an ambiguity is not
> whether the language appears to the court unambiguous,
> but whether the evidence presented is relevant to prove a
> meaning to which the language is 'reasonably susceptible.'

<u>Consol. World Investments, Inc. v. Lido Preferred Ltd.</u>, 9 Cal. App. 4th 373, 379 (1992).

The entire PWB Note was transferred to Fieldbrook days before the Rexford

foreclosure. There has been no authority presented that a deed of trust can be

separated from the note it secures and remain valid, nor do the Elkwood Defendants

make that argument. The Elkwood Defendants instead focus their argument on

enforcing their stated intention of assigning only a portion of the PWB Note—an

argument which the law does not support.

---

[5] Even if the Court were to determine that consideration of extrinsic evidence would be allowed, there would be a disputed issue of material fact as to whether the extrinsic evidence, including the Guerrero Memo, accurately expressed the intent of Elkwood and Fieldbrook. <u>Trustee's Statement of Disputed Facts</u>, ¶ 21. Trustee has the same dispute with regards to Nourafshan's declaration about his intent to split the PWB Note, calling the declaration "self-serving." <u>Trustee's Opposition</u>, 18:6-9. The Abselets' opposition to the Cross-Motion raises similar disputes. <u>Abselet Statement of Genuine Issues</u>, ¶¶ 14 (disputing Nourafshan's intention to allocate the PWB note between the two Properties), 21 (disputing Guerrero memo as reflective of Elkwood and Fieldbrook's intent), and 26 (disputing the intent of the parties to the Fieldbrook Assignment to bifurcate the PWB Note).

1    The transfer of the entire PWB Note to Fieldbrook carried with it the Rexford

2    DOT. "The assignment of a debt secured by mortgage carries with it the security." Cal.

3    Civ. Code § 2936. "The assignment of a secured debt carries with it the security, since

4    the security is a mere incident of the debt. [Civ. Code, §§ 1084, 2936] . . .When one

5    assignee takes the note and another takes the trust deed or mortgage, the holder of the

6    note prevails regardless of the time of transfer. [Adler v. Sargent (1895) 109 Cal 42, 41

7    P 799]." Cal. Civ. Prac. Real Property Litigation § 4:28, Rights of assignee; see also In

8    re Macklin, 495 B.R. 8, 13 (Bankr. E.D. Cal. 2013) ("The note and the mortgage are

9    inseparable; the former as essential, the lat[t]er as an incident. An assignment of the

10   note carries the mortgage with it, while an assignment of the latter alone is a nullity.");

11   Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 927 (2016) ("The deed of trust,

12   moreover, is inseparable from the note it secures, and follows it even without a separate

13   assignment."). Thus, the Rexford DOT was also assigned to Fieldbrook before the

14   Rexford foreclosure.

15                                  Participation

16   The Elkwood Defendants have argued that the Court should consider the

17   transaction between Elkwood and Fieldbrook to be a participation agreement, which is

18   authorized under the Business Loan Agreement that was related to the PWB Note. See

19   Nourafshan Declaration, Ex. G, P. 5. Participations "are contractual arrangements

20   between a lender and a third party, in which the third party, or participant, provides

21   funds to the lender. The lender, in turn, uses the funds from the participant to make

22   loans to the borrower." In re ACRO Bus. Fin. Corp., 357 B.R. 785, 787 (Bankr. D. Minn.

23   2006). To determine whether a transaction is a participation agreement, courts have

24

considered the following factors: "a) money is advanced by participant to a lead lender;

b) a participant's right to repayment only arises when a lead lender is paid; c) only the

lead lender can seek legal recourse against the borrower; and, d) the document is

evidence of the parties true intentions." In re Coronet Capital Co., 142 B.R. 78, 82

(Bankr. S.D.N.Y. 1992). "[T]he participants cannot be holders of the notes, and hence

probably cannot enforce them directly." 1 Real Estate Finance Law § 5:35 Partial

assignments and participations (6th ed.).

While Trustee cites out-of-circuit cases to describe the nature of such

agreements, the law appears consistent among jurisdictions, and the Elkwood

Defendants provide no law in support of their assertion that a participation in the PWB

Note is legally equivalent to a partial assignment. Cross-Motion, 23:13-15.

No money was advanced by the alleged "participant," Fieldbrook, to the "lender,"

Elkwood. Also relevant is the fact that Fieldbrook itself pursued foreclosure against the

Chalette Property under the PWB Note, which is not consistent with a participant's

rights as described above. The language of the Fieldbrook Assignment also indicates

that the Elkwood Defendants intended an assignment, not a participation agreement.

There is insufficient evidence and no legal support for considering the Fieldbrook

assignment to be a participation agreement.

<u>Prejudice</u>

The Elkwood Defendants further argue that, because Debtors were not

prejudiced by a partial assignment of the PWB Note and the Chalette DOT, Trustee

may not object. Elkwood Defendants' Motion, 27:13-14. The issue of prejudice arises in

the case law in two contexts: first, as a constitutional requirement for standing, and

second, as an element of a wrongful foreclosure claim.

*Prejudice as Required for Standing*

The Elkwood Defendants' primary contention is that Trustee lacks standing because he has not shown any prejudice beyond the fact of foreclosure. <u>Elkwood Defendants' Reply to Elkwood Motion</u>, 6:21-23. This issue was also raised and argued at the February 27, 2018 hearing on the Elkwood Defendants' motion to dismiss the second amended complaint. The Elkwood Defendants are incorrect.

The California Supreme Court in <u>Yvanova v. New Century Mortg. Corp.</u> has recently addressed this question. 62 Cal. 4th 919. In <u>Yvanova</u>, a homeowner challenged the foreclosure of her home by an entity who allegedly did not own the note and deed of trust because the assignment in which the entity received its interest was allegedly void. The court held that, if an assignment necessary to the chain of title is void, the entity seeking a trustee's sale had no legal authority to do so and the "unauthorized sale constitutes a wrongful foreclosure." <u>Id.</u> at 935. The court ruled that a homeowner in default who was not a party to the assignment would have standing to challenge an assignment of the note and deed of trust if the homeowner claimed that the assignment was void, not merely voidable. <u>Id.</u> at 924.

The <u>Yvanova</u> court addressed prejudice in terms of an injury for purposes of the constitutional requirement of standing, and distinguished between prejudice as a standing issue and prejudice as an element to the tort of wrongful foreclosure. "[W]e are concerned only with <u>prejudice in the sense of an injury sufficiently concrete and personal to provide standing</u>, not with prejudice as a possible element of the wrongful

-15-

1  foreclosure tort." [6] Id. at 937 (emphasis added) (citing Culhane v. Aurora Loan Servs. of

2  Nebraska, 708 F.3d 282 (1st Cir. 2013) ("For purposes of standing doctrine, an injury is

3  defined as an invasion of a legally protected interest which is (a) concrete and

4  particularized; and (b) actual or imminent, not conjectural or hypothetical. The

5  foreclosure of the plaintiff's home is unquestionably a concrete and particularized injury

6  to her.")). To have standing, a plaintiff "must be able to allege injury—that is, some

7  invasion of the plaintiff's legally protected interests." Angelucci v. Century Supper Club,

8  41 Cal. 4th 160, 175 (2007).  Yvanova disagreed with the same analysis of standing

9  pursued by the Elkwood Defendants:

10           As it relates to standing, we disagree with defendants'
             analysis of prejudice from an illegal foreclosure. A
11           foreclosed-upon borrower clearly meets the general
             standard for standing to sue by showing an invasion of his or
12           her legally protected interests—the borrower has lost
             ownership to the home in an allegedly illegal trustee's sale.
13

14  Yvanova, 62 Cal. 4th at 937 (emphasis added, citation omitted). A homeowner whose

15  home was foreclosed upon by one with no right to do so has standing to challenge that

16  foreclosure—it is irrelevant for purposes of standing whether the homeowner seeks

17  relief in a wrongful foreclosure action or in a quiet title action.

18         The Elkwood Defendants argue that Yvanova is distinguishable and inapplicable

19  because it involved a void assignment resulting in a potentially void foreclosure,

20  whereas here the Trustee argues that a valid assignment resulted in a void foreclosure.

21  _____

22  [6] The elements of a wrongful foreclosure action under California law are: "(1) the trustee or mortgagee
    caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a
    mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases
23  where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the
    secured indebtedness or was excused from tendering." Miles v. Deutsche Bank Nat'l Tr. Co., 236 Cal.
    App. 4th 394, 408 (2015). While not discussed here, the Court previously determined that an exception to
24  the tender requirement applied to Trustee's action.

1    While Yvanova and the other related cases involve void assignments, the result is to

2    allow challenges to void foreclosures. See Glaski v. Bank of Am., 218 Cal. App. 4th at

3    1101 ("[W]here a plaintiff alleges that the entity lacked authority to foreclose on the

4    property, the foreclosure sale would be void."). There are many passages of Yvanova

5    which stress "the principle that only the entity currently entitled to enforce a debt may

6    foreclose on the mortgage or deed of trust securing that debt. . . ." Yvanova, 62 Cal.4th

7    at 928. "A foreclosure initiated by one with no authority to do so is wrongful for purposes

8    of such an action." Id. at 929. Yvanova is not so absurdly narrow as to allow standing

9    only to challenge void assignments; it also grants the wronged party standing to

10   challenge a void foreclosure.[7]

11                   *Prejudice as an Element of A Quiet Title Action*

12           There is conflicting law on whether the mere fact of foreclosure is sufficient

13   prejudice to satisfy the second element of a wrongful foreclosure claim. The court in

14   Sciarratta v. U.S. Bank Nat'l Assn., relying in part on Yvanova, held that when a

15   homeowner is foreclosed on by one with no right to do so, that homeowner is sufficiently

16   prejudiced to challenge the allegedly void assignment in a wrongful foreclosure action.

17   247 Cal. App. 4th 552, 565-66 (2016). The Elkwood Defendants cite Cardenas v.

18   Caliber Home Loans, Inc., which explicitly rejects the Sciarratta court's approach,

19   finding that the failure to allege any prejudice beyond the fact of foreclosure is fatal to an

20   action to set aside a foreclosure based upon a void assignment. 281 F. Supp. 3d 862,

21   873 (N.D. Cal. 2017).

22

23   _____

[7] To the extent the Elkwood Defendants' again raise their argument previously raised at the February 27,
2018 hearing that Yvanova is no longer good law because it relied upon Glaski, which relied upon a New
York case which has subsequently been overturned, the Court disagrees. To state the obvious, the
24   Supreme Court of California cannot be overruled on an issue of California law by a New York court.

By finding that the prejudice required as an element of a wrongful foreclosure

action is a higher standard than the prejudice required for standing, the court in

Cardenas seemed to believe that Yvanova granted standing to homeowners to pursue a

cause of action that would necessarily fail, creating a right to litigation with no hope of a

remedy. Furthermore, the Cardenas court relied almost entirely on authority that

predated the Yvanova decision. At least one unreported appellate case sided with

Sciarratta, finding that under Yvanova the mere fact of foreclosure was sufficient

prejudice for both 1) standing and 2) to satisfy the second element of a wrongful

foreclosure claim. Park v. Wells Fargo Bank, N.A., No. B264026, 2017 WL 4020586, at

*7 (Cal. Ct. App. Sept. 13, 2017), as modified on denial of reh'g (Oct. 2, 2017). "A

homeowner experiences prejudice or harm when an entity with no interest in the debt

forecloses. When a non-debtholder forecloses, a homeowner is harmed because he or

she has lost her home to an entity with no legal right to take it." Sciarratta, 247 Cal. App.

4th at 565-66.

Trustee also argues that the first claim for relief seeks quiet title, not the tort of

wrongful foreclosure,[8] and that prejudice is not an element of quiet title. Trustee's

Opposition to Cross-Motion, 24:13-28. The Elkwood Defendants argue, without any

clear authority, that a quiet title claim based upon a void foreclosure must also satisfy

the requirements of a wrongful foreclosure action. Elkwood Defendants' Reply to Cross-

Motion, Doc. 143 4:3-18.  Prejudice is simply not an element of a quiet title action.

---

[8] Trustee's previous complaint included an action for wrongful foreclosure. The Court determined that certain alleged irregularities with the foreclosure sale were insufficient under California law to set aside a foreclosure sale. Therefore, the only grounds that remained for the wrongful foreclosure action were the same as the grounds for the quiet title claim. In the discussion, the Court and the Trustee agreed that the claim for wrongful foreclosure was duplicative of the claim for quiet title because they were both based on the same factual allegation—namely, that the foreclosure was void.

Therefore, the split in authority between <u>Cardenas</u> and <u>Sciarratta</u> on prejudice as an

element of the tort of wrongful foreclosure is not relevant to this action. Even if it were,

the Court is more inclined to follow the approach in <u>Sciarratta</u>, a state appellate court,

on this rapidly evolving issue of California law.

The Trustee does not need to demonstrate prejudice in connection with this quiet

title claim. Even if such a showing were required, it is satisfied by the fact of the

foreclosure under <u>Sciarratta</u>.

Elkwood's Deed Upon Sale Is Void

The question that follows is whether the Trustee's Deed Upon Sale is void. Since

the Fieldbrook Assignment transferred the entire PWB Note and, consequently, the

Rexford DOT, when Elkwood foreclosed, it had neither the right to foreclose nor the

right to credit bid. "Only the true owner or beneficial holder of a Deed of Trust can bring

to completion a nonjudicial foreclosure under California law." <u>Yvanova</u>, 62 Cal. 4th at

928. "[W]here a plaintiff alleges that the entity lacked authority to foreclose on the

property, the foreclosure sale would be void." <u>Glaski</u>, 218 Cal. App. 4th at 1101.

Therefore, the recorded Trustee's Deed Upon Sale was void, and must be treated as a

"blank piece of paper." <u>Los Angeles v. Morgan</u>, 105 Cal. App. 2d 726, 733 (1951); <u>See</u>

<u>also Taormina Theosophical Community, Inc. v. Silver</u>, 140 Cal. App.3d. 964, 971 (Cal.

App. 2d Dist. 1983) ("Recording itself grants no interest in the property, and a void

document 'derives no validity from the mere fact that it is recorded.'" (citations omitted)).

No action was taken to correct the defective Trustee's Deed Upon Sale before the

bankruptcy was filed. The Trustee's Deed Upon Sale must, therefore, be considered

void.

1

<u>Reformation of Contract</u>

2      The Elkwood Defendants seek reformation in their Cross-Motion to address the

3  possible conclusion that the sale is void. Reformation of contract under California law is

4  governed by Cal. Civ. Code. § 3399:

5          When, through fraud or a mutual mistake of the parties, or a
           mistake of one party, which the other at the time knew or
6          suspected, a written contract does not truly express the
           intention of the parties, it may be revised on the application
7          of a party aggrieved, so as to express that intention, so far
           as it can be done without prejudice to rights acquired by third
8          persons, in good faith and for value.

9      The final clause of Cal. Civ. Code § 3399, "so far as it can be done without

10  prejudice to rights acquired by third persons, in good faith and for value," indicates that

11  reformation is not available where the rights of a bona fide purchaser would be

12  prejudiced. <u>Baines v. Zuieback</u>, 84 Cal. App. 2d 483, 491 (1948).

13                       *Trustee's Rights as Bona Fide Purchaser*

14      Trustee has argued that his standing as a hypothetical bona fide purchaser of

15  real property under the strong-arm powers of § 544(a)(3) precludes any action for

16  reformation of contract by the Elkwood Defendants. <u>Trustee Motion</u> 19:16-24:4. The

17  Elkwood Defendants respond that reformation is available despite Trustee's powers

18  under § 544(a)(3) because Elkwood recorded a Trustee's Deed Upon Sale following the

19  foreclosure of the Rexford Property. The question is whether a purchaser would have

20  been on notice of Elkwood's interest in the Rexford Property. A reformation action will

21  be allowed only if a hypothetical bona fide purchaser would have had notice of

22  Elkwood's interest. <u>See, e.g.</u>, <u>In re Weisman</u>, 5 F.3d 417, 420 (9th Cir. 1993); <u>In re</u>

23  <u>Probasco</u>, 839 F.2d 1352, 1354 (9th Cir. 1988).

24

The rights of a bona fide purchaser under § 544(a)(3) are defined by state law. In re Tleel, 876 F.2d 769, 772 (9th Cir. 1989). In California, a purchaser of real estate for value without actual or constructive notice of a prior interest is given status as a bona fide purchaser. Id. Because § 544(a) specifies that a trustee has its strong-arm powers "without respect to any knowledge," "actual notice cannot overcome the Trustee's bona fide purchaser status." Id. However, constructive or inquiry notice can preclude a Trustee's status as a bona fide purchaser under § 544(a)(3). In re Harvey, 222 B.R. 888, 893 (B.A.P. 9th Cir. 1998). Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214.

A hypothetical purchaser viewing the real estate records for the Rexford Property on the petition date would have seen the Trustee's Deed Upon Sale filed by Elkwood recorded March 6, 2015. Trustee RJN, Ex. G.[9] Typically, this recorded document would provide constructive notice to any potential purchaser of an adverse interest in the property. Here, however, the Trustee's Deed Upon Sale is void. A recorded document, if void, should be treated "as a blank sheet of paper" and therefore does not provide constructive notice. City of Los Angeles v. Morgan, 105 Cal. App. 2d at 733 ("[I]t is obvious that invalid documents are not entitled to be recorded, but if they are recorded, they do not give constructive notice."); See 5 Collier on Bankruptcy ¶ 544.02 (16th 2018) ("Where the holder of a security interest has not taken the essential steps to perfect that security interest, or where the recording is defective, the trustee does not have constructive notice."). The Elkwood Defendants rely upon Triple A Management Co. v. Frisone for the proposition that constructive notice is based upon the recorded

---

[9] Trustee's Request for Judicial Notice in Support of Trustee's Motion is granted.

1    chain of title "as that state of title objectively presents itself," and is not viewed "through

2    rose colored glasses or with blinders on." 69 Cal. App. 4th 520, 530 (1999). This

3    approach to constructive notice is not inconsistent with the rule that a void document

4    does not provide constructive notice. <u>Triple A Management</u> did not involve constructive

5    notice based on a void document and is therefore of limited application here.

6         Rights under § 544(a)(3) may also be cut off where any bona fide purchaser

7    would have <u>inquiry</u> notice of a superior interest in the property. Courts have applied the

8    standard of whether a "prudent purchaser," in light of reasonably available information,

9    would have made an inquiry about the alleged interest. <u>In re Weisman</u>, 5 F.3d at 420. A

10   "prudent purchaser" describes someone who is shrewd in the management of practical

11   affairs and whose conduct is marked by wisdom, judiciousness, or circumspection.

12   <u>See</u> <u>Probasco</u>, 839 F.2d at 1356. Such a purchaser will be charged with knowledge of

13   1) the nature of the property; 2) its current use; 3) the identities of the persons

14   occupying it; 4) the relationship among them; and, 5) the relationship between those in

15   possession and the person whose purported interest in the property the purchaser

16   intended to acquire. <u>Id.</u> Clear and open possession of real property by someone other

17   than the party on title constitutes constructive notice to subsequent purchasers,

18   requiring such purchasers to inquire into the possessor's interest. <u>In re Probasco</u>, 839

19   F.2d at 1354. By the same token, "there is no duty to inquire upon a subsequent

20   purchaser regarding any unknown claims or interest by a person in possession of real

21   property where the occupant's possession is consistent with the record title." <u>Weisman</u>,

22   5 F.3d at 421.

23        The court in <u>Probasco</u> decided that it was "almost inconceivable" that a

24

1  reasonably prudent person, "knowing that Parcels 2 and 3 were jointly owned, and

2  seeing a perimeter fence around all three parcels, no fence between the parcels, the

3  staking of all three parcels, and roads traversing the entire property, would not inquire

4  whether a one-half owner of Parcels 2 and 3 had an interest in Parcel 1." <u>Probasco</u>, 839

5  F.2d at 1356. Therefore, the court held that the debtor-in-possession, as a hypothetical

6  bona fide purchaser under § 544(a)(3), had inquiry notice of a superior interest in the

7  real property, <u>Id.</u> at 1357, and the court further required that the deed be reformed to

8  include all three properties, <u>Id.</u> at 1356. Notably, the success of the reformation action

9  depended upon an initial determination of the trustee having constructive or inquiry

10  notice of the allegedly unperfected interest.

11      Similarly, the court in <u>Weisman</u> held that a reasonably prudent purchaser would

12  have inquired whether debtor had executed an unrecorded deed conveying her interest

13  in property currently occupied by her ex-husband and his new wife. <u>Weisman</u>, 5 F.3d at

14  422. The court determined that, realistically, people are not willing to allow their ex-

15  husband and his new wife to reside in property still jointly owned by the divorced couple.

16  The <u>Weisman</u> court therefore found that the bankruptcy trustee did not have a superior

17  interest to the unrecorded deed as a bona fide purchaser under § 544(a)(3) because the

18  trustee was on inquiry notice due to the observable facts surrounding the occupancy of

19  the home. <u>See also</u> <u>In re Sale Guar. Corp.</u>, 220 B.R. 660, 666 (B.A.P. 9th Cir.

20  1998), <u>aff'd,</u> 199 F.3d 1375 (9th Cir. 2000) (Trustee's rights as BFP cut off by

21  constructive knowledge that property was possessed by parties other than Debtor

22  because a "prudent purchaser" is charged with the knowledge of: (1) the nature of the

23  property; (2) the current use of the property;  (3) the identity of the person in possession

24

1  of the property; and (4) the relationship between the person in possession and the

2  person whose interest the purchaser intends to acquire. (citing In re Weisman)).

3       Here, reasonable inspection of the Rexford home would not have put a

4  hypothetical bona fide purchaser on inquiry notice of changed ownership of the property

5  due to the highly unusual circumstance of Elkwood, following an alleged foreclosure,

6  allowing Massoud to continue residing at the property. Nourafshan Deposition, p. 145

7  (ECF Doc. 133, p. 40). An individual purchasing the home from Massoud on the date of

8  the petition, upon reviewing title, would see that Massoud owned the property subject to

9  certain liens. Lastly, while a hypothetical bona fide purchaser would realistically see the

10  Trustee's Deed Upon Sale in the property records, because that document is void, it

11  would not provide inquiry notice of Elkwood's interest.[10]

12       The Elkwood Defendants argue that, if the Fieldbrook Assignment is reformed as

13  they request, the Trustee will be deemed to have constructive notice because the

14  Trustee's Deed Upon Sale will no longer be void. The Trustee is correct here that a

15  reformation action cannot be sustained under Cal. Civ. Code § 3399 due to Trustee's

16  status as a bona fide purchaser. The Elkwood Defendants' reformation action is based

17  on an incorrect reading of Cal. Civ. Code. § 3399. If the only theory advanced for why a

18  party lacks bona fide purchaser status is that a reformation action may retroactively

19  legitimize an otherwise void document, the reformation action cannot succeed. This is

20  the only reading that gives meaning to the text of Cal. Civ. Code § 3399, and is

21

22  [10] Relying on Cal. Civ. Code. § 19, Ninth Circuit case law treats inquiry and constructive notice as related, if not identical doctrines. Weisman, 5 F.3d at 420; In re Professional Inv. Properties of America, 955 F.2d 623, 628 (9th Cir. 1992) ("Moreover, decisions such as Probasco discuss the trustee's notice requirement in terms of a constructive notice that encompasses inquiry notice."). If a void document does not provide constructive notice under California law, it is not reasonable to find that the document nonetheless provides inquiry notice.

1  consistent with existing case law.

2  　　In Sieger v. Standard Oil Co., plaintiff Sieger sought to preclude defendant

3  McCollister from reforming a deed of trust based upon mutual mistake on the grounds

4  that reformation would prejudice Sieger's rights as a bona fide purchaser in violation of

5  Cal. Civ. Code § 3399. 155 Cal. App. 2d 649 (1957). Following the widening of an

6  abutting road, the starting point for the measurement of metes and bounds in the

7  property description of the subject property was incorrectly listed in several deeds

8  transferring the property. Id. at 652. McCollister obtained the property, which was

9  leased by a Standard Oil station, from Carter. Id. at 654. Three years later, Carter sold

10  Sieger an abutting piece of property for $115,000. Id. at 655. Several days after that

11  sale, Carter also transferred to Sieger, for no consideration, a portion of the lot occupied

12  by Standard Oil. Id. Carter notified Sieger that ownership of the lot was claimed by

13  McCollister. Id. Five years later, Sieger sent McCollister a letter demanding the rents

14  from the Standard Oil lease dating back to when Sieger obtained the deed from Carter.

15  Id. In the resulting lawsuit, Sieger sought to quiet title in the property, while McCollister

16  filed a cross-complaint to reform the deed from Carter to himself on the basis of mutual

17  mistake of where the property measurements began.

18  　　The Sieger court explains that the bona fide purchaser determination must be

19  made first, and only if the party is *not* a bona fide purchaser will the court consider the

20  merits of a reformation action. McCollister sought to admit evidence of the mutual

21  mistake in support of his reformation action, and the court stated:

22  　　　　　　If W. Edward Sieger was a bona fide purchaser of the
23  　　　　　　contested parcel, the admissibility of the evidence of which
   　　　　　　appellants complain becomes a matter of no importance for
   　　　　　　there could be no reformation affecting his rights.

24

1
2
3
4
5

> Section 3399, Civil Code, provides for reformation because
> of mutual mistake of the parties to an instrument, but only
> "so far as it can be done without prejudice to rights acquired
> by third persons, in good faith and for value." The
> conjunctive used in the last phrase is expressive of the
> general common law on the subject. To become
> a bona fide purchaser one must have acquired title without
> notice, actual or constructive, of another's rights and also
> must have paid value for the same.

6   Id. at 656. Ultimately, the court affirmed that Sieger had inquiry and constructive notice

7   of McCollister's interest and was therefore not a bona fide purchaser, and the

8   reformation action based upon mutual mistake could proceed. Id. at 659.

9        Sieger clarifies that a claim for reformation is not proper if it prejudices the rights

10  of a bona fide purchaser even if the reformation action would destroy that party's status

11  as a bona fide purchaser. More accurately, a reformation action *cannot* be brought to

12  invalidate a bona fide purchaser's rights. This is consistent with the Probasco court's

13  decision to reform the contract in that case only after determining that the debtor-in-

14  possession was not a bona fide purchaser. 839 F.2d at 1356. The court must look to

15  facts other than the reformation action itself to determine whether the individual claiming

16  bona fide purchaser status had constructive or inquiry notice.

17       The Elkwood Defendants have argued that Trustee cannot assert bona fide

18  purchaser status as a defense to the reformation action because the Trustee has not

19  asserted any separate avoidance action under § 544(a)(3). The Trustee correctly points

20  out that § 544(a)(3) grants a trustee the "rights and powers" of a bona fide purchaser in

21  addition to the ability to "avoid any transfer of property of the debtor" that would be

22  voidable by a bona fide purchaser. The protection set forth in Cal. Civ. Code § 3399 are

23  rights of a bona fide purchaser.

24

1    The Court finds that the Trustee did not have constructive or inquiry notice of the

2    transfer as of the petition date, and therefore has "the rights and powers of. . . a bona

3    fide purchaser of real property." 11 U.S.C. § 544(a)(3). This bars consideration of the

4    reformation claim. Cal. Civ. Code § 3399.

5    *Cal. Civ. Code § 1640*

6    The Elkwood Defendants also argue that, if the Fieldbrook Assignment is

7    interpreted as assigning the entire PWB Note, any language that suggests that the

8    entire PWB Note was assigned must be disregarded under Cal. Civ. Code § 1640 and

9    the contract should be reformed to reflect Defendants' intent. Defendants' Opp., 17:2-

10    21:15. Cal. Civ. Code § 1640 provides:

11
12    When, through fraud, mistake, or accident, a written contract
fails to express the real intention of the parties, such
intention is to be regarded, and the erroneous parts of the
13    writing disregarded.

14  Cal. Civ. Code § 1640. This provision is one of several rules for the construction of

15  contractual language in California's Civil Code. Payne v. Commercial Nat. Bank of Los

16  Angeles, 177 Cal. 68, 72 (1917). In the case of mutual mistake, the contract may be

17  reformed to conform to the intent of the parties. Thrifty Payless, Inc. v. The Americana

18  at Brand, LLC, 218 Cal. App. 4th 1230, 1243 (2013). Parol evidence may be considered

19  in making a determination of the true intentions of the contracting parties. Id.

20    The Elkwood Defendant's argument that the remedy for mutual mistake is

21  reformation of the agreement under Cal. Civ. Code § 3399 is generally correct, Thrifty

22  Payless, 218 Cal. App. 4th at 1243, however, because reformation under Cal. Civ. Code

23  § 3399 is not available here due to Trustee's status as a bona fide purchaser, any relief

24

1   under Cal. Civ. Code § 1640 must also fail. Section 1640 is not self-executing, and the

2   Court cannot reach these arguments under Cal. Civ. Code. § 1640 where there is a

3   bona fide purchaser. Thrifty Payless and Hess v. Ford Motor Co., 27 Cal. 4th 516

4   (2002), did permit reformation of the contract based on mutual mistake, but there was

5   no bona fide purchaser involved. Only the two parties to the contract, the landlord and

6   the tenant, were at issue in Thrifty Payless.  Hess specifically discussed the fact that

7   Ford was not a third-party beneficiary to the contract at issue so reforming the contract

8   would not prejudice rights acquired by third persons. Hess, 27 Cal. 4th 516, 529.

9       Furthermore, without a showing of a right of reformation, Cal. Civ. Code. § 1640

10  does not authorize the court to find that "a written contract includes provisions which do

11  not appear upon its face, and enforce such provisions as a part of the written contract."

12  Bradbury v. Higginson, 167 Cal. 553, 559 (1914). The Elkwood Defendants ask the

13  Court to utilize Cal. Civ. Code. § 1640 to re-write the Fieldbrook Assignment with

14  provisions that the document simply does not include. To do so would undermine

15  California law on extrinsic evidence under Pacific Gas and violate the long-standing rule

16  set forth in Bradbury.[11]

17      Lastly, the Elkwood Defendants' reading of Cal. Civ. Code § 1640 violates a

18  basic canon of construction. "It is an elementary tenet of statutory construction that

19  where there is no clear indication otherwise, a specific statute will not be controlled or

20

21  _____

    [11] At oral argument, the Elkwood Defendants argued that the Court need not reach the issue of
22  reformation in its consideration of Cal. Civ. Code § 1640. As the Court understands it, the Elkwood
    Defendants argue that the Court must first disregard any language that they, as parties to the Fieldbrook
23  Assignment, now claim was a mistake; if the Court disregards the language in the assignment that
    Trustee construes as transferring the Rexford DOT, the Trustee's action fails. Exactly which language the
24  Elkwood Defendants claim should be disregarded is unclear, as the language resulting in the transfer of
    the Rexford DOT is the same language that transfers the PWB Note to Fieldbrook. This argument is
    confusing and unsupported by the case law on Cal. Civ. Code § 1640.

1  nullified by a general one." <u>Santiago Salgado v. Garcia</u>, 384 F.3d 769, 773–74 (9th Cir.

2  2004); <u>See also</u> <u>People v. Jenkins</u>, 28 Cal. 3d 494, 505 (1980). Cal. Civ. Code. § 1640

3  is a general statute describing the rule of construction of contracts, while Cal. Civ. Code

4  § 3399 specifically governs cases where a party seeks reformation and another party is

5  a bona fide purchaser. The Court therefore cannot ignore Cal. Civ. Code § 3399 and

6  rely instead upon the more general Cal. Civ. Code § 1640.

7  Redemption Price

8       The Elkwood Defendants argue that if the Trustee is permitted to void the

9  Rexford foreclosure, the parties are returned to the pre-Rexford foreclosure sale status

10  quo and Elkwood must be reimbursed for costs incurred therewith on the Rexford

11  Property. These costs would allegedly include the bid of $782,508.05 (the balance owed

12  on the PWB Note), interest on that amount, payments by Elkwood paying the first trust

13  deed, and various construction, insurance, utilities, repair, and maintenance costs.

14       The issue of redemption costs was raised in the Elkwood Defendants' reply brief

15  and no evidence has been provided. This issue may be raised in a subsequent motion,

16  but insufficient evidence and legal support has been provided for the Court to resolve

17  that issue in this memorandum.

18  **IV.   Conclusion**

19       Summary judgment is granted in Trustee's favor on Trustee's first cause of

20  action. The Court rejects the Elkwood Defendants' standing argument and finds that

21  <u>Yvanova</u> confers standing on the Trustee to bring this action. The Fieldbrook

22  Assignment is not reasonably susceptible to a reading that the note was bifurcated. The

23  Fieldbrook Assignment must be read as providing that the entire PWB Note was

24

transferred along with the Chalette DOT. The Rexford DOT was then also transferred as

a matter of law. The foreclosure on the Rexford Property is, therefore, void. The Trustee

has the rights and powers of a bona fide purchaser under § 544(a)(3), thus reformation

is precluded by Cal. Civ. Code § 3399. Title to the Rexford Property is quieted in the

Trustee as representative of Massoud Yashouafar's estate.

Trustee should submit a proposed judgment order consistent with this

memorandum.

### 

Date: January 25, 2019

Maureen A. Tighe
United States Bankruptcy Judge

# **<u>EXHIBIT B</u>**

FILED & ENTERED

APR 30 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,<br><br><br><br>Debtors. | CHAPTER 11<br><br>Case No.:  1:16-bk-16-12255-GM<br><br>Adv No.:  1:17-ap-01040-MT<br><br>**SUPPLEMENTAL MEMORANDUM RE<br>CROSS-MOTIONS FOR SUMMARY<br>JUDGMENT** |
| DAVID K. GOTTLIEB, as Chapter 11<br>Trustee,<br>                              Plaintiff,<br>      v.<br><br>ELKWOOD ASSOCIATES, LLC., *et al.*,<br><br><br>                              Defendants. | Date:          December 11, 2018<br>Time:          9:30 a.m.<br>Courtroom:  302 |
| AND RELATED COUNTER- AND<br>CROSS-ACTIONS | |

The Court released its Memorandum re: Cross-Motions for Summary Judgment on January 25, 2019 ("First Memorandum"). On February 27, 2019, the Court heard argument on Elkwood Associates, LLC and related entities' ("Elkwood's") objection to

1 | the form of order for those cross-motions for summary judgment.

2 |    Elkwood is correct that the issue of a "redemption price" was raised in their

3 | opposition to the Motion for Summary Judgment filed by the chapter 11 trustee David

4 | Gottlieb ("Trustee"). The Court's First Memorandum left the issue of a "redemption

5 | price" to be decided at a later time by motion due to inadequate briefing. Elkwood has

6 | argued that a determination of a redemption price is a necessary requirement of

7 | Trustee's quiet title action, and that therefore any order on the cross-motions for

8 | summary judgment must only be a partial summary judgment in favor of Trustee until

9 | the issue of redemption price is decided. The issue has now been sufficiently briefed in

10 | the cross-motions for summary judgment pleadings and in the objections to the form of

11 | order, so no further briefing or motion will be necessary.

12 |                    Sys. Inv. Corp. v. Union Bank and Redemption

13 |    Elkwood argues that as a requirement of the Trustee's quiet title action, a

14 | redemption price must be paid to Elkwood. The exact nature and source of this

15 | redemption right is not well explained and Elkwood provides just one case to support its

16 | argument. Sys. Inv. Corp. v. Union Bank, 21 Cal. App. 3d 137 (Ct. App. 1971) (hereafter

17 | "System Investment"). The System Investment court affirmed the trial court's decision

18 | that that trustee's deed upon sale "should be declared void and should be set aside

19 | upon condition that plaintiffs do equity and tender $1,123,494.14 to defendant Union

20 | Bank. . . ." Id. at 150. System Investment reviews whether the trial court abused its

21 | discretion in considering various expenses in connection with determining the proper

22 | redemption price. The additional cases cited at oral argument do not change the court's

23 | analysis. See Knapp v. Doherty, 123 Cal. App. 4th 76 (2004).

24 |

First, note that <u>System Investment</u> is quite old. This is relevant because the fine

distinctions between a void and voidable foreclosure for purposes of tender had not yet

been spelled out clearly in the case law, so the case does not use the same terminology

that more recent cases have adopted. <u>See, e.g.</u> <u>Lona v. Citibank, N.A.</u>, 202 Cal. App.

4th 89, 105 (2011). The tender requirement, where it applies, is based on the rationale

that "if the borrower could not have redeemed the property had the sale procedures

been proper, any irregularities in the sale did not result in damages to the borrower. <u>Id.</u>

at 112 (Quoting <u>FPCI RE-HAB 01 v. E & G Investments, Ltd.</u>, 207 Cal. App. 3d 1018,

1022 (Ct. App. 1989)). In <u>Arnolds Mgmt. Corp. v. Eischen</u>, the court explicitly connected

the tender requirement to the right of a junior lienholder to redeem or cure the

delinquency before foreclosure. 158 Cal. App. 3d 575, 579 (Ct. App. 1984)(citing Cal.

Civ. Code §§ 2904, 2924c(a)(1)).[1]

Another often cited principle in connection with the tender requirement is that a

party seeking to set aside a foreclosure sale "is required to do equity before the court

will exercise its equitable powers." <u>Lona</u>, 202 Cal. App. 4th at 112. In <u>System</u>

<u>Investment</u>, the trial court "said that the redemption price (including a statement of

conditions for tender thereof) was fixed in order to do equity." It appears that the <u>System</u>

<u>Investment</u> court was determining the "redemption price" for purposes of tender

because the foreclosure in that case was voidable and not void, as is the case here.

Tender is not required where the foreclosure is void, rather than voidable. <u>Lona</u>, 202

Cal. App. 4th at 113. Elkwood, the non-prevailing party, is not entitled to a lump sum

---

[1] For further discussion, <u>see</u> <u>Memorandum Re: Motion to Dismiss the First Amended
Counter-Complaint</u>, ECF Doc. 194.

1    payment from Trustee for Elkwood's entire interest in the property.

2         The fundamental issue raised by Elkwood is one of equity. Elkwood and its

3    associates invested certain amounts in the Rexford Property after the void foreclosure,

4    and equity may require that they be reimbursed for actual expenses in connection with

5    maintaining and improving the property. The Trustee argues that the result of this

6    judgment should be to return the parties to their pre-foreclosure positions, and that any

7    rights that Elkwood has would be solely pursuant to its Note and Deed of Trust against

8    the property. A determination of the extent of Elkwood's lien is not a necessary

9    requirement for entry of judgment on the first cause of action for quiet title based upon a

10   void foreclosure. The Court sees no authority to indicate that such a decision is required

11   at this point. The issue of whether Elkwood may have an increased lien or claim in this

12   bankruptcy will be determined at a later date.

13                                    F.R.C.P. 54(b)

14        Federal Rule of Civil Procedure 54(b) allows a trial court dealing with multiple

15   claims to direct entry of a final judgment on certain claims, but not other, by making an

16   express finding that there is no just reason for delay. Curtiss-Wright Corp. v. Gen. Elec.

17   Co., 446 U.S. 1, 3 (1980). In making a determination under Rule 54(b), a court "must

18   first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the

19   sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the

20   sense that it is an ultimate disposition of an individual claim entered in the course of a

21   multiple claims action. Id. at 7. Even where the court finds that a judgment is final, "not

22   all final judgments on individuals claims should be immediately appealable, even if they

23   are in some sense separable from the remaining unresolved claims." Id. at 8. The court

24

1    must consider "judicial administrative interests as well as the equities involved" in order

2    to avoid "piecemeal appeals." Id.

3              The role of the court of appeals is "not to reweigh the
             equities or reassess the facts but to make sure that the
4            conclusions derived from those weighings and assessments
             are juridically sound and supported by the record." As the
5            [Mackey] Court explained: "There are thus two aspects to
             the proper function of a reviewing court in Rule 54(b)
6            cases. The court of appeals must, of course, scrutinize the
             district court's evaluation of such factors as the
7            interrelationship of the claims so as to prevent piecemeal
             appeals in cases which should be reviewed only as single
8            units. But once such juridical concerns have been met, the
             discretionary judgment of the district court should be given
9            substantial deference, for that court is the one most likely to
             be familiar with the case and with any justifiable reasons for
10           delay. The reviewing court should disturb the trial court's
             assessment of the equities only if it can say that the judge's
11           conclusion was clearly unreasonable." Id. . . . . We start (and
             mostly stop) with juridical concerns. On this query our review
12           is de novo.

13   Wood v. GCC Bend, LLC, 422 F.3d 873, 878–79 (9th Cir. 2005) (quoting Curtiss-

14   Wright). The Wood Court reasoned that "this case would inevitably come back to this

15   court on the same set of facts. . . . There is nothing unique or distinguishing about

16   Wood's theories of adverse treatment. . . . the factual bases for both theories are

17   identical. . . ." Id. at 879 (emphasis added).

18              A recent case reaffirmed the two-step process for an appeals court reviewing a

19   Rule 54(b) certification. "First, we review de novo the juridical concerns determination,

20   ... asking whether the certified order is sufficiently divisible from the other claims such

21   that the case would not inevitably come back to this court on the same set of facts.

22   Second, we review for abuse of discretion, and give special deference to, the district

23   court's assessment of the equities." Tessera, Inc. v. Toshiba Corp., 743 F. App'x 140,

24

1    141 (9th Cir. 2018)(emphasis added). The court in Tessera ruled that "the order does

2    not resolve a separable claim; it simply resolves one theory. . . ." Id. (Emphasis added)

3            The case law is therefore clear that the "juridical concerns" inquiry is not only

4    limited to situations where the same legal issues will be appealed multiple times, but

5    also the same factual issues. In this case, the relevant factual allegations in the first

6    claim are substantially similar to the allegations in the second, third, fourth, and fifth

7    claims for relief in the Third Amended Complaint. Each of those claims offers a separate

8    theory of recovery seeking the same relief under the same set of facts. The factual

9    complexity would require revisiting the same operative facts two times on appeal.

10           The primary reason that Trustee seeks to certify that there is "no just reason for

11   delay" is to allow Trustee to move to sell the property and move this estate closer to

12   resolution and payment to creditors. This is an important goal in any bankruptcy case.

13   Elkwood raised the argument that this would create a "Clear Channel Issue," referring to

14   Clear Channel Outdoor v. Knupfer (In re PW, LLC). 391 B.R. 25, 33 (BAP 9th Cir.

15   2008). In Clear Channel, a junior lienholder, Clear Channel, appealed an order

16   authorizing a sale of real property free and clear of its lien under § 363(f)(5) as well as

17   an order approving that sale to the senior lienholder by credit bid. In a widely criticized

18   decision, the Clear Channel court ruled that the appeal of the order approving the sale

19   to the senior lienholder was under § 363(m), but the "free and clear" aspect of that sale

20   was subject to appellate review. This is relevant to a determination under Rule 54(b)

21   because it increases the likelihood of yet another appeal in this case based upon the

22   same essential facts.

23           The Court is also concerned about In re Rodeo Canon Dev. Corp. 362 F.3d 603

24

-6-

1    (9th Cir. 2004), <u>opinion withdrawn and superseded,</u> 126 F. App'x 353 (9th Cir. 2005), <u>as</u>

2    <u>amended on denial of reh'g</u> (Apr. 1, 2005). <u>Rodeo Canon</u> stands for the proposition that,

3    where there is a dispute over the Debtor's interest in the property, a bankruptcy court

4    may not authorize a sale of property under § 363 until the court resolves the dispute and

5    determines that the debtor has an interest in the property that can be sold. "A

6    bankruptcy court may not allow the sale of property as 'property of the estate' without

7    first determining whether the debtor in fact owned the property." <u>Id.</u> at 609. The BAP

8    made a similar determination in <u>In re Clark</u>, stating: "if the property is exempt it may not

9    be sold by the Trustee; if it is not exempt, it may be sold. The threshold question, is it

10   still property of the estate, must first be decided." 266 B.R. 163, 172 (B.A.P. 9th Cir.

11   2001).

12        Maintaining the property may ultimately cost the estate money, potentially

13   wasting an asset and risking a softening real estate market. Because there is the same

14   argument under <u>Rodeo Canon</u> and <u>Clear Channel</u> on whether the sale can proceed

15   while waiting for trial or any appeal to be completed, there is limited benefit to certifying.

16   It would be better to get to trial quickly and then decide any § 363 sale issues. Any other

17   order risks not only other delays but the risk of a sale that would not really be final would

18   impact the sales price. If the parties are concerned about a market decline, they can

19   always stipulate to any repairs needed to enable a sale and hold proceeds pending the

20   result of litigation.

21   / / /

22

23   / / /

24

1                                    <u>Conclusion</u>

2          Elkwood is incorrect in arguing that a determination of a "redemption price" is a

3   necessary requirement of Trustee's quiet title action. The proper proceeding for a

4   determination of that issue is an amended proof of claim and claims objection motion.

5   The Court, however, will not enter a finding that there is no just reason for delay under

6   Fed. R. Civ. P. 54(b).

7          There will be a status conference held on May 16, 2019 at 10:00 a.m. in this

8   matter. The parties should come prepared to set trial dates. The Court can commence

9   trial as soon as the following: July 15, 16, and 18; August 1, 2, 8, and 9.

10                                        ###

11

12

13

14

15

16

17

18

19

20          Date: April 30, 2019

21                                              Maureen A. Tighe
                                                United States Bankruptcy Judge
22

23

24

# **EXHIBIT C**



FILED & ENTERED

APR 30 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher          DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,<br>                    Debtors. | Case No.  1:16-bk-12255-GM<br><br>Chapter 11<br>Jointly Administered |
| In re:<br>SOLYMAN YASHOUAFAR,<br>                    Debtor. | Case No. 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>                    Debtor. | Case No. 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑  Both Debtors<br>☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar | |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>                    Plaintiff,<br>vs.<br><br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, et al.,<br><br>                    Defendants. | Adv. No. 1:17-ap-01040-MT<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM TO QUIET TITLE TO THE REAL PROPERTY LOCATED AT 910 REXFORD DRIVE, BEVERLY HILLS, CA IN THE NAME OF THE CHAPTER 11 TRUSTEE AS THE REPRESENTATIVE OF THE BANKRUPTCY ESTATE OF MASSOUD AARON YASHOUAFAR** |
| AND RELATED COUNTERCLAIMS AND CROSS-COMPLAINT | |

1

The Court having read and considered all documents and argument submitted in connection with the Cross-Motions for Summary Judgment, and the subsequent documents and argument submitted in connection with the objections to the form of order,

IT IS ORDERED as follows:

1.      Partial summary judgment is entered in favor of the Trustee, quieting title to the real property located at 910 Rexford Drive, Beverly Hills, California and having a legal description of Lot 5 and the Northerly 15 feet of Lot 4 of tract No. 4201, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 46, Page 63 of Maps, in the Office of the County Recorder of said County (the "Rexford Home"), in the name of the Trustee as the representative of the bankruptcy estate of Massoud Aaron Yashouafar in his above captioned bankruptcy case;

2.      This Order is not meant to be a final appealable order.

# # # #

Date: April 30, 2019

Maureen A. Tighe
United States Bankruptcy Judge

# **EXHIBIT D**

Jeremy V. Richards (CA Bar No. 102300)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  jrichards@pszjlaw.com
        jlucas@pszjlaw.com

Attorneys for Plaintiff David K. Gottlieb,
Chapter 11 Trustee of the Estates of Solyman
Yashouafar and Massoud Aaron Yashouafar

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,[1]<br>Debtors. | District Court Case Number:<br><br>Bankruptcy Court Case Numbers (Jointly Administered): |
| In re:<br>SOLYMAN YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑  Both Debtors<br>☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar | Adversary Case Number: |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>Plaintiff,<br><br>v.<br><br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET BANK AND TRUST COMPANY,<br><br>Defendants. | 1:17-ap-01040-GM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE PLAINTIFF'S FIRST CLAIM FOR RELIEF (QUIET TITLE) AGAINST DEFENDANT ELKWOOD**<br><br>Date:<br>Time:<br>Place: |

[1]  The Debtors, together with the last four digits of each Debtor's social security number are:  Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I.

## **PROCEDURAL BACKGROUND**

The Court makes these findings of fact and conclusions of law in connection with a Motion for Summary Judgment on the First Claim for Relief for Quiet Title, brought by the Trustee against Defendants Elkwood and Fieldbrook [Dkt. No. 98] and a cross-motion for summary judgment brought by Defendants Elkwood and Fieldbrook on their Second Counterclaim against the Trustee for reformation of the Fieldbrook Assignment, and their Third Counterclaim against Trustee, for quiet title to the Rexford Home.[2]

Pursuant to the Trustee's Quiet Title Claim, the Trustee seeks to quiet title to the Rexford Home in the bankruptcy estate of Massoud on the basis that Elkwood had assigned the PWB Note and the Rexford DOT to Fieldbrook before it purported to credit bid and acquire the Rexford Home at the Rexford Foreclosure Sale.

Pursuant to their Reformation Claim, Elkwood and Fieldbrook seek to reform the Fieldbrook Assignment, to provide for the assignment of only $5.8 million of the PWB Note to Fieldbrook, thereby leaving the balance of the note and the Rexford DOT vested with Elkwood. Pursuant to their Quiet Title Claim, Elkwood and Fieldbrook seek to quiet title to the Rexford Home in the name of Elkwood.

Finally, pursuant to their Sixth Affirmative Defense, Elkwood and Fieldbrook assert a claim against the Trustee for various costs and expenses allegedly incurred by them after the Rexford Foreclosure Sale relating to the Rexford Home "[i]n the event Plaintiff is granted any relief based upon his Complaint in this action" (the "Reimbursement Claim").

The Court has already entered its Memorandum re Cross-Motions for Summary Judgment (the "Memorandum") [Dkt. No. 191], granting summary adjudication on the Trustee's First Claim for Relief and a summary adjudication denying Elkwood's and Fieldbrook's Reformation and Quiet Title Claims. The Memorandum determined that the Reimbursement Claim did not need to be adjudicated as a condition to ruling on the Trustee's First Claim for Relief, a decision that the Court has subsequently reaffirmed twice [Dkt. Nos.216;----]. The Findings of Fact contained herein

---

[2] All capitalized terms shall have the same meaning as set forth below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  summarize all of the undisputed factual findings made by the Court in the Memorandum. Further,

2  the Conclusions of Law summarize, but do not limit or supersede, the legal conclusions set forth,

3  and analyzed in greater detail in the Memorandum, which legal conclusions and analysis are

4  incorporated herein by reference. The Conclusions of Law herein also include certain additional

5  conclusions of law, not contained in the Memorandum, specifically the following: (a) Conclusions

6  of Law numbers 40 through 43, inclusive, which relate to the propriety of entry of judgment on the

7  Trustee's First Claim for Relief, assuming Federal Rule of Procedure, Rule 54(b) is still applicable

8  to these proceedings, which the Court concludes it is not; and (b) Conclusions of Law numbers 44

9  through 46, inclusive, which relate to issues pertaining to the Trustee's right of possession, raised by

10  the Elkwood Defendants subsequent to entry of the Memorandum.

## II.

## FINDINGS OF FACT[3]

1.    On August 3, 2016 (the "**Petition Date**"), involuntary bankruptcy petitions were filed against Massoud Aaron Yashouafar ("**Massoud**") and Solyman Yashouafar ("**Solyman**" and together with Massoud, the "**Debtors**").

2.    The Debtors stipulated to the entry of Orders for Relief in their respective cases, which Orders for Relief were entered on or about September 12, 2016.

3.    The Debtors stipulated to the appointment of a chapter 11 trustee for each of their bankruptcy estates, and David K. Gottlieb ("**Plaintiff**" or "**Trustee**") was appointed as chapter 11 trustee for both Debtors by orders entered on or about September 20, 2016.

4.    Prior to the Petition Date, Massoud through his family trust owned 910 Rexford Drive, Beverly Hills, CA (the "**Rexford Home**").

5.    Prior to the Petition Date, Solyman through his family trust owned 580 Chalette Drive, Beverly Hills, CA (the "**Chalette Home**").

6.    On March 20, 2009, Massoud and Solyman executed a promissory note (the "**PWB Note**") in favor of Pacific Western Bank ("**PWB**") in the principal amount of $6,551,575.00.

[3] Findings of Fact Nos. 1 through 26, inclusive, are all admitted by the Elkwood Defendants. [Dkt. No. 121; pages 3 – 10].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7.     The family trust of Massoud secured the obligations of the PWB Note by, among other things, a deed of trust (the "**Rexford DOT**") against the Rexford Home for the benefit of PWB.

8.     The family trust of Solyman secured the obligations of the PWB Note by, among other things, a deed of trust (the "**Chalette DOT**") against the Chalette Home for the benefit of PWB.

9.     On December 29, 2014, Elkwood Associates, LLC ("**Elkwood**") purchased the PWB Note and PWB Loan Documents from PWB, in addition to the ancillary agreements and documents relating to the PWB Note, Rexford DOT, and Chalette DOT (collectively, the "**PWB Loan Documents**").

10.     After Elkwood purchased the PWB Note and PWB Loan Documents, Elkwood caused Citivest Financial Services, Inc. ("**Citivest**") to be substituted as trustee under the Chalette DOT.

11.     Citivest, as the trustee under the Chalette DOT, filed and served a Notice of Trustee's Sale (the "**Chalette Foreclosure Sale Notice**") for the benefit of Elkwood.

12.     The Chalette Foreclosure Sale Notice was recorded on or about January 27, 2015.

13.     On February 18, 2015, Elkwood executed a certain assignment (the "**Fieldbrook Assignment**") that assigned the entire Chalette DOT to Fieldbrook.

14.     The Fieldbrook Assignment is titled as "ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE" (capitalized font in original).

15.     The Fieldbrook Assignment contained the following language:

> For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby grants, assigns, transfers and conveys to FIELDBROOK, INC., A CALIFORNIA CORPORATION all of its right, title and beneficial Interest In and to that certain Deed of Trust dated MARCH 20, 2009 executed by SOL YMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary and recorded as Instrument No. 20090425658, on March 25, 2009, In Book _____, Page _____ of Official Records in the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Office of the County Recorder of Los Angeles County, California, describing land in said county as,

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 657, pages 99 and 100 of maps, In the office of the county recorder of said county.

A.P.N. 4391-009-002 AKA: 580 CHALETTE DRIVE, BEVERLY

HILLS, CA 90210

Together with the Secured Promissory Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder. This Assignment is made without recourse, representations or warranties of any kind except as may be set forth In any Loan Sale Agreement that may be between assignor and assignee.

16.     The words that were used to assign the Chalette DOT are the exact same words that were used to assign the PWB Note to Fieldbrook.

17.     As reflected by the language used in the Fieldbrook Assignment, the assignment was not limited or qualified nor was there any allocation or participation in the PWB Note in any manner.

18.     On February 20, 2015, Citivest conducted a foreclosure sale under the PWB Note and Chalette DOT (the "**Chalette Foreclosure Sale**").  Citivest submitted an opening bid of $5.8 million on behalf of Fieldbrook, the beneficiary under the PWB Note and Chalette DOT.  There being no other bids, the Chalette Home was sold to Fieldbrook at the Chalette Foreclosure Sale for a credit bid of $5.8 million.

19.     On February 25, 2015, Citivest executed a *Trustee's Deed Upon Sale* (the "**Chalette Foreclosure Sale Deed**") conveying the Chalette Home to Fieldbrook in exchange for its $5,800,000 credit bid arising under the PWB Note, Chalette DOT, and Fieldbrook Assignment (the "**Chalette Transfer**").

20.     The Chalette Foreclosure Sale Deed was recorded on March 6, 2015.

21.     After Elkwood purchased the PWB Note and the other PWB Loan Documents, Elkwood caused Citivest to be substituted as the trustee under the Rexford DOT.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

22.     On or about January 26, 2015, Citivest, as the trustee under the Rexford DOT, filed and served a Notice of Trustee's Sale (the "**Rexford Foreclosure Sale Notice**") for the benefit of Elkwood.

23.     The foreclosure sale of the Rexford Home was scheduled for February 23, 2015 at 9:30 a.m. (prevailing Pacific Time) on the steps of the southwest entrance of the United States Post Office located at 222 N. Grand Ave, Los Angeles, CA 90012.

24.     On February 23, 2015, Citivest conducted a purported foreclosure sale of the Rexford Home (the "**Rexford Foreclosure Sale**").  Citivest, on behalf of Elkwood, opened the bidding with a credit bid of $782,508.05.  There being no other parties appearing at the Rexford Foreclosure Sale, the Rexford Home was sold to Elkwood in exchange for a credit bid of $782,508.05.

25.     On or about February 25, 2015, Citivest, on behalf of Elkwood, executed a *Trustee's Deed Upon Sale* (the "**Rexford Foreclosure Sale Deed**") conveying the Rexford Home to Elkwood. The Rexford Foreclosure Sale Deed reflects that Elkwood, not Fieldbrook, was the foreclosing party/beneficiary and that Elkwood took ownership of the Rexford Home by way of foreclosure in exchange for a purported credit bid of $782,508.05 under the PWB Note.

26.     The Rexford Foreclosure Sale Deed was recorded on March 6, 2015.  [Dkt. No. 83]

27.     On or about March 7, 2015, Massoud and Elkwood executed a lease (the "Rexford Lease") for the Rexford Home with a term that expired in March 2017; the Rexford Lease required Massoud to pay Elkwood $25,000 per month during the term of the Rexford Lease.  Answer [Dkt. No. 83] , ¶ 85.

28.     Neither Massoud nor anyone else made a lease payment to Elkwood under the Rexford Lease.  Nevertheless, Elkwood permitted Massoud and his family to reside in the Rexford Home for at least two years.  Answer [Dkt. No. 83], ¶ 87.

29.     Massoud and his family occupied and benefitted from the full use and enjoyment of the Rexford Home from February 23, 2015, until they moved out in or about April, 2017.  First Amended Counterclaim and Cross-Claim [Dkt. No.109], at ¶ 36.

30.     To the extent any of the foregoing Findings of Fact are more appropriately construed as a Conclusion of Law, they shall be deemed such.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### CONCLUSIONS OF LAW

1.     In order to succeed on a motion for summary judgment under Federal Rule of Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *In re Aubrey*, 111 B.R. 268, 272 (BAP 9th Cir. 1990).

2.     The moving party must support its motion with credible evidence, as defined in Federal Rule of Civil Procedure 56(c), which would entitle it to a directed verdict if not controverted at trial. *Id.*

3.     If a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

4.     Substantive law determines which facts are material for purposes of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

5.     "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

6.     The court must view all the evidence in the light most favorable to the nonmoving party. *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008).

7.     The court may not evaluate the credibility of a witness or weigh the evidence. *California Steel & Tube v. Kaiser Steel Corp.,* 650 F.2d 1001, 1003 (9th Cir. 1981).

8.     Quiet title claims are actionable under Cal. Civ. Pro. Code § 760.020. To state a claim for quiet title, a complaint must include (1) the subject property's description, including both its legal description and its street address or common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title against the adverse claims. *Metcalf v. Drexel Lending Grp.,* No. 08-CV-00731 W POR, 2008 WL 4748134, at *5 (S.D. Cal. Oct 29, 2008).

9.     Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10.    "[I]t is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract." *Block v. eBay, Inc.,* 747 F.3d 1135, 11138 (9th Cir. 2014) (internal quotations omitted).

11.    "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Reilly v. Inquest Tech., Inc.,* 218 Cal. App. 4th 536, 554 (2013).

12.    A latent ambiguity exists when a document, while unambiguous on its face, may be reasonably susceptible to more than one possible meaning upon production of extrinsic evidence. *Dore v. Arnold Worldwide, Inc.,* 39 Cal. 4th 384, 391 (2006).

13.    "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Id.* (quoting *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal. 2d 33, 37 (1968)). Extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract. *Pac.Gas & Elec., supra,* at 33.

14.    The Fieldbrook Assignment is not reasonably susceptible to a reading that the PWB Note was bifurcated, allocated or participated and only $5.8 million of the note, secured by only the Chalette DOT, was be transferred to Fieldbrook while the remainder of the PWB Note and the Rexford DOT would remain with Elkwood.

15.    The extrinsic evidence presented by Elkwood in connection with the summary judgment cross-motions "flatly contradicts" the language of the Fieldbrook Assignment. *Consolidated World Investments, Inc. v. Lido Preferred Ltd.,* 9 Cal. App. 4th 373, 379 (1992).

16.    The phrase "[t]ogether with the Secured Promissory Note or Notes therein described" is not reasonably susceptible to the reading "[t]ogether with *$5.8 million of* the Secured Promissory Note or Notes therein described . . . ." *See Gerdlund v. Elec. Dispensers Int'l,* 190 Cal. App.263, 272-273, 235 Cal. Rptr. 279, 284, 190 Cal. App.3d 263, (1987) (refusing to admit parol evidence where contract language stating that "[n]otice of termination may be given at any time and for any reason" was not reasonably susceptible to the propose reading that such notice could only be given "for any *good* reason.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17.    "The assignment of a debt secured by mortgage carries with it the security." Cal. Civ. Code § 2936. ("The assignment of a secured debt carries with it the security").

18.    The Rexford DOT was also assigned to Fieldbrook before the Rexford Foreclosure Sale.

19.    Participations "are contractual arrangements between a lender and a third party, in which the third party, or participant, provides funds to the lender.   The lender, in turn, uses the funds from the participant to make loans to the borrower." *In re ACRO Bus. Fin. Corp.*, 357 B.R. 785, 787 (Bankr. D. Minn. 2006).

20.    To determine whether a transaction is a participation agreement, courts have considered the following factors:  "a) money is advanced by participant to a lead lender; b) a participant's right to repayment only arises when a lead lender is paid; c) only the lead lender can seek legal recourse against the borrower; and d) the document is evidence of the parties' true intentions." *In re Coronet Capital Co.,* 142 B.R. 78, 82 (Bankr. S.D.N.Y. 1992).

21.    The language of the Fieldbrook Assignment indicates that the Elkwood Defendants intended an assignment, not a participation agreement.  There is insufficient evidence and no legal support for considering the Fieldbrook Assignment to be a participation agreement.

22.    The Trustee has standing to bring the Quiet Title Claim.  *Yvanova v. New Century Mortgage Corp.,* 62 Cal. 4th 919, 937 (Cal. 2016) ("A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests – the borrower has lost ownership to the home in an allegedly illegal trustee's sale.")

23.    Prejudice is not an element of a quiet title claim and the Trustee does not need to demonstrate prejudice in connection with his Quiet Title Claim.

24.    Even if the showing of prejudice is required, it is satisfied by the fact of the foreclosure.  *Sciarratta v. U.S. Bank Nat'l Assn.,* 247 Cal. App. 4th 552, 565-567 (2016).

25.    The Rexford Foreclosure Sale is void because Elkwood neither held the PWB Note (nor any part thereof) nor the Rexford DOT at the time of the Rexford Foreclosure Sale.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

26.     A contract may only be reformed to express the parties' true intentions "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." Cal. Civ. Code § 3399.

27.     Reformation is not available if the rights of a bona fide purchaser would be prejudiced. *Baines v. Zuieback*, 84 Cal. App. 2d 483, 491 (1948).

28.     Pursuant to Bankruptcy Code § 544(a)(3), the Trustee has all of the rights and powers of a bona fide purchaser of real property that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the bankruptcy case.

29.     A reformation action will be allowed against a hypothetical bona fide purchaser only if the purchaser had notice of the adverse interest. *In re Weisman,* 5 F.3d 417, 420 (9th Cir. 1993); *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir. 1988).

30.     The rights of a bona fide purchaser under Bankruptcy Code § 544(a)(3) are defined by state law. *In re Tleel,* 876 F.2d 768, 772 (9th Cir. 1989).

31.     In California, a purchaser of real estate for value without actual or constructive notice of a prior interest is given status as a bona fide purchaser. *Id.*

32.     As Bankruptcy Code § 544(a) specifies that a trustee's rights and powers as a bona fide purchaser are "without regard to any knowledge of the trustee or of any creditor", "actual notice cannot overcome the trustee's bona fide purchaser status." *Id.*

33.     Constructive or inquiry notice can preclude a trustee's status as a bona fide purchaser under section 544(a)(3). *In re Harvey*, 222 B.R. 888, 893 (BAP 9th Cir. 1998).

34.     Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214.

35.     A recorded document, if void, should be treated "as a blank sheet of paper" and therefore does not provide constructive notice. *City of Los Angeles v. Morgan,* 105 Cal. App. 2d 726, 733 (1951) ("it is obvious that invalid documents are not entitled to be recorded, but if they are recorded, they do not give constructive notice").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

36.     The rights and powers of a trustee as a bona fide purchaser of real estate pursuant to Bankruptcy Code § 544(a)(3) can be cut off by reasonably available information that would put a prudent purchaser on inquiry notice of an alleged interest. *In re Weisman,* 5 F.3d at 420.

37.     As Massoud and his family were in possession of the Rexford Home on the Petition Date, a prudent purchaser would not have been on inquiry notice of any adverse interest asserted by Elkwood as of that date.

38.     Without a showing of a right of redemption, Cal. Civ. Code § 1640 does not authorize a court to find that "a written contract includes provisions which do not appear upon its face, and enforce provisions as a part of the written contract." *Bradbury v. Higginson,* 167 Cal. 553, 559 (1914).

39.     The Reimbursement Claim is not an affirmative defense to the Trustee's Quiet Title Claim but is, rather, a claim against the Massoud Estate that only comes into effect after judgment is entered on the Trustee's Quiet Title Claim.

40.     The Court is not required to adjudicate the Reimbursement Claim before entering judgment on the Trustee's First Claim for Relief.

41.     The only remaining claim to be adjudicated in this Adversary Proceeding, or otherwise, is the Reimbursement Claim.

42.     There are no overlapping factual or legal issues relating to both the Quiet Title Claim and the Reimbursement Claim.

43.     In light of entry of judgment on the Trustee's First Claim for Relief for Quiet Title, the Abselets' First Claim for Relief for Declaratory Relief should be dismissed as moot, and the Abselets do not object to such dismissal.

44.     There is no just reason to delay entry of the judgment on the Quiet Title Claim until the Reimbursement Claim has been adjudicated.

45.     The right to possession of the Rexford Home is an issue that was raised by the Trustee's Third Amended Complaint and the Elkwood Defendants' First Amended Counterclaim.

46.     The Trustee is not required to plead a separate claim for ejectment in order to obtain possession of the Rexford Home.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

47.     Judgment on the Quiet Title Claim entitles the Trustee to the issuance of a writ of possession or other available remedy to obtain possession of the Rexford Home.

48.     Elkwood has not alleged any facts or advanced any legal argument that would entitle it to remain in possession of the Rexford Home upon entry of a judgment on the Quiet Title Claim in favor of the Trustee.

49.     To the extent that any of the foregoing Conclusions of Law are more appropriately construed as a Finding of Fact, it shall be deemed and construed as such.


DATED: _____          _____
                                       HONORABLE JOHN F. WALTER
                                       UNITED STATES DISTRICT JUDGE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **EXHIBIT E**

Jeremy V. Richards (CA Bar No. 102300)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jrichards@pszjlaw.com
          jlucas@pszjlaw.com

Attorneys for Plaintiff David K. Gottlieb,
Chapter 11 Trustee of the Estates of Solyman
Yashouafar and Massoud Aaron Yashouafar

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,[1]<br>Debtors. | District Court Case Number:<br><br>Bankruptcy Court Case Numbers (Jointly Administered): |
| In re:<br>SOLYMAN YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑  Both Debtors<br>☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar | Adversary Case Number:<br><br>1:17-ap-01040-GM |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>Plaintiff,<br><br>v.<br><br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET BANK AND TRUST COMPANY,<br><br>Defendants. | **JUDGMENT ON TRUSTEE'S FIRST CLAIM FOR RELIEF (QUIET TITLE)**<br><br>Date:<br>Time:<br>Place: |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1]  The Debtors, together with the last four digits of each Debtor's social security number are:  Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).

DOCS_LA:324804.2 32274/001

1    This action came before the Court pursuant to a Report and Recommendation to the District

2  Court Re Entry of Judgment on First Claim for Relief (Quiet Title) (the "Report") [Dkt. No.. ____]

3  issued by the United States Bankruptcy Court, Central District of California (the "Bankruptcy

4  Court") in that certain adversary proceeding (the "Adversary Proceeding") pending before it as case

5  number 17-ap-01040-MT (the "Adversary Proceeding").  The Report also transmitted a copy of the

6  Bankruptcy Court's Memorandum re Cross-Motions for Summary Judgment [Adv. Dkt. No. 91] (the

7  "Memorandum"), Proposed Findings of Fact and Conclusions of Law based upon the Memorandum

8  ("Proposed Findings") and a proposed form of Judgment (the "Proposed Judgment").  Plaintiff and

9  Counter Defendant David K. Gottlieb, Chapter 11 Trustee for Solyman Yashouafar and Massoud

10  Aaron Yashouafar (the "Trustee") and Defendants and Counter Claimants Elkwood Associates LLC

11  ("Elkwood") and Fieldbrook Inc. ("Fieldbrook" and, together with Elkwood, collectively the

12  "Elkwood Defendants") have filed pleadings in this proceeding addressing whether this Court should

13  adopt the Memorandum and enter the Proposed Findings and the Proposed Judgment.  The Court has

14  carefully considered the arguments of the Trustee and the Elkwood Defendants and has entered

15  Findings of Fact and Conclusons of Law [Dkt. No. ____] (the "Entered Findings") based upon the

16  Memorandum. Based thereon (and all capitalized terms not otherwise defined herein having the

17  same meaning as set forth in the Entered Findings):

18    IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

19    1.    Judgment is hereby entered in favor of the Trustee and against the Elkwood

20  Defendants and all of the other named defendants on the Trustee's First Claim for Relief for Quiet

21  Title. Fee title to the following property ("Subject Property") is quieted in David K. Gottlieb,

22  Chapter 11 Trustee for Massoud Aaron Yashouafar:  real property commonly known as 910 North

23  Rexford Drive, Beverly Hills, California 90210 and legally described as follows:

> Lot five and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the
> city of Beverly Hills, County of Los Angeles, State of California, as
> per map recorded in book 46, page 63 of maps, in the office of the
> county recorder of said county.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2. The Rexford Foreclosure Sale is declared void and the Rexford Foreclosure Sale Deed (recording in the Office of the County Recorder of Los Angeles County on March 6, 2015 as document number 20150248924) is declared null and void.

3. Judgment is entered in favor of the Trustee and against Elkwood on Elkwood's Second Counterclaim (for reformation of the Fieldbrook Assignment) and Third Counterclaim (for Quiet Title to the Rexford Home).  Counter Claimant Elkwood will take nothing by its First Amended Counterclaim.

4. The Elkwood Defendants, and each of them, and their respective successors, assigns, tenants, or agents shall have no right, title, estate, lien, or interest in the Subject Property, except that the Rexford DOT (recorded in the Office of the County Recorder of Los Angeles County on March 25, 2009 as document no. 20090425659) shall continue to encumber the Subject Property with the same validity, extent and priority as it had immediately prior to the Rexford Foreclosure Sale.

5. The Trustee is entitled to immediate possession of the Subject Property and the Trustee is entitled to the immediate issuance of a Writ of Possession with respect to the Subject Property.

6. This Judgment does not resolve the claim asserted against the Trustee in the Elkwood Defendants' Sixth Affirmative Defense, and any and all defenses, offsets and/or counterclaims that the Trustee has or may with respect to said claim.

DATED: _____

_____
HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:   10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067.

A true and correct copy of the foregoing document entitled: **PLAINTIFF'S MOTION FOR ISSUANCE OF A REPORT AND RECOMMENDATION RE JUDGMENT ON FIRST CLAIM FOR RELIEF (QUIET TITLE)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 4, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

         ☒     Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) October 4, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Fereydoun Dayani
18345 Ventura Blvd Suite 500
Tarzana, CA 91356

         ☒     Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 4, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
The Honorable Maureen Tighe
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 324
Woodland Hills, CA 91367

         ☒     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 4, 2019 | Sophia L. Lee | /s/ Sophia L. Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

**Mailing Information for Case 1:17-ap-01040-MT**

- **Timothy C Aires**    tca@arlawyers.com, gperez@arlawyers.com
- **Henry S David**    hdavid@davidfirm.com, 8163836420@filings.docketbird.com
- **Zi Chao Lin**    zlin@garrett-tully.com, dcameron@garrett-tully.com
- **John W Lucas**    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- **Daniel J McCarthy**    dmccarthy@hillfarrer.com,
  spadilla@hillfarrer.com;docket@hillfarrer.com
- **Ashley M McDow**    amcdow@foley.com,
  sgaeta@foley.com;mhebbeln@foley.com;swilson@foley.com;jsimon@foley.com
- **Tomas A Ortiz**    tortiz@garrett-tully.com
- **Jeremy V Richards**    jrichards@pszjlaw.com,
  bdassa@pszjlaw.com;imorris@pszjlaw.com
- **Ronald N Richards**    ron@ronaldrichards.com,
  morani@ronaldrichards.com,justin@ronaldrichards.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

7

DOCS_LA:324723.3 32274/001