1  Jeremy V. Richards (CA Bar No. 102300)
   John W. Lucas (CA Bar No. 271038)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA 90067
   Tel: 310/277-6910 - Facsimile: 310/201-0760
4  E-mail:   jrichards@pszjlaw.com
            jlucas@pszjlaw.com
5
   Attorneys for David K. Gottlieb, Chapter 11 Trustee of the Estates of
6  Solyman Yashouafar and Massoud Aaron Yashouafar

7            **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
8             **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 9   In re | Case No. 1:16-bk-12255-GM |
| 10  SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR, | Chapter 11 Jointly Administered |
| 11  Debtors. | |
| 12  In re: SOLYMAN YASHOUAFAR, Debtor. | Case No. 1:16-bk-12255-GM Chapter 11 |
| 13 | |
| 14  In re: MASSOUD AARON YASHOUAFAR, Debtor. | Case No. 1:16-bk-12408-GM Chapter 11 |
| 15  Affects: ☑ Both Debtors ☐ Solyman Yashouafar ☐ Massoud Aaron Yashouafar | |
| 16 | |
| 17 | |
| 18  DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar, | Adv. No. 1:17-ap-01040-MT |
| 19 | **REPORT AND RECOMMENDATION TO THE DISTRICT COURT RE ENTRY OF JUDGMENT ON FIRST CLAIM FOR RELIEF (QUIET TITLE)** |
| 20  Plaintiff, vs. | |
| 21  ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL | Date:   To Be Determined Without Hearing Time: |
| 22  SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN | Place:   Ctrm 302 |
| 23  MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA | |
| 24  PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET | |
| 25  BANK AND TRUST COMPANY, | |
| 26  Defendants. | |

27         The Bankruptcy Court, Central District of California (the "Bankruptcy Court") presiding

28  over the above-captioned adversary proceeding (the "Adversary Proceeding") hereby submits this

1  Report and Recommendation to the United States District Court, Central District of California (the

2  "District Court"), recommending that the District Court adopt certain summary judgment rulings

3  made by the Bankruptcy Court in the Adversary Proceeding and enter proposed Findings of Fact,

4  Conclusions of Law (the "FFCL") and the proposed Judgment, in the form submitted herewith. The

5  active parties in the Adversary Proceeding have stipulated that the proceeding be treated as a "non-

6  core" matter and that findings, conclusions and judgment be entered by the District Court in

7  accordance with the procedures contemplated by 28 U.S.C. § 157(c)(1).[1]

8  ## I.

9  ## SUMMARY OF THE LITIGATION

10  While the Adversary Proceeding commenced as fairly complex, multi-party litigation, both

11  the number of parties actively involved and the number of claims at issue have been substantially

12  reduced over time. At this time, the active parties in the Adversary Proceeding are David K.

13  Gottlieb, as chapter 11 trustee for Massoud Yashouafar (the "Trustee"); Howard and Israel Abselet

14  (collectively, the "Abselets"), secured and unsecured creditors of debtor Massoud Yashouafar

15  ("Massoud"); and Elkwood Associates, LLC ("Elkwood") and Fieldbrook, Inc. ("Fieldbrook", and

16  together with Elkwood, the "Elkwood Defendants"). All of the other named parties have either been

17  dismissed, have stipulated to be bound by any judgment entered in this proceeding or, by order of

18  court, are deemed to have agreed to be bound by any such judgment, notwithstanding their

19  nonparticipation.

20  The Adversary Proceeding initially related to disputes regarding two pieces of real property,

21  referred to as the "Rexford Home" and the "Chalette Home." Pursuant to cross-motions for

22  summary judgment, the Bankruptcy Court quieted title in and to the Rexford Home in the Trustee

23  pursuant to quiet title claims for relief asserted by the Trustee and the Abselets (the "Quiet Title

24  Claim") and ruled against the Nourafshan Parties on their claim seeking to reform the "Fieldbrook

25

26  _____

[1] While the issues adjudicated by the Bankruptcy Court might be considered core proceedings, as
defined in 28 U.S.C. § 157(b)(2), there are no disputed facts relating to the adjudications made by the
27  Bankruptcy Court. Accordingly, any issues for review by the District Court are purely legal issues. Thus,
whether the Bankruptcy Court simply enters a judgment and appeal therefrom is taken by the Nourafshan
28  Parties, or the matter is referred to the District Court pursuant to 28 U.S.C. § 157(c)(1), the same, *de novo*
standard of review will apply.

2

1    Assignment" and seeking to quiet title to the Rexford Home in Elkwood.  The Court's Memorandum

2    re Cross-Motions for Summary Judgment [Dkt. No. 191] (the "Summary Judgment Memorandum")

3    is attached hereto as **Exhibit "A."**

4    The issues raised by the Cross-Motions for Summary Judgment are set forth in section 1 of

5    the Summary Judgment Memorandum and in section 1 of the proposed FFCL.  In both the Summary

6    Judgment Memorandum and a Supplemental Memorandum re Cross-Motions for Summary

7    Judgment [Dkt. No. 216] (the "Supplemental Summary Judgment Memorandum"), a copy of which

8    is attached hereto as **Exhibit "B,"** the Court determined that a reimbursement claim asserted the

9    Elkwood Defendants against the Trustee did not have to be adjudicated before entry of a judgment in

10    favor of the Trustee on his Quiet Title Claim.

11    The Court initially denied the Trustee's request to enter judgment on the Quiet Title Claim

12    pursuant to F.R. Civ. P. Rule 54(b) and on April 30, 2019, the Court entered its Order Granting

13    Partial Summary Judgment on Plaintiff's First Claim for Quiet Title [Dkt. No. 217] (the "Summary

14    Judgment Order"), a copy of which is attached hereto as **Exhibit "C."**

15    Thereafter, the Trustee and the Abselets dismissed, with prejudice, all of their remaining

16    claims against the Elkwood Defendants, Reliable Properties, Inc. and Jack Nourafshan, other than

17    the Quiet Title Claim, adjudicated in the summary judgment proceeding.  The Court has determined

18    that the only remaining claim arising out of the Adversary Proceeding is the Reimbursement Claim

19    and that it can and should be adjudicated in a separate claims objection proceeding.  Accordingly,

20    the Court has concluded that either F.R. Civ. P. Rule 54(b) is no longer applicable to the Adversary

21    Proceeding (because of the absence of any claims for relief other than the Quiet Title Claim), or, in

22    the alternative, that there is no just reason to delay in entering judgment on the Quiet Title Claim.

23

24

25

26

27

28

3

## II.

## <u>REPORT AND RECOMMENDATION</u>

The Court recommends that the District Court affirm the rulings made by the Bankruptcy Court in the Summary Judgment Memorandum, enter the FFCL (attached as **Exhibit "D"**) and enter the Judgment re Quiet Title (attached as **Exhibit "E"**).

# # #

11/13/19
DATE

*Maureen Tighe*
U.S. Bankruptcy Judge

DOCS_LA:324710.2 32274/001

# EXHIBIT A

FILED & ENTERED

JAN 25 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,<br><br><br><br><br>Debtors.<br>_____<br>DAVID K. GOTTLIEB, as Chapter 11<br>Trustee,<br>Plaintiff,<br>v.<br><br>ELKWOOD ASSOCIATES, LLC., *et al.*,<br><br><br>Defendants.<br>_____<br>AND RELATED COUNTER- AND<br>CROSS-ACTIONS | CHAPTER 11<br><br>Case No.:  1:16-bk-16-12255-GM<br><br>Adv No.:  1:17-ap-01040-MT<br><br>**MEMORANDUM RE CROSS-MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>Date:        December 11, 2018<br>Time:        9:30 a.m.<br>Courtroom:  302 |

### I.    Introduction

This adversary action concerns the disposition of two properties located in

Beverly Hills, California (collectively, the "Properties"). The vast majority of the facts are

1   undisputed. The first property, 580 Chalette Drive, Beverly Hills, CA (the "Chalette

2   Property"), was previously owned by Solyman Yashouafar ("Solyman") through his

3   family trust. <u>Plaintiff's Statement of Uncontroverted Facts</u>, ¶ 5.[1] The second property,

4   910 Rexford Drive, Beverly Hills, CA (the "Rexford Property"), was previously owned by

5   Solyman's brother, Massoud Yashouafar ("Massoud"), through Massoud's own family

6   trust. <u>Id.</u> at ¶ 4. On March 20, 2009, the brothers executed a promissory note in favor of

7   Pacific Western Bank (the "PWB Note") in the principal amount of $6,551,575 secured

8   by, among other things, deeds of trust against the Chalette Property and the Rexford

9   Property (the "Chalette DOT" and "Rexford DOT," respectively). <u>Id.</u> at ¶¶ 6-8. It is the

10  subsequent assignment of the PWB Note and foreclosures on the Chalette DOT and

11  Rexford DOT that give rise to the instant motion.

12        On December 29, 2014, the PWB Note was purchased by Elkwood, <u>Id.</u> at ¶ 9, an

13  entity owned by Massoud's brother-in-law, Jack Nourafshan ("Nourafshan"), and

14  Nourafshan's brothers. Elkwood additionally purchased ancillary agreements and

15  documents relating to the PWB Note, Rexford DOT, and the Chalette DOT. <u>Id.</u> Within

16  two months, Elkwood moved to foreclose on both Properties. Elkwood caused Citivest

17  Financial Services, Inc. ("Citivest") to be substituted as the trustee under the Chalette

18  DOT and the Rexford DOT. <u>Id.</u> at ¶¶ 10, 21. Citivest filed and served a Notice of

19  Trustee's Sale under the Rexford DOT for the benefit of Elkwood, which was recorded

20  on or about January 26, 2015. <u>Id.</u> at ¶ 22. Citivest did the same with respect to the

21  Chalette DOT, again for the benefit of Elkwood, and recorded the notice the following

22

23  _____

[1] Defendants Elkwood Associates, LLC ("Elkwood") and Fieldbrook, Inc. ("Fieldbrook") filed a statement of
genuine issues indicating that there is no dispute as to the facts in ¶ 1-26 of the Plaintiff's Statement of
24  Uncontroverted Facts.

day, January 27, 2015. Id. at ¶ 11-12. The foreclosure sale under the Chalette DOT was scheduled for February 20, 2015, while the foreclosure sale under the Rexford DOT was scheduled for February 23, 2015. Id. at ¶¶ 18, 24. However, before either foreclosure sale occurred, Elkwood executed an assignment of the Chalette DOT and PWB Note in favor of Fieldbrook on February 18, 2015 (the "Fieldbrook Assignment"). Id. at ¶ 13. The effect of the Fieldbrook Assignment and exactly which rights were assigned by it (for example, the right to foreclose under the Rexford DOT), is a central issue in this litigation and will be discussed in detail below.

At the Chalette foreclosure sale on February 20, Citivest submitted an opening credit bid of $5.8 million on behalf of Fieldbrook, the new beneficiary under the PWB Note. Id. at ¶ 18. No other bids were taken, and the Chalette Property was sold to Fieldbrook. Id. On February 23, 2015, Citivest conducted a foreclosure sale of the Rexford Property. Citivest opened bidding with a $782,508.05 credit bid on behalf of Elkwood and received no other bids. Id. at ¶ 24. On February 25, 2015, Citivest executed a Trustee's Deed Upon Sale, purportedly transferring the Rexford Property to Elkwood. The Trustee's Deed Upon Sale was recorded on March 6, 2015. Trustee RJN, Ex. H.

Involuntary bankruptcies were subsequently filed against both Massoud and Solyman in summer 2016. The cases are being jointly administered and a number of other legal issues are being litigated simultaneously in separate adversaries. A chapter 11 trustee, David Gottlieb ("Trustee") has been appointed. The Trustee's Motion for Summary Judgment ("Trustee's Motion") seeks a ruling in his favor on only the first cause of action alleged in the Third Amended Complaint ("TAC"). The first cause of

1    action seeks to quiet title on the Rexford Property in order to bring it into the bankruptcy

2    estate.

3          Trustee attacks the foreclosure sale of the Rexford Property on the grounds that

4    the PWB note, and therefore the Rexford DOT, was transferred to Fieldbrook several

5    days before the foreclosure sale conducted by Elkwood. Trustee argues that the

6    foreclosure is therefore void, not merely voidable. <u>Trustee MSJ</u>, 14:20-18:20. Several

7    persons other than Elkwood and Fieldbrook have been named as defendants in

8    Trustee's first cause of action. Each of those other named defendants is a current or

9    former lienholder or mortgage servicer on the Rexford Property and a creditor in one of

10   the lead bankruptcy cases.

11         The only parties who have responded to the Trustee's Motion are Elkwood and

12   Fieldbrook (hereafter referred to as "Elkwood Defendants"). In addition, the Elkwood

13   Defendants have also filed a Cross-Motion for Summary Judgment on Plaintiff's First

14   Claim for Relief (the "Cross-Motion"). The Cross-Motion is also limited to Trustee's first

15   claim for relief, Quiet Title as to the Rexford Property.

16         The Elkwood Defendants focus on the evidence that Nourafshan, through his

17   entities Elkwood, Fieldbrook, and Kensington Associates, LLC ("Kensington"), intended

18   to "bifurcate" the PWB note, assigning to Fieldbrook a portion of the PWB Note secured

19   by the Chalette DOT while leaving Elkwood holding the Rexford DOT secured by the

20   remainder of the PWB Note. <u>Cross-Motion</u>, 8:12-11:3; <u>Dec. of Daniel McCarthy</u>, Ex. A,

21   B, K. While Nourafshan was considering purchasing the PWB Note, a letter of intent to

22   purchase the PWB Note ("Kensington Letter") was sent from Kensington to Pacific

23   Western Bank on June 30, 2014. <u>Id.</u> at Ex. A. The Kensington Letter offered

24

approximately $5.9 million total for the PWB Note and broke the price down specifically

to approximately $3.7 million "for the portion of the secured note allocated to the

Rexford Property and the Rexford Deed of Trust," and approximately $2.2 million "for

the portion of the Secured Note allocated to the Chalette Property and the Chalette

Deed of Trust." Id. at Ex. A. The Elkwood Defendants also provide a letter on

Fieldbrook's letterhead that was sent from Thelma Guerrero to a Mr. Mazzarino at

Citivest (the "Guerrero Memo"). Id. at Ex. B. The Guerrero Memo informs Citivest that

"we" have assigned the Chalette DOT to Fieldbrook, "along with a dollar portion of the

note secured by that Deed of Trust on the Property." Id. The Guerrero Memo then

instructed Citivest to bid $5.8 million as the agent for Fieldbrook and the remainder on

the Rexford Property on behalf of Elkwood. Id. The Guerrero Memo is dated February

17, 2015, the day before Fieldbrook Assignment was executed.

The Elkwood Defendants rely on the Kensington Letter and the Guerrero Memo,

and the fact that the Fieldbrook Assignment did not mention the Rexford DOT, to argue

that the parties did not intend to transfer the entire PWB Note to Fieldbrook.

## II.    **Summary Judgment Standard**

In order to succeed on a motion for summary judgment under Federal Rule of

Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule

of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of

material fact and entitlement to judgment as a matter of law. In re Aubrey, 111 B.R. 268,

272 (BAP 9th Cir. 1990). The moving party must support its motion with credible

evidence, as defined in Federal Rule of Civil Procedure 56(c), which would entitle it to a

directed verdict if not controverted at trial. Id. If a party fails to address another party's

1  assertion of fact, the court may consider the fact undisputed for purposes of the

2  summary judgment motion. Fed. R. Civ. P. 56(e)(2). Substantive law determines which

3  facts are material for purposes of summary judgment. Anderson v. Liberty Lobby, Inc.,

4  477 U.S. 242, 248 (1986). "Summary judgment will not lie if the dispute about a material

5  fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a

6  verdict for the nonmoving party." Id. The court must view all the evidence in the light

7  most favorable to the nonmoving party. In re Barboza, 545 F.3d 702, 707 (9th Cir.

8  2008). The court may not evaluate the credibility of a witness or weigh the evidence.

9  California Steel & Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1003 (9th Cir. 1981).

10                          **III.    Discussion**

11          Trustee's Motion seeks summary judgment only on the first claim for relief: quiet

12  title as to the Rexford Property. Quiet Title claims are actionable under Cal. Civ. Pro.

13  Code § 760.020. To state a claim for quiet title, a complaint must include (1) the subject

14  property's description, including both its legal description and its street address or

15  common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims

16  against which a determination is sought; (4) the date as of which the determination is

17  sought; and (5) a prayer for the determination of the title against the adverse claims.

18  Metcalf v. Drexel Lending Grp., No. 08-CV-00731 W POR, 2008 WL 4748134, at *5

19  (S.D. Cal. Oct. 29, 2008). Trustee argues that the foreclosure of the Rexford home was

20  void because Elkwood assigned the entire PWB Note to Fieldbrook before the

21  foreclosure sale. Trustee argues further that the PWB note could not be split and

22  assigned in part without the written consent of the borrowers, and that Trustee's rights

23  as a bona fide purchaser of the Rexford Property bar reformation of the contract.

24

1    <u>Bifurcation of the PWB Note</u>

2        The threshold issue is whether the rights to foreclose under the Rexford DOT

3    were transferred from Elkwood to Fieldbrook in the Fieldbrook Assignment. There is no

4    dispute that when Elkwood obtained the PWB Note from Pacific Western Bank, it

5    remained a single note secured by both the Rexford DOT and the Chalette DOT.

6    Similarly, there is no contention that the PWB Note was in any way altered before

7    Elkwood executed the Fieldbrook Assignment. The Fieldbrook Assignment, therefore, is

8    the contract under which any "bifurcation," "splitting," "partial assignment," or

9    assignment of a "participating interest," as the transaction has been variously

10    described,[2] must have occurred.

11        Under California law, "[a] contract must be so interpreted as to give effect to the

12    mutual intention of the parties as it existed at the time of contracting, so far as the same

13    is ascertainable and lawful." Cal. Civ. Code § 1636. However, "it is not the parties'

14    subjective intent that matters, but rather their objective intent, as evidenced by the

15    words of the contract." <u>Block v. eBay, Inc.</u>, 747 F.3d 1135, 1138 (9th Cir. 2014) (internal

16    quotations omitted). "The parties' undisclosed intent or understanding is irrelevant to

17    contract interpretation." <u>Reilly v. Inquest Tech., Inc.</u>, 218 Cal. App. 4th 536, 554 (2013).

18    The Court must examine the wording of the Fieldbrook Assignment to determine the

19    objective intent of the contracting parties.

20        The operative language of the Fieldbrook Assignment in its entirety is as follows:

21        For Value Received, the undersigned ELKWOOD ASSOCIATES,
      LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby
22    grants, assigns, transfers and conveys to FIELDBROOK, INC., A
      CALIFORNIA CORPORATION all of its right, title and beneficial
23    Interest In and to that certain Deed of Trust dated MARCH 20, 2009

---

24    [2] Or, as the Abselets put it, whether "split happened." <u>Abselet Opp. to Elkwood Motion</u>, 20:14.

1   executed by SOLYMAN YASHOUAFAR, AS TRUSTEE OF THE
    SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED
2   MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as
    Trustee, for the benefit of PACIFIC WESTERN BANK as
3   beneficiary and recorded as Instrument No. 20090425658, on
    March 25, 2009, In Book _____, Page _____ of
4   Official Records in the Office of the County Recorder of Los
    Angeles County, California, describing land in said county as,
5
    Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los
6   Angeles, State of California, as per map recorded in book 657,
    pages 99 and 100 of maps, in the office of the county recorder of
7   said county.
8   A.P.N. 4391-009-002 AKA: 580 CHALETTE DRIVE, BEVERLY
    HILLS, CA 90210
9
    Together with the Secured Promissory Note or Notes therein
10  described or referred to, the money due and to become due
    thereon with interest, and all rights accrued or to accrue under said
11  Deed of Trust, any liens, security interest, and remedies arising
    thereunder. This Assignment is made without recourse,
12  representations or warranties of any kind except as may be set
    forth in any Loan Sale Agreement that may be between assignor
13  and assignee.

14  Fieldbrook Assignment, RJN ISO T'ee MSJ at Ex. D. By its terms, the assignment

15  purports to assign the Chalette DOT and the PWB Note from Elkwood to Fieldbrook.

16  Conspicuously absent from the Fieldbrook Assignment is any reference to the Rexford

17  DOT, which also secured the PWB Note. Defendants argue that the Fieldbrook

18  Assignment contains a latent ambiguity requiring the admission of extrinsic evidence.

19                              Extrinsic Evidence

20        A latent ambiguity exists when a document, while unambiguous on its face, may

21  be reasonably susceptible to more than one possible meaning upon production of

22  extrinsic evidence. Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 391 (2006). "The

23  test of admissibility of extrinsic evidence to explain the meaning of a written instrument

24

1    is not whether it appears to the court to be plain and unambiguous on its face, but

2    whether the offered evidence is relevant to prove a meaning to which the language of

3    the instrument is reasonably susceptible." Id. (quoting Pac. Gas & Elec. Co. v. G. W.

4    Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968)).[3] The Pacific Gas Court

5    reasoned that, under California law, "the intention of the parties as expressed in the

6    contract is the source of contractual rights and duties." Pacific Gas, 69 Cal. 2d at 38.

7    Extrinsic evidence is not admissible to add to, detract from, or vary the terms of a

8    written contract. Id. at 33.

9        The Fieldbrook Assignment is not reasonably susceptible to a reading that the

10   PWB Note would be bifurcated and $5.8 million of the note secured by only the Chalette

11   DOT would be transferred to Fieldbrook while the remainder of the PWB Note and the

12   Rexford DOT would remain with Elkwood. No amount of extrinsic evidence would allow

13   such a wholesale re-imagining of the terms of the Fieldbrook Assignment. The phrase

14   "[t]ogether with the Secured Promissory Note or Notes therein described or referred to"

15   specifically indicates that all notes secured by the Chalette DOT were transferred in the

16   Fieldbrook Assignment, without any qualification or limitation. While Defendants attach

17   evidence that indicates an intent to assign only a portion of the PWB Note, that

18   evidence does not indicate an ambiguity in the language of the Fieldbrook

19   Assignment—instead, that extrinsic evidence "flatly contradicts" the language of the

20   Fieldbrook Assignment. Consolidated World Investments, Inc. v. Lido Preferred Ltd., 9

21

22   ---

[3] On this point, California law differs from many other states. "Pacific Gas essentially abrogated the traditional rule that parol evidence is not admissible to contradict the plain meaning of an integrated agreement by concluding that, even if the agreement 'appears to the court to be plain and unambiguous on its face,' extrinsic evidence is admissible to expose a latent ambiguity, i.e., the possibility that the parties actually intended the language to mean something different." Dore, 39 Cal. 4th at 395 (Justices George, Kennard, Chin, and Moreno, Concurring).

23

24

1   Cal. App. 4th 373, 379 (Cal. Ct. App. 1992). The phrase "[t]ogether with the Secured

2   Promissory Note or Notes therein described" is not reasonably susceptible to the

3   reading "[t]ogether with *$5.8 million of* the Secured Promissory Note or Notes therein

4   described. . . ." Trustee's Reply, 2:21-3:1. See Gerdlund v. Elec. Dispensers Int'l, 235

5   Cal. Rptr. 279, 284 (Cal. Ct. App. 1987) (refusing to admit parol evidence where

6   contract language stating that "[n]otice of termination may be given at any time and for

7   any reason" was not reasonably susceptible to the proposed reading that such notice

8   could only be given "for any *good* reason.").

9          Even if the extrinsic evidence were to be considered, it is insufficient to support

10   the Elkwood Defendants' Cross-Motion. The evidence produced by Defendants to

11   support the bifurcation of the PWB Note is not dispositive of an intent to have the note

12   bifurcated because all material inferences on this issue must be made in favor of the

13   Trustee. While most facts are not in dispute on these cross motions, the Trustee and

14   the Abselets dispute the assertions of fact concerning the intent to bifurcate as self-

15   serving.  These statements have not been cross-examined at trial and must be

16   evaluated in light of all the evidence. While there were certainly negotiations with Pacific

17   Western Bank regarding some sort of bifurcation of the PWB Note, those negotiations

18   were carried out by Kensington, an entity which is not a party to this litigation (although

19   it is also owned by Nourafshan).

20          The Guerrero Memo, which was apparently executed on behalf of Fieldbrook,

21   indicates that the portion of the PWB Note that was transferred to Fieldbrook was $5.8

22   million. The fact that the Guerrero Memo states that "we" have assigned the Chalette

23   DOT to Fieldbrook, on Fieldbrook's own letterhead, indicates a lack of regard for distinct

24

1 corporate entities. The Guerrero Memo was written the day before Fieldbrook even

2 obtained an interest in the Property.

3        The Fieldbrook Assignment, as recorded at the Los Angeles County Recorder's

4 Office, does not in any way bifurcate the PWB Note. It merely assigns the PWB Note

5 and Chalette DOT to Fieldbrook. No other document has been provided by the Elkwood

6 Defendants purporting to bifurcate the PWB Note.[4]

7                        Disposition of the Rexford DOT

8        The determination that extrinsic evidence is not appropriate to support a

9 bifurcation of the PWB Note does not resolve the disposition of the Rexford DOT.

10 Because the Fieldbrook Assignment did not mention the Rexford DOT, but assigned the

11 entire PWB Note, the question remains of what rights Elkwood had to foreclose under

12 the Rexford DOT. The Elkwood Defendants argue that the failure to mention the

13 Rexford DOT constitutes a patent ambiguity in the Fieldbrook Assignment. Regardless

14 of whether the ambiguity is patent or latent, the Fieldbrook Assignment can be read as

15 not intending to transfer the Rexford DOT. As explained below, however, because the

16 Rexford DOT must follow the PWB Note, it also was assigned to Fieldbrook as a matter

17 of law, and the proposed extrinsic evidence is of no consequence.

18        A plain reading of the Fieldbrook Assignment reveals that no ambiguity exists

19 regarding the bifurcation of the amount due, but that an ambiguity does exist regarding

20 the disposition of the Rexford DOT. If the Court were to admit extrinsic evidence to

---

[4] The Elkwood Defendants moved earlier for relief from the automatic stay in the lead bankruptcy case to record a correcting assignment specifying an amount of the PWB Note to be assigned, the Court denied the motion, stating that such relief would be an inappropriate determination that the Fieldbrook Assignment was incorrect when drafted, and reserving such a determination for resolution in this adversary action. Doc. No. 605.

-11-

1    determine the intent of the parties with regard to the Rexford DOT, the Court could <u>not</u>

2    use that same evidence to bifurcate the PWB Note as requested by the Elkwood

3    Defendants.[5] <u>Cross-Motion</u>, 13:17-21. Extrinsic evidence cannot be used to show that

4    only $5.8 million of the PWB Note was transferred in the Fieldbrook Assignment

5    because the language of the Fieldbrook Assignment is not reasonably susceptible to

6    that reading. The Elkwood Defendants misapply the rule from <u>Pacific Gas</u> by implying

7    that admission of extrinsic evidence to interpret an ambiguity is separate from the

8    "reasonably susceptible" test of <u>Pacific Gas</u>. <u>Cross-Motion</u>, 25:3-5.

9            One exception to the parol evidence rule is that extrinsic
             evidence may be introduced to explain the meaning of
10           ambiguous contractual language. The test of whether parol
             evidence is admissible to construe an ambiguity is not
11           whether the language appears to the court unambiguous,
             but whether the evidence presented is relevant to prove a
12           meaning to which the language is 'reasonably susceptible.'

13    <u>Consol. World Investments, Inc. v. Lido Preferred Ltd.</u>, 9 Cal. App. 4th 373, 379 (1992).

14           The entire PWB Note was transferred to Fieldbrook days before the Rexford

15    foreclosure. There has been no authority presented that a deed of trust can be

16    separated from the note it secures and remain valid, nor do the Elkwood Defendants

17    make that argument. The Elkwood Defendants instead focus their argument on

18    enforcing their stated intention of assigning only a portion of the PWB Note—an

19    argument which the law does not support.

20    _____

21    [5] Even if the Court were to determine that consideration of extrinsic evidence would be allowed, there
      would be a disputed issue of material fact as to whether the extrinsic evidence, including the Guerrero
      Memo, accurately expressed the intent of Elkwood and Fieldbrook. <u>Trustee's Statement of Disputed</u>

22    <u>Facts</u>, ¶ 21. Trustee has the same dispute with regards to Nourafshan's declaration about his intent to
      split the PWB Note, calling the declaration "self-serving." <u>Trustee's Opposition</u>, 18:6-9. The Abselets'
      opposition to the Cross-Motion raises similar disputes. <u>Abselet Statement of Genuine Issues</u>, ¶¶ 14

23    (disputing Nourafshan's intention to allocate the PWB note between the two Properties), 21 (disputing
      Guererro memo as reflective of Elkwood and Fieldbrook's intent), and 26 (disputing the intent of the

24    parties to the Fieldbrook Assignment to bifurcate the PWB Note).

1    The transfer of the entire PWB Note to Fieldbrook carried with it the Rexford

2  DOT. "The assignment of a debt secured by mortgage carries with it the security." Cal.

3  Civ. Code § 2936. "The assignment of a secured debt carries with it the security, since

4  the security is a mere incident of the debt. [Civ. Code, §§ 1084, 2936] . . .When one

5  assignee takes the note and another takes the trust deed or mortgage, the holder of the

6  note prevails regardless of the time of transfer. [Adler v. Sargent (1895) 109 Cal 42, 41

7  P 799]." Cal. Civ. Prac. Real Property Litigation § 4:28, Rights of assignee; see also In

8  re Macklin, 495 B.R. 8, 13 (Bankr. E.D. Cal. 2013) ("The note and the mortgage are

9  inseparable; the former as essential, the lat[t]er as an incident. An assignment of the

10  note carries the mortgage with it, while an assignment of the latter alone is a nullity.");

11  Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 927 (2016) ("The deed of trust,

12  moreover, is inseparable from the note it secures, and follows it even without a separate

13  assignment."). Thus, the Rexford DOT was also assigned to Fieldbrook before the

14  Rexford foreclosure.

15                                    Participation

16    The Elkwood Defendants have argued that the Court should consider the

17  transaction between Elkwood and Fieldbrook to be a participation agreement, which is

18  authorized under the Business Loan Agreement that was related to the PWB Note. See

19  Nourafshan Declaration, Ex. G, P. 5. Participations "are contractual arrangements

20  between a lender and a third party, in which the third party, or participant, provides

21  funds to the lender. The lender, in turn, uses the funds from the participant to make

22  loans to the borrower." In re ACRO Bus. Fin. Corp., 357 B.R. 785, 787 (Bankr. D. Minn.

23  2006). To determine whether a transaction is a participation agreement, courts have

24

1    considered the following factors: "a) money is advanced by participant to a lead lender;

2    b) a participant's right to repayment only arises when a lead lender is paid; c) only the

3    lead lender can seek legal recourse against the borrower; and, d) the document is

4    evidence of the parties true intentions." In re Coronet Capital Co., 142 B.R. 78, 82

5    (Bankr. S.D.N.Y. 1992). "[T]he participants cannot be holders of the notes, and hence

6    probably cannot enforce them directly." 1 Real Estate Finance Law § 5:35 Partial

7    assignments and participations (6th ed.).

8         While Trustee cites out-of-circuit cases to describe the nature of such

9    agreements, the law appears consistent among jurisdictions, and the Elkwood

10   Defendants provide no law in support of their assertion that a participation in the PWB

11   Note is legally equivalent to a partial assignment. Cross-Motion, 23:13-15.

12   No money was advanced by the alleged "participant," Fieldbrook, to the "lender,"

13   Elkwood. Also relevant is the fact that Fieldbrook itself pursued foreclosure against the

14   Chalette Property under the PWB Note, which is not consistent with a participant's

15   rights as described above. The language of the Fieldbrook Assignment also indicates

16   that the Elkwood Defendants intended an assignment, not a participation agreement.

17   There is insufficient evidence and no legal support for considering the Fieldbrook

18   assignment to be a participation agreement.

19                                   Prejudice

20        The Elkwood Defendants further argue that, because Debtors were not

21   prejudiced by a partial assignment of the PWB Note and the Chalette DOT, Trustee

22   may not object. Elkwood Defendants' Motion, 27:13-14. The issue of prejudice arises in

23   the case law in two contexts: first, as a constitutional requirement for standing, and

24

1  second, as an element of a wrongful foreclosure claim.

2  *Prejudice as Required for Standing*

3  The Elkwood Defendants' primary contention is that Trustee lacks standing

4  because he has not shown any prejudice beyond the fact of foreclosure. Elkwood

5  Defendants' Reply to Elkwood Motion, 6:21-23. This issue was also raised and argued

6  at the February 27, 2018 hearing on the Elkwood Defendants' motion to dismiss the

7  second amended complaint. The Elkwood Defendants are incorrect.

8  The California Supreme Court in Yvanova v. New Century Mortg. Corp. has

9  recently addressed this question. 62 Cal. 4th 919. In Yvanova, a homeowner challenged

10  the foreclosure of her home by an entity who allegedly did not own the note and deed of

11  trust because the assignment in which the entity received its interest was allegedly void.

12  The court held that, if an assignment necessary to the chain of title is void, the entity

13  seeking a trustee's sale had no legal authority to do so and the "unauthorized sale

14  constitutes a wrongful foreclosure." Id. at 935. The court ruled that a homeowner in

15  default who was not a party to the assignment would have standing to challenge an

16  assignment of the note and deed of trust if the homeowner claimed that the assignment

17  was void, not merely voidable. Id. at 924.

18  The Yvanova court addressed prejudice in terms of an injury for purposes of the

19  constitutional requirement of standing, and distinguished between prejudice as a

20  standing issue and prejudice as an element to the tort of wrongful foreclosure. "[W]e are

21  concerned only with prejudice in the sense of an injury sufficiently concrete and

22  personal to provide standing, not with prejudice as a possible element of the wrongful

23

24

-15-

1    foreclosure tort." [6] Id. at 937 (emphasis added) (citing Culhane v. Aurora Loan Servs. of

2    Nebraska, 708 F.3d 282 (1st Cir. 2013) ("For purposes of standing doctrine, an injury is

3    defined as an invasion of a legally protected interest which is (a) concrete and

4    particularized; and (b) actual or imminent, not conjectural or hypothetical. The

5    foreclosure of the plaintiff's home is unquestionably a concrete and particularized injury

6    to her.")). To have standing, a plaintiff "must be able to allege injury—that is, some

7    invasion of the plaintiff's legally protected interests." Angelucci v. Century Supper Club,

8    41 Cal. 4th 160, 175 (2007).  Yvanova disagreed with the same analysis of standing

9    pursued by the Elkwood Defendants:

10           As it relates to standing, we disagree with defendants'
             analysis of prejudice from an illegal foreclosure. A
11           foreclosed-upon borrower clearly meets the general
             standard for standing to sue by showing an invasion of his or
12           her legally protected interests—the borrower has lost
             ownership to the home in an allegedly illegal trustee's sale.
13

14    Yvanova, 62 Cal. 4th at 937 (emphasis added, citation omitted). A homeowner whose

15    home was foreclosed upon by one with no right to do so has standing to challenge that

16    foreclosure—it is irrelevant for purposes of standing whether the homeowner seeks

17    relief in a wrongful foreclosure action or in a quiet title action.

18           The Elkwood Defendants argue that Yvanova is distinguishable and inapplicable

19    because it involved a void assignment resulting in a potentially void foreclosure,

20    whereas here the Trustee argues that a valid assignment resulted in a void foreclosure.

21    _____

22    [6] The elements of a wrongful foreclosure action under California law are: "(1) the trustee or mortgagee
      caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a
      mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases
23    where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the
      secured indebtedness or was excused from tendering." Miles v. Deutsche Bank Nat'l Tr. Co., 236 Cal.
      App. 4th 394, 408 (2015). While not discussed here, the Court previously determined that an exception to
24    the tender requirement applied to Trustee's action.

-16-

1    While <u>Yvanova</u> and the other related cases involve void assignments, the result is to

2    allow challenges to void foreclosures. <u>See</u> <u>Glaski v. Bank of Am.</u>, 218 Cal. App. 4th at

3    1101 ("[W]here a plaintiff alleges that the entity lacked authority to foreclose on the

4    property, the foreclosure sale would be void."). There are many passages of <u>Yvanova</u>

5    which stress "the principle that only the entity currently entitled to enforce a debt may

6    foreclose on the mortgage or deed of trust securing that debt. . . ." <u>Yvanova</u>, 62 Cal.4th

7    at 928. "A foreclosure initiated by one with no authority to do so is wrongful for purposes

8    of such an action." <u>Id.</u> at 929. <u>Yvanova</u> is not so absurdly narrow as to allow standing

9    only to challenge void assignments; it also grants the wronged party standing to

10    challenge a void foreclosure.[7]

11                    *Prejudice as an Element of A Quiet Title Action*

12            There is conflicting law on whether the mere fact of foreclosure is sufficient

13    prejudice to satisfy the second element of a wrongful foreclosure claim. The court in

14    <u>Sciarratta v. U.S. Bank Nat'l Assn.</u>, relying in part on <u>Yvanova</u>, held that when a

15    homeowner is foreclosed on by one with no right to do so, that homeowner is sufficiently

16    prejudiced to challenge the allegedly void assignment in a wrongful foreclosure action.

17    247 Cal. App. 4th 552, 565-66 (2016). The Elkwood Defendants cite <u>Cardenas v.</u>

18    <u>Caliber Home Loans, Inc.</u>, which explicitly rejects the <u>Sciarratta</u> court's approach,

19    finding that the failure to allege any prejudice beyond the fact of foreclosure is fatal to an

20    action to set aside a foreclosure based upon a void assignment. 281 F. Supp. 3d 862,

21    873 (N.D. Cal. 2017).

22    _____

23    [7] To the extent the Elkwood Defendants' again raise their argument previously raised at the February 27, 2018 hearing that <u>Yvanova</u> is no longer good law because it relied upon <u>Glaski</u>, which relied upon a New York case which has subsequently been overturned, the Court disagrees. To state the obvious, the

24    Supreme Court of California cannot be overruled on an issue of California law by a New York court.

-17-

1    By finding that the prejudice required as an element of a wrongful foreclosure

2   action is a higher standard than the prejudice required for standing, the court in

3   Cardenas seemed to believe that Yvanova granted standing to homeowners to pursue a

4   cause of action that would necessarily fail, creating a right to litigation with no hope of a

5   remedy. Furthermore, the Cardenas court relied almost entirely on authority that

6   predated the Yvanova decision. At least one unreported appellate case sided with

7   Sciarratta, finding that under Yvanova the mere fact of foreclosure was sufficient

8   prejudice for both 1) standing and 2) to satisfy the second element of a wrongful

9   foreclosure claim. Park v. Wells Fargo Bank, N.A., No. B264026, 2017 WL 4020586, at

10   *7 (Cal. Ct. App. Sept. 13, 2017), as modified on denial of reh'g (Oct. 2, 2017). "A

11   homeowner experiences prejudice or harm when an entity with no interest in the debt

12   forecloses. When a non-debtholder forecloses, a homeowner is harmed because he or

13   she has lost her home to an entity with no legal right to take it." Sciarratta, 247 Cal. App.

14   4th at 565-66.

15    Trustee also argues that the first claim for relief seeks quiet title, not the tort of

16   wrongful foreclosure,[8] and that prejudice is not an element of quiet title. Trustee's

17   Opposition to Cross-Motion, 24:13-28. The Elkwood Defendants argue, without any

18   clear authority, that a quiet title claim based upon a void foreclosure must also satisfy

19   the requirements of a wrongful foreclosure action. Elkwood Defendants' Reply to Cross-

20   Motion, Doc. 143 4:3-18.  Prejudice is simply not an element of a quiet title action.

21

22   [8] Trustee's previous complaint included an action for wrongful foreclosure. The Court determined that
certain alleged irregularities with the foreclosure sale were insufficient under California law to set aside a
foreclosure sale. Therefore, the only grounds that remained for the wrongful foreclosure action were the

23   same as the grounds for the quiet title claim. In the discussion, the Court and the Trustee agreed that the
claim for wrongful foreclosure was duplicative of the claim for quiet title because they were both based on

24   the same factual allegation—namely, that the foreclosure was void.

1   Therefore, the split in authority between <u>Cardenas</u> and <u>Sciarratta</u> on prejudice as an

2   element of the tort of wrongful foreclosure is not relevant to this action. Even if it were,

3   the Court is more inclined to follow the approach in <u>Sciarratta</u>, a state appellate court,

4   on this rapidly evolving issue of California law.

5        The Trustee does not need to demonstrate prejudice in connection with this quiet

6   title claim. Even if such a showing were required, it is satisfied by the fact of the

7   foreclosure under <u>Sciarratta</u>.

8                                    <u>Elkwood's Deed Upon Sale Is Void</u>

9        The question that follows is whether the Trustee's Deed Upon Sale is void. Since

10  the Fieldbrook Assignment transferred the entire PWB Note and, consequently, the

11  Rexford DOT, when Elkwood foreclosed, it had neither the right to foreclose nor the

12  right to credit bid. "Only the true owner or beneficial holder of a Deed of Trust can bring

13  to completion a nonjudicial foreclosure under California law." <u>Yvanova</u>, 62 Cal. 4th at

14  928. "[W]here a plaintiff alleges that the entity lacked authority to foreclose on the

15  property, the foreclosure sale would be void." <u>Glaski</u>, 218 Cal. App. 4th at 1101.

16  Therefore, the recorded Trustee's Deed Upon Sale was void, and must be treated as a

17  "blank piece of paper." <u>Los Angeles v. Morgan</u>, 105 Cal. App. 2d 726, 733 (1951); <u>See</u>

18  <u>also Taormina Theosophical Community, Inc. v. Silver</u>, 140 Cal. App.3d. 964, 971 (Cal.

19  App. 2d Dist. 1983) ("Recording itself grants no interest in the property, and a void

20  document 'derives no validity from the mere fact that it is recorded.'" (citations omitted)).

21  No action was taken to correct the defective Trustee's Deed Upon Sale before the

22  bankruptcy was filed. The Trustee's Deed Upon Sale must, therefore, be considered

23  void.

24

1  <u>Reformation of Contract</u>

2  　　The Elkwood Defendants seek reformation in their Cross-Motion to address the

3  possible conclusion that the sale is void. Reformation of contract under California law is

4  governed by Cal. Civ. Code. § 3399:

5  　　　　When, through fraud or a mutual mistake of the parties, or a
mistake of one party, which the other at the time knew or

6  　　　　suspected, a written contract does not truly express the
intention of the parties, it may be revised on the application

7  　　　　of a party aggrieved, so as to express that intention, so far
as it can be done without prejudice to rights acquired by third

8  　　　　persons, in good faith and for value.

9  　　The final clause of Cal. Civ. Code § 3399, "so far as it can be done without

10  prejudice to rights acquired by third persons, in good faith and for value," indicates that

11  reformation is not available where the rights of a bona fide purchaser would be

12  prejudiced. <u>Baines v. Zuieback</u>, 84 Cal. App. 2d 483, 491 (1948).

13  　　　　　　　　　*Trustee's Rights as Bona Fide Purchaser*

14  　　Trustee has argued that his standing as a hypothetical bona fide purchaser of

15  real property under the strong-arm powers of § 544(a)(3) precludes any action for

16  reformation of contract by the Elkwood Defendants. <u>Trustee Motion</u> 19:16-24:4. The

17  Elkwood Defendants respond that reformation is available despite Trustee's powers

18  under § 544(a)(3) because Elkwood recorded a Trustee's Deed Upon Sale following the

19  foreclosure of the Rexford Property. The question is whether a purchaser would have

20  been on notice of Elkwood's interest in the Rexford Property. A reformation action will

21  be allowed only if a hypothetical bona fide purchaser would have had notice of

22  Elkwood's interest. <u>See, e.g.</u>, <u>In re Weisman</u>, 5 F.3d 417, 420 (9th Cir. 1993); <u>In re</u>

23  <u>Probasco</u>, 839 F.2d 1352, 1354 (9th Cir. 1988).

24

1    The rights of a bona fide purchaser under § 544(a)(3) are defined by state law. In

2    re Tleel, 876 F.2d 769, 772 (9th Cir. 1989). In California, a purchaser of real estate for

3    value without actual or constructive notice of a prior interest is given status as a bona

4    fide purchaser. Id. Because § 544(a) specifies that a trustee has its strong-arm powers

5    "without respect to any knowledge," "actual notice cannot overcome the Trustee's bona

6    fide purchaser status." Id. However, constructive or inquiry notice can preclude a

7    Trustee's status as a bona fide purchaser under § 544(a)(3). In re Harvey, 222 B.R.

8    888, 893 (B.A.P. 9th Cir. 1998). Constructive notice in the context of real estate is

9    provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214.

10    A hypothetical purchaser viewing the real estate records for the Rexford Property

11    on the petition date would have seen the Trustee's Deed Upon Sale filed by Elkwood

12    recorded March 6, 2015. Trustee RJN, Ex. G.[9] Typically, this recorded document would

13    provide constructive notice to any potential purchaser of an adverse interest in the

14    property. Here, however, the Trustee's Deed Upon Sale is void. A recorded document, if

15    void, should be treated "as a blank sheet of paper" and therefore does not provide

16    constructive notice. City of Los Angeles v. Morgan, 105 Cal. App. 2d at 733 ("[I]t is

17    obvious that invalid documents are not entitled to be recorded, but if they are recorded,

18    they do not give constructive notice."); See 5 Collier on Bankruptcy ¶ 544.02 (16th

19    2018) ("Where the holder of a security interest has not taken the essential steps to

20    perfect that security interest, or where the recording is defective, the trustee does not

21    have constructive notice."). The Elkwood Defendants rely upon Triple A Management

22    Co. v. Frisone for the proposition that constructive notice is based upon the recorded

23

24    [9] Trustee's Request for Judicial Notice in Support of Trustee's Motion is granted.

1  chain of title "as that state of title objectively presents itself," and is not viewed "through

2  rose colored glasses or with blinders on." 69 Cal. App. 4th 520, 530 (1999). This

3  approach to constructive notice is not inconsistent with the rule that a void document

4  does not provide constructive notice. <u>Triple A Management</u> did not involve constructive

5  notice based on a void document and is therefore of limited application here.

6      Rights under § 544(a)(3) may also be cut off where any bona fide purchaser

7  would have <u>inquiry</u> notice of a superior interest in the property. Courts have applied the

8  standard of whether a "prudent purchaser," in light of reasonably available information,

9  would have made an inquiry about the alleged interest. <u>In re Weisman</u>, 5 F.3d at 420. A

10  "prudent purchaser" describes someone who is shrewd in the management of practical

11  affairs and whose conduct is marked by wisdom, judiciousness, or circumspection.

12  <u>See</u> <u>Probasco</u>, 839 F.2d at 1356. Such a purchaser will be charged with knowledge of

13  1) the nature of the property; 2) its current use; 3) the identities of the persons

14  occupying it; 4) the relationship among them; and, 5) the relationship between those in

15  possession and the person whose purported interest in the property the purchaser

16  intended to acquire. <u>Id.</u> Clear and open possession of real property by someone other

17  than the party on title constitutes constructive notice to subsequent purchasers,

18  requiring such purchasers to inquire into the possessor's interest. <u>In re Probasco</u>, 839

19  F.2d at 1354. By the same token, "there is no duty to inquire upon a subsequent

20  purchaser regarding any unknown claims or interest by a person in possession of real

21  property where the occupant's possession is consistent with the record title." <u>Weisman</u>,

22  5 F.3d at 421.

23      The court in <u>Probasco</u> decided that it was "almost inconceivable" that a

24

1   reasonably prudent person, "knowing that Parcels 2 and 3 were jointly owned, and

2   seeing a perimeter fence around all three parcels, no fence between the parcels, the

3   staking of all three parcels, and roads traversing the entire property, would not inquire

4   whether a one-half owner of Parcels 2 and 3 had an interest in Parcel 1." Probasco, 839

5   F.2d at 1356. Therefore, the court held that the debtor-in-possession, as a hypothetical

6   bona fide purchaser under § 544(a)(3), had inquiry notice of a superior interest in the

7   real property, Id. at 1357, and the court further required that the deed be reformed to

8   include all three properties, Id. at 1356. Notably, the success of the reformation action

9   depended upon an initial determination of the trustee having constructive or inquiry

10  notice of the allegedly unperfected interest.

11         Similarly, the court in Weisman held that a reasonably prudent purchaser would

12  have inquired whether debtor had executed an unrecorded deed conveying her interest

13  in property currently occupied by her ex-husband and his new wife. Weisman, 5 F.3d at

14  422. The court determined that, realistically, people are not willing to allow their ex-

15  husband and his new wife to reside in property still jointly owned by the divorced couple.

16  The Weisman court therefore found that the bankruptcy trustee did not have a superior

17  interest to the unrecorded deed as a bona fide purchaser under § 544(a)(3) because the

18  trustee was on inquiry notice due to the observable facts surrounding the occupancy of

19  the home. See also In re Sale Guar. Corp., 220 B.R. 660, 666 (B.A.P. 9th Cir.

20  1998), aff'd, 199 F.3d 1375 (9th Cir. 2000) (Trustee's rights as BFP cut off by

21  constructive knowledge that property was possessed by parties other than Debtor

22  because a "prudent purchaser" is charged with the knowledge of: (1) the nature of the

23  property; (2) the current use of the property;  (3) the identity of the person in possession

24

1  of the property; and (4) the relationship between the person in possession and the

2  person whose interest the purchaser intends to acquire. (citing In re Weisman)).

3        Here, reasonable inspection of the Rexford home would not have put a

4  hypothetical bona fide purchaser on inquiry notice of changed ownership of the property

5  due to the highly unusual circumstance of Elkwood, following an alleged foreclosure,

6  allowing Massoud to continue residing at the property. Nourafshan Deposition, p. 145

7  (ECF Doc. 133, p. 40). An individual purchasing the home from Massoud on the date of

8  the petition, upon reviewing title, would see that Massoud owned the property subject to

9  certain liens. Lastly, while a hypothetical bona fide purchaser would realistically see the

10  Trustee's Deed Upon Sale in the property records, because that document is void, it

11  would not provide inquiry notice of Elkwood's interest.[10]

12        The Elkwood Defendants argue that, if the Fieldbrook Assignment is reformed as

13  they request, the Trustee will be deemed to have constructive notice because the

14  Trustee's Deed Upon Sale will no longer be void. The Trustee is correct here that a

15  reformation action cannot be sustained under Cal. Civ. Code § 3399 due to Trustee's

16  status as a bona fide purchaser. The Elkwood Defendants' reformation action is based

17  on an incorrect reading of Cal. Civ. Code. § 3399. If the only theory advanced for why a

18  party lacks bona fide purchaser status is that a reformation action may retroactively

19  legitimize an otherwise void document, the reformation action cannot succeed. This is

20  the only reading that gives meaning to the text of Cal. Civ. Code § 3399, and is

21

---

22  [10] Relying on Cal. Civ. Code. § 19, Ninth Circuit case law treats inquiry and constructive notice as related,
if not identical doctrines. Weisman, 5 F.3d at 420; In re Professional Inv. Properties of America, 955 F.2d

23  623, 628 (9th Cir. 1992) ("Moreover, decisions such as Probasco discuss the trustee's notice requirement
in terms of a constructive notice that encompasses inquiry notice."). If a void document does not provide
constructive notice under California law, it is not reasonable to find that the document nonetheless

24  provides inquiry notice.

1  consistent with existing case law.

2          In <u>Sieger v. Standard Oil Co.</u>, plaintiff Sieger sought to preclude defendant

3  McCollister from reforming a deed of trust based upon mutual mistake on the grounds

4  that reformation would prejudice Sieger's rights as a bona fide purchaser in violation of

5  Cal. Civ. Code § 3399. 155 Cal. App. 2d 649 (1957). Following the widening of an

6  abutting road, the starting point for the measurement of metes and bounds in the

7  property description of the subject property was incorrectly listed in several deeds

8  transferring the property. <u>Id.</u> at 652. McCollister obtained the property, which was

9  leased by a Standard Oil station, from Carter. <u>Id.</u> at 654. Three years later, Carter sold

10  Sieger an abutting piece of property for $115,000. <u>Id.</u> at 655. Several days after that

11  sale, Carter also transferred to Sieger, for no consideration, a portion of the lot occupied

12  by Standard Oil. <u>Id.</u> Carter notified Sieger that ownership of the lot was claimed by

13  McCollister. <u>Id.</u> Five years later, Sieger sent McCollister a letter demanding the rents

14  from the Standard Oil lease dating back to when Sieger obtained the deed from Carter.

15  <u>Id.</u> In the resulting lawsuit, Sieger sought to quiet title in the property, while McCollister

16  filed a cross-complaint to reform the deed from Carter to himself on the basis of mutual

17  mistake of where the property measurements began.

18          The <u>Sieger</u> court explains that the bona fide purchaser determination must be

19  made first, and only if the party is *not* a bona fide purchaser will the court consider the

20  merits of a reformation action. McCollister sought to admit evidence of the mutual

21  mistake in support of his reformation action, and the court stated:

22              If W. Edward Sieger was a bona fide purchaser of the
               contested parcel, the admissibility of the evidence of which
23              appellants complain becomes a matter of no importance for
               there could be no reformation affecting his rights.

24

1    Section 3399, Civil Code, provides for reformation because
of mutual mistake of the parties to an instrument, but only

2    "so far as it can be done without prejudice to rights acquired
by third persons, in good faith and for value." The

3    conjunctive used in the last phrase is expressive of the
general common law on the subject. To become

4    a bona fide purchaser one must have acquired title without
notice, actual or constructive, of another's rights and also

5    must have paid value for the same.

6 Id. at 656. Ultimately, the court affirmed that Sieger had inquiry and constructive notice

7 of McCollister's interest and was therefore not a bona fide purchaser, and the

8 reformation action based upon mutual mistake could proceed. Id. at 659.

9    Sieger clarifies that a claim for reformation is not proper if it prejudices the rights

10 of a bona fide purchaser even if the reformation action would destroy that party's status

11 as a bona fide purchaser. More accurately, a reformation action *cannot* be brought to

12 invalidate a bona fide purchaser's rights. This is consistent with the Probasco court's

13 decision to reform the contract in that case only after determining that the debtor-in-

14 possession was not a bona fide purchaser. 839 F.2d at 1356. The court must look to

15 facts other than the reformation action itself to determine whether the individual claiming

16 bona fide purchaser status had constructive or inquiry notice.

17    The Elkwood Defendants have argued that Trustee cannot assert bona fide

18 purchaser status as a defense to the reformation action because the Trustee has not

19 asserted any separate avoidance action under § 544(a)(3). The Trustee correctly points

20 out that § 544(a)(3) grants a trustee the "rights and powers" of a bona fide purchaser in

21 addition to the ability to "avoid any transfer of property of the debtor" that would be

22 voidable by a bona fide purchaser. The protection set forth in Cal. Civ. Code § 3399 are

23 rights of a bona fide purchaser.

24

1    The Court finds that the Trustee did not have constructive or inquiry notice of the

2    transfer as of the petition date, and therefore has "the rights and powers of. . . a bona

3    fide purchaser of real property." 11 U.S.C. § 544(a)(3). This bars consideration of the

4    reformation claim. Cal. Civ. Code § 3399.

5                                    *Cal. Civ. Code § 1640*

6    The Elkwood Defendants also argue that, if the Fieldbrook Assignment is

7    interpreted as assigning the entire PWB Note, any language that suggests that the

8    entire PWB Note was assigned must be disregarded under Cal. Civ. Code § 1640 and

9    the contract should be reformed to reflect Defendants' intent. <u>Defendants' Opp.</u>, 17:2-

10   21:15. Cal. Civ. Code § 1640 provides:

11               When, through fraud, mistake, or accident, a written contract
                 fails to express the real intention of the parties, such
12               intention is to be regarded, and the erroneous parts of the
                 writing disregarded.
13

14   Cal. Civ. Code § 1640. This provision is one of several rules for the construction of

15   contractual language in California's Civil Code. <u>Payne v. Commercial Nat. Bank of Los</u>

16   <u>Angeles</u>, 177 Cal. 68, 72 (1917). In the case of mutual mistake, the contract may be

17   reformed to conform to the intent of the parties. <u>Thrifty Payless, Inc. v. The Americana</u>

18   <u>at Brand, LLC</u>, 218 Cal. App. 4th 1230, 1243 (2013). Parol evidence may be considered

19   in making a determination of the true intentions of the contracting parties. <u>Id.</u>

20   The Elkwood Defendant's argument that the remedy for mutual mistake is

21   reformation of the agreement under Cal. Civ. Code § 3399 is generally correct, <u>Thrifty</u>

22   <u>Payless</u>, 218 Cal. App. 4th at 1243, however, because reformation under Cal. Civ. Code

23   § 3399 is not available here due to Trustee's status as a bona fide purchaser, any relief

24

1   under Cal. Civ. Code § 1640 must also fail. Section 1640 is not self-executing, and the

2   Court cannot reach these arguments under Cal. Civ. Code. § 1640 where there is a

3   bona fide purchaser. Thrifty Payless and Hess v. Ford Motor Co., 27 Cal. 4th 516

4   (2002), did permit reformation of the contract based on mutual mistake, but there was

5   no bona fide purchaser involved. Only the two parties to the contract, the landlord and

6   the tenant, were at issue in Thrifty Payless.  Hess specifically discussed the fact that

7   Ford was not a third-party beneficiary to the contract at issue so reforming the contract

8   would not prejudice rights acquired by third persons. Hess, 27 Cal. 4th 516, 529.

9         Furthermore, without a showing of a right of reformation, Cal. Civ. Code. § 1640

10   does not authorize the court to find that "a written contract includes provisions which do

11   not appear upon its face, and enforce such provisions as a part of the written contract."

12   Bradbury v. Higginson, 167 Cal. 553, 559 (1914). The Elkwood Defendants ask the

13   Court to utilize Cal. Civ. Code. § 1640 to re-write the Fieldbrook Assignment with

14   provisions that the document simply does not include. To do so would undermine

15   California law on extrinsic evidence under Pacific Gas and violate the long-standing rule

16   set forth in Bradbury.[11]

17         Lastly, the Elkwood Defendants' reading of Cal. Civ. Code § 1640 violates a

18   basic canon of construction. "It is an elementary tenet of statutory construction that

19   where there is no clear indication otherwise, a specific statute will not be controlled or

20

---

21   [11] At oral argument, the Elkwood Defendants argued that the Court need not reach the issue of
reformation in its consideration of Cal. Civ. Code § 1640. As the Court understands it, the Elkwood

22   Defendants argue that the Court must first disregard any language that they, as parties to the Fieldbrook
Assignment, now claim was a mistake; if the Court disregards the language in the assignment that

23   Trustee construes as transferring the Rexford DOT, the Trustee's action fails. Exactly which language the
Elkwood Defendants claim should be disregarded is unclear, as the language resulting in the transfer of
the Rexford DOT is the same language that transfers the PWB Note to Fieldbrook. This argument is

24   confusing and unsupported by the case law on Cal. Civ. Code § 1640.

1  nullified by a general one." <u>Santiago Salgado v. Garcia</u>, 384 F.3d 769, 773–74 (9th Cir.

2  2004); <u>See also</u> <u>People v. Jenkins</u>, 28 Cal. 3d 494, 505 (1980). Cal. Civ. Code. § 1640

3  is a general statute describing the rule of construction of contracts, while Cal. Civ. Code

4  § 3399 specifically governs cases where a party seeks reformation and another party is

5  a bona fide purchaser. The Court therefore cannot ignore Cal. Civ. Code § 3399 and

6  rely instead upon the more general Cal. Civ. Code § 1640.

7                                        Redemption Price

8          The Elkwood Defendants argue that if the Trustee is permitted to void the

9  Rexford foreclosure, the parties are returned to the pre-Rexford foreclosure sale status

10  quo and Elkwood must be reimbursed for costs incurred therewith on the Rexford

11  Property. These costs would allegedly include the bid of $782,508.05 (the balance owed

12  on the PWB Note), interest on that amount, payments by Elkwood paying the first trust

13  deed, and various construction, insurance, utilities, repair, and maintenance costs.

14          The issue of redemption costs was raised in the Elkwood Defendants' reply brief

15  and no evidence has been provided. This issue may be raised in a subsequent motion,

16  but insufficient evidence and legal support has been provided for the Court to resolve

17  that issue in this memorandum.

18                          **IV.    Conclusion**

19          Summary judgment is granted in Trustee's favor on Trustee's first cause of

20  action. The Court rejects the Elkwood Defendants' standing argument and finds that

21  <u>Yvanova</u> confers standing on the Trustee to bring this action. The Fieldbrook

22  Assignment is not reasonably susceptible to a reading that the note was bifurcated. The

23  Fieldbrook Assignment must be read as providing that the entire PWB Note was

24

1    transferred along with the Chalette DOT. The Rexford DOT was then also transferred as

2    a matter of law. The foreclosure on the Rexford Property is, therefore, void. The Trustee

3    has the rights and powers of a bona fide purchaser under § 544(a)(3), thus reformation

4    is precluded by Cal. Civ. Code § 3399. Title to the Rexford Property is quieted in the

5    Trustee as representative of Massoud Yashouafar's estate.

6        Trustee should submit a proposed judgment order consistent with this

7    memorandum.

8

9                                    ###

10

11

12

13

14

15

16

17

18

19

20    Date: January 25, 2019

21                                    Maureen A. Tighe
                                     United States Bankruptcy Judge

22

23

24

# **EXHIBIT B**

FILED & ENTERED

APR 30 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and<br>MASSOUD AARON YASHOUAFAR,<br><br><br><br>Debtors. | CHAPTER 11<br><br>Case No.: 1:16-bk-16-12255-GM<br><br>Adv No.:  1:17-ap-01040-MT<br><br>**SUPPLEMENTAL MEMORANDUM RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| DAVID K. GOTTLIEB, as Chapter 11<br>Trustee,<br><br>                            Plaintiff,<br><br>    v.<br><br>ELKWOOD ASSOCIATES, LLC., *et al.*,<br><br><br>                          Defendants. | Date:          December 11, 2018<br>Time:          9:30 a.m.<br>Courtroom:  302 |
| AND RELATED COUNTER- AND<br>CROSS-ACTIONS | |

The Court released its Memorandum re: Cross-Motions for Summary Judgment

on January 25, 2019 ("First Memorandum"). On February 27, 2019, the Court heard

argument on Elkwood Associates, LLC and related entities' ("Elkwood's") objection to

1 | the form of order for those cross-motions for summary judgment.

2 |      Elkwood is correct that the issue of a "redemption price" was raised in their

3 | opposition to the Motion for Summary Judgment filed by the chapter 11 trustee David

4 | Gottlieb ("Trustee"). The Court's First Memorandum left the issue of a "redemption

5 | price" to be decided at a later time by motion due to inadequate briefing. Elkwood has

6 | argued that a determination of a redemption price is a necessary requirement of

7 | Trustee's quiet title action, and that therefore any order on the cross-motions for

8 | summary judgment must only be a partial summary judgment in favor of Trustee until

9 | the issue of redemption price is decided. The issue has now been sufficiently briefed in

10 | the cross-motions for summary judgment pleadings and in the objections to the form of

11 | order, so no further briefing or motion will be necessary.

12 | Sys. Inv. Corp. v. Union Bank and Redemption

13 |      Elkwood argues that as a requirement of the Trustee's quiet title action, a

14 | redemption price must be paid to Elkwood. The exact nature and source of this

15 | redemption right is not well explained and Elkwood provides just one case to support its

16 | argument. Sys. Inv. Corp. v. Union Bank, 21 Cal. App. 3d 137 (Ct. App. 1971) (hereafter

17 | "System Investment"). The System Investment court affirmed the trial court's decision

18 | that that trustee's deed upon sale "should be declared void and should be set aside

19 | upon condition that plaintiffs do equity and tender $1,123,494.14 to defendant Union

20 | Bank. . . ." Id. at 150. System Investment reviews whether the trial court abused its

21 | discretion in considering various expenses in connection with determining the proper

22 | redemption price. The additional cases cited at oral argument do not change the court's

23 | analysis. See Knapp v. Doherty, 123 Cal. App. 4th 76 (2004).

24 |

1

2       First, note that <u>System Investment</u> is quite old. This is relevant because the fine

3   distinctions between a void and voidable foreclosure for purposes of tender had not yet

4   been spelled out clearly in the case law, so the case does not use the same terminology

5   that more recent cases have adopted. <u>See, e.g. Lona v. Citibank, N.A.</u>, 202 Cal. App.

6   4th 89, 105 (2011). The tender requirement, where it applies, is based on the rationale

7   that "if the borrower could not have redeemed the property had the sale procedures

8   been proper, any irregularities in the sale did not result in damages to the borrower. <u>Id.</u>

9   at 112 (Quoting <u>FPCI RE-HAB 01 v. E & G Investments, Ltd.</u>, 207 Cal. App. 3d 1018,

10  1022 (Ct. App. 1989)). In <u>Arnolds Mgmt. Corp. v. Eischen</u>, the court explicitly connected

11  the tender requirement to the right of a junior lienholder to redeem or cure the

12  delinquency before foreclosure. 158 Cal. App. 3d 575, 579 (Ct. App. 1984)(citing Cal.

13  Civ. Code §§ 2904, 2924c(a)(1)).[1]

14      Another often cited principle in connection with the tender requirement is that a

15  party seeking to set aside a foreclosure sale "is required to do equity before the court

16  will exercise its equitable powers." <u>Lona</u>, 202 Cal. App. 4th at 112. In <u>System</u>

17  <u>Investment</u>, the trial court "said that the redemption price (including a statement of

18  conditions for tender thereof) was fixed in order to do equity." It appears that the <u>System</u>

19  <u>Investment</u> court was determining the "redemption price" for purposes of tender

20  because the foreclosure in that case was voidable and not void, as is the case here.

21  Tender is not required where the foreclosure is void, rather than voidable. <u>Lona</u>, 202

22  Cal. App. 4th at 113. Elkwood, the non-prevailing party, is not entitled to a lump sum

23  _____

[1] For further discussion, <u>see</u> <u>Memorandum Re: Motion to Dismiss the First Amended</u>
24  <u>Counter-Complaint</u>, ECF Doc. 194.

1    payment from Trustee for Elkwood's entire interest in the property.

2         The fundamental issue raised by Elkwood is one of equity. Elkwood and its

3    associates invested certain amounts in the Rexford Property after the void foreclosure,

4    and equity may require that they be reimbursed for actual expenses in connection with

5    maintaining and improving the property. The Trustee argues that the result of this

6    judgment should be to return the parties to their pre-foreclosure positions, and that any

7    rights that Elkwood has would be solely pursuant to its Note and Deed of Trust against

8    the property. A determination of the extent of Elkwood's lien is not a necessary

9    requirement for entry of judgment on the first cause of action for quiet title based upon a

10   void foreclosure. The Court sees no authority to indicate that such a decision is required

11   at this point. The issue of whether Elkwood may have an increased lien or claim in this

12   bankruptcy will be determined at a later date.

13   F.R.C.P. 54(b)

14        Federal Rule of Civil Procedure 54(b) allows a trial court dealing with multiple

15   claims to direct entry of a final judgment on certain claims, but not other, by making an

16   express finding that there is no just reason for delay. Curtiss-Wright Corp. v. Gen. Elec.

17   Co., 446 U.S. 1, 3 (1980). In making a determination under Rule 54(b), a court "must

18   first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the

19   sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the

20   sense that it is an ultimate disposition of an individual claim entered in the course of a

21   multiple claims action. Id. at 7. Even where the court finds that a judgment is final, "not

22   all final judgments on individuals claims should be immediately appealable, even if they

23   are in some sense separable from the remaining unresolved claims." Id. at 8. The court

24

1   must consider "judicial administrative interests as well as the equities involved" in order

2   to avoid "piecemeal appeals." Id.

3              The role of the court of appeals is "not to reweigh the
               equities or reassess the facts but to make sure that the
4              conclusions derived from those weighings and assessments
               are juridically sound and supported by the record." As the
5              [Mackey] Court explained: "There are thus two aspects to
               the proper function of a reviewing court in Rule 54(b)
6              cases. The court of appeals must, of course, scrutinize the
               district court's evaluation of such factors as the
7              interrelationship of the claims so as to prevent piecemeal
               appeals in cases which should be reviewed only as single
8              units. But once such juridical concerns have been met, the
               discretionary judgment of the district court should be given
9              substantial deference, for that court is the one most likely to
               be familiar with the case and with any justifiable reasons for
10             delay. The reviewing court should disturb the trial court's
               assessment of the equities only if it can say that the judge's
11             conclusion was clearly unreasonable." Id. . . . . We start (and
               mostly stop) with juridical concerns. On this query our review
12             is de novo.

13  Wood v. GCC Bend, LLC, 422 F.3d 873, 878–79 (9th Cir. 2005) (quoting Curtiss-

14  Wright). The Wood Court reasoned that "this case would inevitably come back to this

15  court on the same set of facts. . . . There is nothing unique or distinguishing about

16  Wood's theories of adverse treatment. . . . the factual bases for both theories are

17  identical. . . ." Id. at 879 (emphasis added).

18         A recent case reaffirmed the two-step process for an appeals court reviewing a

19  Rule 54(b) certification. "First, we review de novo the juridical concerns determination,

20  ... asking whether the certified order is sufficiently divisible from the other claims such

21  that the case would not inevitably come back to this court on the same set of facts.

22  Second, we review for abuse of discretion, and give special deference to, the district

23  court's assessment of the equities." Tessera, Inc. v. Toshiba Corp., 743 F. App'x 140,

24

-5-

1    141 (9th Cir. 2018)(emphasis added). The court in Tessera ruled that "the order does

2    not resolve a separable claim; it simply resolves one theory. . . ." Id. (Emphasis added)

3         The case law is therefore clear that the "juridical concerns" inquiry is not only

4    limited to situations where the same legal issues will be appealed multiple times, but

5    also the same factual issues. In this case, the relevant factual allegations in the first

6    claim are substantially similar to the allegations in the second, third, fourth, and fifth

7    claims for relief in the Third Amended Complaint. Each of those claims offers a separate

8    theory of recovery seeking the same relief under the same set of facts. The factual

9    complexity would require revisiting the same operative facts two times on appeal.

10        The primary reason that Trustee seeks to certify that there is "no just reason for

11    delay" is to allow Trustee to move to sell the property and move this estate closer to

12    resolution and payment to creditors. This is an important goal in any bankruptcy case.

13    Elkwood raised the argument that this would create a "Clear Channel Issue," referring to

14    Clear Channel Outdoor v. Knupfer (In re PW, LLC). 391 B.R. 25, 33 (BAP 9th Cir.

15    2008). In Clear Channel, a junior lienholder, Clear Channel, appealed an order

16    authorizing a sale of real property free and clear of its lien under § 363(f)(5) as well as

17    an order approving that sale to the senior lienholder by credit bid. In a widely criticized

18    decision, the Clear Channel court ruled that the appeal of the order approving the sale

19    to the senior lienholder was under § 363(m), but the "free and clear" aspect of that sale

20    was subject to appellate review. This is relevant to a determination under Rule 54(b)

21    because it increases the likelihood of yet another appeal in this case based upon the

22    same essential facts.

23        The Court is also concerned about In re Rodeo Canon Dev. Corp. 362 F.3d 603

24

1   (9th Cir. 2004), opinion withdrawn and superseded, 126 F. App'x 353 (9th Cir. 2005), as

2   amended on denial of reh'g (Apr. 1, 2005). Rodeo Canon stands for the proposition that,

3   where there is a dispute over the Debtor's interest in the property, a bankruptcy court

4   may not authorize a sale of property under § 363 until the court resolves the dispute and

5   determines that the debtor has an interest in the property that can be sold. "A

6   bankruptcy court may not allow the sale of property as 'property of the estate' without

7   first determining whether the debtor in fact owned the property." Id. at 609. The BAP

8   made a similar determination in In re Clark, stating: "if the property is exempt it may not

9   be sold by the Trustee; if it is not exempt, it may be sold. The threshold question, is it

10   still property of the estate, must first be decided." 266 B.R. 163, 172 (B.A.P. 9th Cir.

11   2001).

12        Maintaining the property may ultimately cost the estate money, potentially

13   wasting an asset and risking a softening real estate market. Because there is the same

14   argument under Rodeo Canon and Clear Channel on whether the sale can proceed

15   while waiting for trial or any appeal to be completed, there is limited benefit to certifying.

16   It would be better to get to trial quickly and then decide any § 363 sale issues. Any other

17   order risks not only other delays but the risk of a sale that would not really be final would

18   impact the sales price. If the parties are concerned about a market decline, they can

19   always stipulate to any repairs needed to enable a sale and hold proceeds pending the

20   result of litigation.

21   ///

22

23   ///

24

1                                    <u>Conclusion</u>

2          Elkwood is incorrect in arguing that a determination of a "redemption price" is a

3    necessary requirement of Trustee's quiet title action. The proper proceeding for a

4    determination of that issue is an amended proof of claim and claims objection motion.

5    The Court, however, will not enter a finding that there is no just reason for delay under

6    Fed. R. Civ. P. 54(b).

7          There will be a status conference held on May 16, 2019 at 10:00 a.m. in this

8    matter. The parties should come prepared to set trial dates. The Court can commence

9    trial as soon as the following: July 15, 16, and 18; August 1, 2, 8, and 9.

10                                          ###

20   Date: April 30, 2019

21                                          Maureen A. Tighe
                                            United States Bankruptcy Judge

# **EXHIBIT C**



1

2

3

4

5

6            UNITED STATES BANKRUPTCY COURT

7                 CENTRAL DISTRICT OF CALIFORNIA

                    SAN FERNANDO VALLEY DIVISION

8

| | |
|---|---|
| In re | Case No.  1:16-bk-12255-GM |
| SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,<br>                          Debtors. | Chapter 11<br>Jointly Administered |
| In re:<br>SOLYMAN YASHOUAFAR,<br>                          Debtor. | Case No. 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>                          Debtor. | Case No. 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑  Both Debtors<br>☐  Solyman Yashouafar<br>☐  Massoud Aaron Yashouafar | |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>                          Plaintiff,<br>vs.<br><br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, et al.,<br><br>                          Defendants. | Adv. No. 1:17-ap-01040-MT<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FIRST CLAIM TO QUIET TITLE TO THE REAL PROPERTY LOCATED AT 910 REXFORD DRIVE, BEVERLY HILLS, CA IN THE NAME OF THE CHAPTER 11 TRUSTEE AS THE REPRESENTATIVE OF THE BANKRUPTCY ESTATE OF MASSOUD AARON YASHOUAFAR** |
| AND RELATED COUNTERCLAIMS AND CROSS-COMPLAINT | |

1

1    The Court having read and considered all documents and argument submitted in

2    connection with the Cross-Motions for Summary Judgment, and the subsequent documents and

3    argument submitted in connection with the objections to the form of order,

4    IT IS ORDERED as follows:

5    1.    Partial summary judgment is entered in favor of the Trustee, quieting title to the

6    real property located at 910 Rexford Drive, Beverly Hills, California and having a legal

7    description of Lot 5 and the Northerly 15 feet of Lot 4 of tract No. 4201, in the City of Beverly

8    Hills, County of Los Angeles, State of California, as per map recorded in Book 46, Page 63 of

9    Maps, in the Office of the County Recorder of said County (the "Rexford Home"), in the name of

10    the Trustee as the representative of the bankruptcy estate of Massoud Aaron Yashouafar in his

11    above captioned bankruptcy case;

12    2.    This Order is not meant to be a final appealable order.

13                                    # # # #

14

15

16

17

18

19

20

21

22

23

24    Date: April 30, 2019

25                                    Maureen A. Tighe
                                      United States Bankruptcy Judge

26

27

28

# **EXHIBIT D**

Jeremy V. Richards (CA Bar No. 102300)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jrichards@pszjlaw.com
          jlucas@pszjlaw.com

Attorneys for Plaintiff David K. Gottlieb,
Chapter 11 Trustee of the Estates of Solyman
Yashouafar and Massoud Aaron Yashouafar

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,[1]<br>Debtors. | District Court Case Number:<br><br>Bankruptcy Court Case Numbers (Jointly Administered): |
| In re:<br>SOLYMAN YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑ Both Debtors<br>☐ Solyman Yashouafar<br>☐ Massoud Aaron Yashouafar | Adversary Case Number: |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>Plaintiff,<br><br>v.<br><br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET BANK AND TRUST COMPANY,<br><br>Defendants. | 1:17-ap-01040-GM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE PLAINTIFF'S FIRST CLAIM FOR RELIEF (QUIET TITLE) AGAINST DEFENDANT ELKWOOD**<br><br>Date:<br>Time:<br>Place: |

[1]  The Debtors, together with the last four digits of each Debtor's social security number are:  Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).

DOCS_LA:324694.3 32274/001

1

# I.

2

## PROCEDURAL BACKGROUND

3    The Court makes these findings of fact and conclusions of law in connection with a Motion

4    for Summary Judgment on the First Claim for Relief for Quiet Title, brought by the Trustee against

5    Defendants Elkwood and Fieldbrook [Dkt. No. 98] and a cross-motion for summary judgment

6    brought by Defendants Elkwood and Fieldbrook on their Second Counterclaim against the Trustee

7    for reformation of the Fieldbrook Assignment, and their Third Counterclaim against Trustee, for

8    quiet title to the Rexford Home.[2]

9    Pursuant to the Trustee's Quiet Title Claim, the Trustee seeks to quiet title to the Rexford

10   Home in the bankruptcy estate of Massoud on the basis that Elkwood had assigned the PWB Note

11   and the Rexford DOT to Fieldbrook before it purported to credit bid and acquire the Rexford Home

12   at the Rexford Foreclosure Sale.

13   Pursuant to their Reformation Claim, Elkwood and Fieldbrook seek to reform the Fieldbrook

14   Assignment, to provide for the assignment of only $5.8 million of the PWB Note to Fieldbrook,

15   thereby leaving the balance of the note and the Rexford DOT vested with Elkwood. Pursuant to

16   their Quiet Title Claim, Elkwood and Fieldbrook seek to quiet title to the Rexford Home in the name

17   of Elkwood.

18   Finally, pursuant to their Sixth Affirmative Defense, Elkwood and Fieldbrook assert a claim

19   against the Trustee for various costs and expenses allegedly incurred by them after the Rexford

20   Foreclosure Sale relating to the Rexford Home "[i]n the event Plaintiff is granted any relief based

21   upon his Complaint in this action" (the "Reimbursement Claim").

22   The Court has already entered its Memorandum re Cross-Motions for Summary Judgment

23   (the "Memorandum") [Dkt. No. 191], granting summary adjudication on the Trustee's First Claim

24   for Relief and a summary adjudication denying Elkwood's and Fieldbrook's Reformation and Quiet

25   Title Claims. The Memorandum determined that the Reimbursement Claim did not need to be

26   adjudicated as a condition to ruling on the Trustee's First Claim for Relief, a decision that the Court

27   has subsequently reaffirmed twice [Dkt. Nos.216;274]. The Findings of Fact contained herein

28

---

[2] All capitalized terms shall have the same meaning as set forth below.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    summarize all of the undisputed factual findings made by the Court in the Memorandum.  Further,

2    the Conclusions of Law summarize, but do not limit or supersede, the legal conclusions set forth,

3    and analyzed in greater detail in the Memorandum, which legal conclusions and analysis are

4    incorporated herein by reference.  The Conclusions of Law herein also include certain additional

5    conclusions of law, not contained in the Memorandum, specifically the following:  (a) Conclusions

6    of Law numbers 40 through 43, inclusive, which relate to the propriety of entry of judgment on the

7    Trustee's First Claim for Relief, assuming Federal Rule of Procedure, Rule 54(b) is still applicable

8    to these proceedings, which the Court concludes it is not; and (b) Conclusions of Law numbers 44

9    through 46, inclusive, which  relate to issues pertaining to the Trustee's right of possession, raised by

10   the Elkwood Defendants subsequent to entry of the Memorandum.

## II.

### FINDINGS OF FACT[3]

1.    On August 3, 2016 (the "**Petition Date**"), involuntary bankruptcy petitions were filed against Massoud Aaron Yashouafar ("**Massoud**") and Solyman Yashouafar ("**Solyman**" and together with Massoud, the "**Debtors**").

2.    The Debtors stipulated to the entry of Orders for Relief in their respective cases, which Orders for Relief were entered on or about September 12, 2016.

3.    The Debtors stipulated to the appointment of a chapter 11 trustee for each of their bankruptcy estates, and David K. Gottlieb ("**Plaintiff**" or "**Trustee**") was appointed as chapter 11 trustee for both Debtors by orders entered on or about September 20, 2016.

4.    Prior to the Petition Date, Massoud through his family trust owned 910 Rexford Drive, Beverly Hills, CA (the "**Rexford Home**").

5.    Prior to the Petition Date, Solyman through his family trust owned 580 Chalette Drive, Beverly Hills, CA (the "**Chalette Home**").

6.    On March 20, 2009, Massoud and Solyman executed a promissory note (the "**PWB Note**") in favor of Pacific Western Bank ("**PWB**") in the principal amount of $6,551,575.00.

---

[3] Findings of Fact Nos. 1 through 26, inclusive, are all admitted by the Elkwood Defendants. [Dkt. No. 121; pages 3 – 10].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    7.    The family trust of Massoud secured the obligations of the PWB Note by, among

2    other things, a deed of trust (the "**Rexford DOT**") against the Rexford Home for the benefit of

3    PWB.

4    8.    The family trust of Solyman secured the obligations of the PWB Note by, among

5    other things, a deed of trust (the "**Chalette DOT**") against the Chalette Home for the benefit of

6    PWB.

7    9.    On December 29, 2014, Elkwood Associates, LLC ("**Elkwood**") purchased the PWB

8    Note and PWB Loan Documents from PWB, in addition to the ancillary agreements and documents

9    relating to the PWB Note, Rexford DOT, and Chalette DOT (collectively, the "**PWB Loan**

10    **Documents**").

11    10.    After Elkwood purchased the PWB Note and PWB Loan Documents, Elkwood

12    caused Citivest Financial Services, Inc. ("**Citivest**") to be substituted as trustee under the Chalette

13    DOT.

14    11.    Citivest, as the trustee under the Chalette DOT, filed and served a Notice of Trustee's

15    Sale (the "**Chalette Foreclosure Sale Notice**") for the benefit of Elkwood.

16    12.    The Chalette Foreclosure Sale Notice was recorded on or about January 27, 2015.

17    13.    On February 18, 2015, Elkwood executed a certain assignment (the "**Fieldbrook**

18    **Assignment**") that assigned the entire Chalette DOT to Fieldbrook.

19    14.    The Fieldbrook Assignment is titled as "ASSIGNMENT OF DEED OF TRUST AND

20    PROMISSORY NOTE" (capitalized font in original).

21    15.    The Fieldbrook Assignment contained the following language:

22    For Value Received, the undersigned ELKWOOD ASSOCIATES,
LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby
23    grants, assigns, transfers and conveys to FIELDBROOK, INC., A
CALIFORNIA CORPORATION all of its right, title and beneficial
24    Interest In and to that certain Deed of Trust dated MARCH 20, 2009
executed by SOL YMAN YASHOUAFAR, AS TRUSTEE OF THE
25    SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED
MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as
26    Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary
and recorded as Instrument No. 20090425658, on March 25, 2009, In
27    Book _____, Page _____ of Official Records in the

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Office of the County Recorder of Los Angeles County, California, describing land in said county as,

Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 657, pages 99 and 100 of maps, In the office of the county recorder of said county.

A.P.N. 4391-009-002 AKA: 580 CHALETTE DRIVE, BEVERLY

HILLS, CA 90210

Together with the Secured Promissory Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder. This Assignment is made without recourse, representations or warranties of any kind except as may be set forth In any Loan Sale Agreement that may be between assignor and assignee.

16.    The words that were used to assign the Chalette DOT are the exact same words that were used to assign the PWB Note to Fieldbrook.

17.    As reflected by the language used in the Fieldbrook Assignment, the assignment was not limited or qualified nor was there any allocation or participation in the PWB Note in any manner.

18.    On February 20, 2015, Citivest conducted a foreclosure sale under the PWB Note and Chalette DOT (the "**Chalette Foreclosure Sale**").  Citivest submitted an opening bid of $5.8 million on behalf of Fieldbrook, the beneficiary under the PWB Note and Chalette DOT.  There being no other bids, the Chalette Home was sold to Fieldbrook at the Chalette Foreclosure Sale for a credit bid of $5.8 million.

19.    On February 25, 2015, Citivest executed a *Trustee's Deed Upon Sale* (the "**Chalette Foreclosure Sale Deed**") conveying the Chalette Home to Fieldbrook in exchange for its $5,800,000 credit bid arising under the PWB Note, Chalette DOT, and Fieldbrook Assignment (the "**Chalette Transfer**").

20.    The Chalette Foreclosure Sale Deed was recorded on March 6, 2015.

21.    After Elkwood purchased the PWB Note and the other PWB Loan Documents, Elkwood caused Citivest to be substituted as the trustee under the Rexford DOT.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

22.    On or about January 26, 2015, Citivest, as the trustee under the Rexford DOT, filed and served a Notice of Trustee's Sale (the "**Rexford Foreclosure Sale Notice**") for the benefit of Elkwood.

23.    The foreclosure sale of the Rexford Home was scheduled for February 23, 2015 at 9:30 a.m. (prevailing Pacific Time) on the steps of the southwest entrance of the United States Post Office located at 222 N. Grand Ave, Los Angeles, CA 90012.

24.    On February 23, 2015, Citivest conducted a purported foreclosure sale of the Rexford Home (the "**Rexford Foreclosure Sale**"). Citivest, on behalf of Elkwood, opened the bidding with a credit bid of $782,508.05. There being no other parties appearing at the Rexford Foreclosure Sale, the Rexford Home was sold to Elkwood in exchange for a credit bid of $782,508.05.

25.    On or about February 25, 2015, Citivest, on behalf of Elkwood, executed a *Trustee's Deed Upon Sale* (the "**Rexford Foreclosure Sale Deed**") conveying the Rexford Home to Elkwood. The Rexford Foreclosure Sale Deed reflects that Elkwood, not Fieldbrook, was the foreclosing party/beneficiary and that Elkwood took ownership of the Rexford Home by way of foreclosure in exchange for a purported credit bid of $782,508.05 under the PWB Note.

26.    The Rexford Foreclosure Sale Deed was recorded on March 6, 2015. [Dkt. No. 83]

27.    On or about March 7, 2015, Massoud and Elkwood executed a lease (the "Rexford Lease") for the Rexford Home with a term that expired in March 2017; the Rexford Lease required Massoud to pay Elkwood $25,000 per month during the term of the Rexford Lease. Answer [Dkt. No. 83] , ¶ 85.

28.    Neither Massoud nor anyone else made a lease payment to Elkwood under the Rexford Lease. Nevertheless, Elkwood permitted Massoud and his family to reside in the Rexford Home for at least two years. Answer [Dkt. No. 83], ¶ 87.

29.    Massoud and his family occupied and benefitted from the full use and enjoyment of the Rexford Home from February 23, 2015, until they moved out in or about April, 2017. First Amended Counterclaim and Cross-Claim [Dkt. No.109], at ¶ 36.

30.    To the extent any of the foregoing Findings of Fact are more appropriately construed as a Conclusion of Law, they shall be deemed such.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**CONCLUSIONS OF LAW**

1.      In order to succeed on a motion for summary judgment under Federal Rule of Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *In re Aubrey*, 111 B.R. 268, 272 (BAP 9th Cir. 1990).

2.      The moving party must support its motion with credible evidence, as defined in Federal Rule of Civil Procedure 56(c), which would entitle it to a directed verdict if not controverted at trial. *Id.*

3.      If a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

4.      Substantive law determines which facts are material for purposes of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

5.      "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

6.      The court must view all the evidence in the light most favorable to the nonmoving party. *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008).

7.      The court may not evaluate the credibility of a witness or weigh the evidence. *California Steel & Tube v. Kaiser Steel Corp.,* 650 F.2d 1001, 1003 (9th Cir. 1981).

8.      Quiet title claims are actionable under Cal. Civ. Pro. Code § 760.020.  To state a claim for quiet title, a complaint must include (1) the subject property's description, including both its legal description and its street address or common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title against the adverse claims. *Metcalf v. Drexel Lending Grp.,* No. 08-CV-00731 W POR, 2008 WL 4748134, at *5 (S.D. Cal. Oct 29, 2008).

9.      Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10.    "[I]t is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract." *Block v. eBay, Inc.,* 747 F.3d 1135, 11138 (9th Cir. 2014) (internal quotations omitted).

11.    "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Reilly v. Inquest Tech., Inc.,* 218 Cal. App. 4th 536, 554 (2013).

12.    A latent ambiguity exists when a document, while unambiguous on its face, may be reasonably susceptible to more than one possible meaning upon production of extrinsic evidence. *Dore v. Arnold Worldwide, Inc.,* 39 Cal. 4th 384, 391 (2006).

13.    "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Id. (*quoting *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal. 2d 33, 37 (1968)). Extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract. *Pac.Gas & Elec., supra,* at 33.

14.    The Fieldbrook Assignment is not reasonably susceptible to a reading that the PWB Note was bifurcated, allocated or participated and only $5.8 million of the note, secured by only the Chalette DOT, was be transferred to Fieldbrook while the remainder of the PWB Note and the Rexford DOT would remain with Elkwood.

15.    The extrinsic evidence presented by Elkwood in connection with the summary judgment cross-motions "flatly contradicts" the language of the Fieldbrook Assignment. *Consolidated World Investments, Inc. v. Lido Preferred Ltd.,* 9 Cal. App. 4th 373, 379 (1992).

16.    The phrase "[t]ogether with the Secured Promissory Note or Notes therein described" is not reasonably susceptible to the reading "[t]ogether with *$5.8 million of* the Secured Promissory Note or Notes therein described . . . ." *See Gerdlund v. Elec. Dispensers Int'l,* 190 Cal. App.263, 272-273, 235 Cal. Rptr. 279, 284, 190 Cal. App.3d 263, (1987) (refusing to admit parol evidence where contract language stating that "[n]otice of termination may be given at any time and for any reason" was not reasonably susceptible to the propose reading that such notice could only be given "for any *good* reason.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    17.    "The assignment of a debt secured by mortgage carries with it the security." Cal. Civ.

2    Code § 2936. ("The assignment of a secured debt carries with it the security").

3    18.    The Rexford DOT was also assigned to Fieldbrook before the Rexford Foreclosure

4    Sale.

5    19.    Participations "are contractual arrangements between a lender and a third party, in

6    which the third party, or participant, provides funds to the lender.   The lender, in turn, uses the funds

7    from the participant to make loans to the borrower." *In re ACRO Bus. Fin. Corp.*, 357 B.R. 785, 787

8    (Bankr. D. Minn. 2006).

9    20.    To determine whether a transaction is a participation agreement, courts have

10   considered the following factors:  "a) money is advanced by participant to a lead lender; b) a

11   participant's right to repayment only arises when a lead lender is paid; c) only the lead lender can

12   seek legal recourse against the borrower; and d) the document is evidence of the parties' true

13   intentions." *In re Coronet Capital Co.,* 142 B.R. 78, 82 (Bankr. S.D.N.Y. 1992).

14   21.    The language of the Fieldbrook Assignment indicates that the Elkwood Defendants

15   intended an assignment, not a participation agreement.  There is insufficient evidence and no legal

16   support for considering the Fieldbrook Assignment to be a participation agreement.

17   22.    The Trustee has standing to bring the Quiet Title Claim.  *Yvanova v. New Century*

18   *Mortgage Corp.,* 62 Cal. 4th 919, 937 (Cal. 2016) ("A foreclosed-upon borrower clearly meets the

19   general standard for standing to sue by showing an invasion of his or her legally protected interests –

20   the borrower has lost ownership to the home in an allegedly illegal trustee's sale.")

21   23.    Prejudice is not an element of a quiet title claim and the Trustee does not need to

22   demonstrate prejudice in connection with his Quiet Title Claim.

23   24.    Even if the showing of prejudice is required, it is satisfied by the fact of the

24   foreclosure. *Sciarratta v. U.S. Bank Nat'l Assn.,* 247 Cal. App. 4th 552, 565-567 (2016).

25   25.    The Rexford Foreclosure Sale is void because Elkwood neither held the PWB Note

26   (nor any part thereof) nor the Rexford DOT at the time of the Rexford Foreclosure Sale.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

26.    A contract may only be reformed to express the parties' true intentions "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." Cal. Civ. Code § 3399.

27.    Reformation is not available if the rights of a bona fide purchaser would be prejudiced. *Baines v. Zuieback*, 84 Cal. App. 2d 483, 491 (1948).

28.    Pursuant to Bankruptcy Code § 544(a)(3), the Trustee has all of the rights and powers of a bona fide purchaser of real property that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the bankruptcy case.

29.    A reformation action will be allowed against a hypothetical bona fide purchaser only if the purchaser had notice of the adverse interest. *In re Weisman*, 5 F.3d 417, 420 (9th Cir. 1993); *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir. 1988).

30.    The rights of a bona fide purchaser under Bankruptcy Code § 544(a)(3) are defined by state law. *In re Tleel*, 876 F.2d 768, 772 (9th Cir. 1989).

31.    In California, a purchaser of real estate for value without actual or constructive notice of a prior interest is given status as a bona fide purchaser. *Id.*

32.    As Bankruptcy Code § 544(a) specifies that a trustee's rights and powers as a bona fide purchaser are "without regard to any knowledge of the trustee or of any creditor", "actual notice cannot overcome the trustee's bona fide purchaser status." *Id.*

33.    Constructive or inquiry notice can preclude a trustee's status as a bona fide purchaser under section 544(a)(3). *In re Harvey*, 222 B.R. 888, 893 (BAP 9th Cir. 1998).

34.    Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214.

35.    A recorded document, if void, should be treated "as a blank sheet of paper" and therefore does not provide constructive notice. *City of Los Angeles v. Morgan,* 105 Cal. App. 2d 726, 733 (1951) ("it is obvious that invalid documents are not entitled to be recorded, but if they are recorded, they do not give constructive notice").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

36.    The rights and powers of a trustee as a bona fide purchaser of real estate pursuant to Bankruptcy Code § 544(a)(3) can be cut off by reasonably available information that would put a prudent purchaser on inquiry notice of an alleged interest. *In re Weisman,* 5 F.3d at 420.

37.    As Massoud and his family were in possession of the Rexford Home on the Petition Date, a prudent purchaser would not have been on inquiry notice of any adverse interest asserted by Elkwood as of that date.

38.    Without a showing of a right of redemption, Cal. Civ. Code § 1640 does not authorize a court to find that "a written contract includes provisions which do not appear upon its face, and enforce provisions as a part of the written contract." *Bradbury v. Higginson,* 167 Cal. 553, 559 (1914).

39.    The Reimbursement Claim is not an affirmative defense to the Trustee's Quiet Title Claim but is, rather, a claim against the Massoud Estate that only comes into effect after judgment is entered on the Trustee's Quiet Title Claim.

40.    The Court is not required to adjudicate the Reimbursement Claim before entering judgment on the Trustee's First Claim for Relief.

41.    The only remaining claim to be adjudicated in this Adversary Proceeding, or otherwise, is the Reimbursement Claim.

42.    There are no overlapping factual or legal issues relating to both the Quiet Title Claim and the Reimbursement Claim.

43.    In light of entry of judgment on the Trustee's First Claim for Relief for Quiet Title, the Abselets' First Claim for Relief for Declaratory Relief should be dismissed as moot, and the Abselets do not object to such dismissal.

44.    There is no just reason to delay entry of the judgment on the Quiet Title Claim until the Reimbursement Claim has been adjudicated. The bankruptcy estate needs to be administered and unnecessary delay harms all parties.

45.    The right to possession of the Rexford Home is an issue that was raised by the Trustee's Third Amended Complaint and the Elkwood Defendants' First Amended Counterclaim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   There has never been any question that the trustee has been seeking possession of the Rexford

2   property as an asset of the estate.

3          46.    The Trustee is not required to plead a separate claim for ejectment in order to obtain

4   possession of the Rexford Home. *Medeiros v. Medeiros*, 177 Cal. App 2d 69, 1 Cal. Rptr. 696

5   (1960)(subject matter of action and issues involved are determined from facts alleged rather than

6   title of the pleadings or the character of the recovery suggested in the prayer); *Duckett v. Adolph*

7   *Wexler B. & F. Corp.*, 2 Cal. 2d 263-65, 40 P.2d 506 (1935)(one incident of ownership is possession

8   of the property).

9          47.    Judgment on the Quiet Title Claim entitles the Trustee to the issuance of a writ of

10  possession or other available remedy to obtain possession of the Rexford Home. A judgment for

11  trustee quieting title results in the Rexford property becoming property of the Massoud bankruptcy

12  estate pursuant to 11 U.S.C. §541(a)(1).

13         48.    Elkwood has not alleged any facts or advanced any legal argument that would entitle

14  it to remain in possession of the Rexford Home upon entry of a judgment on the Quiet Title Claim in

15  favor of the Trustee.

16         49.    To the extent that any of the foregoing Conclusions of Law are more appropriately

17  construed as a Finding of Fact, it shall be deemed and construed as such.

18

19  DATED: _____       _____

20                                       HONORABLE JOHN F. WALTER
                                         UNITED STATES DISTRICT JUDGE
21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **EXHIBIT E**

Jeremy V. Richards (CA Bar No. 102300)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  jrichards@pszjlaw.com
           jlucas@pszjlaw.com

Attorneys for Plaintiff David K. Gottlieb,
Chapter 11 Trustee of the Estates of Solyman
Yashouafar and Massoud Aaron Yashouafar

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,[1]<br>Debtors. | District Court Case Number:<br><br>Bankruptcy Court Case Numbers (Jointly Administered): |
| In re:<br>SOLYMAN YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑ Both Debtors<br>☐ Solyman Yashouafar<br>☐ Massoud Aaron Yashouafar | Adversary Case Number: |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br><br>Plaintiff,<br><br>v.<br><br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET BANK AND TRUST COMPANY,<br><br>Defendants. | 1:17-ap-01040-GM<br><br>**JUDGMENT ON TRUSTEE'S FIRST CLAIM FOR RELIEF (QUIET TITLE)**<br><br>Date:<br>Time:<br>Place: |

---

[1] The Debtors, together with the last four digits of each Debtor's social security number are:  Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).

DOCS_LA:324804.2 32274/001

1    This action came before the Court pursuant to a Report and Recommendation to the District

2    Court Re Entry of Judgment on First Claim for Relief (Quiet Title) (the "Report") [Dkt. No.. ___]

3    issued by the United States Bankruptcy Court, Central District of California (the "Bankruptcy

4    Court") in that certain adversary proceeding (the "Adversary Proceeding") pending before it as case

5    number 17-ap-01040-MT (the "Adversary Proceeding"). The Report also transmitted a copy of the

6    Bankruptcy Court's Memorandum re Cross-Motions for Summary Judgment [Adv. Dkt. No. 91] (the

7    "Memorandum"), Proposed Findings of Fact and Conclusions of Law based upon the Memorandum

8    ("Proposed Findings") and a proposed form of Judgment (the "Proposed Judgment"). Plaintiff and

9    Counter Defendant David K. Gottlieb, Chapter 11 Trustee for Solyman Yashouafar and Massoud

10    Aaron Yashouafar (the "Trustee") and Defendants and Counter Claimants Elkwood Associates LLC

11    ("Elkwood") and Fieldbrook Inc. ("Fieldbrook" and, together with Elkwood, collectively the

12    "Elkwood Defendants") have filed pleadings in this proceeding addressing whether this Court should

13    adopt the Memorandum and enter the Proposed Findings and the Proposed Judgment. The Court has

14    carefully considered the arguments of the Trustee and the Elkwood Defendants and has entered

15    Findings of Fact and Conclusons of Law [Dkt. No. ___] (the "Entered Findings") based upon the

16    Memorandum. Based thereon (and all capitalized terms not otherwise defined herein having the

17    same meaning as set forth in the Entered Findings):

18    IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

19    1.    Judgment is hereby entered in favor of the Trustee and against the Elkwood

20    Defendants and all of the other named defendants on the Trustee's First Claim for Relief for Quiet

21    Title. Fee title to the following property ("Subject Property") is quieted in David K. Gottlieb,

22    Chapter 11 Trustee for Massoud Aaron Yashouafar:  real property commonly known as 910 North

23    Rexford Drive, Beverly Hills, California 90210 and legally described as follows:

24    Lot five and the Northerly 15 feet of Lot 4 of Tract No. 4201, in the
    city of Beverly Hills, County of Los Angeles, State of California, as
25    per map recorded in book 46, page 63 of maps, in the office of the
    county recorder of said county.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.      The Rexford Foreclosure Sale is declared void and the Rexford Foreclosure Sale Deed (recording in the Office of the County Recorder of Los Angeles County on March 6, 2015 as document number 20150248924) is declared null and void.

3.      Judgment is entered in favor of the Trustee and against Elkwood on Elkwood's Second Counterclaim (for reformation of the Fieldbrook Assignment) and Third Counterclaim (for Quiet Title to the Rexford Home).  Counter Claimant Elkwood will take nothing by its First Amended Counterclaim.

4.      The Elkwood Defendants, and each of them, and their respective successors, assigns, tenants, or agents shall have no right, title, estate, lien, or interest in the Subject Property, except that the Rexford DOT (recorded in the Office of the County Recorder of Los Angeles County on March 25, 2009 as document no. 20090425659) shall continue to encumber the Subject Property with the same validity, extent and priority as it had immediately prior to the Rexford Foreclosure Sale.

5.      The Trustee is entitled to immediate possession of the Subject Property and the Trustee is entitled to the immediate issuance of a Writ of Possession with respect to the Subject Property.

6.      This Judgment does not resolve the claim asserted against the Trustee in the Elkwood Defendants' Sixth Affirmative Defense, and any and all defenses, offsets and/or counterclaims that the Trustee has or may with respect to said claim.

DATED: _____          _____
                                        HONORABLE JOHN F. WALTER
                                        UNITED STATES DISTRICT JUDGE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA